UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

_____

THE LAMPO GROUP, LLC d/b/a RAMSEY        Civil Case No. _____
SOLUTIONS, a Tennessee Limited Liability
Company,

      Plaintiff,                                  JURY DEMANDED

Vs.

MARRIOTT HOTEL SERVICES INC., a
Delaware Company,

      Defendant.
_____

## COMPLAINT FOR DAMAGES
_____

Plaintiff The Lampo Group, LLC d/b/a Ramsey Solutions ("Ramsey Solutions"), by and through its undersigned counsel, sues Defendant Marriott Hotel Services Inc. ("Marriott"), for damages and additional relief, and alleges as follows:

### Nature of the Action

1.      Dave Ramsey is a world-renowned financial expert, who hosts a national broadcast radio show (*The Dave Ramsey Show*) with more than 16 million listeners including his podcast. Mr. Ramsey has authored a dozen books designed to help businesses and consumers manage their financial matters; and, relevant to this dispute, Mr. Ramsey hosts educational seminars and events tailored to large and small business owners around the country. These seminars are transformative and set the gold standard for educational content and excellence in customer experience. These large-scale events are frequently attended by several thousand individuals.

2.     Plaintiff Ramsey Solutions organizes these high-end experiences attended by thousands of business owners, each of whom spends between $5,000 and $15,000, inclusive of hotel, to attend these events.  For this reason, the attendees expect the full array of luxury amenities commensurate with this high-end event such as access to on-site spa services, restaurant and bar availability, valet, housekeeping services, and the like. Equally important, the attendees look forward to networking, collaborating, and mingling with other attendees.

3.     These events are booked far in advance, including not just the location of the event but also the attendees themselves, who likewise secure their attendance well in advance.  Ramsey Solutions' events frequently have as many as 4,000 attendees, who look forward to participating in these well-organized and informative seminars.   Indeed, the Summit event, which occurs annually, is the highest-grossing event for Ramsey Solutions.

4.     Ramsey Solutions puts on these high-end experiences across the country.  For many years, Ramsey Solutions turned to Defendant Marriott, as it has many hotels and resorts that, at certain of its venues, can accommodate the needs of the attendees and provide the excellent customer experience that Ramsey Solutions requires for its attendees.  Each of these events is typically booked two or more years in advance to occur at different locations throughout the year.

5.      To that end, approximately two and half years ago, in September of 2017, Ramsey Solutions entered into an Agreement, as amended (collectively, the "Agreement"), with Gaylord Palms Resort & Convention Center ("Gaylord Palms"), which is a fictitious name for an entity owned by Defendant Marriott.  Marriott and Gaylord Palms are used interchangeably in this complaint.

6.     As occurred historically, Ramsey Solutions turned to Defendant Marriott as its preferred vendor to host its *EntreSummit 2020* because Ramsey Solutions believed that Marriott

2

would, once again, provide a luxury experience for the Ramsey Solutions' attendees who paid thousands of dollars to listen to and learn from Dave Ramsey and other respected industry experts. *EntreSummit 2020*, as with each of the events organized by Ramsey Solutions, was supposed to allow participants to attend educational seminars designed to aid attendees in achieving financial success. At the same time, *EntreSummit* 2020 was to provide attendees with the crucial opportunity to network with like-minded individuals and entrepreneurs, allowing them to socialize in a relaxing atmosphere and enjoying the premium and luxurious amenities that the resort has to offer.

7.     Unfortunately, as detailed below, as the event drew nearer, Gaylord Palms placed significant restrictions on the event and limitations on the use and enjoyment of the facilities such that Ramsey Solutions' intended first-rate event would become stilted and uncomfortable for the attendees. Despite Ramsey Solutions' attempts to get Gaylord Palms to reconsider its decisions, Gaylord Palms refused. Given that the event was scheduled to take place between July 12-14, 2020, and without any assurance that Gaylord Palms would be able provide Ramsey Solutions' attendees and guests the ability to enjoy the high-end transformative experience they paid for, on July 3, 2020, Ramsey Solutions terminated the Agreement in writing, thus forcing Ramsey Solutions to make alternative arrangements to host the event elsewhere to mitigate the damages created by Marriott's actions.

