## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

THE LAMPO GROUP, LLC d/b/a     )
RAMSEY SOLUTIONS,     )
a Tennessee Limited Liability Company,     )
    )
       Plaintiff,     )
    )
v.     )      **Case No. 3:20-cv-00641**
    )      **Judge Aleta A. Trauger**
MARRIOTT HOTEL SERVICES, INC.,     )
a Delaware Corporation; and     )      **JURY DEMAND**
MARRIOTT INTERNATIONAL, INC.,     )
a Delaware Corporation,     )
    )
       Defendants.     )
_____)
MARRIOTT HOTEL SERVICES, INC.,     )
a Delaware Corporation,     )
    )
       Counter-Plaintiff,     )
    )
v.     )
    )
THE LAMPO GROUP, LLC d/b/a     )
RAMSEY SOLUTIONS,     )
a Tennessee Limited Liability Company,     )
    )
       Counter-Defendant.     )

## DEFENDANTS' ANSWER AND COUNTERCLAIM
## TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendants/Counterclaimant, Marriott Hotel Services, Inc., a Delaware Corporation

("Marriott")[1] and Marriott International, Inc., a Delaware Corporation ("Marriott International")

---

[1] Unless otherwise noted, all references to "Marriott" refer to defendant Marriott Hotel Services, Inc., by itself and for no other defendant. Marriott International, Inc. is not a party to the contract, does not manage any of the Gaylord properties mentioned in the Complaint, and is not a proper party to the lawsuit.

(collectively, "Defendants"), submit the following Answer and Affirmative Defenses to the First Amended Complaint for Damages (the "FAC") filed by Plaintiff, The Lampo Group, LLC d/b/a Ramsey Solutions, a Tennessee Limited Liability Company ("Ramsey Solutions").

## Nature of the Action

1.  Answering paragraph 1 of the FAC, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 1 of the FAC and thus deny the allegations in this paragraph.

2.  Answering paragraph 2 of the FAC, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 2 of the FAC and thus deny the allegations in this paragraph.

3.  Answering paragraph 3 of the FAC, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 3 of the FAC and thus deny the allegations in this paragraph.

4.  Answering paragraph 4 of the FAC, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 4 of the FAC and thus deny the allegations in this paragraph.

5.  Answering paragraph 5 of the FAC, Defendants admit that Marriott entered into an agreement with Ramsey Solutions on or around September 2017, pursuant to which Ramsey Solutions was obligated to hold a program at the Gaylord Palms Resort & Convention Center ("Gaylord Palms") in May 2020 (the "Gaylord Palms Agreement"). Defendants refer to the Palms Agreement for its true meaning and effect. Defendants deny the remaining allegations in this paragraph.

6.     Answering paragraph 6 of the FAC, Defendants admit that Marriott entered into the separate contracts with Ramsey Solutions, pursuant to which Ramsey Solutions was obligated to hold programs at the Gaylord Palms in 2020 (the "Palms Agreement), the Gaylord Texan Resort & Convention Center ("Gaylord Texan") in 2021 (the "Texan Agreement") and the Gaylord Rockies Resort & Convention Center ("Gaylord Rockies") in 2022 (The "Rockies Agreement"). Defendants refer to these three agreements for their true meaning and effect. Defendants deny the remaining allegations in this paragraph.

7.     Answering paragraph 7 of the FAC, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 7 of the FAC and thus deny the allegations in this paragraph.

8.     Answering paragraph 8 of the FAC, Defendants deny the allegations in this paragraph.

9.     Answering paragraph 9 of the FAC, Defendants admit that Ramsey Solutions purports to bring an action for declaratory relief and for damages. Defendants deny the remaining allegations in this paragraph.

## I.     JURISDICTION AND VENUE

10.     Answering paragraph 10 of the FAC, Defendants admit that (i) the Court has jurisdiction over this matter, (ii) Marriott and Marriott International are organized under the laws of Delaware, with their principal places of business in the State of Maryland, (iii) the Gaylord Palms, Gaylord Rockies, and Gaylord Texan are fictitious names used by, and managed by, Marriott, (iv) Gaylord Palms is located in Osceola County, Florida, and (v) all parties are diverse. Defendants lack knowledge or information sufficient to form a belief about the truth of the

remaining allegation set forth in paragraph 10 of the FAC and thus deny the allegations in this paragraph.

11. Answering paragraph 11 of the FAC, Defendants state that the United States District Court for the Middle District of Tennessee, at Nashville, has subject matter jurisdiction over this matter. Defendants deny all other allegations in this paragraph.

12. Answering paragraph 12 of the FAC, Defendants state that venue is proper in the United States District Court for the Middle District of Tennessee, at Nashville. Defendants deny all other allegations in this paragraph.

13. Answering paragraph 13 of the FAC, Defendants admit the allegations in this paragraph.

## II. THE PARTIES

14. Answering paragraph 14 of the FAC, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 14 of the FAC and thus deny the allegations in this paragraph.

15. Answering paragraph 15 of the FAC, Defendants admit the allegations in this paragraph.

16. Answering paragraph 16 of the FAC, Marriott International, Inc., is not a party to the contract, does not manage any of the Gaylord properties mentioned herein, and is not a proper party to the lawsuit. Defendants otherwise admits the allegations in this paragraph.

17. Answering paragraph 17 of the FAC, Defendants admit that the link to the online article in the FAC appears to include the statement quoted in paragraph 17 of the FAC: "Gaylord Entertainment Company, now Ryman Hospitality Properties, Inc. (NYSE: RHP)." Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations

set forth in paragraph 17 of the FAC and thus deny the remaining allegations in this paragraph. Defendants affirmatively allege that Marriott International, Inc., is not a party to the contract, does not manage any of the Gaylord properties mentioned herein, and is not a proper party to the lawsuit.

18.    Answering paragraph 18 of the FAC, Defendants admit that (i) the Gaylord Palms, Gaylord Rockies, and Gaylord Texan are fictitious names and conduct business through Marriott, (ii) the properties named in paragraph 18 of the FAC are listed on the website, www.Marriott.com, and (iii) consumers and businesses can book reservations for the properties named in paragraph 18 of the FAC on the website, www.Marriott.com. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in paragraph 18 of the FAC and thus deny the remaining allegations in this paragraph. Defendants affirmatively allege that Marriott International, Inc., is not a party to the contract, does not manage any of the Gaylord properties mentioned herein, and is not a proper party to the lawsuit.

19.    Answering paragraph 19 of the FAC, the allegations refer to a document that is not attached to the FAC. Therefore, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 19 of the FAC and thus deny the allegations in this paragraph. Defendants affirmatively allege that Marriott International, Inc., is not a party to the contract, does not manage any of the Gaylord properties mentioned herein, and is not a proper party to the lawsuit.

