# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| THE LAMPO GROUP, LLC d/b/a RAMSEY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **Case No. 3:20-cv-00641** |
| MARRIOTT HOTEL SERVICES, INC., | ) ) | **Hon. Aleta A. Trauger** |
| Defendant. | ) ) | **JURY DEMAND** |
| MARRIOTT HOTEL SERVICES, INC., | ) ) | |
| Counter-Plaintiff, | ) ) | |
| v. | ) ) | |
| THE LAMPO GROUP, LLC d/b/a RAMSEY, | ) ) ) | |
| Counter-Defendant. | ) ) | |

## MARRIOTT'S RESPONSE IN IN OPPOSITION TO RAMSEY'S MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant / Counter-Plaintiff Marriott Hotel Services, Inc. ("Marriott") hereby responds in opposition to the Motion for Judgment on the Pleadings ("Motion") filed by Plaintiff / Counter-Defendant The Lampo Group, LLC d/b/a Ramsey (hereinafter, "Ramsey"). For the reasons that follow, the Motion should be denied.

## INTRODUCTION

This dispute arises out of Ramsey's improper cancellation of three separate contracted events Ramsey was scheduled to hold at the Gaylord Palms Resort & Convention Center ("Gaylord Palms"), located in Kissimmee Florida, in July 2020 (hereinafter, the "Palms Contract" and "Palms

{02186122.2 }

Event"); the Gaylord Texan Resort & Convention Center ("Gaylord Texan"), located in Grapevine, Texas, in May 2021 (hereinafter, the "Texan Contract" and "Texas Event"); and the Gaylord Rockies Resort & Convention Center ("Gaylord Rockies"), located in Aurora, Colorado, in May 2022 (hereinafter, the "Rockies Contract" and "Rockies Event"). As the result of these cancellations, Ramsey owes the three hotels $2,806,894.30

Ramsey's motion for judgment on the pleadings ("Motion") solely concerns Count I of the First Amended Complaint ("FAC"), which contains a claim for declaratory relief on the Palms Contract. Ramsey requests a judicial declaration that it properly terminated the Palms Contract under the contract's "*Force Majeure*" and "For Cause Termination" clauses. Some background information should assist the Court in placing the dispute in context.

Claiming it was "impossible" to hold its meeting, Ramsey terminated the Palms Contract a week before it was scheduled to begin. Less than three weeks later, Ramsey terminated the Texan Contract and Rockies Contract under a provision in both contracts that permits Ramsey to cancel the contracts if it experienced unsatisfactory performance **at a previous event**. Ramsey's reason for canceling all three contracts are mere pretext. The Palms conference was canceled because – and only because – Marriott rejected Ramsey's demand that the Gaylord Palms refuse to enforce a local order mandating that masks be worn at all times while in any public place, including hotels.

Nothing occurred at any time that made it "illegal" or "impossible" for Ramsey to hold its conference at the Gaylord Palms in July 2020. In fact, as discussed below, in the contract Ramsey signed with Marriott, Ramsey agreed to comply with the very conditions it now claims made it "impossible" to hold its event. Moreover, at the time set for performance in July 2020, the Gaylord Palms was open for business and would have been able to host the Palms Event as contracted.

There was no curtailment of transportation over the event dates. There were no governmental restrictions prohibiting Ramsey from holding the Palms Event or preventing attendees from traveling to Florida to attend it. Attendees traveling to Ramsey's conference were not required to quarantine, and there were no restrictions prohibiting movement, activities and gatherings that would have made it illegal or impossible for Ramsey to hold its event at the Gaylord Palms in July 2020.

A week before the Palms Event, and after all details had been worked out to hold a successful event, Ramsey threatened to cancel its conference if Marriott continued to insist that it would follow a county mask mandate that required that masks be worn in all public places, including hotels. When Marriott refused Ramsey's demand to violate the law, Ramsey terminated the Palms Contract on the grounds of "impossibility." Ramsey's performance was not excused under the Palms Contract, and its cancellation constitutes a breach of contract.

After canceling the Palms Event, Ramsey held the event at its headquarters in Franklin, Tennessee in July 2020. Social media from the event depicts maskless attendees, shoulder to shoulder, in violation of COVID-19 orders that had recently been issued in Williamson County, Tennessee where the event took place.

