# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **THE LAMPO GROUP, LLC, d/b/a** | ) | |
| **RAMSEY SOLUTIONS, a Tennessee** | ) | |
| **Limited Liability Company,** | ) | |
| | ) | |
| **Plaintiff/Counter-defendant,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:20-cv-00641** |
| | ) | **Judge Aleta A. Trauger** |
| **MARRIOTT HOTEL SERVICES,** | ) | |
| **INC., a Delaware Corporation,** | ) | |
| | ) | |
| **Defendant/Counter-plaintiff.** | ) | |

## MEMORANDUM

Before the court is the Motion for Judgment on the Pleadings and Supporting Memorandum of Law (Doc. No. 33), filed by plaintiff The Lampo Group, LLC d/b/a Ramsey Solutions ("Ramsey Solutions"). For the reasons set forth herein, the motion will be denied.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Ramsey Solutions filed its original Complaint initiating this case on July 22, 2020 and its Amended Complaint (Doc. No. 10) within a week of that date. It seeks declarations from the court regarding the "meaning and interpretation" of specific provisions in several contracts executed by the parties (Claims I, II, and IV), and it asserts a claim for breach of contract (Claim III). The defendant, Marriott Hotel Services, Inc. ("Marriott") filed its timely Answer and Counterclaim, in which it disputes Ramsey Solutions' proposed interpretation of the relevant contract provisions, denies liability for breach of contract, asserts numerous affirmative defenses, and brings counterclaims for breach of contract. (Doc. No. 21.)

It is undisputed, for purposes of the present motion, that Marriott, a Delaware corporation with its principal place of business in Bethesda, Maryland, is the manager of the Gaylord Palms Resort & Convention Center ("Gaylord Palms" or "Hotel"), located in Kissimmee, Osceola County, Florida. Ramsey Solutions is a Tennessee limited liability company with its principal place of business in Franklin, Tennessee. The parties agree that the court has diversity jurisdiction in this case and that venue in this district is appropriate.

Ramsey Solutions is affiliated with Dave Ramsey, an entrepreneur and public speaker who has written a number of books "designed to help individuals and business owners achieve financial success." (Doc. No. 10 ¶ 24.) Ramsey Solutions also hosts numerous seminars across the country in any given year, the largest of which is the "Summit Event." (*Id.*) In September 2017, Ramsey Solutions and Marriott entered into an Agreement, pursuant to which Ramsey Solutions was obligated to hold the 2020 Summit Event, "EntreSummit 2020," at Gaylord Palms in May 2020. (*Id.*; *see also* Agreement, Doc. No. 10-1.)

Under the Agreement, Ramsey Solutions reserved a certain number of guest sleeping rooms—an average of almost 1,000 rooms per night—for the duration of the five-night event ("Room Block"), at stipulated group-rate prices. (Doc. No. 10-1, at 1.) Marriott agreed to reserve space at Gaylord Palms for Ramsey Solutions to conduct meetings and social events, in accordance with the event's Program Schedule (attached to the Agreement), and it agreed to provide reduced rates and various incentives relating to the services it would provide in connection with the event, which were dependent to some extent upon the number of event participants and guest room reservations. Marriott also guaranteed a reduced price range on food and beverages, with the final pricing to be dependent on "prevailing market conditions at the time of the Event." (Doc. No. 10-1, at 13.) The Agreement stipulates that Marriott was "relying on, and [Ramsey Solutions] agrees

to provide, a minimum of $700,000" in spending on food and beverage (the "F&B Minimum") during the event. (*Id.*) Ramsey Solutions also guaranteed actual usage of at least 80% of the "Room Night Commitment," and the Agreement provides for liquidated damages it would owe to Marriott in the event of cancellation of the Agreement "for reasons other than those specified in this Agreement." (*Id.* at 14.)

The Agreement contains two provisions relating to termination that are relevant to the plaintiff's Motion for Judgment. The first, entitled "For Cause Termination" ("For Cause Clause"), states in pertinent part as follows:

> Notwithstanding any provision to the contrary herein, Group [Ramsey Solutions] may at any time terminate this Agreement without penalty in the event Hotel, its parent, subsidiary or affiliated businesses, principals or executives become engaged in, accused of or subject to any public scandal, political controversy, crime, fraud or other event that in Group's sole judgment will impair or damage its brand or good will by hosting an event at Hotel. In such event, Group shall provide prompt notice and the Hotel shall refund all deposits and/or prepayments made by the Group within thirty (30) days of receipt of the notice of termination.

