## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| THE LAMPO GROUP, LLC d/b/a RAMSEY SOLUTIONS, a Tennessee Limited Liability Company, )))) | |
| *Plaintiff*, )) | Case No. 3:20-cv-00641 Judge Aleta A. Trauger |
| *v.* )) | |
| MARRIOTT HOTEL SERVICES, INC., A Delaware Corporation; ))) | |
| *Defendant*. )) | |
| MARRIOTT HOTEL SERVICES, INC., A Delaware Corporation, ))) | |
| *Counter-Plaintiff*, )) | |
| *v.* )) | |
| THE LAMPO GROUP, LLC d/b/a RAMSEY SOLUTIONS, a Tennessee Limited Liability Company, )))) | |
| *Counter-Defendant*. )) | |

## PLAINTIFF/COUNTER-DEFENDANT THE LAMPO GROUP'S
## MOTION TO AMEND AFFIRMATIVE DEFENSES TO COUNTERCLAIM AND
## <u>MEMORANDUM OF LAW IN SUPPORT THEREOF</u>

Plaintiff/Counter-Defendant The Lampo Group d/b/a Ramsey Solutions ("Ramsey Solutions") respectfully moves to amend its affirmative defenses to the Counterclaim asserted by Defendant/Counter-Plaintiff Marriott Hotel Services, Inc. ("Marriott") to include three additional affirmative defenses, pursuant to Rule 15 of the Federal Rules of Civil Procedure and Local Rule 15.01 of the Local Rules for the Middle District of Tennessee, and files its memorandum of law in support thereof. Attached as Exhibit "A" hereto is a copy of the [Proposed] Amended Answer and

Affirmative Defenses. For the reasons outlined below, Plaintiff respectfully requests the Court accept the [Proposed] Amended Answer and Affirmative Defenses to the Counterclaim as the operative response to the Counterclaim in this case.[1]

## I.    Introduction

Ramsey Solutions seeks to amend to add three affirmative defenses, the inclusion of which will not cause any prejudice to Marriott. The first two defenses relate to the liquidated damages provisions in the three Gaylord agreements. The third defense is predicated on allegations plead in the Amended Complaint (Dkt. 10), *to wit*: that the numerous limitations and restrictions imposed by Marriott materially altered the terms of the agreement thereby frustrating the purposes of the Palms Agreement.

As this Court is no doubt aware, Marriott has the burden on its Counterclaim of establishing its actual damages; where there are liquidated damages provisions, as here, Marriott has the burden of showing that the stipulated damages are reflective of its actual damages. On August 6, 2021, in response to discovery served by Ramsey Solutions directed to Marriott's actual damages,[2] Marriott took the position that Ramsey Solutions is not entitled to the information because Ramsey Solutions did not assert the defense of "illegality." While Ramsey Solutions does not believe the

---

[1] While Ramsey Solutions and Marriott were engaged in a meet and confer regarding this motion, this Court entered its *Order Resetting Case for Trial* on August 9, 2021 (Dkt. 53) moving the scheduled trial date from February 15, 2022, to April 5, 2022. Upon receiving the Order, Ramsey Solutions contacted counsel for Marriott to advise that both the undersigned counsel and its client have other currently scheduled trials during the week of April 5, 2022. As a result, the undersigned requested a meet and confer to discuss the conflicts so that the parties could immediately advise the Court of such. Ramsey Solutions is awaiting counsel for Marriott to advise on its position. .

[2] Attached as Composite Exhibit "B" are Ramsey Solutions Second Request for Production and Second Set of Interrogatories to Marriott (collectively, the "Discovery") that seeks information related to Marriott's *actual* damages, which loosely translates to its lost profits. The actual damages suffered, rather than the gross amount of the agreements at issue, properly deduct the expenses Marriott would have incurred if it fully performed under the agreements. The liquidated damages provisions sued upon by Marriott in its Counterclaim fail to reduce the gross revenue by the expenses and, therefore, would allow Marriott to obtain a windfall. As such, Ramsey Solutions contends the provision is unenforceable. The Discovery was served because Marriott did not submit an expert report on the claims for which it has the affirmative burden of proof. To ascertain the actual damages suffered, Ramsey Solutions then served the Discovery.

2

illegality defense applies, after learning of Marriott's position, Ramsey Solutions immediately prepared this motion seeking leave to add the same and the attached proposed amended pleading in an abundance of caution to preserve its rights. Thus, while Ramsey Solutions disputes that its argument on the contract language is based on the provisions being illegal (as opposed to being unenforceable as written), it nonetheless seeks leave to amend to add two defenses to address Marriott's objection. The information responsive to the Discovery is necessary so that Ramsey Solutions' damages expert can be prepared to testify--and for Ramsey Solutions to defend against--the damages sought in the Counterclaim, which amounts have no rationale relationship to Marriott's *actual* damages and are, indeed, a penalty.