8.     The change in venue alone meant that some of the attendees could no longer attend due to last-minute adjustments in travel. The damages to Ramsey Solutions associated with the loss of attendees are, upon information and belief, itself in excess of $10 million dollars. This suit seeks recovery of the damages suffered by Ramsey Solutions, who was forced to move its event at the last minute due to the considerable restrictions placed on the event by Gaylord Palms as well

3

as the $1.2 million dollar that Ramsey Solutions paid to Gaylord Palms in connection with the parties' Agreement.

## I. JURISDICTION AND VENUE

9. The Court has jurisdiction over Plaintiff's claims because the parties are diverse and, hence, diversity jurisdiction exists pursuant to 28 U.S.C. §§ 1332 and 1367. Specifically, Plaintiff Ramsey Solutions is organized under the laws of Tennessee, with its principal place of business in Tennessee. Defendant Marriott is organized under the laws of Delaware, with its principal place of business in Maryland. Gaylord Palms is a fictitious name used by Marriott; Gaylord Palms is located in Osceola County, Florida. All parties are diverse.

10. The Court has personal jurisdiction over Marriott because it purposefully directed its business activities toward this jurisdiction by owning and operating hotels and resorts in this jurisdiction, it has engaged in substantial contacts with Ramsey Solutions in this jurisdiction including numerous communications relating to the Gaylord Palms Agreement, the Agreement was executed by Ramsey Solutions in this jurisdiction and Ramsey Solutions initiated payments from this jurisdiction to Marriott, and the claims for relief arise from and relate to conduct that occurred, at least in large part, within this jurisdiction. Plaintiff Ramsey Solutions suffered damages within this jurisdiction as detailed below.

11. Venue is proper in this District pursuant to 28 U.S.C § 1391 (a), (b), (c) and (d) because, during relevant times Marriott resided, transacted business, was found or had agents in this District and a substantial portion of the activity at issue occurred in this jurisdiction.

12. The amount in controversy in this action is in excess of the jurisdictional limits of this Court exclusive of interest and attorneys' fees and costs.

4

## II.  THE PARTIES

13.  Plaintiff, Ramsey Solutions, is a Tennessee limited liability company with its principal place of business located at 1011 Reams Fleming Blvd., Franklin, TN 37064.

14.  Defendant Marriott is organized and existing under the laws of Delaware, having its principal place of business at 10400 Fernwood Road Department 52 / 924.13, Bethesda, MD 20817.  Marriott owns the fictitious name Gaylord Palms Resort & Convention Center and operates that facility.

## III.  GENERAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

15.  As noted above, Dave Ramsey is a distinguished entrepreneur and public speaker, having authored many books designed to help consumers and business owners achieve financial success.  He is an acclaimed broadcast host who also hosts various seminars across the country, usually 45-50 events per year.  His largest event—*EntreSummit 2020*—was scheduled to be held at Gaylord Palms from July 12 to July 14, 2020.

16.  These events are large and well-attended.  For this reason, Ramsey Solutions books the venues for each event several years in advance.  As noted above, Ramsey Solutions events are often attended by several thousand participants, many of whom also bring a spouse and other family members, friends and/or business associates, so that the event becomes a working vacation and/or business retreat for companies as well.

17.  *EntreSummit 2020* was no different.  Gaylord Palms and Ramsey Solutions entered into their initial agreement on September 29, 2017, two and a half years before the event was to take place.  *See* Agreement Between Ramsey Solutions and Gaylord Palms Resort & Convention Center, 9/29/2017, attached as Exhibit "A."   As originally contemplated, nearly 5000 rooms were reserved by Ramsey Solutions for *EntreSummit 2020*.

5

18.     Prior to the proposed *EntreSummit 2020* event, Ramsey Solutions previously held at least 15 high-end events at Marriott facilities around the United States similar to the type of event slated for Gaylord Palms in mid-July 2020, and it had 8 other events contracted at various Marriott facilities across the country in addition to the one slated for Gaylord Palms. Because Ramsey Solutions and Marriott were long-time collaborators, Marriott was aware of the caliber of experience that Ramsey Solutions offered to its attendees and their guests.

19.     In addition to the education seminars with a live experience with Dave Ramsey and other stars in the industry, attendees looked forward to the important benefit and opportunity to actively network and socialize with each other. Attendees expected—and heftily paid for—a high-end experience and environment, including everything from the availability and use of spa and gym facilities, valet service, guest greeting, and priority concierge services, housekeeping services, buffet, and open food service throughout the seminars, among other things. Thus, when Ramsey Solutions contracted with Gaylord Palms in December of 2017, it was agreed that, as it had in the past, Marriott would provide the attendees with the white glove services they had historically received (and that were paid for by Ramsey Solutions).