20.    Answering paragraph 20 of the FAC, the allegations refer to document(s) and information that are not attached to the FAC. Therefore, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 20 of the FAC and thus deny the allegations in this paragraph. Defendants affirmatively allege that

Marriott International, Inc., is not a party to the contract, does not manage any of the Gaylord properties mentioned herein, and is not a proper party to the lawsuit.

21.     Answering paragraph 21 of the FAC, the allegations refer to document(s) and information that are not attached to the FAC. Therefore, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 21 of the FAC and thus deny the allegations in this paragraph. Defendants affirmatively allege that Marriott International, Inc., is not a party to the contract, does not manage any of the Gaylord properties mentioned herein, and is not a proper party to the lawsuit.

22.     Answering paragraph 22 of the FAC, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 22 of the FAC and thus deny the allegations in this paragraph. Defendants affirmatively allege that Marriott International, Inc., is not a party to the contract, does not manage any of the Gaylord properties mentioned herein, and is not a proper party to the lawsuit.

23.     Answering paragraph 23 of the FAC, Defendants contend that the statements in paragraph 23 of the FAC contain definitions used throughout the FAC to which no response is required.

III.    **GENERAL ALLEGATIONS APPLICABLE TO ALL CLAIMS**

24.     Answering paragraph 24 of the FAC, Defendants admit that Ramsey Solutions' events were scheduled for May of 2021 at the Gaylord Texan, May of 2022 at the Gaylord Rockies and July 2020 at the Gaylord Palms. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in paragraph 24 of the FAC and thus deny the remaining allegations in this paragraph.

25.     Answering paragraph 25 of the FAC, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 25 of the FAC and thus deny the allegations in this paragraph.

26.     Answering paragraph 26 of the FAC, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 26 of the FAC and thus deny the allegations in this paragraph.

27.     Answering paragraph 27 of the FAC, Defendants admit the allegations in this paragraph.

**A. Gaylord Palms**

28.     Answering paragraph 28 of the FAC, Defendants admit that the document attached as Exhibit "A" to the FAC is the agreement entered into by Marriott and Ramsey on or around September 29, 2017, two and half a years before the event was to take place, and Defendants refer to the Palms Agreement for its true meaning and effect. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in paragraph 28 of the FAC and thus deny the remaining allegations in this paragraph.

29.     Answering paragraph 29 of the FAC, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 29 of the FAC and thus deny the allegations in this paragraph.

30.     Answering paragraph 30 of the FAC, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 30 of the FAC and thus deny the allegations in this paragraph.

31. Answering paragraph 31 of the FAC, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 31 of the FAC and thus deny the allegations in this paragraph.

32. Answering paragraph 32 of the FAC, Defendants admit that Marriott and Ramsey Solutions entered into the Palms Agreement and refer to the Palms Agreement for its true meaning and effect, including the various contracted terms mentioned by Ramsey Solutions in this paragraph. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in paragraph 32 and thus deny the remaining allegations in this paragraph.

33. Answering paragraph 33 of the FAC, Defendants admit that Marriott and Ramsey Solutions entered into the Palms Agreement and refers to the Palms Agreement for its true meaning and effect. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in paragraph 33 and thus deny the remaining allegations in this paragraph.

34. Answering paragraph 34 of the FAC, Defendants admit that Marriott and Ramsey Solutions entered into the Palms Agreement, that the Palms Agreement mentions the spa and fitness center, "Hello Florida!," and refers to the Palms Agreement for its true meaning and effect. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in paragraph 34 and thus deny the remaining allegations in this paragraph.

35. Answering paragraph 35 of the FAC, Defendants admit that *EntreSummit 2020* was originally to take place in May of 2020 at the Gaylord Palms. Defendants lack knowledge or

information sufficient to form a belief about the truth of the remaining allegations set forth in paragraph 35 and thus deny the remaining allegations in this paragraph.

36.     Answering paragraph 36 of the FAC, Defendants deny that the Gaylord Palms pressured Ramsey Solutions into selecting dates in July 2020 for its event. Defendants admit that Marriott and Ramsey Solutions executed an addendum, attached as Exhibit "B" to the FAC. Defendants lack information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

37.     Answering paragraph 37 of the FAC, excluding the changes that the Gaylord Palms was required to make, by law, and to comply with governmental regulations and city ordinances, Defendants deny the allegations in paragraph 37 of the FAC.

38.     Answering paragraph 38 of the FAC, Defendants deny the allegations in paragraph 38 of the FAC.

39.     Answering paragraph 39 of the FAC, Defendants admit that Ramsey Solutions communicated to the Gaylord Palms that the changes that the Gaylord Palms was required to make, by law, to comply with governmental regulations and city ordinances, would not be acceptable to Ramsey Solutions. Defendants deny the remaining allegations in paragraph 39 of the FAC.

40.     Answering paragraph 40 of the FAC, Defendants deny the allegations contained in the first sentence of this paragraph. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in paragraph 40 of the FAC and thus deny the remaining allegations in this paragraph.

41.     Answering paragraph 41 of the FAC, Defendants admit that they followed all applicable laws and regulations and would require Plaintiff to do the same. Defendants deny the remaining allegations in this paragraph.

42. Answering paragraph 42 of the FAC, Defendants deny the allegations in this paragraph.

43. Answering paragraph 43 of the FAC, Defendants admit that (i) half of all fitness machines were to be deemed closed or unavailable due to social distancing requirements, (ii) masks were required, in accordance with the law, and (iii) set up for in-room dining service would not be available, but clarifies that room service delivery was available, to the extent safety protocols, reducing entry into rooms, were observed. Defendants deny the remaining allegations in paragraph 43 of the FAC.

44. Answering paragraph 44 of the FAC, Defendants deny the allegations in this paragraph.

45. Answering paragraph 45 of the FAC, Defendants deny the allegations in this paragraph.

46. Answering paragraph 46 of the FAC, Defendants admit that Exhibit "C" to the FAC is a letter from Daniel Cortez to Mike Stengal, dated July 3, 2020 and Exhibit "D" to the FAC is a letter from Steven Rudner to Daniel Cortez, dated July 6, 2020, that indicates termination was improper and demands payment from Ramsey Solutions for the balance of the contract. Defendants deny the remaining allegations in paragraph 46 of the FAC.

**(1) RELEVANT CONTRACT PROVISIONS OF THE PALMS AGREEMENT**

47. Answering paragraph 47 of the FAC, Defendants deny the allegations in this paragraph.

48. Answering paragraph 48 of the FAC, Defendants admit that the document attached as Exhibit "A" to the FAC includes the statement quoted in paragraph 48 of the FAC.