Less than three weeks after canceling the Palms Contract, Ramsey canceled the Texan Contract and Rockies Contract. The relevant provisions of these contracts permit Ramsey to terminate the agreements based on unsatisfactory performance **at a prior event**. The fact that no "prior event" had taken place when Ramsey terminated the Texan Contract and Rockies Contract did not deter Ramsey from terminating the agreements. The terminations were also improper and constitute yet another breach of contract by Ramsey.

Nothing made it illegal or impossible for Ramsey to hold the Palms Event. Ramsey even agreed in the contract it signed to comply with all COVID-19 related health and safety measures. Ramsey's brazen insistence that Marriott refuse to comply with a mask mandate lays bare the utter disregard Ramsey has for following the rule of law, including most particularly, the filing of this action. For the numerous reasons set forth below, Ramsey's Motion should be denied.

## LEGAL ARGUMENT

### A. CORRECT LEGAL STANDARD FOR A MOTION FOR JUDGMENT ON THE PLEADINGS

In considering a motion for judgment on the pleadings brought pursuant to Federal Rule of Civil Procedure 12(c), the court must view the facts presented in the pleadings and the reasonable inferences to be drawn therefrom in a light most favorable to the nonmoving party. The well-pleaded factual allegations in the nonmovant's pleadings are assumed to be true, and all contravening assertions in the movant's pleadings are assumed to be false. *See* 5A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1368 (2d ed. 1990). "The motion for judgment on the pleadings has utility only when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided." *Grindstaff v. Green*, 133 F.3d 416 (6th Cir.1998) (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed.2004)).

Therefore, when the plaintiff seeks a judgment on the pleadings, the denials and well-pleaded material allegations of the defendant's pleading are taken as true. *See, e.g., Air Eng'g Metal Trades Council & Affiliated Unions, AFL-CIO v. Aro, Inc.*, 307 F. Supp. 934, 934 (E.D. Tenn. 1969); *see also Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir.1989)("For a Rule 12(c) motion, the allegations of the nonmoving party must be accepted as true, while the allegations of the moving party that have been denied are assumed to be false.")

{02186122.2 }

When all well-pleaded material allegations of the pleadings of the opposing party are taken as true, the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008).  The court "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999); Davis v. City of Memphis Fire Dept., 940 F. Supp. 2d 786, 801 (W.D. Tenn. 2013).

## B.  FLORIDA SUBSTANTIVE LAW APPLIES

"It is well established that federal courts sitting in diversity must apply the choice-of-law rules of the forum state." *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir. 1998)(*citing Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941)) "In contract cases, Tennessee follows the rule of *lex loci contractus*, meaning that 'a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent.'" *Waste Services of Decatur, LLC v. Decatur County, Tennessee,* 367 F. Supp. 3d 792, 802–03 (W.D. Tenn. 2019) (applying Tennessee law)

"The place of contracting is the place where the contract is consummated." *Chase Manhattan Bank, N.A. v. CVE, Inc.*, 206 F. Supp. 2d 900, 905 (M.D. Tenn. 2002); *see also Transit Bus Sales v. Kalamazoo Coaches*, 145 F.2d 804, 806 (6th Cir. 1944)("The general rule is that a contract is made where the last act necessary to make it a binding obligation is performed."); *accord, D.L. Peoples Grp., Inc. v. Hawley*, 805 So.2d 561, 563 (Fla. 1st DCA 2002)("[T]he last act necessary for a written contract is the last signature on the contract").

Under the facts presented in the pleadings before the Court and applying the choice of law principals of the forum state, Florida law will govern interpretation of the Contact. The Contract,

attached to Plaintiff's Amended Complaint as Exhibit A, contains a provision labelled ACCEPTANCE, which states:

> When presented by the Hotel to Ramsey Solutions, this document is an invitation buy the Hotel to Ramsey Solutions to make an offer. Upon signature by Ramsey Solutions, this document will be an offer by Ramsey Solutions. *Only upon signature of this document by all parties will this document constitute a binding agreement.*

Contract, p. 16. (emphasis added) In other words, by the explicit terms of the Contract the signature of Ramsey Solutions was a predicate act, constituting an offer. The agreement only becomes binding upon the signature of the Gaylord Palms' representative. Therefore, "the last act necessary to make" [the contract] a binding obligation" – *i.e.*, the signature of the Gaylord Palms' representative – was performed in Florida, not Tennessee. Under the clear choice of law rules of the forum state, Florida law, not Tennessee law, must be applied to the interpretation of the Contract. *See Waste Services*, 367 F. Supp. at 802–03.