(Doc. No. 10-1, at 14.)

The Agreement also contains a *Force Majeure* Clause, which states:

> Either party may be excused from performance without liability if circumstances beyond its reasonable control, such as acts of God, war, acts of domestic terrorism, strikes or similar circumstances, make it illegal or impossible to provide or use the Hotel facilities. The ability to terminate pursuant to this clause is conditioned upon delivery [sic] written notice to the other party setting forth the basis for such termination within ten (10) days after learning of such basis.

(*Id.*)

The Agreement expressly provides that it is "subject to all applicable federal, state, and local laws, including health and safety codes, alcoholic beverage control laws, disability laws, federal anti-terrorism laws and regulations, and the like. Hotel and Ramsey Solutions agree to cooperate with each other to comply with such laws." (Doc. No. 10-1, at 15–16.)

As basically every sentient human knows by now, the COVID-19 global pandemic reared its head and substantially upended business as usual beginning in February or March of 2020. In light of the pandemic, Marriott and Ramsey Solutions negotiated and, on April 2, 2020, executed an Amendment to the Agreement. (Doc. No. 10-2.) The Amendment reduced Ramsey Solutions' "Room Block" commitment and changed the date of the EntreSummit 2020 event from May 15–21 to July 10–16, 2020. (Doc. No. 10-2, at 1.) It reduced the F&B Minimum to $400,000 and modified the "function space" to be made available, apparently in light of changes to the event's planned programing. Otherwise, the Amendment "ratified and confirmed" all "terms and provisions" of the original Agreement, "except as expressly modified and superseded by this Amendment." (Doc. No. 10-2, at 14.) The Amendment did not alter the For Cause or *Force Majeure* Clauses, but it added a clause entitled "Additional Impossibility Language" ("Impossibility Clause") which states in relevant part:

> Should the federal agency responsible for public health, emergency preparedness and infectious disease control and prevention in the country where the hotel is located (*i.e.*, the Centers for Disease Control and Prevention in the U.S. or the Public Health Agency of Canada) issue a travel advisory, notice, or warning at any time within the 30 day period prior to the first arrival date of the Event that specifically advises travelers to avoid all non-essential travel to the specific city in which the Hotel is located, and should Group have suspended all of its business operations in the city where the Hotel is located or, if Group has no business operations in the city where the Hotel is located, has otherwise recommended that its attendees not travel to the city for any non-essential reason, then Group may contact the Hotel in order for the parties to engage in discussions regarding the scope of the advisory, notice, or warning. The parties agree to negotiate in good faith to resolve any concerns raised as a result of the advisory, notice, or warning and to enter into such amendments of this Agreement as may be necessary to reasonably accommodate both parties' interests (such as an adjustment to the performance (attrition) clauses of this Agreement or the addition of a re-book clause to the Agreement).

(Doc. No. 10-2, at 13.)

Under the Agreement, in advance of the EntreSummit 2020 event, Ramsey Solutions paid to Marriott deposits totaling $1,202,950.45. (Counterclaim, Doc. No. 21 ¶ 18; Answer to Counterclaim, Doc. No. 27 ¶ 18.)

Ramsey Solutions alleges that, beginning in May 2020, Gaylord Palms began "unilaterally changing" the "details and amenities that would be available to Ramsey Solutions and its guests," including by advising Ramsey Solutions that it would require the seminar rooms to be "set up with social distancing, limiting and negatively impacting the attendees' ability to network"; refusing to make available buffet or self-service food or beverages to the attendees or passed hors-d'oeuvres at various receptions; and requiring attendees to submit to health checks and to wear masks at all times. (Doc. No. 10 ¶ 37.) In its Answer, Marriott denies the allegations in this paragraph, except with respect to "the changes that Gaylord Palms was required to make, by law, and to comply with governmental regulations and city ordinances." (Doc. No. 21 ¶ 37.) In June, Ramsey Solutions notified Marriott that the "adjustments" required by Gaylord Palms were not acceptable to it. (Doc. No. 10 ¶ 39; Doc. No. 21 ¶ 39.) On July 2, 2020, Gaylord Palms notified Ramsey Solutions that it would require all of its guests to wear face masks in the hotel common areas and convention meeting rooms in which the EntreSummit 2020 would be held and that, if a guest chose not to wear one, the guest would be asked to leave. (Doc. No. 10 ¶ 41.) In response, the defendant "admit[s]" that it "followed all applicable laws and regulations and would require Plaintiff to do the same." (Doc. No. 21 ¶ 41.)