Second, Ramsey Solutions seeks to add a third defense essentially incorporating the factual allegations in the Amended Complaint, which Ramsey Solutions has alleged resulted in Marriott's material alterations of the terms of the Palms Agreement. Marriott's conduct removing material terms of the parties' agreement—and even going so far as telling Ramsey Solutions on July 2, 2020, 10 days before the event, that it may even cancel the event either before or during-- frustrated the intent and purpose of the contract. The factual allegations underpinning this defense were plead and have been known to Marriott since July of 2020.

Notwithstanding the fact that the date for amending pleadings has passed, amendment is appropriate here for several reasons: (1) discovery is not over and, thus, Marriott has ample opportunity to conduct any discovery it deems appropriate;[3] (2) not a single deposition has been taken by either party; (3) Marriott was on notice of Ramsey Solutions' position regarding the enforceability of the liquidated damages provision based on the discovery served directed to the

---

[3] The current discovery cut-off is October 22, 2021. Dkt. 52. These dates were selected by the parties based on a trial date of February 15, 2022. Given that the trial date has now been moved, it is possible that the parties may discuss any further adjustments as the discovery progresses.

3

issue (Ex. B); (4) Ramsey Solutions is seeking leave to amend expeditiously after learning of Marriott's position regarding the "illegality" defense for the first time on August 6, 2021; (5) Marriott has the burden of proof to establish its actual damages suffered irrespective of the contractual provisions; (6) the allegations underlying the third additional defense relating to frustration of purpose have been known to Marriott since the filing of the initial Complaint; (7) allowing Ramsey Solutions to amend its affirmative defenses to merely add three defenses is not futile; and (8) there are many months until the trial of this cause and, therefore, there is no prejudice to Marriott. As outlined below, there is good cause to allow Ramsey Solutions to amend its affirmative defenses and doing so will serve justice and promote judicial efficiency.

## II.    Standard of Review

Ramsey Solutions should be granted leave to file its [Proposed] Amended Answer and Affirmative Defenses to Counterclaim merely adding three affirmative defenses. The procedural posture and the relevant factors relevant to amendment strongly mitigate in favor of that result. Leave to amend shall be freely given "when justice so requires"—and that "mandate is to be heeded." Rule 15(a)(2) ("The court should freely give leave when justice so requires"); *Ross v. Kopocs*, No. 1:14-CV-60-SKL, 2015 WL 926580, at *2 (E.D. Tenn. Mar. 4, 2015);[4] *Kernal Recs. Oy v. Mosley*, 794 F. Supp. 2d 1355, 1370 (S.D. Fla. 2011); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Miller v. United States*, 561 F. App'x 485, 489 (6th Cir. 2014). The liberality of amendment is predicated on "the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman*, 371 U.S. at 181-82 (internal citations omitted).

---

[4] Fed. R. Civ. P. 15(d) provides, "On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d).

4

As the Sixth Circuit has made clear, "[t]he thrust of Rule 15 is to reinforce the principle that cases should be tried on their merits rather than the technicalities of pleadings." *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982) (citing *Conley v. Gibson*, 355 U.S. 41, 48 (1957)). Amendment must be permitted where there is no (i) undue prejudice to the opposing party, (ii) undue delay,[5] (iii) bad faith, or (iv) futility of the proposed amendment. *Prater v. Ohio Educ. Ass'n*, 505 F.3d 437, 445 (6th Cir. 2007); *Janikowski v. Bendix Corp.*, 823 F.2d 945, 951 (6th Cir. 1987); *Ross v. Kopocs*, No. 1:14-CV-60-SKL, 2015 WL 926580, at *2 (E.D. Tenn. Mar. 4, 2015); *Caplinger v. Ocwen Loan Servicing, LLC*, No. 8:14-CV-3214-T-35MAP, 2015 WL 12938924, at *1 (M.D. Fla. Dec. 2, 2015) ("[a] court may consider an affirmative defense that did not appear in the answer, if the plaintiff has suffered no prejudice from the failure to raise the defense in a timely fashion.") (internal citations omitted).

"Leave to amend must generally be granted unless equitable considerations render it otherwise unjust." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962) and *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993)); *Ross v. Kopocs*, No. 1:14-CV-60-SKL, 2015 WL 926580, at *2 (E.D. Tenn. Mar. 4, 2015); *Caplinger v. Ocwen Loan Servicing, LLC*, No. 8:14-CV-3214-T-35MAP, 2015 WL 12938924, at *1 (M.D. Fla. Dec. 2, 2015) (the "court has focused in avoiding hyper-technicality in pleading requirements.") "In the absence of substantial or undue prejudice, denial [of a motion to amend] must be grounded in bad faith or dilatory motives, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment." *Heyl &*

---

[5] "Delay alone is not a ground for denying leave to amend." *Snead v. Mohr*, No. 2:12-cv-00739, 2014 U.S. Dist. LEXIS 31327, at *5 (S.D. Ohio Mar. 11, 2014) (citing *Dana Corporation v. Blue Cross & Blue Shield Mutual*, 900 F.2d 882, 888 (6th Cir. 1990)).

5

*Patterson Int'l, Inc. v. F.D. Rich Housing of V.I., Inc.*, 663 F.2d 419, 425 (3d Cir. 1981) (citing

*Foman*, 371 U.S. at 182).