20.     Attendees also would use the opportunity to experience local attractions. Orlando was a perennial favorite because of the proximity to Disney World and Universal Studios, Sea World, and a host of other attractions. These attractions, as well as the myriad of other entertainment in Orlando, made Gaylord Palms an ideal venue for *EntreSummit 2020* and, thus, Ramsey Solutions was excited about hosting the event at this Marriott property in particular.

21.     In addition to the above, a $22 per room "resort fee" was added to each room charge that covered certain services including scheduled shuttle service to Walt Disney World Theme Parks & Disney Springs, 24-hour access to Relache Fitness Center, Private training sessions at the

6

Relache Fitness Center among other in-room amenities. Also included was complimentary valet for 20 staff members of Ramsey Solutions, as well as available valet service for all attendees. *See* Ex. A.

22. As outlined in the Agreement, it was contemplated that Ramsey Solutions could offer *EntreSummit 2020* attendees continental breakfast and buffet-style food so that an attendee could step out of the seminar, grab a coffee, or a beverage, enjoy prepared food that would be available all day including snacks. It was also contemplated that at the various receptions that Ramsey Solutions hosts there would be passed hors d'oeuvres and open bar, which would allow the attendees to mingle, thus accomplishing the important networking element of the event without undue restrictions. *See* Ex. A.

23. Indeed, the Agreement itself touts the Relache spa and fitness center: "Relache, our on-site spa, was designed with groups in mind. This 25,000-square-foot European-inspired spa features 25 massages, body and skincare treatment suites; a full-service salon; and a complete fitness center. Feel free to contact our Spa Sales Manager at (407) 58604772, for more information about the range of services offered, including fitness breaks during your meetings." *See* Ex. A at 12. The Agreement also promotes the other services including "Hello Florida!" a service that was offered to provide "full-service destination management" services, "team-building events" and tours. *Id.*

24. It became clear, however, that Ramsey Solutions would not be able to produce its signature high-end event and the attendees would not be able to experience or enjoy the core elements of the event, because of restrictions being imposed by Gaylord Palms. Originally *EntreSummit 2020* was to take place in May of 2020. In February, when it seemed likely that the event would need to be moved due to COVID-19, representatives of Gaylord Palms and Ramsey

7

Solutions began discussions to find alternative dates to reschedule the event. At that time, Gaylord Palms provided three alternative dates, one in June and two in July. No one at Gaylord Palms advised Ramsey Solutions that there would be restrictions or a reduction in amenities available to the attendees on the offered dates and, therefore, Ramsey Solutions proceeded in earnest with Marriott to move the event forward at Gaylord Palms.

25. Ultimately, due to pressure from Gaylord Palms indicating that they had other groups that wanted some of the alternate dates, Ramsey Solutions selected the July 12-15 dates. The parties negotiated an amendment to the Agreement that changed the May dates to July (the "Amendment"). Further, the parties negotiated other aspects of the deal because, given the pandemic, the number of attendees could be less than what was originally contemplated. This impacted various aspects of the Agreement including the number of rooms that would be reserved as well as the food and beverage minimum required. *See* Amendment to Agreement between Ramsey Solutions and Gaylord Palms Resort, 04/02/2020, attached as Exhibit "B."

26. In May of 2020, with the event growing nearer, Gaylord Palms began unilaterally changing other details and amenities that would be available to Ramsey Solutions and its guests; the proposed modifications would materially impair the high-end guest experience that Ramsey Solutions is known for and the attendees expect and pay for. For example, Gaylord Palms advised that it was going to require that the seminar rooms be set up with social distancing, limiting and negatively impacting the attendees' ability to network. Ramsey Solutions was also advised that there would no longer be buffet or self-service food available to attendees throughout the day during the seminars; this is something that is routine in virtually every convention of this type and had been the historical practice at each of these events. Gaylord Palms also advised that it was not going to provide any self-service coffee or beverages either. Similarly, there would be no passed

8

hors d'oeuvres allowed at the various receptions, again impacting the enjoyment and networking elements for attendees. Finally, Gaylord Palms also advised that masks and health checks would be required of all attendees and their guests at all times.