49.     Answering paragraph 49 of the FAC, Defendants deny the allegations in this paragraph.

50.     Answering paragraph 50 of the FAC, Defendants deny the allegations in this paragraph.

51.     Answering paragraph 51 of the FAC, Defendants deny the allegations in this paragraph.

52.     Answering paragraph 52 of the FAC, Defendants deny the allegations in this paragraph.

53.     Answering paragraph 53 of the FAC, Defendants deny the allegations in this paragraph.

54.     Answering paragraph 54 of the FAC, Defendants deny the allegations in this paragraph.

55.     Answering paragraph 55 of the FAC, Defendants deny the allegations in this paragraph.

56.     Answering paragraph 56 of the FAC, Defendants deny the allegations in this paragraph.

57.     Answering paragraph 57 of the FAC, Defendants deny that the allegation in paragraph 57 of the FAC accurately characterizes the entirety of the provision at ¶ 5 in Exhibit "B" to the FAC, and Defendants refer to ¶ 5 in Exhibit "B" for its true meaning and effect.

58.     Answering paragraph 58 of the FAC, Defendants admit that after sending its termination notice, Ramsey Solutions received a letter from Gaylord Palms contesting the validity of the termination and asking Ramsey Solutions to remit payment under the terms of the Palms Agreement. Defendants deny the remaining allegations set forth in paragraph 58 of the FAC.

59. Answering paragraph 59 of the FAC, Defendants deny the allegations in this paragraph.

**B. Gaylord Rockies and Gaylord Texan**

60. Answering paragraph 60 of the FAC, Defendants admit that in December of 2017, Marriott and Ramsey Solutions entered into agreements with Gaylord Rockies and Gaylord Texan, and Defendants refer to the agreements, attached as Exhibits "E' and "F" to the FAC, for their true meaning and intent. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in paragraph 60 of the FAC and thus deny the remaining allegations in this paragraph.

61. Answering paragraph 61 of the FAC, Defendants admit the Rockies Agreement and the Texan Agreement each contain a "Performance Clause," and Defendants refer to the relevant provisions of the Rockies Agreement and Texan Agreement for their true meaning and intent. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in paragraph 61 of the FAC and thus deny the remaining allegations in this paragraph.

62. Answering paragraph 62 of the FAC, Defendants lack information sufficient to form a belief about the truth of the remaining allegations set forth in paragraph 62 of the FAC and thus deny the allegations in this paragraph.

63. Answering paragraph 63 of the FAC, Defendants deny the allegations in this paragraph.

64. Answering paragraph 64 of the FAC, Defendants deny the allegations in this paragraph.

65.     Answering paragraph 65 of the FAC, Defendants deny the allegations in paragraph 65 of the FAC.

66.     Answering paragraph 66 of the FAC, Defendants deny the allegations in this paragraph.

67.     Answering paragraph 67 of the FAC, Defendants deny the allegations in this paragraph.

68.     Answering paragraph 68 of the FAC, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 68 of the FAC and thus deny the allegations in this paragraph.

69.     Answering paragraph 69 of the FAC, Defendants admit that the documents attached as Exhibits "E" and "F" to the FAC include the statement quoted in paragraph 69 of the FAC.

70.     Answering paragraph 70 of the FAC, Defendants deny the allegations in this paragraph.

71.     Answering paragraph 71 of the FAC, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 71 of the FAC and thus deny the allegations in this paragraph.

72.     Answering paragraph 72 of the FAC, Defendants deny the allegations in this paragraph.

73.     Answering paragraph 73 of the FAC, Defendants deny the allegations in this paragraph.

74.     Answering paragraph 74 of the FAC, Defendants deny the allegations in this paragraph.

75.     Answering paragraph 75 of the FAC, Defendants admit that Exhibit "H" to the FAC is a letter from Steven M. Rudner to Joel Leavitt, dated July 23, 2020, and Exhibit "G" to the FAC is a letter from Markenzy Lapointe, dated July 30, 2020. Defendants deny the remaining allegations set forth in paragraph 75 of the FAC.

76.     Answering paragraph 76 of the FAC, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 76 of the FAC and thus deny the allegations in this paragraph.

77.     Answering paragraph 77 of the FAC, Defendants deny the allegations in this paragraph.

78.     Answering paragraph 78 of the FAC, Defendants admit that the document attached as Exhibit "A" to the FAC includes the statement quoted in paragraph 78 of the FAC. Defendants deny the remaining allegations set forth in paragraph 78 of the FAC.

79.     Answering paragraph 79 of the FAC, Defendants deny the allegations in this paragraph.

## IV.     CLAIMS FOR RELIEF

### A.  Claim I: Declaratory Relief Under the Palms Agreement

80.     Answering paragraph 80 of the FAC, Defendants incorporate by reference their responses set forth in the paragraphs above.

81.     Answering paragraph 81 of the FAC, Defendants admit that Ramsey Solutions alleges that it is bringing this action pursuant to 28 USC Section 2201(a) and Rule 56 for declaratory relief. Defendants further admits that the document attached as Exhibit "A" to the FAC includes the statement quoted in paragraph 81 of the FAC. Defendants lacks knowledge or

information sufficient to form a belief about the truth of the remaining allegations set forth in paragraph 81 of the FAC and thus deny the remaining allegations in this paragraph.

82. Answering paragraph 82 of the FAC Defendants admit that the document attached as Exhibit "A" to the FAC includes the statement quoted in paragraph 82 of the FAC.

83. Answering paragraph 83 of the FAC, Defendants deny the allegations in this paragraph.

84. Answering paragraph 84 of the FAC, Defendants deny the allegations in this paragraph.

85. Answering paragraph 85 of the FAC, Defendants admit that Exhibit "D" appears to be a genuine copy of the letter it sent to Ramsey Solutions, and Defendants refer to the exhibit for its true meaning and intent. Defendants deny the remaining allegations in paragraph 85 of the FAC.

86. Answering Paragraph 86 of the FAC, with respect to the first sentence of this paragraph, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations set forth in the first sentence of paragraph 86 of the FAC and thus deny the allegations therein. Defendants deny the remaining allegations in paragraph 86 of the FAC.

87. Answering paragraph 87 of the FAC, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 87 of the FAC and thus deny the allegations in this paragraph.

88. Answering paragraph 88 of the FAC, Defendants deny the allegations in this paragraph.

**B. Claim II: Declaratory Relief Under the Palms Amendment**

89. Answering paragraph 89 of the FAC, Defendants incorporate by reference their responses set forth in the paragraphs above.

90. Answering paragraph 90 of the FAC, Defendants admit that the documents attached as Exhibit "B" to the FAC includes the statement quoted in paragraph 90 of the FAC. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in paragraph 90 of the FAC and thus deny the remaining allegations in this paragraph.

91. Answering paragraph 91 of the FAC, Defendants deny the allegations in this paragraph.

92. Answering paragraph 92 of the FAC, Defendants admit that when Ramsey Solutions terminated the Agreement on July 3, 2020, Marriott took the position that Ramsey Solutions had terminated the Agreement improperly. Defendants deny the remaining allegations in paragraph 92 of the FAC.