## C. RAMSEY HAS NOT ESTABLISHED FACTS THAT DEMONSTRATE THAT IT IS ENTITLED TO TERMINATE THE PALMS CONTRACT UNDER THE *FORCE MAJEURE* CLAUSE

### 1. The FAC Fails To Allege That The *Force Majeure* Clause Excuses Performance Because It Was "Illegal" For Ramsey To Hold Its Event At The Gaylord Palms In July 2020

Given what actually transpired, it is not surprising that the FAC does not contain a single allegation that holding the Palms Event at the Gaylord Palms in July 2020 would have been "illegal."  Because of this fatal flaw, Ramsey's Motion fails to the extent it relies on illegality under the *Force Majeure* Clause.

### 2. Even If The Court Were To Treat Allegations Contained Only In The Motion As Being Part Of The FAC, Ramsey Has Still Failed To Allege That The Force Majeure Clause Excuses Performance Because It Was "Illegal" For Ramsey To Hold Its Event At The Gaylord Palms In July 2020

Having failed to include any allegations of illegality in its pleadings, Ramsey makes the allegation for the first time in its Motion. In the Motion (at pp. 12-14), Ramsey first cites a number of Executive Orders issued by Florida Governor Ron DeSantis regarding COVID-19, and two orders issued by Osceola County, Florida, also related to COVID-19. After discussing these Florida orders, Ramsey alleges (at page 14 of the Motion) that, "[D]ue to each of these restrictions imposed by various agencies and regulatory bodies, the plain language of the *Force Majeure* Clause excused performance . . ." Ramsey's improper attempt to get out of the Palms Contract is unavailing.

As an initial matter, relying on allegations not contained in the pleadings is improper. *Katt v. Titan Acquisitions, Ltd.*, 133 F. Supp. 2d 632, 637 (M.D. Tenn. 2000) ("In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated into the complaint by reference.") Allegations contained in a motion for judgment on the pleadings, but not in the pleadings themselves, cannot be given any weight. *Id.* Even if were proper for the Court to consider matters outside of the pleadings, nothing contained in any of the Florida orders supports Ramsey's position.

The first order cited by Ramsey is Executive Order 20-82, which was signed by Governor DeSantis on March 24, 2020. Ramsey erroneously contends that the order **requires** all persons entering Florida "from an area with substantial community spread … to isolate or quarantine for a period of 14 days from the time of entry into the State of Florida or the duration of the person's presence in the State of Florida, whichever is shorter." (*See* Executive Order 20-82, Section I(A)). However, Executive Order 20-82 was later revised on June 3, 2020 by Executive Order 20-139 (Florida's "Phase Two Recovery" Executive Order), which carved out an exception to the

quarantine provision for all "persons involved in commercial activity." (*Id.*, at Section 30).[1] Even if the quarantine provision had not been revised, there are no allegations in the pleadings addressing from where Ramsey's attendees would be traveling, let alone whether any points of departure for such attendees would be considered "an area with substantial community spread." Thus, if the quarantine provision of Executive Order 20-82 had not been later revised, at best the issue of its application to the issue of illegality would be a question of fact not properly determined by a motion for judgment on the pleadings.

The next Executive Order Ramsey relies on to demonstrate illegality is Executive Order 20-91. This Executive Order, which was issued on April 1, 2020, requires local jurisdictions to ensure that groups of people greater than ten are not permitted to congregate in any public space. However, Ramsey neglects to inform the Court that Executive Order 20-91 was expressly superseded on June 3, 2020, when Governor DeSantis issued Executive Order 20-139 (implementing Phase Two recovery), which eliminated this restriction. *See* Section 4 of Executive Order 20-139.

The only other Executive Order cited by Ramsey to demonstrate illegality is Executive Order 20-139, which as explained above, was the Executive Order ushering in Florida's Phase Two Plan for Recovery. Although Ramsey claims the order "required" individuals to avoid group meetings of more than 50 people and to maintain appropriate social distancing, Executive Order 20-139 **did no such thing**.

The activities Ramsey claims were prohibited by Executive Order 20-139 ("requiring individuals to avoid group meetings of more than 50 people" and to "maintain appropriate social

---

[1] The FAC demonstrates that travel to Florida for Ramsey's event was a "commercial activity." Paragraph 2 of the FAC alleges that "Ramsey organizes these high-end experiences **attended by thousands of individual and business owners**." (Emphasis added).