Ramsey Solutions alleges that, as a result of restrictions by government authorities in response to the COVID-19 virus, Gaylord Palms "unilaterally reduced the amenities" it would make available to guests in such a manner that "the proposed guest experience [would] no longer qualify[] as a first-class experience." (Doc. No. 10 ¶ 43.) Marriott denies most of Ramsey

Solutions' allegations regarding the curtailment of its guest amenities, but it admits that "(i) half of all fitness machines were to be deemed closed or unavailable due to social distancing requirements, (ii) masks were required, in accordance with the law, and (iii) set up for in-room dining service would not be available, but clarifies that room service delivery was available, to the extent safety protocols, reducing entry into rooms, were observed." (Doc. No. 21 ¶ 43.)

On July 3, 2020, just one week before the EntreSummit 2020 was to begin and the day after Marriott confirmed that all guests would be required to wear masks at all times in public areas and meeting rooms, Daniel E. Cortez, in his capacity as General Counsel for Ramsey Solutions, provided formal written notice of Ramsey Solutions' termination of the Agreement by letter addressed to Mike Stengel, Senior Vice President of Gaylord Hotels Operations and Marriott's Convention Hotel Strategy. (Notice of Termination, Doc. No. 10-3.) The Notice of Termination provided as grounds for termination that

> [t]he global COVID-19 pandemic and the inadequate responses of Osceola County, the State of Florida, and Gaylord to that pandemic have created a change in circumstances which now renders the provision of the first-class guest and conference event experience that the parties contracted for under the Agreement an impossibility.

(Doc. No. 10-3.) The Notice of Termination does not expressly invoke the *Force Majeure* Clause of the Agreement, but its reference to "impossibility" suggested that Ramsey Solutions was relying on that provision to formally request the return of all funds paid to Marriott no later than July 10, 2020. (*Id.*) It did not invoke the For Cause Clause either expressly or implicitly. It also did not reference the Amendment's Impossibility Clause.

Counsel for Marriott responded with a letter to Cortez, highlighting Marriott's understanding that the primary reason for Ramsey Solutions' termination was Dave Ramsey's demand that the event attendees be excused from complying with the mask mandate that was in effect in Osceola County at that time. Marriott's position was that the pandemic and consequent

mask mandate had not made its (or Ramsey Solutions') performance under the Agreement and Amendment impossible. Instead, Marriott understood Ramsey Solutions to have cancelled the contract

> only because the Resort has refused to accede to [Ramsey Solutions'] demand and instead has indicated that it will not allow [event] attendees to do that which the law prohibits. Nothing makes it impossible for you to hold the convention other than your admitted refusal to have your attendees wear masks. No clause of the contract excuses your performance under these circumstances.

(Doc. No. 10-4, at 2.)

This lawsuit ensued. Following the close of pleadings, Ramsey Solutions filed the present Motion for Judgment under Rule 12(c) of the Federal Rules of Civil Procedure, seeking at this juncture only "judgment on the pleadings on its claim for declaratory relief set forth in Count I of the Amended Complaint relating to the meaning of two provisions" in the Agreement (Doc. No. 33, at 1), specifically, the For Cause and *Force Majeure* Clauses. It contends that either or both of these provisions gave it the unilateral right to terminate the Agreement and be excused from performance, that it properly terminated the Agreement based on the plain language thereof, and that it is entitled under the Agreement to obtain an immediate refund of all funds paid to Marriott. Marriott has filed a Response in Opposition to the Motion for Judgment (Doc. No. 38), contesting Ramsey Solutions' interpretation of the Clauses at issue, and Ramsey Solutions filed a Reply (Doc. No. 40).

## II.     STANDARD OF REVIEW

"The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citing *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001)). Thus, "[f]or purposes of a motion for judgment on the pleadings, all well pleaded material allegations of the pleadings of the opposing party must be taken as true, and

the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)).