"[T]he burden is on the party opposing the amendment to show prejudice, bad faith, undue delay, or futility." *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 700 (E.D. Pa. 2007). As outlined below, Marriott cannot establish any of these elements. This is particularly true where, as here, Ramsey Solutions has not previously sought leave to amend, the limited nature of the amendment sought and there is several months before discovery closes.

### III.    Procedural History

Ramsey Solutions filed its Complaint against Marriott on July 23, 2020 (Dkt. 1), and amended as a matter of right on July 30, 2020 to include a separate Marriott related entity.[6] Dkt. 10. After an extension (Dkts. 15, 16), Marriott served its Answer, Affirmative Defenses and Counterclaim on August 28, 2020. Dkt. 21. On September 27, 2020, Ramsey Solutions served its Answer and Affirmative Defenses to the Counterclaim. Dkt. 27.

Thereafter, on October 12, 2020, the parties filed their [Proposed] Initial Case Management Order (Dkt. 28), adopted by this Court on October 19, 2020, scheduling, among other things, the trial for February 15, 2022, and establishing a discovery cut-off of June 30, 2021. Dkt. 31. The deadline to amend the pleadings was December 15, 2020, but as noted below, many of the deadlines have been extended by agreement of the parties and Ramsey Solutions has never objected to any of the requests of Marriott to extend deadlines. Most recently, Ramsey Solutions did not object to Marriott's request to extend the deadline to submit its rebuttal expert report, to extend fact discovery and the deadline to submit dispositive motions; the parties thus filed a joint

---

[6] Marriott later stipulated that notwithstanding public documents that suggested that Marriott International owned the Gaylord properties at issue, the correct party is Marriot Hotel Services, Inc. As a result, the separate Marriott defendant was dismissed without prejudice.

motion on August 6, 2021. Dkt. 49. The discovery was extended from September 3, 3021 to October 22, 2021.[7]

On the same day, August 6, 2021, Marriott served its Responses and Objections to Plaintiff's Second Set of Interrogatories to Marriott, and on August 10, 2020 it served its Responses and Objection to Plaintiff's Second Request for Production (collectively, the "Objections"). A copy of both responses are attached as Composite Exhibit "C." In the Objections, Marriott failed to provide any responsive information, claiming that because Ramsey Solutions did not raise the defense of "illegality" it was not entitled to the information related to Marriott's actual damages sustained by the claimed breach. While Ramsey Solutions does not agree with Marriott's position, it nonetheless seeks to amend its affirmative defenses in an abundance of caution to ensure that the merits of this case are fully before the Court.

Ramsey Solutions does not believe that illegality is the appropriate defense here; rather, it is Ramsey Solutions position that the liquidated provisions are unenforceable on their face because they purport to provide as damages more than Marriott could have ever recovered if it fully performed the contracts. Here, the relevant provisions provide for an award of gross revenues (the total contract price) as stipulated damages, not net revenues, which takes into consideration the expenses Marriott would have incurred had the agreements been fully performed. It is Marriott's burden of proof to establish its damages even where there is a liquidated damages provision. In short, the provisions unenforceable rather than illegal as Marriott argues. As to the third defense

---

[7] The Discovery seeking relevant information about Marriott's actual damages was served within the earlier discovery period, and the responses to the same were likewise due within the earlier discovery deadline. By the Discovery (as well as well-established legal authority), Marriott was on notice that Marriott may only recover its actual damages and is not entitled to a windfall (meaning the total revenues without any reduction for the expenses e incurred to obtain those revenues). *MCA Television Ltd. v. Pub. Int. Corp.*, 171 F.3d 1265, 1276 (11th Cir. 1999) ("Under Florida law, when a damages clause is held to be an unenforceable penalty, the party seeking to recover for the breach must allege and prove his actual damages.") (internal citations omitted); *Keck v. Meek*, No. E201701465COAR3CV, 2018 WL 3199220, at *15 (Tenn. Ct. App. June 28, 2018). This legal precept is elemental.

that Ramsey Solutions seeks to add, the factual underpinnings supporting that defense have been known to Marriott since the filing of the initial pleading and requires no new or different discovery than what Marriott is already seeking. It is merely allowing Ramsey Solutions to add as a defense effectively what it has plead affirmatively. To ensure that the merits of this case are adjudicated, Ramsey Solutions seeks leave to amend to add three affirmative defenses, none of which prejudice Marriott in any way.

## IV.     Relevant Contractual Provisions

Each of the relevant agreements has what equate to liquidated damages provisions. These provisions, however, are not enforceable under Florida or Tennessee law. All three of the contracts at issue were executed in 2017 for events that would take place in 2020, 2021 and 2022, respectively.