27.    While Ramsey Solutions certainly appreciates the health concerns of everyone including its attendees, these modifications materially diminished important aspects of the event, including the overall quality and enjoyment of the event for attendees and guests.  These unilateral changes were contrary to the parties' past dealings and were inconsistent with the premium experience that Ramsey Solutions participants anticipated.

28.    Ramsey Solutions communicated in June, as Gaylord Palms was advising of these additional changes and restrictions, that these adjustments would not be acceptable.  While Ramsey Solutions tried in earnest to reach accommodation on various issues, the requirements being imposed by Gaylord Palms were a moving target.  Every time Ramsey Solutions would try to reach an accord with Gaylord Palms, the hotel would thereafter add additional strings or conditions that continued to degrade the expected experience for *EntreSummit 2020* attendees.

29.    In late June of 2020, after good faith negotiations on Ramsey Solutions' end, it was agreed that while Gaylord Palms would post signs informing attendees of a City of Orlando ordinance that required masks when outside ones' residence, Gaylord Palms advised that it would not aggressively enforce the policy.  Gaylord Palms assured Ramsey Solutions that while the staff was trained to politely ask attendees to wear a mask in public spaces, they would not actively enforce the policy (nor were they required to).  This was confirmed with various Gaylord Palms employees including the Director of Operations.

30.    On July 2, 2020, just a week or so before the scheduled event, the Director of Operations and General Manager of Gaylord Palms contacted Ramsey Solutions and advised that

the requirements were again being changed. In addition to requiring face masks, about which Gaylord Palms and Ramsey Solutions had reached an understanding, the hotel was now stating that if a guest chose not to wear one, he/she would be required to leave regardless of whether it was a common area or the convention meeting rooms where the events would be held. This was contrary to the accord previously reached by the parties. This additional restriction and the potential interactions and interference with the event attendees added to the litany of changes that Gaylord Palms was already imposing and negatively impacted Ramsey Solutions' ability to provide the high-end experience the parties expected and bargained for.

31. Given the significant reduction in amenities and Marriott's ever-changing requirements, Ramsey Solutions demanded assurances that Gaylord Palms would not again change the event requirements. Gaylord Palms advised that it could provide no such guarantee. Indeed, Gaylord Palms made clear that it could not even guarantee that the event would proceed at all. Given Gaylord Palms' refusal to commit to no last-minute cancelation of the event or additional changes, Ramsey Solutions advised that it would be unable to proceed as it was already the beginning of July, a mere week or so before the event.

32. Among other things, Gaylord Palms unilaterally reduced the amenities in a manner that resulted in the proposed guest experience no longer qualifying as a first-class experience, including by advising that:

- The Hotel Spa would be closed, and no spa services would be available;

- Half of all fitness machines were to be deemed closed or unavailable due to social distancing requirements Gaylord Palms was imposing, which would be inconvenient and frustrating for attendees who would be forced to wait or otherwise abandon their workouts given the number of expected attendees and the size of the facility;

- No Valet service– Self Parking only;

10

- New seating requirements were implemented to allow for distance between each seat in the convention center meeting rooms where events were to be held, which not only reduced drastically Ramsey Solutions' opportunity for revenue because capacity would be limited but also drastically diminished the opportunity for attendees to get to know each other and network with other attendees;

- Appetizers – a mainstay offered during receptions to allow attendees to socialize and network in a relaxed setting would no longer be passed or served;

- No self-service buffets during the seminars, which limited the ability of attendees to eat when hungry throughout the day and increased the time needed for meal breaks (thereby changing the timing of the seminars and other events and potentially lessens attendance in *EntreSummit 2020* meeting rooms);

- No self-service coffee or drink, which is routinely placed around the meeting rooms for such events;

- Mask requirement and enforcement policies changed multiple times ultimately resulting in Gaylord Palms advising that attendees would be required to social distance and to wear a mask in all areas of the resort other than their private hotel rooms, including during the seminars and other networking events at the convention center;

- Limited capacity on elevators, meaning long lines in the elevator area as attendees would be forced to wait for an available elevator to move about the hotel;

- Reduced capacity at the pool, again impacting the attendees' ability to socialize and network with other participants;

- Reduced capacities at restaurants, necessitating longer waiting periods in seating and service, which would impact whether service would be available at all for all attendees if the facility was at near capacity;

- Scheduled daily housekeeping suspended unless requested; and

- Room Service would not be available to deliver and set up in-room dining.