93. Answering paragraph 93 of the FAC, Defendants deny the allegations in this paragraph.

94. Answering paragraph 94 of the FAC, Defendants admit that Ramsey Solutions alleges that there is an actual case and controversy regarding the parties' interpretation of the Amendment. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in paragraph 94 of the FAC and thus deny the allegations in this paragraph

95. Answering paragraph 95 of the FAC, Defendants admit that Ramsey Solutions alleges that it needs a declaration from this Court regarding the meaning and interpretation of the termination provision of the Amendment. Defendants deny the remaining allegations in this paragraph.

96.     Answering paragraph 96 of the FAC, Defendants deny the allegations in this paragraph.

### C.  Claim III: Breach of Contract Under the Palms Agreement

97.     Answering paragraph 97 of the FAC, Defendants incorporate by reference their responses set forth in the paragraphs above.

98.     Answering paragraph 98 of the FAC, Defendants admit that Marriott and Ramsey Solutions entered into the Palms Agreement. Defendants lack knowledge or information sufficient to form a belief about the remaining allegations of paragraph 98 of the FAC and thus deny the remaining allegations in this paragraph.

99.     Answering paragraph 99 of the FAC, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 99 of the FAC and thus deny the allegations in this paragraph.

100.    Answering paragraph 100 of the FAC, Defendants deny the allegations in paragraph 100 of the FAC.

101.    Answering paragraph 101 of the FAC, Defendants deny the allegations in this paragraph.

102.    Answering paragraph 102 of the FAC, Defendants deny the allegations in this paragraph.

### D.  Claim IV: Declaratory Relief Under the Rockies Agreement and Texan Agreement

103.    Answering paragraph 103 of the FAC, Defendants incorporate by reference their responses set forth in the paragraphs above.

104.    Answering paragraph 104 of the FAC, Defendants admit that Ramsey Solutions alleges that it is bringing this action pursuant to 28 USC Section 2201(a) and Rule 56 for

declaratory relief. Defendants admit that the documents attached as Exhibits "E" and "F" to the FAC include the statement quoted in paragraph 104 of the FAC. Defendants deny the remaining allegations set forth in paragraph 104 of the FAC.

105.     Answering paragraph 105 of the FAC, Defendants deny the allegations in this paragraph.

106.     Answering paragraph 106 of the FAC, Defendants admit that the documents attached as Exhibits "E" and "F" to the FAC include the statement quoted in paragraph 106 of the FAC.

107.     Answering paragraph 107 of the FAC, Defendants admit that the documents attached as Exhibits "E" and "F" to the FAC include the statement quoted in paragraph 107 of the FAC.

108.     Answering paragraph 108 of the FAC, Defendants admit that Ramsey Solutions advised Marriott that it was terminating the Rockies Agreement and the Texan Agreement. Defendants deny that the termination was proper, and affirmatively allege that the termination was without legal justification or excuse.  Defendants further admit that Exhibit "H" to the FAC appears to be a true and correct copy of a letter from Marriott to Ramsey Solutions, and Defendants refer to Exhibit "H" for its true meaning and intent. Defendants further admit that Exhibit "I" to the FAC appears to be a true and correct copy of a letter from Ramsey Solutions to Marriott, and Defendants refer to Exhibit "I" for its true meaning and intent. Defendants deny the remaining allegations set forth in paragraph 108 of the FAC.

109.     Answering paragraph 109 of the FAC, Defendants deny the allegations in this paragraph.

110. Answering paragraph 110 of the FAC, Defendants deny the allegations in this paragraph.

111. Defendants deny each and every allegation contained in the FAC not specifically admitted herein, and specifically denies that Ramsey Solutions is entitled to recover any of the relief prayed for or requested in the FAC and any of its counts.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
**(Failure to State a Claim)**

The FAC and the purported causes of action contained therein fails to state facts sufficient to constitute a cause of action.

### SECOND AFFIRMATIVE DEFENSE
**(Prior Material Breach)**

The FAC, and the purported causes of action contained therein, are barred by Plaintiff's prior material breach of contract.

### THIRD AFFIRMATIVE DEFENSE
**(Plaintiff Has Suffered No Injury or Damages)**

The FAC, and the purported causes of action contained therein, are barred because Plaintiff has suffered no injury or damage.

### FOURTH AFFIRMATIVE DEFENSE
**(Waiver)**

By its course of conduct, Plaintiff has waived the FAC and the purported causes of action contained therein.

### FIFTH AFFIRMATIVE DEFENSE
**(Estoppel)**

The FAC, and the purported causes of action contained therein, is barred by the doctrine of estoppel.

{02102607.1 }

## SIXTH AFFIRMATIVE DEFENSE
### (Failure to Provide Proper Notice Under For Cause Termination Provision of Contract)

The FAC, and the purported causes of action contained therein, are barred and should be dismissed, because Plaintiff failed to provide prompt and proper notice under the "For Cause Termination" provision of the Palms Agreement, Texan Agreement and Rockies Agreement.

## SEVENTH AFFIRMATIVE DEFENSE
### (Failure to Timely Provide Notice of Basis for Termination Under Force Majeure Clause of the Contract)

The FAC, and the purported causes of action contained therein, are barred and should be dismissed, because Plaintiff failed to provide timely written notice under the "Force Majeure" provision of the Palms Agreement, Texan Agreement and Rockies Agreement, which requires Plaintiff to set forth the basis for termination of its performance under the contract without liability within ten (10) days of learning of such basis.

## EIGHTH AFFIRMATIVE DEFENSE
### (Failure to Provide Proper Notice Under Additional Impossibility Provision of the Addendum)

The FAC, and the purported causes of action contained therein, are barred and should be dismissed, because Plaintiff failed to provide proper notice under the "Additional Impossibility Language" provision of the Addendum.

## NINTH AFFIRMATIVE DEFENSE
### (Failure to Comply with Additional Possibility Language Provision of the Addendum)

The FAC, and the purported causes of action contained therein, are barred and should be dismissed, because Plaintiff failed to give proper notice under, and to otherwise comply with, the "Performance Clause" provision of the Texan Agreement and Rockies Agreement.

## TENNTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate Damages)

Plaintiff has failed to act reasonable in order to mitigate its alleged damages and has failed to mitigate its alleged damages.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Anticipatory Breach)

Plaintiff's breach of contract claims are barred due to the anticipatory breach by Plaintiff.

## TWELFTH AFFIRMATIVE DEFENSE
### (Failure to Perform)

Defendants were excused from performing the terms of the Agreement due to Plaintiff's failure to perform.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (Breach of Duty of Good Faith and Fair Dealing)

Plaintiff breached its implied duty of good faith and fair dealing that exists in every contract because it knew its position was merely a pretext, and that the event at issue would have actualized, had the Gaylord Palms not relayed to Plaintiff that Plaintiff and its attendees would be required to wear masks, by law. By breaching the implied duty of good faith and fair dealing that exists in every contract, Defendants have been deprived of the benefits they bargained for under the agreements.