{02186122.2 }

distancing") were not prohibited at all.  These activities are included in and governed by Section 2 of the Order, which relevantly provides:

> Section 2. Responsible Individual Activity
>
> All persons in Florida are <u>encouraged</u> to follow appropriate social distancing and safety protocols issued by the CDC and OSHA. **<u>The direction to follow such protocols, and those additional protocols listed below in this section, is guidance and not enforceable under section 252.4 7, Florida Statutes.</u>**

Executive Order 20-139 (emphasis added).

The only other orders relied upon by Ramsey (in footnote 18 of the Motion) are equally unavailing.  These orders were issued by Osceola County, Florida (where Gaylord Palms is located).  Both orders simply mandate wearing masks in public spaces over the dates of Ramsey's Palms Event.   A mask mandate does not make holding an event at the Gaylord Palms in July 2020 "illegal."

Ramsey concludes its section on illegality by once again citing a superseded Executive Order (20-91), which banned gatherings of more than ten people in early April, 2020 (*see* Motion at 14), only to be superseded by Florida's Phase Two Executive Order, which was issued on June 3, 2020 and in place prior to Ramsey's cancellation.  The link cited by Ramsey no longer exists (available at

https://www.flgov.com/wp-content/uploads/orders/2020/EO_20-52.pdf) because it relates to Frequently Asked Questions about Florida's Phase I Recovery Plan, which was superseded by Florida's Phase II Plan and attendant frequently asked questions relating to Phase II.  [Found at

https://www.flgov.com/wp-content/uploads/covid19/Exec%20Order%20Phase%202%20FAQs.pdf] +

In short, Ramsey's self-serving assertion in the Motion, and only in the Motion, that the "plain language of the *Force Majeure* Clause excused performance," because performance was

{02186122.2 }

illegal, is completely baseless. Asking the court to take judicial notice of state and local orders in order to demonstrate its entitlement to judgment on the pleadings does not help Ramsey, as the cited orders do not support the position they are cited for. Nothing in these orders demonstrate that it was illegal for Ramsey to hold its Palms Event at the Gaylord Palms in July 2020.

**D.      RAMSEY HAS NOT ALLEGED FACTS DEMONSTRATING THAT THE *FORCE MAJEURE CLAUSE*  EXCUSES PERFORMANCE DUE TO IMPOSSIBILITY**

As described below, the Motion identifies two reasons why Ramsey allegedly invoked the *force majeure* clause on the basis of impossibility. The first reason is defective because the events that allegedly caused Ramsey's nonperformance are not specifically identified in the *Force Majeure* Clause; do not fall within the "catch-all" provision because they are not of the type as those specifically listed; and did not make it impossible for Ramsey to hold his event at the Gaylord Palms. The second reason is equally defective because, while specifically listed in the *Force Majeure* Clause, no facts exist that demonstrate that a *force majeure* event made it "impossible" for Ramsey to hold its the Palms Event. We address each of Ramsey's erroneous reasons in turn.

1.      Contours And Interpretation Of A *Force Majeure* Clause Under Florida Law

A *force majeure* clause is defined as "a contractual provision allocating the risk of loss if performance becomes impossible or impracticable, especially as a result of an event or effect that the parties could not have anticipated or controlled." A*RHC NVWELFL01, LLC v. Chatsworth at Wellington Green, LLC*, 18-80712, 2019 WL 4694146, at *3 (S.D. Fla. Feb. 5, 2019) (citing Black's Law Dictionary, 718 (9th ed. 2009)). "As a general rule, a contract is not invalid, nor is the obligor discharged from its binding effect, because the contract turns out to be difficult or burdensome to perform." *In re SFD @ Hollywood, LLC*, 411 B.R. 788, 800 (Bankr. S.D. Fla. 2009); *Home Design Center–Joint Venture v. County Appliances of Naples, Inc.*, 563 So.2d 767, 769–70 (Fla. 2d DCA 1990).

Under Florida law "even when included in an undisputed express contract between parties, *force majeure* provisions are "narrowly construed" and "will generally only excuse a party's nonperformance if the event that caused the party's nonperformance is specifically identified." *Gibson v. Lynn Univ., Inc.*, 20-CIV-81173-RAR, 2020 WL 7024463, at \*4 (S.D. Fla. Nov. 29, 2020); *see also ARHC NVWELFL01, LLC v. Chatsworth at Wellington Green, LLC*, No. 18-80712, 2019 WL 4694146, at \*3 (S.D. Fla. Feb. 5, 2019).

Narrowly construing the *force majeure* provision in the Contract between the parties, performance is only excused upon an occurrence that that makes it illegal or impossible to provide or use the Hotel's facilities. It does not excuse performance if one party is unable to provide one non-material element of a Contract. Such a reading would be an impermissibly broad reading of the contract, and lead to an absurd result.