"The proper interpretation of a contract is a question of law." *JPMorgan Chase Bank*, 510 F.3d at 582. Legal questions regarding interpretation of a contract may, therefore, properly be decided on a motion for judgment on the pleadings. *Id.*

## III.  DISCUSSION

### A.  Choice of Law

The plaintiff's motion does not conduct a choice-of-law analysis but simply presumes that Tennessee law applies. It also posits that, even if Florida law applies instead, there is no significant difference between the two. (*See* Doc. No. 33, at 7 n.9 ("Florida law is the same.").) Marriott, however, argues that Florida substantive law applies, based on the application of the rule of *lex loci contractus* as applied by Tennessee, the forum state, pursuant to which "a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent." (Doc. No. 38, at 5 (quoting *Waste Servs. of Decatur, LLC v. Decatur Cty.*, 367 F. Supp. 3d 792, 802–03 (W.D. Tenn. 2019) (applying Tennessee law)).) Marriott points to language in the Agreement itself indicating that the Agreement was consummated in Florida, making it the jurisdiction in which the contract was executed. In its Reply, Ramsey Solutions does not "concede that Florida law applies," but, in light of space limitations, it "focuses on Florida law" in its Reply, "because the result is the same." (Doc. No. 40, at 2 n.2.)

Given Ramsey Solutions' concession that the result is the same under either jurisdiction's law and its failure to contest the factual or legal basis for Marriott's assertion that Florida law applies, the court will apply Florida substantive law to the contract dispute now before the court.

### A.     For Cause Clause

As set forth above, the For Cause Clause authorizes Ramsey Solutions to terminate the Agreement without penalty if the Hotel, any entity affiliated with it, or any of its principals or executives "become engaged in, accused of or subject to any public scandal, political controversy, crime, fraud or other event that in Group's sole judgment will impair or damage its brand or good will by hosting an event at Hotel." (Doc. No. 10-1, at 14.) If such an event occurs, Ramsey Solutions is required to "provide prompt notice" of termination based on this clause. (*Id.*) If the clause is properly invoked, the Hotel then has thirty days to refund all sums previously paid to it by Ramsey Solutions. (*Id.*)

Ramsey Solutions asserts that the For Cause Clause afforded it the "sole discretion" to terminate the Agreement if it believed that "holding the Event would 'impair or damage its brand or good will.'" (Doc. No. 33, at 14; *see also* Doc. No. 10 ¶ 49 ("This provision unambiguously provides Ramsey Solutions the sole discretion to terminate the Palms Agreement, based upon its own determination of damage to its brand and goodwill if it were to host the event at Gaylord Palms").)

Ramsey's proposed interpretation of the For Cause Clause completely ignores a material portion of it. The contract does not grant it unilateral, unfettered discretion to terminate the Agreement based simply on the belief that holding the event would impair or damage its brand or good will. Rather, there must be some prior triggering event: the Hotel, or an individual or entity affiliated therewith, must have "become engaged in, accused of or subject to [a] public scandal, political controversy, crime, fraud or other event" as a result of which Ramsey Solutions believes that hosting the event at Gaylord Palms will impair its brand. (Doc. No. 10-1, at 14.) Ramsey's Motion for Judgment does not identify the triggering event in this case, other than to claim that the Hotel "unilaterally made material changes to the amenities that would be available and would

substantially alter the attendee experience." (Doc. No. 33, at 15.) It concludes that "Ramsey Solutions simply could not risk proceeding with a scaled down Event that did not meet the high expectations of its attendees, nor was it required to as the Palms Agreement expressly gave the right to Ramsey Solutions to terminate the Palms Agreement in its sole discretion." (Doc. No. 33, at 16.) In the Amended Complaint, it alleges only that the Hotel "expressly advised Ramsey Solutions that it was imposing certain restrictions because of Gaylord Palms' concerns regarding bad press that it might receive if the event were to take place . . . in the manner contemplated" and that the Hotel "was choosing its own brand acceptance over that of its customer, Ramsey Solutions." (Doc. No. 10 ¶ 50.)

Notably, Marriott expressly denies the truth of that allegation (Doc. No. 21 ¶ 50), so the court must, for purposes of the Motion for Judgment, presume that it is not true. As a result, even if this alleged triggering event *were* adequate to permit Ramsey Solutions to invoke the For Cause Clause, there is a factual dispute as to whether the Hotel had actually engaged in the triggering event upon which Ramsey Solutions seeks to premise its termination.