A. *Palms Agreement.*

The Palms Agreement was executed in September of 2017, and amended March 27, 2020. The Agreement has two provisions relating to cancellation, only one of which Marriott has sued upon. That provision states:

### CANCELLATION POLICY

Group agrees that it bears responsibility for payment for the Room Block and the F&B Guarantee. Group also agrees that the Hotel will suffer actual harm that will be difficult to determine if the Group cancels this Agreement after the date hereof for the reasons other than those specified in this Agreement. **The Group will pay as liquidated damages to the Hotel, depending upon the timing of such cancellation, the following amounts, as a reasonable estimate of harm to Hotel for the cancellation:**

| Time Period of Cancellation | Amount of Liquidate Damages Due |
|---|---|
| 0-180 days prior to Arrival | 100% of total room revenue plus 75% of F&B Guarantee |
| 181-365 days prior to Arrival | 75% of total room revenue* plus 50% of F&B Guarantee |
| 366-551 days prior to Arrival | 40% of total room revenue |
| 552 or more days prior to Arrival | 10% of total room revenue |

The term "total room revenue" means the dollar amount equal to the Room Block multiplied by the Group's average room rate, exclusive of resort fee.

8

> Such amount (the "Cancellation Charge") will be due and payable due within 30 days of the date of cancellation, and accrue interest at the rate of 1.5 percent per month (or, if less, the maximum amount permitted by law). If required by the applicable jurisdiction, the Group will pay sales and/or other applicable taxes with respect to the Cancellation Charge outlined above.

Palms Agmt. p. 13 (emphasis supplied).[8] According to its Counterclaim (Count I) (Dkt. 21), Marriott seeks damages, claiming that the "cancellation by Ramsey Solutions of the Palms Event occurred between '0-180 days prior to arrival'" (Counterclaim, ¶¶24-28), entitling Marriott to keep the $1,212,950.45 deposit made by Ramsey Solutions and claiming Ramsey Solutions owes an additional $658,599.55 in damages under the Cancellation Policy. Although the Amendment to the Palms Agreement had a substantial reduction in the Food & Beverage Minimum and room requirements, it nonetheless reverts to the Palms Agreement for the liquidated damages based on the original minimums. Amendment, p. 12.

     B. *Texans Agreement and Rockies Agreement*.

The Texas Agreement and Rockies Agreements have the identical "Cancellation Policy" and "Cancellation in the Event of Change in Meeting Site" language as the Palms Agreement. Texas Agreement, p.11; Rockies Agreement, p. 10.[9] In Count II of the Counterclaim, Marriott

---

[8] There are other provisions in the Palms Agreement that reference liquidated damages. *See, e.g.*, Palms Agreement, Food and Beverage Pricing: Food and Beverage Guarantee (p.11) (claims the right to liquidated damages); Attrition provision (p. 12) (refers to right to liquidated damages) and Cancellation in Event of Change in Meeting Site (p.13) (references entitlement to liquidated damages). Other than parroting the buzz words that its damages would be difficult to calculate, there is no evidence that the amount of damages is not ascertainable; the opposite is true as Marriott could have easily ascertained profit margin as it does so every day when it prices its agreements.

[9] These agreements also contain a provision referred to as the "Performance Clause", which states:

> It is understood that the booking of Gaylord Texan for Ramsey Solutions EntreLeadership Summit May 2021 is part of the following multiple bookings with Gaylord Hotels (each, a "Prior Event"): Ramsey Solutions EntreLeadership Summit May 2020 at Gaylord Palms and Ramsey Solutions EntreLeadership Summit May 2022 at Gaylord Rockies. Ramsey Solutions will have the right to cancel this Agreement without liability in the event of the following: (i) if, within thirty (30) days following the last day of the Prior Event, Ramsey Solutions givens written notice to Gaylord Hotels detailing material service or performance issues by Gaylord Hotels at the Prior Event; and (ii) the Hotel does not propose and implement a plan addressing the issues raised in Ramsey Solution notice.

seeks "75% of the total room revenue plus 50% of F&B Guarantee" for a cancellation occurring between "181-365 days prior to arrival" of the Texan Agreement. Counterclaim, ¶¶49-52. Marriott seeks $1,383,507.80 as damages for the termination of the Texan Agreement although the Performance Clause was involved. *Id*. at ¶67. In Count III of the Counterclaim, Marriott seeks $562,357.60 under the Cancellation Policy, claiming 40% of room revenues are owed because Ramsey Solutions cancelled between 366-729 days prior to arrival. *Id*., ¶¶88-90 and 99. Ramsey Solutions submits that these provisions are facially unenforceable because Marriott is not entitled to recover as damages more than it would have recovered had the contracts been performed. Given that Marriott has the affirmative burden of proof on its damages, it is incumbent upon Marriott to establish that the damages in the liquidated damages provisions equate to its actual damages. Marriott has failed to provide any evidence establishing as much.

<h3 style="text-align:center">V.     Argument</h3>

A. *Illegality Defense*.

The affirmative defense of illegality of a contract arises when a party claims that performance is illegal and, therefore, the party should be excused from further performance. *Lucas Games, Inc. v. Morris Associates, LLC*, 2016 WL 3745372 (Fla. 4th DCA 2016); *see also Novak v. Gray*, 469 Fed. Appx. 811, 813-14 (11th Cir. 2012) (defendant has burden of proving defense of illegality of contract); *Hermitage House Square, L.P. v. England*, 929 S.W.2d 356, 359 (Tenn. Ct. App. 1996) (burden of proof is on the defendant to prove the affirmative defense of illegality).