33.    Gaylord Palms kept imposing these changes over a period of months, between February and July of 2020, gradually reducing the services and amenities available to *EntreSummit 2020* attendees, each of whom paid handsomely for a high-end luxury experience. While Ramsey Solutions tried to work cooperatively with Gaylord Palms, dating back to when concerns about the

11

pandemic first arose, at the end of the day, the failure to put on a first-rate event would be held against Ramsey Solutions, not Gaylord Palms.

34.     The failure to meet the quality standards that Ramsey Solutions established for its attendees would permanently impact the reputation and goodwill Ramsey Solutions created over many years.  Marriott, in the name of Gaylord Palms, systematically eliminated and changed the benefits and amenities that Ramsey Solutions contracted for.  The overall impact of these unilateral changes altered the overall experience in a way that was contrary to the Agreement.  Regardless of the circumstances that motivated Gaylord Palms to implement these changes, the deletion of amenities and increased social distancing requirements inextricably altered the contracted-for event in a way that was unacceptable and contrary to the event as contemplated by the parties.

35.     As a result, given the increased restrictions and limited mobilization of Ramsey Solutions' attendees, Ramsey Solutions was forced to send a termination letter to Gaylord Palms advising that the Agreement was terminated.  *See* Letter from Daniel Cortez to Mike Stengel, July 3, 2020, attached as Exhibit "C."  Naturally, Ramsey Solutions expected Gaylord Palms' full cooperation with the termination, given Gaylord Palms' knowledge of the escalating restrictions Gaylord Palms had been imposing upon Ramsey Solutions' attendees.  Instead, Ramsey Solutions received a letter on behalf of Gaylord Palms indicating that the termination was improper, demanding payment from Ramsey Solutions for the balance of the contract.  *See* Letter from Steven Rudner to Daniel Cortez, July 6, 2020, attached as Exhibit "D."

IV.     **RELEVANT CONTRACT PROVISIONS**

36.     Both the initial Agreement and the Amendment contain express provisions that permit Ramsey Solutions to terminate the Agreement and provided that Ramsey Solutions would

12

be returned all amounts that it had paid to Gaylord Palms, which at this point total $1.2 million dollars.

37.     The initial contract from 2017 itself contains several provisions supporting the termination.  The For Cause Termination provision states, in part:

> ….Notwithstanding any provision to the contrary herein, Group [Ramsey Solutions] may at any time terminate this Agreement without penalty in the event Hotel, its parent, subsidiary or affiliated businesses, principals or executives become engaged in, accused of or subject to any public scandal, political controversy, crime, fraud or other event that ***in Group's sole judgment will impair or damage its brand or good will by hosting an event at Hotel***.  In such event, Group shall provide prompt notice and the Hotel shall refund all deposits and/or prepayments made by the Group within thirty (30) days of receipt of the notice of termination.

*See* Ex. A at 13 (emphasis supplied).

38.     This provision unambiguously provides Ramsey Solutions the sole discretion to terminate the Agreement based upon its own determination of damage to its brand and goodwill if it were to host the event at Gaylord Palms.

39.     Gaylord Palms expressly advised Ramsey Solutions that it was imposing certain restrictions because of the Gaylord Palms' concerns regarding bad press that it may receive if the event were to take place as scheduled.  Indeed, one of Marriott's executives commented that he was concerned that "Inside Edition" might come in and do a story.  This mentality demonstrates that Gaylord Palms was choosing its own brand acceptance over that of its customer, Ramsey Solutions.

40.     As detailed above, the major restrictions and limitations imposed on the *EntreSummit 2020* event, which continued to increase over time, and Gaylord Palms' refusal to commit that it would not cancel at the last minute or further increase the burdens being imposed, necessitated that Ramsey Solutions terminate the Agreement and mitigate its damages. Proceeding

13

under these circumstances, with a guaranteed failure to deliver on the attendees' expectations would impact Ramsey Solutions' reputation and goodwill. Ramsey Solutions, therefore, had to make the difficult decision to terminate the Agreement, a right that the parties expressly agreed was within Ramsey Solutions' sole discretion to make.