## FOURTEENTH AFFIRMATIVE DEFENSE
### (Misjoinder of Parties)

There is a defect or misjoinder of parties. Plaintiff has failed to name the property party. Marriott International, Inc., is not a party to the contract, does not manage any of the Gaylord properties mentioned herein, and is not a proper party to the lawsuit.

## FIFTEENTH AFFIRMATIVE DEFENSE

This answer is based upon information currently ascertained by Defendants, which reserve their right to amend this answer to assert any matter constituting an avoidance or affirmative

defense under Rule 8(c) of the Federal Rules of Civil Procedure, or any such other procedural rule regarding the assertion of affirmative defenses, made applicable to this proceeding, as hereinafter may be revealed in discovery or otherwise ascertained by Defendants.

## JURY DEMAND

Defendants hereby demand a trial by jury on all issues.

## PRAYER

WHEREFORE, Defendants pray for a judgment as follows:

1. That Plaintiff take nothing by this action and that its FAC be dismissed in its entirety with prejudice;

2. For costs of suit, including attorney's fees, pursuant to the contract between the parties and applicable law; and

3. For such other and further relief as the Court may deem just and proper.

## COUNTERCLAIM

Defendant/Counterclaimant, Marriott Hotel Services, Inc., for its counterclaim against Plaintiff/Counter-Defendant, The Lampo Group, LLC d/b/a Ramsey Solutions, alleges:

## PARTIES, VENUE AND JURISDICTION

1. Defendant/Counterclaimant, Marriott Hotel Services, Inc. (hereinafter, "Marriott"), is a Delaware corporation with its principal place of business located in Bethesda, Maryland.

2. Marriott currently is, and at all relevant times herein was, the manager of the Gaylord Palms Resort & Convention Center ("Gaylord Palms"), which is located in Kissimmee, Florida; the Gaylord Texan Resort & Conference Center ("Gaylord Texan"), which is located in Grapevine, Texas; and the Gaylord Rockies Resort & Convention Center ("Gaylord Rockies"), which is located in Aurora, Colorado.

3.     Marriott is authorized to transact business under the trade name "Gaylord Palms Resort & Convention Center," "Gaylord Texan Resort & Conference Center," and "Gaylord Rockies Resort & Convention Center."

4.     Upon information and belief, Plaintiff/Counter-Defendant, The Lampo Group, LLC d/b/a Ramsey Solutions (hereinafter, "Ramsey Solutions,"), is a Tennessee Limited Liability Company with its principal place of business located in Franklin, Tennessee.

5.     Upon information and belief, there is complete diversity between the parties, because Ramsey Solutions is a citizen of the State of Tennessee for diversity purposes and Marriott is a citizen of Maryland, for diversity purposes. The matter in controversy exceeds $75,000 exclusive of interest and costs. Thus, upon information and belief, this Court has subject matter jurisdiction over Marriott's claim under 28 U.S.C. § 1332.

6.     Upon information and belief, this Court has personal jurisdiction over Ramsey Solutions, and venue is proper under 28 U.S.C. § 1391, because Plaintiff / Counter-Defendant Ramsey Solutions resides in this district.

**FACTUAL ALLEGATIONS**

**COUNT I**
**BREACH OF EXPRESS CONTRACT – LIQUIDATED DAMAGE**
**(THE PALMS CONTRACT)**

7.     On or about September 29, 2017, Marriott and Ramsey Solutions entered into a written "Agreement" (the "Palms Agreement"), pursuant to which Ramsey Solutions was obligated to hold a program at the Gaylord Palms from May 15, 2020 through May 21, 2020 (the "Palms Event"). A true and correct copy of the Palms Agreement is attached hereto as Exhibit "A" and incorporated herein by reference.

8.      Pursuant to the Palms Agreement, Ramsey Solutions was obligated to utilize 4,855 sleeping room nights at the Gaylord Palms at rates ranging from $229.00 per room, per night, for single/double/triple/quad occupancy rooms, plus applicable state and local taxes, to $2,700.00 per room, per night, for Presidential Suits, plus applicable state and local taxes.

9.      In addition, the Palms Agreement requires Ramsey Solutions to spend not less than $700,000.00 in banquet food and beverage, plus applicable services charges and taxes.

10.     Marriott also reasonably anticipated that the Ramsey Solution's attendees would utilize, and Marriott would receive revenue from, the numerous ancillary services offered by the Gaylord Palms.

11.     The parties executed an amendment to the Palms Agreement on or about April 2, 2020 (the "Palms Amendment"), pursuant to which, among other things, the contracted sleeping room block was lowered from 4855 sleeping rooms to 4210 sleeping rooms, and food and beverage commitment was reduced from $700,000.00 to $400,000.00, and the dates of the Palms Event was changed from May 15-21, 2020 to July 10-16, 2020. A true and correct copy of the Palms Amendment is attached hereto as **Exhibit B** and incorporated herein by reference.

12.     Paragraph 3 of the Palms Amendment, however, specifically provides that "should group cancel the July 10-15 2020 conference, the calculation will be based on the original contracted room block and F&B minimum."

13.     The Agreement and Amendment are, from time to time, hereinafter collectively referred to as the "Palms Contract."

14.     The Palms Agreement contains (at page 13) a "Cancellation Policy" clause (the "Palms Cancellation Provision"), which governs the amount of liquidated damages Ramsey Solutions agreed to pay if it were to cancel its contracted Palms Event.

15.    The Palms Cancellation Provision (at page 13 of the Palms Agreement) provides that Ramsey Solutions would owe "100% of total room revenue plus 75% of F&B Guarantee," for a cancellation occurring between "0 –180 days prior to arrival."

16.    Pursuant to the Palms Agreement (at page 13), "total room revenue" is defined as "the dollar amount equal to the Room Block multiplied by the Group's average room rate, exclusive of Resort Fees."

17.    The Palms Agreement (at p. 8) contains a deposit provision, which requires Ramsey Solutions to make the following deposit: Seventy-five percent (75%) of the anticipated Group expenditures to be master billed, including all food and beverage charges, is due thirty (30) days prior to arrival."

18.    Ramsey Solutions paid to Marriott deposits totaling $1,212,950.45.

19.    By letter dated July 3, 2020, Ramsey Solutions canceled the Palms Event.  A true and correct copy of the July 3, 2020 letter is attached hereto as **Exhibit C** and incorporated herein by reference.

20.    Ramsey Solutions' reasons for canceling the Palms Event are not covered  under any provision of the Palms Contract.

21.    Accordingly, the cancellation by Ramsey Solutions was without legal justification or excuse and therefore constitutes a material breach of contract.

22.    Marriott has been damaged by Ramsey Services' material breach of contract.

23.    As noted above, as part of the Palms Contract, the parties agreed that damages caused by a cancellation of the Palms Event by Ramsey Solutions would be liquidated and governed by a "Cancellation Policy" provision.