This reading is also supported by common law on impossibility and commercial impracticability, which holds that a party asserting this defense must demonstrate that he has tried all practical, available alternatives to overcome the impediment and allow performance. *See* RESTATEMENT (SECOND) OF CONTRACTS § 261, cmt. d. ("Before claiming impracticability, a party is expected to use reasonable efforts to surmount obstacles to performance."); *Prusky v. Reliastar Life Ins. Co.*, 445 F.3d 695, 701 (3d Cir. 2006); *Ner Tamid Congregation of N. Town v. Krivoruchko*, 638 F. Supp. 2d 913, 933 (N.D. Ill. 2009), *as amended* (July 9, 2009); *see also In re SFD @ Hollywood, LLC*, 411 B.R. 788, 800 (Bankr. S.D. Fla. 2009)("As a general rule, a contract is not invalid, nor is the obligor discharged from its binding effect, because the contract turns out to be difficult or burdensome to perform.")

Ramsey concedes that the language and terms of the *force majeure* clause "dictate the application, effect and scope of force majeure" between the parties;" that "[t]he agreement itself

provides the guidepost for what the parties contemplated;" and that the provision is to be read narrowly. (Motion, p. 8, 10-11). But at the same time, it attempts to claim excuse for performance under the *force majeure* clause using language that doesn't exist.

It is also correct that the *force majeure* clause at issue does not expressly limit the type of occurrence that constitutes a valid *force majeure* event, other than being beyond a party's reasonable control. However, under the general common law principle of *ejusdem generis* (literally "of the same kind or class.") it is a "canon of construction that when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same type as those listed." *Ergas v. Universal Prop. & Cas. Ins. Co*., 114 So. 3d 286, 290 (Fla. Dist. Ct. App. 2013). Further, "a *force majeure* provisions that is silent on whether the excusing event must be unforeseeable should be construed to require unforeseeability". *E.g., In re Flying Cow Ranch HC, LLC*, 2018 WL 7500475, at *2 (Bankr. S.D. Fla. 2018); 30 LORD, WILLISTON ON CONTRACTS §§ 77:31 [4th ed.]) (Force *majeure* clauses are to be interpreted in accord with their function, which is to relieve a party of liability when the parties' expectations are frustrated due to an event that is "an extreme and unforeseeable occurrence"]; CORBIN ON CONTRACTS §§ 31.4 [2006] (same) . Therefore, Ramsey is not correct to claim the *force majeure* clause contains a "catch all" phrase that excuses performance for any circumstance beyond its control.

    2.    <u>None Of The Reasons Ramsey Contends Excuses Its Performance Under The *Force Majeure* Clause Due To Impossibility Are Valid</u>

        a.    <u>Invalid Reason Number 1: "Defendant Could Not Provide The Services Or Amenities As Outlined In The Palms Agreement And Could Not Otherwise Fulfill The Terms Of The Contract"</u>

{02186122.2 }

Ramsey's position[2] is flawed for two equally compelling reasons. First, Ramsey has failed to allege that a *force majeure* event has occurred under the express terms of the *force majeure* clause. The alleged inability to provide the services or amenities outlined in the contract are not specifically identified in the *Force Majeure* Clause and do not fall within the "catch-all" provision because they are not of the type as those specifically listed (*i.e.*, acts of God, war, acts of domestic terrorism, or strikes).

Second, even if Ramsey's statement is true, it does not meet the requirements for excuse of performance under the clear terms of *force majeure* clause. The clause states that performance is excused if circumstances "make it illegal or impossible to provide or use the Hotel facilities." There was no circumstance, at any time, that made it illegal or impossible to provide or use the Hotel facilities. Narrowly construed, this is the only occurrence that excuses performance.

The *force majeure* clause does not state that performance is excused, as Ramsey claims, if the Hotel "could not provide the services or amenities as outlined in the Palms Agreement," or if performance simply became more difficult. To read the contract this way would an impermissibly expansive reading of the terms set forth by the parties and contrary to governing law. *See ARHC NVWELFL01, 2019 WL* 4694146, at *3; *In re SFD @ Hollywood, LLC*, 411 B.R. at 800.

Further, the amenities mentioned in the Palms Contract are not contracted items, let alone contracted "facilities." Even if Ramsey's allegations of reduced services and amenities had not been controverted by Marriott,[3] allegations of reduced non-contracted services and amenities do not make it "impossible" for Ramsey to utilize the Hotel's facilities.