Second, the triggering event as alleged does not, as a matter of law, fall within the scope of the For Cause Clause. "The principle of *ejusdem generis* literally means 'of the same kind or class.'" *Ergas v. Universal Prop. & Cas. Ins. Co.*, 114 So. 3d 286, 290 (Fla. Dist. Ct. App. 2013). It is defined as "[a] canon of construction that when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same type as those listed." *Id.* (quoting Black's Law Dictionary 556 (8th ed. 2004)). Thus, "[it]t refers to an item of the same type as those in the list." *Id.* Under this principle, the phrase "other event" must be interpreted to be of the "same type" as the specifically enumerated activities, which are limited to "public scandal, political controversy, crime, fraud." By no stretch of the imagination could the

Hotel's decision, as Ramsey Solutions describes it, to limit the amenities that would be available to attendees in light of concerns arising from the spread of the pandemic, thus substantially altering the "attendee experience" (Doc. No. 33, at 15), be considered the same type of activity as becoming engaged in, or being accused of engaging in, "public scandal, political controversy, crime, [or] fraud." Ramsey Solutions makes no attempt even to argue that it would. For this reason, too, Ramsey Solutions cannot show that the For Cause Clause was properly invoked.

Further, as set forth in Marriott's response to the Notice of Termination, which was attached as an exhibit to the Amended Complaint, Marriott claims that Ramsey's true objection to hosting the event at Gaylord Palms was that Marriott had communicated its intent to require event attendees to comply with the local mask ordinance. If that is, in fact, the true reason for its termination, Ramsey Solutions could not credibly claim that requiring event attendees to wear masks *in compliance with local law* would damage its brand. As Marriott points out, the Agreement was expressly subject to "all applicable federal, state, and local laws, including health and safety codes . . . and the like," and the parties "agree[d] to cooperate with each other to ensure compliance with such laws." (Doc. No. 10-1, at 15–16.) Thus, to the extent the triggering event upon which Ramsey Solutions actually terminated the Agreement was the Hotel's insistence that event attendees comply with the local law, that event would not be the type of activity that would permit Ramsey Solutions to invoke the For Cause Clause.

Finally, even assuming that Ramsey Solutions could show that it had a legitimate basis for invoking the For Cause Clause, Marriott disputes whether Ramsey Solutions complied with the "prompt notice" requirement of the clause. The Notice of Termination predicated Ramsey's termination upon "[t]he global COVID-19 pandemic and the inadequate responses of Osceola County, the State of Florida, and Gaylord to that pandemic," which "created a change in

circumstance which now renders the provision of the first-class guest and conference event experience that the parties contracted for under the Agreement an impossibility." (Doc. No. 10-3.) The Notice of Termination did not reference or invoke the For Cause Clause or identify the action by the Hotel that permitted it to invoke the clause. Nor does the Amended Complaint allege that "prompt" notice under this clause was provided. In light of the fact that the parties were on notice of the pandemic no later than March, and they amended the Agreement in April in recognition that the pandemic would likely alter both parties' business operations, there is a question of fact as to whether Ramsey's purported notice of termination for cause was "prompt." For this reason, too, it cannot show that it is "clearly entitled" to judgment in its favor based on its purported invocation of this provision of the Agreement. *Fritz*, 592 F.3d at 722.

To the extent its Motion for Judgment is premised on this clause, it will be denied.

### B. *Force Majeure* **Clause**

As set forth above, the *Force Majeure* Clause of the Agreement states:

> Either party may be excused from performance without liability if *circumstances beyond its reasonable control*, such as acts of God, war, acts of domestic terrorism, strikes, *or similar circumstances*, make it *illegal or impossible* to provide or use the Hotel facilities.

(Doc. No. 10-1, at 14 (emphasis added).) By its clear terms, this provision required both the existence of circumstances beyond either party's control and that such circumstances rendered it either illegal or impossible to "provide or use the Hotel facilities."

Ramsey Solutions argues that this provision unambiguously authorized it to terminate the Agreement. It appears to contend that there were two separate events that qualified as circumstances beyond either party's control: (1) the COVID-19 pandemic, *per se*, and (2) the pandemic in conjunction with the consequent, and rolling, restrictions imposed by national, state, and local authorities on public gatherings, including mask mandates and social distancing

requirements, as well as the restrictions the Hotel imposed in recognition of the pandemic, including limitations on food and beverage service, the closure of the Hotel Spa, and so forth. It also argues that performance under the Agreement was rendered both impossible and illegal by these circumstances.