---

Texans Agreement, p.10; Rockies Agreement, p. 10.

But here it is Marriott's burden of proof to establish its damages sought in its Counterclaim including that the liquidated damages accurately reflects its *actual* damages.[10] *MCA Television Ltd. v. Pub. Int. Corp.*, 171 F.3d 1265, 1276 (11th Cir. 1999) ("Under Florida law, when a damages clause is held to be an unenforceable penalty, the party seeking to recover for the breach must allege and prove his actual damages.") (internal citations omitted); *Keck v. Meek*, No. E201701465COAR3CV, 2018 WL 3199220, at *15 (Tenn. Ct. App. June 28, 2018). Ramsey Solutions contends that the liquidated damages provisions are unenforceable as written because they fail to reduce the gross revenues by the amount of expenses Marriott would have incurred to perform under the agreement. This is facially obvious from a review of the agreements and is thus a matter of law for this Court. Ramsey Solutions does not assert that the provision is statutorily or otherwise illegal, which is what the defense of illegality refers to.

But even if Marriott's position were correct that the illegality defense applies, there is authority for the proposition that the defense of illegality cannot be waived because a court may not enforce a contract that is illegal or contrary to public policy. *E.g., Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 102 S. Ct. 851, 70 L. Ed. 2d 833 (1982) (the Supreme Court held that a federal court has the "duty to determine whether a contract violates federal law before enforcing it. 'The power of the federal courts to enforce the terms of private agreements is at all times exercised subject to the restrictions and limitations of the public policy of the United States as manifested in ... federal statutes.... Where the enforcement of private agreements would be violative of that policy, it is the obligation of the courts to refrain from such exertions of judicial power.'"); *see also Hurd v. Hodge*,

---

[10] The law provides that a term fixing unreasonably large liquidated damages is not just compensation and operates as a penalty. Under these circumstances, the liquidated damages clause is unenforceable, and the nonbreaching party is not entitled to recover the damages specified in the contract but must prove *actual* damages. 22 AM. JUR. 2D Damages §§ 506, 507 (August 2017 Update).

11

334 U.S. 24, 68 S. Ct. 847, 92 L. Ed. 1187 (1948);[11] *Riverside Park Realty Co. v. Fed. Deposit Ins. Corp.*, 465 F. Supp. 305, 311 (M.D. Tenn. 1978) ("courts will not lend their aid for the enforcement of a contract which is in violation of the law of the land"); *Gonzalez v. Trujillo*, 179 So. 2d 896, 897 (Fla. 3rd DCA 1965) ("The principle that courts will not enforce illegal contracts is well established"). !

Thus, contrary to Marriott's objection raised in response to the Discovery, the defense of illegality cannot be waived, assuming arguendo that is the nature of the defense being raised here as Marriott contends, as the court cannot enforce an illegal contract. *Nyhus v. Travel Management Corp.*, 466 F.2d 440, 447 (D.C.Cir.1972); *California Pacific Bank v. Small Business Admin.*, 557 F.2d 218, 223 (9th Cir. 1977); *see also Lewis & Queen v. N. M. Ball Sons*, 8 Cal. 2d 141, 308 P.2d 713 (1957); 17B C.J.S. Contracts § 911 ("Illegality is an affirmative defense but is not waived by a failure to plead it if the contract violates public policy or the illegality is apparent on the face of the complaint or contract."). That said, in an abundance of caution, given Marriott's objection to the Discovery, Ramsey Solutions seeks to amend its defenses and respectfully requests this Court

---

[11] There is likewise ample authority that provides that whether a liquidated damage clause is a valid and enforceable or an improper penalty is a question of law. *See, Comar Marine, Corp. v. Raider Marine Logistics, L.L.C.*, 792 F.3d 564, 2015 A.M.C. 1978 (5th Cir. 2015); *Boone Coleman Constr., Inc. v. Piketon*, 145 Ohio St. 3d 450, 2016-Ohio-628, 50 N.E.3d 502 (2016); *Rumsey v. Gillis*, 329 Ga. App. 488, 765 S.E.2d 665 (2014), cert. denied, (Mar. 30, 2015); *see also Slinski v. Bank of America, N.A.*, 981 F. Supp. 2d 19 (D.D.C. 2013) (applying District of Columbia law), based on the facts of the case. *Southern Elec. Corp. v. Utilities Bd. of City of Foley*, Ala., 643 F. Supp. 2d 1302 (S.D. Ala. 2009) (applying Alabama law). Further, in *Cain v. Burns*, 131 Cal. App. 2d 439, 442, 280 P.2d 888, 890 (1955), the court opined:

> So far as applicable to the circumstances of this case, the authorities seem clear that although generally illegality of a contract is a defense which must be pleaded, that rule is qualified as follows: (1) ***where the illegality appears on the face of the contract***, or (2) where the evidence which proves the contract discloses the contract's illegality.