41. The Agreement also provides additional rights in the Force Majeure provision. That provision provides:

> Either party may be excused from performance without liability *if circumstances beyond its reasonable control*, such as acts of God, war, acts of domestic terrorism, strikes or similar circumstances, make it illegal or impossible to provide or use the Hotel facilities. The ability to terminate pursuant to this clause is conditioned upon delivery [sic] written notice to the other party setting forth the basis for such termination within ten (10) days after learning of such basis.

*Id.* (emphasis supplied).

42. Notably, the provision does not provide an exhaustive list of what constitutes "circumstances beyond its reasonable control." The current pandemic, which imposed a series of untenable burdens and contingencies on Ramsey Solutions that was not contemplated by the parties, clearly falls squarely within this provision.

43. The Amendment likewise contemplates the parties' abilities to terminate the Agreement, given the uncertainties surrounding COVID-19's course and behavior:

> 4. **Additional Impossibility Language**.
>
> Should the federal agency responsible for public health, emergency preparedness and infectious disease control and prevention in the country where the hotel is located (i.e., the Centers for Disease Control and Prevention in the U.S. or the Public Health Agency of Canada) issue a travel advisory, notice, or warning at any time within the 30 day period prior to the first arrival date of the Event that specifically advises travelers to avoid all non-essential travel to the specific city in which the Hotel is located, and should Group have suspended all of its business operations in the city where the Hotel is located or if the Group has no business operations in the city where the Hotel is located, has otherwise recommended that its attendees not travel to the city for any non-essential reason, then Group may contact the Hotel in

14

order for the parties to engage in discussions regarding the scope of the advisory, notice or warning. The parties agree to negotiate in good faith to resolve any concerns raised as a result of the advisory, notice, or warning and to enter into such amendments of this Agreement as may be necessary to reasonably accommodate both parties' interests (such as an adjustment to the performance (attrition) clauses of this Agreement or the addition of a re-book clause to the Agreement).

*See* Ex. B. at ¶ 4.

44.     Although Ramsey Solutions had the right to terminate the Agreement pursuant to the provisions of the original Agreement and subsequent Amendment, in keeping with the letter and spirit of the Agreement, Ramsey Solutions attempted to negotiate in good faith with the goal of having the event proceed as scheduled, as to do otherwise would cause Ramsey Solutions significant damages in the form of lost revenue if the venue needed to be changed at the last minute.

45.     Whether the restrictions were the result of the spike in COVID-19 cases in Florida, recent advisories by the CDC and other agencies regarding non-essential travel (as well as additional burdens placed by local ordinances), or Gaylord Palms simply not negotiating in good faith, Ramsey Solutions was forced to terminate the Agreement on July 3, 2020. The termination was necessary because the restrictions being imposed by Gaylord Palms were contrary to the Agreement and would result in a significant reduction in Ramsey Solutions' goodwill if attendees participated in the *EntreSummit 2020* as it was being re-designed by the hotel.

46.     The Amendment acknowledged that all other terms of the underlying Agreement remained in place. *See* Ex. B at ¶5.

47.     Despite having the clear right to terminate the Agreement on these circumstances, after sending its termination notice, Ramsey Solutions received a letter from Gaylord Palms contesting the validity of the termination and asking Ramsey Solutions to remit payment under the terms of the Agreement.

15

48.     Ramsey Solutions has sustained significant damages as a result of Gaylord Palms'
conduct, including the amounts that it has paid to Gaylord Palms in connection with the event,
which total $1.2 million dollars, exclusive of the lost revenue associated with attendees who could
not attend the last-minute relocation to another venue. Upon information and belief, the lost
revenue will approximate $10.1 million dollars.

49.     Ramsey Solutions has been forced to retain the undersigned counsel and is required
to pay the law firm its reasonable attorneys' fees and costs. Pursuant to the Agreement, the "parties
agree that in the event of litigation relating to this Agreement is filed by either party, the non-
prevailing party in such litigation will pay the prevailing party's costs resulting from the litigation,
including reasonable attorney's fees. *See* Ex. A at 14.