24.     The cancellation by Ramsey Solutions of the Palms Event occurred between "0 – 180 days prior to arrival."

25.     Accordingly, pursuant to the Cancellation Policy provision, Ramsey Solutions owes "100% of total room revenue plus 75% of F&B Guarantee," which is $1,871,550.00, for the cancellation.

26.      After applying the $1,212,950.45 advanced deposits, Ramsey Solutions owes $658,599.55 in liquidated damages for canceling the Palms Event.

27.     In the alternative, Marriott is entitled to its actual damages in an amount to be proven at trial.

28.     The Palms Cancellation Provision (at page 13) provides that, "[S]uch amount (the "Cancellation Charge") will be due and payable due within 30 days of the date of cancellation, and accrue Interest at the rate of 1.5 percent per month (or, if less, the maximum amount permitted by law)."

29.     Since Ramsey Solutions canceled its contracted event on July 3, 2020, the cancellation fee was due on August 2, 2020.

30.     Ramsey Solutions has failed to pay, and continues to refuse to pay, the cancellation fee within 30 days, as required under the Palms Contract.

31.     The failure to pay the cancellation fee within 30 days of the cancellation constitutes a further material breach of contract.

32.     Further, the Palms Agreement (at page 6) contains a "Method of Payment" provision, which provides that, "If payment of any Invoice is not received within thirty (30) days of the date on which it was due, Hotel will impose a finance charge at the rate of the lesser of 1-

1/2% per month (18% annual rate) or the maximum allowed by law on the unpaid balance commencing on the invoice date."

33.     On July 6, 2020, counsel for Marriott emailed a letter, along with an invoice for the cancellation fee for canceling the Palms Event, to Ramsey Solutions.   A true and correct copy of the July 6, 2020 letter and accompanying invoice ("Palms Original Invoice") is attached hereto as **Exhibit D** and incorporated herein by reference.

34.     The July 6, 2020 letter demands that Ramsey Solutions pay the Palms Original Invoice, which reflected a cancellation fee in the amount of $423,844.55, in accordance with the terms of the Palms Contract.  [Ex. D, p. 2]

35.     In accordance with the terms of the Palms Contract, the Palms Original Invoice amount was due within 30, which was July 5, 2020.

36.     Ramsey failed to pay, and continues to fail to pay, the Palms Original Invoice within 30 days, as required under the terms of the Palms Contract.

37.     The failure to pay the Palms Original Invoice within 30 days, as required under the terms of the Palms Contract, constitutes a further material breach of contract.

38.     On August 26, 2020, Marriott sent a revised invoice ("Palms Revised Invoice") to Ramsey Solution.  The Palms Revised Invoice corrects the Palms Original Invoice, which as demonstrated above, understates the cancellation fee.  As reflected in the Palms Revised Invoice, the correct amount of the cancellation fee, after applying the $1,212,950.45 advanced deposits, is $658,599.55.  A true and correct copy of the August 26, 2020 letter, along with the Palms Revised Invoice, is attached hereto as **Exhibit E** and incorporated herein.

39.     The August 26, 2020 letter provides that if Ramsey Solutions fails to pay the revised cancellation fee within 30 days of the Palms Revised Invoice, accrued interest will run on the

Palms Revised Invoice amount, as of the date of the Palms Revised Invoice, in accordance with the terms of the Palms Contract.

40. Ramsey Solutions has failed to pay any part of the Palms Revised Invoice amount of $658,599.55.

41. The Palms Contract provides (at pages 13-14) a "Litigation Expenses" provision, which provides that, "[T]he parties agree that, in the event litigation relating to this Agreement is filed by either party, the non-prevailing party In such litigation will pay the prevailing party's costs resulting from the litigation, including reasonable attorneys' fees."

42. Marriott has fully performed its obligations under the Palms Contract and is not itself in breach of the Palms Contract.

43. As a result of Ramsey Solutions' material breaches of the Palms Contract, including the failure to pay liquidated damages when due, it has become necessary for Marriott to retain litigation counsel to enforce the terms of the Palms Contract.

44. All conditions precedent under the Palms Contract have been performed or have been excused.

## COUNT II
## BREACH OF EXPRESS CONTRACT – LIQUIDATED DAMAGES
### (THE TEXAN CONTRACT)

45. On or about December 29, 2017, Marriott and Ramsey Solutions entered into a written "Group Sales Agreement" (the "Texan Contract"), as subsequently amended, pursuant to which Ramsey Solutions was obligated to hold a program at the Gaylord Texan from May 14, 2021 through May 20, 2021 (the "Texan Event"). A true and correct copy of the Texan Contract, including the addendum, is attached hereto as **Exhibit F** and incorporated herein by reference.

46.     Pursuant to the Texan Contract, Ramsey Solutions was obligated to utilize 5756 sleeping room nights at the Gaylord Texan at rates ranging from $143.40 per room, per night, for staff rooms, plus applicable state and local taxes, to $2,500.00 per room, per night, for Presidential Suits, plus applicable state and local taxes.

47.     In addition, the Texan Contract requires Ramsey Solutions to spend not less than $700,000.00 in banquet food and beverage, plus applicable services charges and taxes.

48.     Marriott also reasonably anticipated that the Ramsey Solution's attendees would utilize, and Marriott would receive revenue from, the numerous ancillary services offered by the Gaylord Texan.

49.     The Texan Contract contains (at page 11) a "Cancellation Policy" clause (the "Texan Cancellation Provision"), which governs the amount of liquidated damages Ramsey Solutions agreed to pay if it were to cancel its contracted Texan Event.

50.     The Texan Cancellation Provision (at page 11 of the Texan Contract) provides that Ramsey Solutions would owe "75% of total room revenue plus 50% of F&B Guarantee," for a cancellation occurring between "181 –365 days prior to arrival."

51.     Pursuant to the Texan Contract (at page 11), "total room revenue" is defined as "the dollar amount equal to the Room Block multiplied by the Group's average room rate, exclusive of Resort Fees."

52.     By email dated July 22, 2020, Ramsey Solutions canceled the Texan Event.  A true and correct copy of the July 22, 2020 email is attached hereto as **Exhibit G** and incorporated herein by reference.

53.     Ramsey Solutions' reasons for canceling the Texan Contract are not covered under any provision of the Texan Contract.

54.    Accordingly, the cancellation by Ramsey Solutions was without legal justification or excuse and therefore constitutes a material breach of contract.

55.    Marriott has been damaged by Ramsey Services' material breach of contract.

56.    As noted above, as part of the Texan Contract, the parties agreed that damages caused by a cancellation of the Texan Event by Ramsey Solutions would be liquidated and governed by a "Cancellation Policy" provision.

57.    The cancellation of the Texan Event by Ramsey Solution was between 181-365 days prior to arrival.

58.    Pursuant to the Cancellation Policy provision, Ramsey owes "75% of total room revenue plus 50% of F&B Guarantee," which is $1,491,661.55, for the cancellation.

59.     Ramsey Solutions did not make any advance deposits towards the Texan Event. Accordingly, liquidated damages for canceling the Texan Event are $1,491,661.55.