The only other hint or suggestion in the Motion that COVID-19 made it "impossible" to use the facilities of the Gaylord Palms is mentioned in footnote 10 of the Motion (which once

---

[2] *See* Motion, p. 10
[3] *See* paragraphs 37, 41-43 to FAC (listing alleged reduced amenities), which were denied by Marriott in its Answer.
{02186122.2 }

again cannot be taken into consideration on a motion for judgment on the pleadings).  Ramsey asserts that the contract itself reflects that the parties anticipated that more than a thousand individuals would attend the Event, and that "This was simply impossible given the **restrictions** in place at the time." (emphasis supplied)

Ramsey fails to establish, or even allege, how many people had signed up to attend the event as of July 3, 2020, when Ramsey canceled its contracted event.[4]  Ramsey does not establish or allege that the Gaylord Palms could not have accommodated the number of people that signed up for the event as of July 3, 2020, given social distancing requirements in place.[5] Ramsey does not identify any of the so-called "restrictions" in place at the time of the July 2020 event, and how those restrictions would have made performance impossible.    Once again, Ramsey has not established or identified allegations of fact that warrant the relief it seeks.

Further, Ramsey has not alleged that COVID-19 was, at the time the addendum was executed on April 2, 2020, "an event or effect that the parties could not have anticipated or controlled." *ARHC NVWELFL01*, *supra* at *3.   The Florida Executive Orders discussed in Ramsey's Motion demonstrate that COVID-19, at the time the Addendum was executed, was an "event" or "effect" that was in existence and known by every living and breathing human being. Because COVID-19 was foreseeable at the time the addendum was signed, Ramsey's force *majeure* claim based on COVID-19 is legally deficient.

Finally, Ramsey in the Contract agreed it would comply with all applicable rules, regulations, ordinances and the like relating to ADA compliance and compliance with other

---

[4] The number of expected attendees had dropped dramatically by the time Ramsey canceled its event on July 3, 2020.
[5] Ramsey itself provided diagrams prepared by its event production team showing how many people could be accommodated in its meeting space with "social distancing."
{02186122.2 }

applicable laws, including health and safety codes.[6]  Nonetheless, Ramsey contends that the alleged inability to provide "high-end amenities" due to COVID-19 made holding the Palms Event "impossible."  [Motion at 5-6]  Having agreed to comply with all health and safety codes, rules and regulations, Ramsey cannot simultaneously contend that complying with these laws somehow made it "impossible" to hold its event **pursuant to the force *majeure* clause**.

> b.    <u>Invalid Reason 2: The Global COVID-19 Pandemic And The Inadequate Responses Of Osceola County, The State Of Florida, And The Gaylord To That Pandemic Have Created A Change In Circumstances Which Now Renders The Provision Of The First-Class Guest And Conference Event That The Parties Contracted For Under The Agreement An Impossibility</u>

There is no dispute that the COVID-19 pandemic constitutes a *force majeure* event. It is the second part of the *force majeure* clause that makes it inapplicable to this dispute. Not only must there be "circumstances beyond [a party's] reasonable control," it must be circumstances which "make it illegal or impossible to provide or to use the Hotel facilities."

As set forth above, the Motion identifies no circumstances, including the existence of COVID-19, that made it illegal or impossible to provide or use the Hotel facilities.  Ramsey has not alleged that COVID-19 resulted in a curtailment of transportation making it impossible to attend its event,  or that COVID-19 made it impossible for the Marriott to provide the contracted guest rooms, meeting space or any other **contracted** services.[7]

## E.    RAMSEY HAS NOT ESTABLISHED THE EXISTENCE OF FACT THAT DEMONSTRATE THAT IT IS ENTITLED TO TERMINATE THE PALMS CONTRACT UNDER THE "FOR CAUSE TERMINATION" CLAUSE

Ramsey further alleges that the "For Cause Termination" Clause of the Palms Contract "unambiguously provides Ramsey the sole discretion to terminate the Palms Agreement, based

---

[6] *See* page 14 of the Palms Contract, "Americans With Disabilities Act (ADA) Compliance" and page 15 of the Palms Contract+, "Compliance with Laws."
[7] Once again, Marriott denied the allegations in the FAC regarding inability to provide amenities or other contracted services.  *See* footnote 3, *supra*.
{02186122.2 }

upon its own determination of damage to its brand and goodwill if it were to host the Palms Event at Gaylord Palms." The clause provides Ramsey with no such discretionary right.