### 1. The Pandemic as Force Majeure

"A *force majeure* clause is defined as 'a contractual provision allocating the risk of loss if performance becomes impossible or impracticable, especially as a result of an event or effect that the parties could not have anticipated or controlled.'" *ARHC NV WELFL01, LLC v. Chatsworth at Wellington Green, LLC*, No. 18-80712, 2019 WL 4694146, at *3 (S.D. Fla. Feb. 5, 2019) (quoting Black's Law Dictionary, 718 (9th ed. 2009)). "*Force majeure* clauses are typically narrowly construed, and will generally only excuse a party's nonperformance if the event that caused the party's nonperformance is specifically identified." *Id.* (internal quotation marks and citation omitted); *see also Gibson v. Lynn Univ., Inc.*, 504 F. Supp. 3d 1335, 1341 (S.D. Fla. 2020) (quoting *ARHC*, 2019 WL 4694146, at *3). "The events covered by a *force majeure* clause depend on the specific language of the contract, but generally, an event must be both outside of the control of the parties and unforeseeable." *In re Flying Cow Ranch HC, LLC*, No. 18-12681-BKC-MAM, 2018 WL 7500475, at *2 (Bankr. S.D. Fla. June 22, 2018). Although Florida precedent on *force majeure* clauses is "limited," *ARHC*, 2019 WL 4684146, at *3, at least one court has recognized that the applicability of a *force majeure* clause may raise factual questions that cannot be resolved in the early stages of litigation. *Palm Springs Mile Assocs. v. Kirkland's Stores, Inc.*, No. 20-21724-CIV, 2020 WL 5411353, at *2 (S.D. Fla. Sept. 9, 2020) (denying motion to dismiss).

"[A] claim of *force majeure* is equivalent to an affirmative defense and the party relying on a *force majeure* clause bears the burden of proof." *In re Flying Cow Ranch*, 2018 WL 7500475, at *2 (citation omitted). That is, typically, the party that is unable to perform its obligations under

an agreement invokes the clause, either in an action for declaratory relief or as an affirmative defense to the other party's breach of contract claim. *See, e.g.*, *TEC Olmos, LLC v. ConocoPhillips Co.*, 555 S.W.3d 176, 181 (Tex. Ct. App. 2018) (in which the defendant raised *force majeure* as an affirmative defense to a breach of contract claim against it); *Kel Kim Corp. v. Cent. Markets, Inc.*, 519 N.E.2d 295, 296 (N.Y. 1987) (in which the plaintiff sought a declaratory judgment action to be excused from performance under a lease based on *force majeure*). In other words, the posture of this case is unusual insofar as Ramsey Solutions, as plaintiff, seeks a declaration that it is excused from performing its obligations under the contract, not because *it* was prevented from performing its contractual obligations, but because *force majeure* frustrated the purpose of the contract by making it impossible or illegal for *Marriott* to perform its obligations under the contract.[1]

Marriott concedes that a global pandemic is the type of "act of God" that qualifies as a *force majeure*. (Doc. No. 38, at 15 ("There is no dispute that the COVID-19 pandemic constitutes a *force majeure* event.").) It argues, however, that the parties clearly knew about the pandemic no

---

[1] Florida law, in fact, recognizes "impossibility of performance" and "frustration of purpose" as separate and distinct grounds for seeking rescission of a contract. "'Impossibility of performance' refers to those factual situations where purposes for which the contract was made, have, on one side, become impossible to perform." *Bland v. Freightliner, LLC*, 206 F. Supp. 2d 1202, 1208 (M.D. Fla. 2002) (quoting *Crown Ice Mach. Leasing Co. v. Sam Senter Farms, Inc.*, 174 So. 2d 614, 617 (Fla. Dist. Ct. App. 1965)). In other words, the party who finds it impossible to perform its obligations under the contract may seek rescission. On the other hand, "'[f]rustration of purpose' refers to the condition surrounding the contracting parties where one of the parties finds that the purposes for which he bargained, and which purposes were known to the other party, have been frustrated because of the failure of consideration or impossibility of performance of the *other* party." *Id.* (quoting *Crown Ice*, 174 So. 2d at 617) (emphasis added). What Ramsey Solutions seems to be raising here is a frustration of purpose defense, premised upon actions allegedly taken by Marriott that, in Ramsey Solutions' view, have frustrated the known purposes for which the Agreement was made. Ramsey Solutions, however, has not sought rescission of the contract on equitable grounds and does not now ask the court to consider whether such equitable grounds for rescission exist.