(emphasis supplied). Here, it is evident on the face of the various agreements that the liquidated damages provisions provide for the total contract value without any reduction for expenses. As a result, the provisions stipulated damages have no relationship to the actual damages resulting in an improper windfall to Marriott. Thus, the provisions serve as a penalty and are not enforceable.

12

to accept the attached [Proposed] Amended Answer and Affirmative Defenses as the operative pleading.

### B.  Frustration of Purpose.

Performance of a contract may be excused when the overall purpose of the contract has been frustrated or negated by unanticipated changed circumstance.  *Hilton Oil Transport v. Oil Transport Co., S.A.*, 659 So.2d 1141 (Fla. 3d DCA 1995); *see also Bland v. Freightliner, LLC*, 206 F. Supp. 2d 1202 (M.D. Fla. 2002) (quoting *Crown Ice Mach. Leasing Co. v. Sam Senter Farms, Inc*., 174 So. 2d 614, 617 (Fla. 1965); *Eastern Air Lines, Inc. v. Gulf Oil Corp.*, 415 F.Supp. 429 (S.D. Fla. 1975).  Many of the unilateral changes imposed by Marriott are outlined in the Amended Complaint; most of these restrictions were not required, as Marriott implies, by federal, state or local law, regulation or ordinance, but they did materially change the terms of the Palms Agreement.  Although the allegations are outlined in Ramsey Solutions affirmative pleading, it merely seeks to add a defense to the Counterclaim as well.  It would be inequitable and prejudicial to enforce the Palms Agreement where the benefit of the bargain was removed by Marriott. Ramsey Solutions seeks to merely add a defense to cover this position, which has been known to Marriott since the lawsuit was filed.

### C.  All of the Elements Supporting Amendment are Present Here.

#### 1.  Plaintiffs' Proposed Amendment Will Not Prejudice Marriott.

In evaluating any prejudice, this Court must consider "whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction." *Phelps v. McClellan*, 30 F. 3d 658, 662–663 (6th Cir. 1994); *Solu-Med, Inc. v. Youngblood Skin Care Prod., LLC*, No. 19-60487-CIV,

2020 WL 3487881, at *2 (S.D. Fla. June 4, 2020) (no prejudice when the Court could reopen discovery relating to the affirmative defenses). Instead, the Sixth Circuit "has required 'at least some significant showing of prejudice' to deny a motion to amend based solely on delay." *Prater*, 505 F.3d at 445 (quoting *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986) (per curiam); *Carmody v. Fla. Ctr. for Recovery, Inc.*, No. 05-14295-CIV, 2006 WL 8433755, at *1 (S.D. Fla. Dec. 15, 2006) (objecting party must demonstrate some specific prejudice and not merely a "naked allegation of prejudice."). An example of such significant prejudice would be allowing an amendment after discovery is closed and after summary judgment motions are fully briefed. *Siegner v. Twp. of Sal*em, 654 F. App'x 223, 228 (6th Cir. 2016) ("Allowing an amendment after discovery is closed and summary judgment motions are "fully briefed" imposes significant prejudice on defendants."); *In re Engle Cases*, 767 F.3d 1082, 1115(11th Cir. 2014) (waiting four years to bring 588 mistakes to the Court's attention was reason to deny the motion).

Here, allowing the proposed amendment will not prejudice—let alone significantly prejudice— Marriott. First and foremost, with respect to the "illegality" defenses, Marriott has the affirmative burden of prove its damages and that the provisions at issue result in an award of actual damages. Marriott must also establish that its actual damages were not ascertainable in order to enforce the liquidated damages provisions. The very same evidence is needed for Marriott as Ramsey Solutions will need to establish its defenses, so there is no prejudice to Marriott. The same is true with respect to the frustration of purposes defense, which is predicated on the same factual allegations as raised in the Amended Complaint. The three defenses are narrowly tailored and arise merely from this Court's authority to interpret the plain language of the parties' agreements or are based on allegations plead more than a year ago (and therefore no new or different discovery would be necessary than already required).

14

As noted above, it is Marriott's burden to establish its damages (which includes its burden to show that any liquidated damages reflect its actual damages and that the actual damages were difficult to ascertain). It cannot be disputed that Marriott had the relevant information to have set stipulated damages that excludes its expenses associated with performance, but it failed to do that. Marriott drafted the agreements at issue and could have drafted them in a way that the liquidated damages provisions would be enforceable. Instead, it crafted these provisions as a heavy-handed attempt to recoup a windfall; that is not the fault of Ramsey Solutions, however.[12] With regard to the frustration of purpose defense, the defense is based on the same underlying factual allegations laid out in the Complaint and Amended Complaint and, thus, have been known to Marriott for more than a year. The same discovery required to defend against the Amended Complaint is relevant to any affirmative defense.