50.     All conditions precedent to the filing of this action have been performed or were
otherwise waived.

## V.     CLAIMS FOR RELIEF

### A.     <u>Claim I: Declaratory Relief Under the Initial Agreement</u>

51.     Plaintiff hereby incorporates paragraphs 1 through 50 as though fully set forth
herein.

52.     Ramsey Solutions brings this action pursuant to 28 U.S.C. §2201(a) and Rule 56
for declaratory relief given that there is an actual case and controversy relating to the matters
alleged in this action. The Agreement at issue provides:

> ….Notwithstanding any provision to the contrary herein, Group may at any time
> terminate this Agreement without penalty in the event Hotel, its parent, subsidiary
> or affiliated businesses, principals or executives become engaged in, accused of or
> subject to any public scandal, political controversy, crime, fraud ***or other event that
> in Group's sole judgment will impair or damage its brand or good will by hosting
> an event at Hotel***. In such event, Group shall provide prompt notice and the Hotel
> shall refund all deposits and/or prepayments made by the Group within thirty (30)
> days of receipt of the notice of termination.

16

*See* Ex. A at 13 (emphasis supplied).

53.     Further, the Agreement contains a Force Majeure provision, which states:

> Either party may be excused from performance without liability ***if circumstances beyond its reasonable control,*** such as acts of God, war, acts of domestic terrorism, strikes or similar circumstances, make it illegal or impossible to provide or use the Hotel facilities.  The ability to terminate pursuant to this clause is conditioned upon delivery [sic] written notice to the other party setting forth the basis for such termination within ten (10) days after learning of such basis.

*Id*. (emphasis supplied).

54.     On its own terms, the Agreement provides multiple bases for termination, both based upon Ramsey Solutions' own determination of resulting damage to its brand and goodwill and through the Force Majeure clause. As to the Force Majeure provision, the current pandemic falls squarely under that provision. By the use of the terms "such as" followed by a non- exhaustive list of what constitutes "circumstances beyond its reasonable control," the Agreement contemplates that a worldwide pandemic would qualify under this provision.  *See* Ex. A.

55.     Based on the plain language of the Agreement, Ramsey Solutions properly and responsibly terminated the Agreement.  *See* Ex. C.

56.     Notwithstanding the plain language of the Agreement, Gaylord Palms issued a letter to Ramsey Solutions indicating that it improperly terminated the Agreement and that it did not have the right to do so.  *See* Ex. D.

57.     Thus, there is an actual case and controversy regarding the interpretation of the above-referenced provisions in the Agreement.  Ramsey Solutions has standing to bring this claim as it is the real party interest under the Agreement at issue and Marriott, the owner of Gaylord Palms, is the appropriate defendant as Gaylord Palms is a fictitious name only, is not registered to do business in Florida or any other state.

17

58. Ramsey Solutions is in need of a declaration from this Court regarding the meaning and interpretation of these provisions. The parties clearly have an active dispute as to what their respective rights and obligations are under these provisions.

59. Ramsey Solutions has no adequate remedy at law

**B.** **Claim II: Declaratory Relief Under the Amendment.**

60. Plaintiff hereby incorporates paragraphs 1 through 50 as though fully set forth herein.

61. When the parties entered into the Amendment, they understood that there was a significant possibility that there would be restrictions imposed that would impact the ability to continue with the planned event, which is why the Amendment provided the parties with certain flexibility. Specifically, the Amendment provides:

4. **Additional Impossibility Language**.

Should the federal agency responsible for public health, emergency preparedness and infectious disease control and prevention in the country where the hotel is located (i.e., the Centers for Disease Control and Prevention in the U.S. or the Public Health Agency of Canada) issue a travel advisory, notice, or warning at any time within the 30 day period prior to the first arrival date of the Event that specifically advises travelers to avoid all non-essential travel to the specific city in which the Hotel is located, and should Group have suspended all of its business operations in the city where the Hotel is located or if the Group has no business operations in the city where the Hotel is located, has otherwise recommended that its attendees not travel to the city for any non-essential reason, then Group may contact the Hotel in order for the parties to engage in discussions regarding the scope of the advisory, notice or warning. The parties agree to negotiate in good faith to resolve any concerns raised as a result of the advisory, notice, or warning and to enter into such amendments of this Agreement as may be necessary to reasonably accommodate both parties interests (such as an adjustment to the performance (attrition) clauses of this Agreement or the addition of a re-book clause to the Agreement).

*See* Ex. B. at ¶ 4.

62. Gaylord Palms has taken the position that the major modifications to the Agreement are required pursuant to CDC, NIH, and other government agencies, including local ordinances

18

and that these restrictions, along with its fear of public backlash, motivated the drastic alternations in how the event was to be handled.