60.    In the alternative, Marriott is entitled to its actual damages in an amount to be proven at trial.

61.    The Texan Cancellation Provision (at page 11) provides that, "[S]uch amount (the "Cancellation Charge") will be due and payable due within 30 days of the date of cancellation, and accrue Interest at the rate of 1.5 percent per month (or, if less, the maximum amount permitted by law)."

62.    Since Ramsey Solutions canceled its contracted event on July 22, 2020, the cancellation fee was due on August 21, 2020.

63.    Ramsey Solutions has failed to pay, and continues to refuse to pay, the cancellation fee within 30 days, as required under the Texan Contract.

64.     The failure to pay the cancellation fee within 30 days of the cancellation constitutes a further material breach of contract.

65.     Further, the Texan Contract (at page 6) contains a "Method of Payment" provision, which provides that, "If payment of any Invoice is not received within thirty (30) days of the date on which it was due, Hotel will impose a finance charge at the rate of the lesser of 1-1/2% per month (18% annual rate) or the maximum allowed by law on the unpaid balance commencing on the invoice date."

66.     On July 23, 2020, counsel for Marriott emailed a letter, along with an invoice for the cancellation fee for canceling the Texan Event, to Ramsey Solutions.   A true and correct copy of the July 23, 2020 letter and accompanying invoice (Texan Original Invoice) is attached hereto as **Exhibit H** and incorporated herein by reference.

67.     The July 23, 2020 letter demands that Ramsey Solutions pay the Texan Original Invoice, which reflected a cancellation fee in the amount of $1,383,507.80, in accordance with the terms of the Texan Contract. [Ex. H, p. 1]

68.     In accordance with the terms of the Palms Contract, the $1,383,507.80 Texan Original Invoice amount was due within 30, which was August 22, 2020.

69.     To date, Ramsey has failed to pay, and continues to fail to pay, the Texan Original Invoice within 30 days.

70.     The failure to pay the Texan Original Invoice within 30 days, as required under the terms of the Texan Contract, constitutes a further material breach of contract.

71.     On August 26, 2020, Marriott sent a revised invoice ("Texan Revised Invoice") to Ramsey Solution.   The Texan Revised Invoice corrects the Texan Original Invoice, which understated the cancellation fee.  As reflected in the Texan Revised Invoice, the correct amount of

the cancellation fee is $1,491,661.55. A true and correct copy of the August 26, 2020 letter, along with the Texan Revised Invoice, is attached hereto as **Exhibit E** and incorporated herein.

72.     The August 26, 2020 letter states that if Ramsey Solutions fails to pay the revised cancellation fee within 30 days of the invoice date, interest at the contract rate will accrue on the revised cancellation fee, effective as of the date of the Texan Revised Invoice, in accordance with the terms of the Texan Contract.

73.     The Texan Contract provides (at page 12) a "Litigation Expenses" provision, which provides that, "[T]he parties agree that, in the event litigation relating to this Agreement is filed by either party, the non-prevailing party In such litigation will pay the prevailing party's costs resulting from the litigation, including reasonable attorneys' fees."

74.     Marriott has fully performed its obligations under the Texan Contract and is not itself in breach of the Texan Contract.

75.     As a result of Ramsey Solutions' material breaches of the Texan Contract, including the failure to pay liquidated damages when due, it has become necessary for Marriott to retain litigation counsel to enforce the terms of the Texan Contract.

76.     All conditions precedent under the Texan Contract have been performed or have been excused.

## COUNT III
## BREACH OF EXPRESS CONTRACT – LIQUIDATED DAMAGES
### (THE ROCKIES CONTRACT)

77.     On or about December 23, 2017, Marriott and Ramsey Solutions entered into a written "Group Sales Agreement" (the "Rockies Contract"), pursuant to which Ramsey Solutions was obligated to hold a program at the Gaylord Rockies from May 20, 2022 through May 26, 2022

(the "Rockies Event"). A true and correct copy of the Rockies Contract is attached hereto as **Exhibit I** and incorporated herein by reference.

78.    Pursuant to the Rockies Contract, Ramsey Solutions was obligated to utilize 5,131 sleeping room nights at the Gaylord Rockies at rates ranging from $164.40 per room, per night, for staff rooms, plus applicable state and local taxes, to $2,700.00 per room, per night, for Presidential Suits, plus applicable state and local taxes.

79.    In addition, the Rockies Contract requires Ramsey Solutions to spend not less than $700,000.00 in banquet food and beverage, plus applicable services charges and taxes.

80.    Marriott also reasonably anticipated that the Ramsey Solution's attendees would utilize, and Marriott would receive revenue from, the numerous ancillary services offered by the Gaylord Rockies.

81.    The Rockies Contract contains (at page 10) a "Cancellation Policy" clause (the "Rockies Cancellation Provision"), which governs the amount of liquidated damages Ramsey Solutions agreed to pay if it were to cancel its contracted Rockies Event.

82.    The Rockies Cancellation Provision (at page 11 of the Rockies Contract) provides that Ramsey Solutions would owe "40% of total room revenue" for a cancellation occurring between "366-729 days prior to arrival."

83.    Pursuant to the Rockies Contract (at page 10), "total room revenue" is defined as "the dollar amount equal to the Room Block multiplied by the Group's average room rate, exclusive of Resort Fees."

84.    By email dated July 22, 2020, Ramsey Solutions canceled the Rockies Event.  A true and correct copy of the July 22, 2020 email is attached hereto as **Exhibit G** and incorporated herein by reference.

85.  Ramsey Solutions' reasons for canceling the Rockies Contract are not covered under any provision of the Rockies Contract.

86.  Accordingly, the cancellation by Ramsey Solutions was without legal justification or excuse and therefore constitutes a material breach of contract.

87.  Marriott has been damaged by Ramsey Services' material breach of contract.

88.  As noted above, as part of the Rockies Contract, the parties agreed that damages caused by cancellation of the Rockies Event by Ramsey Solutions would be liquidated and governed by a "Cancellation Policy" provision.

89.  The cancellation by Ramsey Solution occurred between 366-729 days prior to arrival.

90.  Pursuant to the Cancellation Policy provision, "40% of total room revenue" is $656,633.20.

91.   Ramsey Solutions did not make any advance deposits towards the Rockies Event. Accordingly, liquidated damages for canceling the Rockies Event are $656,633.20.

92.  In the alternative, Marriott is entitled to its actual damages in an amount to be proven at trial.

93.  The Rockies Cancellation Provision (at page 10) provides that, "[S]uch amount (the "Cancellation Charge") will be due and payable due within 30 days of the date of cancellation, and accrue Interest at the rate of 1.5 percent per month (or, if less, the maximum amount permitted by law)."

94.  Since Ramsey Solutions canceled its contracted event on July 22, 2020, the cancellation fee was due on August 21, 2020.