     1.    <u>The For Cause Termination Clause Does Not Give Ramsey The Right To Terminate The Palms Contract Based Upon Its Own Determination Of Damage To Its Brand And Goodwill If It Were To Host The Palms Event At Gaylord Palms</u>

The "For Cause Termination" Clause states, in part:

> ….Notwithstanding any provision to the contrary herein, Group [Ramsey] may at any time terminate this Agreement without penalty in the event Hotel, its parent, subsidiary or affiliated businesses, principals or executives become engaged in, accused of or subject to any public scandal, political controversy, crime, fraud or other event that in Group's sole judgment will impair or damage its brand or good will by hosting an event at Hotel. In such event, Group shall provide prompt notice and the Hotel shall refund all deposits and/or prepayments made by the Group within thirty (30) days of receipt of the notice of termination. [*See* Ex. A to FAC, at13]

The For Cause Termination Clause contains two necessary conditions before it can properly be invoked: (1) Marriott has to "become engaged in, accused of or subject to any public scandal, political controversy, crime, fraud or other event"; and (2) such enumerated activity "in [Ramsey's] sole judgment, will impair or damage its brand or good will by hosting an event at Hotel."

As stated above, under the general common law principle of *ejusdem generis* (literally "of the same kind or class.") it is a "canon of construction that when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same type as those listed." *Ergas v. Universal Prop. & Cas. Ins. Co.*, 114 So. 3d 286, 290 (Fla. Dist. Ct. App. 2013). Under this principle, "any other event" must be interpreted to be of the same type of the specifically enumerated activities that in the clause, which are limited to "public scandal, political controversy, crime, fraud."

The FAC merely alleges that holding the Palms Event with the restrictions and limitations in place would, in Ramsey's sole judgment, damage Ramsey's brand or good will.  [*See* FAC ¶ 49]  As alleged in the FAC, the only conduct of which Marriott is accused was complying with COVID-19 orders and restrictions regarding such things as masks, social distancing and other health-related regulations.  Complying with the law is not, under any reasonable interpretation,[8] the type of conduct covered by the For Cause Termination Clause.  Therefore, Ramsey is not correct to claim the For Cause Termination Clause permits it to "terminate the palms agreement based upon its own determination of damage to its brand and goodwill if it were to host the palms event at Gaylord Palms."

Ramsey has not, and could not, allege that in its determination, having to follow the law (in this instance, a mask mandate) could damage its brand's good will.    Ramsey cannot allege that having to meet in a place where its customers would have to follow the law would damage its brand.   The requirement of following the law cannot constitute damage to the brand.  To make that assertion, Ramsey would have to allege, and prove, that its brand is based on violating the law.  No one can take that position credibly.

---

[8] Ramsey's contention that the contract should be construed against Marriott, who drafted it, is misplaced.  First, there is no allegation in the FAC, let alone evidence, concerning which party drafted the clause.  The rule of adverse construction, or *contra preferentum*, is a 'secondary rule of interpretation' or a 'rule of last resort,' which should not be utilized if the parties' intent can otherwise be conclusively determined." *Emerald Pointe Prop. Owners' Ass'n v. Commercial Constr. Indus.*, 978 So.2d 873, 878 (Fla. DCA 4th Dist.2008). If all available construction tools, including extrinsic evidence, fail to resolve the ambiguity, only then is the contract construed against the drafter. Washington Nat. Ins., 117 So. 3d at 954–55.  "Moreover, *contra preferentem* should only be applied in situations where one party has significantly more bargaining power than the other: Where both parties to a contract are sophisticated business persons advised by counsel and the contract is a product of negotiations at arm's length between the parties, we find no reason to automatically construct ambiguities in the contract against the drafter ... Any ambiguity ... is resolved by examination of the language of the [provision] and its context." *Nissim Corp. v. ClearPlay, Inc.,* No. 04-21140-CIV, 2009 WL 8755610, at *5 (S.D. Fla. Feb. 11, 2009), *report and recommendation adopted*, No. 04-21140-CIV, 2009 WL 8755609 (S.D. Fla. Mar. 31, 2009), *vacated and remanded on other grounds*, 374 F. App'x 987 (Fed. Cir. 2010). Here, both parties are large, sophisticated commercial entities with equal bargaining power.