later than some time in March 2020. Thus, by the time the parties executed the Amendment on April 2, 2020, the pandemic was no longer "an event or effect the parties could not have anticipated or controlled." (Doc. No. 38, at 14 (quoting *ARHC*, 2019 WL 4694146, at *3). More specifically, the *Force Majeure* Clause itself specifically states that "[t]he ability to terminate pursuant to this clause is conditioned upon deliver[ing] written notice to the other party setting forth the basis for such termination within ten (10) days after learning of such basis." (Doc. No 10-1, at 14.) Ramsey Solutions did not actually terminate the Agreement for another three months after executing the Amendment, on July 3, 2020. In light of this delay, assuming that the pandemic is the *force majeure* upon which Ramsey's termination was premised, the court finds that, at a minimum, there is a question of fact as to whether Ramsey Solutions waived its ability to terminate based on that event by not giving timely notice.

2.    *COVID-Related Restrictions and Mask Mandate*

Although the plaintiff does not specifically define what "circumstances" it believes constitute the *force majeure* authorizing it to terminate the Agreement, the actual basis appears to be, not the pandemic itself, but the restrictions on social gatherings, the limitations on the provision of self-service food and beverage, the mask mandates, and other rippling effects of the pandemic which, it claims, changed continuously following execution of the Amendment up through the date of its Notice of Termination. Ramsey Solutions characterizes these effects as the "circumstances beyond [either party's] reasonable control" that justified its termination of the Agreement. (*See* Doc. No. 10-3 (referencing "[t]he global COVID-19 pandemic and the inadequate responses of Osceola County, the State of Florida, and Gaylord to that pandemic"); Doc. No. 33, at 10 ("Based on the language agreed to by the parties, Ramsey Solutions was well within its right to terminate the Palms Agreement as Defendant could not provide the services or amenities as outlined in the

Palms Agreement and could not otherwise fulfill the terms of the contract. . . . Rather, due to circumstances beyond either parties' control, the Hotel simply could not host the Event as outlined and agreed upon by the parties.").)

Marriott argues in response that this basis for terminating the Agreement fails, because "the events that allegedly caused Ramsey's nonperformance are not specifically identified in the *Force Majeure* Clause" and "do not fall within the 'catch-all' provision because they are not of the type as those specifically listed." (Doc. No. 38, at 10.) As discussed above, the principle of *ejusdem generis* is a common law principle of contract construction pursuant to which, "when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same type as those listed." *Ergas*, 114 So. 3d at 290. Under this principle, the "catch-all" phrase in the *Force Majeure* Clause does not broadly encompass *any* "circumstances beyond [a party's] control"; it only excuses performance based on such circumstances that are of the same type as those enumerated in the *Force Majeure* Clause. Marriott argues that, under this principal, "[t]he alleged inability to provide the services or amenities outlined in the contract [is] not specifically identified in the Force Majeure Clause and [does] not fall within the 'catch-all' provision because [it is] not of the type as those specifically listed (*i.e.*, acts of God, war, acts of domestic terrorism, or strikes)." (Doc. No. 38, at 13.)

The court is not fully persuaded. It appears that the COVID pandemic plus the attendant restrictions on business operations could, indeed, be deemed a *force majeure* that would authorize termination of the Agreement. The question is whether these conditions actually made performance of the contract, by either party, illegal or impossible.

### 3.    *Illegality*

With respect to illegality, the court declines to take judicial notice at this juncture of the numerous overlapping executive orders, CDC recommendations, and local ordinances in effect in

Osceola County related to the COVID-19 pandemic over the course of the spring and summer of 2020. Ramsey Solutions does not reference these in the Amended Complaint and nowhere alleges that travel to Florida or hosting or conducting the EntreSummit 2020 event at the Hotel was actually rendered illegal under any of these orders or ordinances, and Marriott disputes Ramsey Solutions' representations regarding the content and effect of the orders and ordinances.