This Court recently moved the trial date and there are several months remaining in the discovery period. This case is still at an early stage of discovery as no depositions have been taken and written discovery is still being exchanged. The trial is not currently scheduled to take place until April 5, 2022. Under these circumstances, there simply is no prejudice to Marriott if Ramsey Solutions were to add these three defenses. The failure to grant leave will prejudice Ramsey Solutions. There is strong public policy that supports having cases tried on their merits and granting this motion ensures that this will occur here.

        2.   Ramsey Solutions Has Not Delayed in Seeking Leave to Amend.

There has been no delay in Ramsey Solutions seeking leave to amend its defenses. Rather, with respect to the liquidated damages related defenses, immediately after Marriott failed to serve

---

[12] Marriott—a sophisticated publicly-traded entity—undoubtedly has information regarding its profit margins, general costs and other financial metrics that would have allowed it to include a stipulated amount that is reflective of its actual damages.

15

an expert report supporting its Counterclaim damages, Ramsey Solutions served the Discovery to identify any actual damages suffered by Marriott so that Ramsey Solutions could have its expert determine whether the liquidated damages have any relationship to Marriott's actual damages suffered. Marriott objected to the Discovery on August 6th and 10th (after obtaining an extension to respond) claiming that Ramsey Solutions was not entitled to information because it did not assert the defense of illegality. While Ramsey Solutions does not agree that illegality is the basis of its position or that this Court does not have the inherent authority to interpret the language of the agreements, based on Marriott's objection, Ramsey Solutions seeks leave to amend its affirmative defenses to ensure that the issue is heard on the merits.

Given Marriott's objection, Ramsey Solutions seeks leave to file its Proposed Amended Answer and Affirmative Defenses adding two additional defenses relating to the interpretation and ultimately the enforcement of the liquidated damages provisions in the various agreements.[13] No discovery is necessary for this Court to interpret the validity of the provisions at issue. To the extent that Marriott believes the liquidated damages are reflective of its actual damages, it has the burden of proof and, thus, should have produced the information in any event. Regardless the amendment should be granted given that no deposition discovery has commenced and there is more than sufficient time remaining for any discovery to take place if Marriott believes that is necessary. The same is true of the frustration of purpose defense as the allegations underlying this

---

[13] From Ramsey Solutions perspective the provisions at issue are not illegal; rather, on their face they are not enforceable because they fail to reflect the actual damages suffered by Marriott. In the various agreements, Marriott seeks the recovery of the gross revenues, not its lost profits. For this reason, the provisions fail to consider the costs associated with having performed the agreements (much less any mitigation efforts it was required to take to obtain replacement events for the Texan Event and the Rockies Event scheduled for May of 2021 and May of 2022, respectively). For this reason, rather than being illegal, the provisions are unenforceable because they are written such that Marriott will recover more than its actual damages. This grants a windfall to Marriott, giving it more than it would have received had it fully performed under the agreements

16

defense are the same as those supporting the Amended Complaint. In sum, there remains ample time before discovery closes, and many months before trial.

### 3. Plaintiffs' Proposed Amendment Is Not Made in Bad Faith.

Although Ramsey Solutions does not believe any discovery is necessary as it relates to any of the additional affirmative defenses, even if discovery were necessary, discovery is not closed. On the contrary, Marriott recently asked Ramsey Solutions to extend the discovery period (which was previously closing on September 3) to October 22nd. Ramsey Solutions agreed and a Joint Motion to Modify the Scheduling Order was filed on August 6, 2021. Ramsey Solutions does not anticipate that there will be any need to change the current discovery cut-off date based on the narrow amendment requested, but certainly if Marriott believes additional discovery is necessary Ramsey Solutions does not object.

Ramsey Solutions position regarding the unenforceability of the provisions at issue is well grounded in applicable law as its argument regarding the changes to the Palms Agreement imposed by Marriott, which removed the benefit of the bargain to Ramsey Solutions. Under the facts here, this motion should be granted, and Ramsey Solutions should be granted leave to amend. *See*, *e.g.* *Blumberg v. Ambrose*, No. 13-15042, 2015 U.S. Dist. LEXIS 50209, at *3-4 (E.D. Mich. Apr. 16, 2015) (no bad faith even though a plaintiff sought leave to amend "late in the schedule," and further holding that it would be "mere conjecture to infer bad faith from the mere passage of time" prior to seeking leave to amend); *In re Engle Cases*, 767 F.3d 1082, 1109 (11th Cir. 2014) ("mere passage of time, without more, is an insufficient reason to deny leave to amend a complaint"). *Hartford Cas. Ins. Co. v. Calcot, LTD.*, No. 07-CV-02405, 2009 WL 10699722, at *2 (W.D. Tenn. July 2, 2009) (no undue prejudice from an amendment sought after discovery was complete). There is no bad faith on the part of Ramsey Solutions as it immediately served the Discovery and

17

immediately prepared this motion and met and conferred with counsel for Marriott. There is no surprise to Marriott, and there certainly is no evidence that Ramsey Solutions did not promptly seek leave to amend.

### 4.  Ramsey Solutions' Proposed Amendment Is Not Futile or Frivolous.

Courts have held that whether a liquidated damage clause is valid and enforceable for stipulated damages, or is invalid as a penalty, is a question of law for the court. *See, Comar Marine, Corp. v. Raider Marine Logistics, L.L.C.*, 792 F.3d 564, 2015 A.M.C. 1978 (5th Cir. 2015); *Boone Coleman Constr., Inc. v. Piketon*, 145 Ohio St. 3d 450, 2016-Ohio-628, 50 N.E.3d 502 (2016); *Rumsey v. Gillis*, 329 Ga. App. 488, 765 S.E.2d 665 (2014), cert. denied, (Mar. 30, 2015), for the trial court, *Slinski v. Bank of 10America, N.A.*, 981 F. Supp. 2d 19 (D.D.C. 2013) (applying District of Columbia law), based on the facts of the case. *Southern Elec. Corp. v. Utilities Bd. of City of Foley, Ala.*, 643 F. Supp. 2d 1302 (S.D. Ala. 2009) (applying Alabama law).[14]

Here, it is undisputed that the liquidated damages provision seeks as damages the total revenues that would have been received had Marriott fully performed the contracts at issue, not its actual damages (which would necessarily require the reduction for the expenses that would have been incurred to perform under the various agreements).  Thus, Marriott will receive a windfall if it was permitted to recover under the provisions at issue.[15]  Similarly, Ramsey Solutions intends to submit evidence supporting its underlying claims that likewise establish that Marriott's unilateral changes to the Palms Agreement—virtually all of which were not required by federal,

---

[14] Some courts have found that although it is a question of law for the court, it may also require the resolution of questions of fact.  *See, e.g., JR Real Estate Development, LLC v. Cheeley Investment, L.P.*, 309 Ga. App. 250, 709 S.E.2d 577 (2011); *Magill v. Watson,* 409 S.W. 3d 673 (Tex. App. Houston 1st Dist. 2013).

[15] Ramsey Solutions has its dispositive motion prepared and was intending to file the same once Marriott responded to the Discovery.  Given the objection raised by Marriott, Ramsey Solutions is first filing this motion so that the objections raised by Marriott can be addressed by the proposed amendment.  As noted above, the issue of the enforceability is one of law and, therefore, does not require additional discovery.

18

state or local law—frustrated the intent and purpose of the Palms Agreement. Given the case law supporting Ramsey Solutions' position on the enforceability of these provisions and the narrow proposed amendment to its affirmative defenses, Plaintiff's proposed amendment adding two affirmative defenses is neither frivolous or futile.

## VI.    Conclusion

For the reasons set forth above, Plaintiff respectfully requests that the Court grant its motion for leave to file the proposed First Amended Answer and Affirmative Defenses to the Counter, which merely seeks to add two affirmative defenses as outlined in the attached proposed amended pleading.  Ramsey Solutions seeks this relief, in an abundance of caution, in the event that this Court agrees that it was required to assert "illegality" as an affirmative defense in order to assert that the liquidated damages provisions are unenforceable as a matter of law in that they grossly overstate Marriott's actual damages.

## <u>CERTIFICATE OF CONFERRAL IN GOOD FAITH<br>PURSUANT TO LOCAL RULE 7.01</u>

In accordance with the Local Rules, Ramsey Solutions conducted a meet and confer with counsel for Marriott, John Josefsberg, and provided him with a copy of this motion and the [Proposed] Amended Answer and Affirmative Defenses to Counterclaim.   Mr. Josefsberg represented that they oppose the motion.

19

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on **August 11, 2021** a true and correct copy of the foregoing

was electronically filed with the Clerk of the Court using CM/ECF,  and served upon:

Steven M. Rudner, appearing *pro hac vice*
John C. Josefsberg, appearing *pro hac vice*
RUDNER LAW OFFICES
12740 Hillcrest Road, Suite 240
Dallas, TX 75230
Telephone: (214) 373-1900
Facsimile: (214) 360-7845
Rudner@HotelLawyers.com
josefsberg@HotelLawyers.com

Stephen J. Zralek, No. 18971
BONE MCALLESTER NORTON PLLC
511 Union St., Ste. 1000*
Nashville, TN 37219
Telephone: (615) 238-6305
Facsimile: (615) 687-2763
szralek@bonelaw.com

Respectfully submitted,

By: */s/ Jennifer Altman*
Jennifer Altman
FL Bar No. 881384
Markenzy Lapointe
FL Bar No. 172601
PILLSBURY WINTHROP SHAW PITTMAN LLP
600 Brickell Avenue, Suite 3100
Miami, Florida 33131
Telephone: 786-913-4880
jennifer.altman@pillsburylaw.com
markenzy.lapointe@pillsburylaw.com

-and –

Ashley E. Cowgill (TN Bar No. 033042)
PILLSBURY WINTHROP SHAW PITTMAN LLP
500 Capitol Mall, Suite 1800
Sacramento, CA 95814
Telephone: 916-329-4721
ashley.cowgill@pillsburylaw.com

***Attorneys for The Lampo Group LLC
d/b/a Ramsey Solutions***

20