63.    Yet, despite the restrictions imposed by Gaylord Palms that it claimed were mandated due to the recent advisories issued by the CDC and other agencies regarding non-essential travel (as well as additional burdens placed by local ordinances), when Ramsey Solutions terminated the Agreement on July 3, 2020, it nonetheless took the position that Ramsey Solutions had terminated the Agreement improperly.

64.    Based on the plain language of the Amendment to the Agreement, however, Ramsey Solutions was well within its rights to terminate the Agreement. *See* Ex. C. *See* Ex. D.

65.    Given the divergence in the parties' interpretation of this provision, there is an actual case and controversy regarding the interpretation of the Amendment. Ramsey Solutions has standing to bring this claim as it is the real party interest under the Agreement at issue and Marriott, the owner of Gaylord Palms, is the appropriate defendant as Gaylord Palms is a fictitious name only, not registered to do business in Florida or any other state.

66.    Ramsey Solutions is in need of a declaration from this Court regarding the meaning and interpretation of the termination provision in the Amendment. The parties clearly have an active dispute as to what their respective rights and obligations are under these provisions.

67.    Ramsey Solutions has no adequate remedy at law.

**C.    Claim III: Breach of Contract**

68.    Plaintiff hereby incorporates paragraphs 1 through 50 as though fully set forth herein.

69.    The parties entered into the Agreement in 2017 that contemplated Ramsey Solutions would host its *EntreSummit 2020* at the Gaylord Palms facility.

19

70.     Much in the world changed since then and, in particular, in 2020 due to COVID-19.  Because of the evolving and drastic changes brought about by the pandemic, the parties agreed that there would be conditions that arise that would allow Ramsey Solutions to terminate the Agreement without any liability.  Those provisions appear both in the original Agreement executed in 2017 as well as the Amendment that was executed in April of 2020.

71.     Although Ramsey Solutions used its best efforts to reach an accommodation with Gaylord Palms relating to its high-end event, the restrictions and significant reduction in available amenities forced Ramsey Solutions to terminate the Agreement as it was permitted to do under the Agreement. Under those circumstances, Ramsey Solutions was entitled to receive the amounts it had paid in deposits that total $1.2 million dollars.   In addition, Ramsey Solutions suffered significant harm due to attendee cancellations that resulted from the necessity to change the venue given the significant reduction in the amenities and benefits that Ramsey Solutions guests would receive, which amounts Ramsey Solutions' believe is in excess of $10.1 million dollars.

72.     Gaylord Palms has breached the Agreement by failing to repay the deposit amounts that Ramsey Solutions paid.

73.     Ramsey Solutions has suffered damages as a result of Gaylord Palms' breach of contract.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment via Court orders:

(1)     Entering declaratory relief in favor of Plaintiff on Counts I and II providing that the provisions in the Agreement and Amendment allow Ramsey Solutions to terminate the Agreement;

20

(2)     Awarding compensatory damages to Ramsey Solutions that include, among other things, the amounts that Ramsey Solutions paid to Gaylord Palms as deposit amounts in anticipation of hosting the event at Gaylord Palms and the lost revenue associated with having to relocate the *EntreSummit 2020* to another facility and any additional costs associated with that last-minute transfer, and such further damages in an amount to be determined at trial, plus interest in accordance with law;

(3)     Awarding Plaintiff its costs of suit, including reasonable attorneys' fees, as permitted by law; and,

(4)     Entering such order and further relief as may be just and proper.

## VI.     DEMAND FOR JURY TRIAL

74.     Under Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all issues so triable.

DATED: July 22, 2020.

Respectfully Submitted,

*/s/ Ashley E. Cowgill*_____
Ashley E. Cowgill (TN Bar No. 033042)

21

Ashley E. Cowgill (TN Bar No. 033042)
PILLSBURY WINTHROP SHAW PITTMAN LLP
500 Capitol Mall, Suite 1800
Sacramento, CA 95814
Telephone: 916-329-4708
ashley.cowgill@pillsburylaw.com

Jennifer Altman (FL Bar No. 881384)*
Markenzy Lapointe (FL Bar No. 172601)*
PILLSBURY WINTHROP SHAW PITTMAN LLP
600 Brickell Avenue, Suite 3100
Miami, Florida 33131
Telephone: 786-913-4880
jennifer.altman@pillsburylaw.com
markenzy.lapointe@pillsburylaw.com

*Attorneys for The Lampo Group, LLC d/b/a Ramsey
Solutions*

*pro hac vice applications forthcoming*