95.     Ramsey Solutions has failed to pay, and continues to refuse to pay, the cancellation fee within 30 days, as required under the Rockies Contract.

96.     The failure to pay the cancellation fee within 30 days of the cancellation constitutes a further material breach of contract.

97.     Further, the Rockies Contract (at page 5) contains a "Method of Payment" provision, which provides that, "If payment of any Invoice is not received within thirty (30) days of the date on which it was due, Hotel will impose a finance charge at the rate of the lesser of 1-1/2% per month (18% annual rate) or the maximum allowed by law on the unpaid balance commencing on the invoice date."

98.     On July 23, 2020, counsel for Marriott emailed a letter, along with an invoice for the cancellation fee for canceling the Texan Event, to Ramsey Solutions.   A true and correct copy of the July 23, 2020 letter and accompanying invoice ("Rockies Original Invoice") is attached hereto as **Exhibit H** and incorporated herein by reference.

99.     The July 23, 2020 letter demands that Ramsey Solutions pay the Rockies Original Invoice, which reflected a cancellation fee in the amount of 562,357.60, in accordance with the terms of the Rockies Contract.  [Ex. H, p. 1]

100.     In accordance with the terms of the Rockies Contract, the Rockies Original Invoice amount was due within 30, which was August 22, 2020.

101.     To date, Ramsey has failed to pay, and continues to fail to pay, the Rockies Original Invoice within 30 days.

102.     The failure to pay the Rockies Original Invoice within 30 days, as required under the terms of the Rockies Contract, constitutes a further material breach of contract.

103.     On August 26, 2020, Marriott sent a revised invoice ("Rockies Revised Invoice") to Ramsey Solution.  The Rockies Revised Invoice corrects the Rockies Original Invoice, which understated the cancellation fee.  As reflected in the Rockies Revised Invoice, the correct amount of the cancellation fee is $656,633.20.  A true and correct copy of the August 26, 2020 letter, along with the Rockies Revised Invoice, is attached hereto as **Exhibit E** and incorporated herein.

104.     The August 26, 2020 letter states that if Ramsey Solutions fails to pay the revised cancellation fee in the amount of $656,633.20, interest at the contract rate will accrue on the revised cancellation fee as pf the date of the Rockies Revised Invoice, in accordance with the terms of the Rockies Contract.

105.     The Rockies Contract provides (at page 11) a "Litigation Expenses" provision, which provides that, "[T]he parties agree that, in the event litigation relating to this Agreement is filed by either party, the non-prevailing party In such litigation will pay the prevailing party's costs resulting from the litigation, including reasonable attorneys' fees."

106.     Marriott has fully performed its obligations under the Rockies Contract and is not itself in breach of the Rockies Contract.

107.     As a result of Ramsey Solutions' material breaches of the Rockies Contract, including the failure to pay liquidated damages when due, it has become necessary for Marriott to retain litigation counsel to enforce the terms of the Rockies Contract.

108.     All conditions precedent under the Rockies Contract have been performed or have been excused.

## PRAYER FOR RELIEF

WHEREFORE, Defendant / Counterclaimant prays for judgment against Plaintiff / Counter-Defendant, as follows:

A    For liquidated damages pursuant to the Palms Contract on Count I of the Counterclaim, in the principal amount of $658,599.55 or, in the alternative, for lost profits in an amount to be proved at trial, plus pre-judgment interest at the contract rate of 1.5 percent per month (or, if less, the maximum amount permitted by law) on the Palms Original Invoice amount of $423,844.55, from July 6, 2020 through August 25, 2020; plus pre-and post-judgment interest at the contract rate of 1.5 percent per month (or, if less, the maximum amount permitted by law), on the Palms Revised Invoice in the amount of $658,599.55, from August 26, 2020, until the debt is paid in full; plus reasonable attorneys' fees and costs in accordance with the Palms Contract and applicable law.

B    For liquidated damages pursuant to the Texan Contract on Count II of the Counterclaim, in the principal amount of $1,491,661.55 or, in the alternative, for lost profits in an amount to be proved at trial, plus pre-judgment interest at the contract rate of 1.5 percent per month (or, if less, the maximum amount permitted by law) on the Texan Original Invoice amount of $1,383,507.80, from July 23, 2020 through August 25, 2020; plus pre-and post-judgment interest at the contract rate of Interest at the rate of 1.5 percent per month (or, if less, the maximum amount permitted by law), on the Texan Revised Invoice in the amount of $1,491,661.55, from August 26, 2020, until the debt is paid in full; plus reasonable attorneys' fees and costs in accordance with the Texan Contract and applicable law.

C    For liquidated damages pursuant to the Rockies Contract on Count III of the Counterclaim, in the principal amount of  $656,633.20  or, in the alternative, for lost profits in an amount to be proved at trial, plus pre-judgment interest at the contract rate 1.5 percent per month (or, if less, the maximum amount permitted by law) on the Rockies Original Invoice amount of $562,357.60, from July 23, 2020 through August 25, 2020; plus pre-and post-judgment interest at

the contract rate of 1.5 percent per month (or, if less, the maximum amount permitted by law), on the Rockies Revised Invoice amount of $656,633.20, from August 26, 2020, until the debt is paid in full; plus reasonable attorneys' fees and costs in accordance with the Rockies Contract and applicable law; and

D.  For such other and further relief as the Court deems just and appropriate on all Counts.

## JURY DEMAND

COUNTERCLAIMANT HEREBY DEMANDS TRIAL TO A JURY ON ALL ISSUES.

Respectfully submitted this 28th day of August 2020.

Respectfully submitted,

/s/ Steven M. Rudner
Steven M. Rudner, admitted *pro hac vice*
John C. Josefsberg, admitted *pro hac vice*
RUDNER LAW OFFICES
12740 Hillcrest Road, Suite 240
Dallas, TX  75230
Telephone:   (214) 373-1900
Facsimile:   (214) 360-7845
Rudner@HotelLawyers.com
josefsberg@HotelLawyers.com

and

Stephen J. Zralek, No. 18971
BONE McALLESTER NORTON PLLC
511 Union St., Ste. 1600
Nashville, TN 37219
Telephone:  (615) 780-7975
Facsimile:  (615) 780-7976
szralek@bonelaw.com

*Counsel for Marriott Hotel Services, Inc.*
*and Marriott International, Inc.*

{02102607.1 }

## <u>CERTIFICATE OF SERVICE</u>

I certify that I served a copy of this document via ECF on the following counsel of record on August 28, 2020:

Ashley E. Cowgill, Esq.
PILLSBURY WINTHROP SHAW PITTMAN LLP
500 Capitol Mall, Suite 1800
Sacramento, CA 95814

Jennifer Altman, Esq.
Markenzy Lapointe, Esq.
PILLSBURY WINTHROP SHAW PITTMAN LLP
600 Brickell Avenue, Suite 3100
Miami, FL 33131

/s/ Stephen J. Zralek