{02186122.2 }

Moreover, as stated, Ramsey agreed in the Palms Contract to comply with all applicable ADA and other health and safety rules and regulations. [*See* Ex. A to FAC, pages 14-15] Ramsey cannot now contend that, by complying with the very laws Ramsey agreed to follow, Marriott has somehow engaged in some "other event" under the For Cause Termination Clause that is of "the same type" as "public scandal, political controversy, crime, or fraud." *See Ergas*, *supra*, 114 So. 3d at 290.

Since Ramsey has not satisfied the first essential condition necessary to properly invoke the For Clause Termination Clause, the Motion should be denied.

2.    Ramsey Is Not Entitled To Judgment On The Pleadings Because It Has Not Alleged Facts Demonstrating That It Complied With The For Cause Termination Clause's "Prompt" Notice Requirement

Pursuant to the For Cause Termination Clause, Ramsey was required to provide "prompt" notice that it was terminating the Palms Contract under the For Cause Termination Clause if Marriott had "become engaged in, accused of or subject to any public scandal, political controversy, crime, fraud or other event that in Group's sole judgment will impair or damage its brand or good will by hosting an event at Hotel." Ramsey does not allege that the required notice was provided. This omission is fatal.

While the FAC contains no such allegation, in the Motion Ramsey alleges that, "Based on the plain language of the Palms Contract, Ramsey properly and responsibly terminated the Agreement." [*See* Ex. C][9]  The termination letter nowhere states that Ramsey was terminating the Palms Contract pursuant to the For Cause Termination Clause. The termination letter nowhere states that Marriott had "become engaged in, accused of or subject to any public scandal, political

_____

[9] Exhibits to a complaint are properly considered on a motion for judgment on the pleadings. *E.g., Munson Hardisty, LLC v. Legacy Pointe Apartments, LLC*, 359 F. Supp. 3d 546 (E.D. Tenn. 2019), *certificate of appealability denied*, No. 3:15-CV-547-TAV-DCP, 2019 WL 11705963 (E.D. Tenn. Apr. 24, 2019).

controversy, crime, fraud or other event that in Group's sole judgment will impair or damage its brand or good will by hosting an event at Hotel." Instead, the July 3, 2020 letter states that,

> I am writing to provide formal notice of termination of the Agreement. The global COVID-19 pandemic and the inadequate responses of Osceola County, the State of Florida, and the Gaylord to that pandemic have created a change in circumstances which now renders the provision of the first-class guest and conference event that the parties contracted for under the Agreement an impossibility.

> The failure to allege, in either the FAC or the July 3, 2020 termination letter, that prompt notice was provided under the For Cause Termination Provision is fatal. The July 3, 2020 termination letter establishes as a matter of law that the requisite notice under the For Cause Termination Clause was not provided.

## <u>CONCLUSION</u>

For the foregoing reasons, Ramsey's Motion should be denied. Ramsey is not entitled to a judgment on the pleadings on Count I of the FAC because Ramsey was not lawfully entitled to terminate the Palms Contract, and as the non-moving party, Marriott's denials and well-pleaded material allegations must be taken as true. Ramsey's performance under the Palms Contract was not excused, and it is not entitled to a refund of all deposits it paid to Marriott. Instead, Ramsey is liable to Marriott for improperly terminating the Palms Contract.

Respectfully submitted,

/s/ Steven M. Rudner
Steven M. Rudner, admitted *pro hac vice*
John C. Josefsberg, admitted *pro hac vice*
RUDNER LAW OFFICES
12740 Hillcrest Road, Suite 240
Dallas, TX 75230
Telephone: (214) 373-1900
Facsimile: (214) 360-7845
Rudner@HotelLawyers.com
josefsberg@HotelLawyers.com

{02186122.2 }

and

Stephen J. Zralek, No. 18971
BONE McALLESTER NORTON PLLC
511 Union St., Ste. 1600
Nashville, TN 37219
Telephone:  (615) 780-7975
Facsimile:  (615) 780-7976
szralek@bonelaw.com

*Counsel for Marriott Hotel Services, Inc.*
*and Marriott International, Inc.*

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on, this 19th day of February, 2021, we electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send transmissions of Notices of Electronic Filing on all Counsel of Record. Courtesy copies of the foregoing were also served on the following parties via email to:

Ashley E. Cowgill, Esq.
ashley.cowgill@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
500 Capitol Mall, Suite 1800
Sacramento, CA 95814

Jennifer Altman, Esq.
jennifer.altman@pillsburylaw.com
Markenzy Lapointe, Esq.
markenzy.lapointe@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
600 Brickell Avenue, Suite 3100
Miami, FL 33131

/s/ Stephen J. Zralek

{02186122.2 }