Otherwise, the Amended Complaint alleges only that the Hotel placed "significant restrictions on the event and limitations on the use and enjoyment of the facilities such that Ramsey Solutions' first-rate event would become stilted and uncomfortable for the attendees." (Doc. No. 10 ¶ 8.) More specifically, it alleges that Gaylord Palms notified it that the Hotel Spa would be closed; half of the fitness machines at the fitness center would be deemed closed or unavailable; no valet parking would be available; social distancing and mask wearing during the meetings and social events would be required; passed hors-d'oeuvres, self-service buffets, and self-service beverages would not be made available; there would be limited capacity on elevators, at the swimming pool, and at restaurants; scheduled daily housekeeping services were suspended unless requested; and room service would not be available to deliver and set up in-room dining. (Doc. No. 10 ¶ 43.) The Hotel disputes most of these restrictions, admitting only that "(i) half of all fitness machines were to be deemed closed or unavailable due to social distancing requirements, (ii) masks were required, in accordance with the law, and (iii) set up for in-room dining service would not be available, but . . . room service delivery was available, to the extent safety protocols, reducing entry into rooms, were observed." (Doc. No. 21 ¶ 43.)

In other words, the only undisputed *legal* mandate imposed upon the Hotel, which it likewise imposed on to its guests, is the mask mandate. (*See* Doc. No. 10-4.) The court finds, as a matter of both fact and law, that requiring guests to wear masks did not render the use of any of

Marriott's facilities "illegal." With respect to the other allegations, the Hotel denies, as a factual matter, that the use of any of its other amenities was rendered illegal by federal, state, or local mandate. It also denies that these amenities were part of its "facilities" as the term is contemplated by the Agreement or that its ability to provide them was a material term of the Agreement. Ramsey Solutions does not actually respond to these arguments. The court must accept as true the facts as asserted by Marriott. Accordingly, the undisputed pleadings do not establish that use of the Hotel facilities was rendered illegal by the pandemic and the restrictions associated with it.

> 4.  *Impossibility*

Ramsey Solutions also claims that the same restrictions referenced above made it "impossible" for Gaylord Palms to "hold a first-class event for several thousand people, with all of the attendant high-end amenities including spa, gym, valet and room service as well as buffet food and beverage service through the day during the various events," as was contemplated by the Agreement. (Doc. No. 33, at 5–6.). In a footnote to its Motion (but not in the Amended Complaint), Ramsey Solutions further argues that it would have been "impossible" for Gaylord Palms to host the thousands of anticipated attendees, in light of the alleged "restrictions in place prohibiting large scale events and the other regulations imposed by the CDC and state and local governments." (Doc. No. 33, at 9 n.10.)

Marriott argues that the pandemic did not make its performance impossible: the Gaylord Palms stood ready and willing to host the EntreSummit 2020 at its facility, albeit with certain COVID-related restrictions and a mask mandate in place. It points out, again, that its Answer has denied Ramsey's allegations regarding the unavailability of most of the Hotel's amenities, but it also argues that the amenities to which Ramsey Solutions refers are neither contracted items nor contracted "Hotel facilities," such that "allegations of reduced non-contracted services and amenities do not make it 'impossible' for Ramsey to utilize the Hotel's facilities." (Doc. No. 38,

at 13.) It contends that, as part of the Agreement, Ramsey Solutions agreed to abide by all applicable rules, regulations, ordinances and the like, including health and safety codes. As a result, Marriott argues, Ramsey Solutions cannot simultaneously contend that compliance with such ordinances also made it "impossible" to hold its event pursuant to the *Force Majeure* Clause. In addition, regarding Ramsey's footnoted suggestion that Gaylord Palms was prohibited by government-imposed restrictions from hosting an event involving thousands of guests, Marriott contends that (1) Ramsey Solutions did not include this allegation in its Amended Complaint; (2) Marriott disputes as a factual matter the suggestion that it could not have accommodated the event, even with the implementation of social distancing; and (3) Ramsey Solutions has not alleged how many people had actually signed up to attend the event as of July 3, 2020, when it was cancelled.

The court finds, in short, that Ramsey Solutions has not established that it is entitled to judgment as a matter of law based on "impossibility" of performance for the same reasons that it has not established that it is entitled to judgment based on illegality of performance. There are questions of fact involving what Hotel amenities were actually curtailed, whether these amenities were part of the "Hotel facilities" as that term is used in the *Force Majeure* Clause, and, alternatively, whether the Hotel was otherwise contractually obligated to make these amenities available.

## IV.    CONCLUSION

For the reasons set forth herein, the court will deny the plaintiff's Motion for Judgment on the Pleadings. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge