# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| THE LAMPO GROUP, LLC d/b/a RAMSEY,<br>a Tennessee Limited Liability Company, | ) ) ) ) | |
|     Plaintiff, | ) ) | |
| v. | ) ) | Case No. 3:20-cv-00641 |
| MARRIOTT HOTEL SERVICES, INC.,<br>a Delaware Corporation; | ) ) ) | Judge Aleta A. Trauger<br><br>JURY DEMAND |
|     Defendant. | ) ) | |
| _____ | ) | |
| MARRIOTT HOTEL SERVICES, INC.,<br>a Delaware Corporation, | ) ) ) | |
|     Counter-Plaintiff, | ) ) | |
| v. | ) ) | |
| THE LAMPO GROUP, LLC d/b/a RAMSEY,<br>a Tennessee Limited Liability Company, | ) ) ) ) | |
|     Counter-Defendant. | ) | |

## MARRIOTT HOTEL SERVICES, INC'S MEMORANDUM OF LAW IN OPPOSITION TO THE LAMPO GROUP'S MOTION TO AMEND AFFIRMATIVE DEFENSES TO COUNTERLCAIM

Defendant / Counter-Plaintiff Marriott Hotel Services, Inc. ("Marriott") hereby submits the following memorandum of points and authorities in opposition to the motion to amend affirmative defenses to counterclaim of Plaintiff / Counter-Defendant The Lampo Group, LLC d/b/a Ramsey Solutions (hereinafter, "Ramsey").

## MEMORANDUM OF POINTS AND AUTHORITIES[1]

## I.
## INTRODUCTION AND PREFATORY REMARKS

Nearly eleven months after filing its answer to Marriott's counterclaim, and with only two months remaining on the scheduling order to complete discovery, Ramsey seeks to add an affirmative defense challenging the enforceability of liquidated damages. The subject contracts contain identical liquidated damage clauses that specify the amount Ramsey agreed to pay Marriott for canceling its conferences.[2]

Since the deadline to file motions to amend the pleadings under the Court's Rule 16 scheduling order passed nearly nine months ago, Ramsey was required to file a motion under FRCP 16(b)(4) to amend the scheduling order prior to seeking leave to amend. Ramsey failed to do so. Ramsey's motion should be denied for this reason alone. Moreover, as demonstrated below, the proposed amendment will, at this late stage of the proceedings, greatly prejudice Marriott.

Even if Ramsey had properly sought to modify the scheduling order under Rule 16(b)(4), the result would be the same. The only plausible explanation for Ramsey's failure to raise an affirmative defense challenging the enforceability of the liquidated damage clauses is that Ramsey completely misapprehends the law governing liquidated damages.

Relief under FRCP 16(b)(4) expressly requires a showing of "good cause." Rule 16(b)(4)'s "good cause" primarily considers the diligence of the party seeking the amendment. "Ignorance of the law" is inconsistent with diligence and carefulness and does constitute good cause under Rule 16(b)(4). *Alexander v. Univ. of Memphis*, 2021 WL 2579973, at *5 (6th Cir. June 7, 2021)

---

[1] The Memorandum of Points and Authorities is 20 pages and does not exceed the 25 pages allowed by LR7.01(2).
[2] The contracts at issue obligate Ramsey to hold annual conference at the Gaylord Palms in July 2020, the Gaylord Texan in May 2021 and the Gaylord Rockies in May 2022 (hereinafter collectively referred to as the "Gaylord Contracts").

(*citing Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 971 (6th Cir. 1973), cert. denied, 416 U.S. 939, 94 S.Ct. 1942 (1974).

Ramsey is gravely mistaken about which party bears the burden of proof on enforceability of liquidated damages. Ramsey is equally misguided about whether the non-breaching party is required to put on evidence of actual damages in the absence of a proper affirmative defense. As a result of its misunderstanding of the law, Ramsey failed to assert as an affirmative defense its contention that the applicable liquidated damage clauses were unenforceable and did not discover its error until eleven months later. Ramsey's ignorance of the law, however, is an insufficient basis to establish "good cause" for modifying a scheduling order under FRCP 16(4)(b).

Ramsey also seeks to add "frustration of purpose"[3] and "illegal" liquidated damages[4] as additional affirmative defenses. As demonstrated below, Ramsey cannot establish the "good cause" necessary to inject these new additional defenses into the case at this late hour.

As discussed below, Ramsey's motion does not satisfy the applicable standard for modifying the scheduling order. The motion should be denied in its entirety.

## II.
## LEGAL ANALYSIS

**A.   Ramsey Was Required to Raise an Affirmative Defense Challenging the Enforceability of Liquidated Damages in its First Responsive Pleading**

---

[3] Ramsey's attempt to add "frustration of purpose" as an additional affirmative defense suffers from the same infirmities, and will be discussed fully below

[4] Ramsey's motion also seeks leave to add "illegality" as an additional affirmative defense to enforceability of liquidated damages. Ramsey states that, " while it does not believe the illegality defense" applies, it was asserting the additional affirmative defense out of an "abundance of caution" to "preserve its rights." [Mot. at 2-3] Marriott never claimed that the proper mechanism for challenging a liquidated damage clause is by raising the affirmative defense of "illegality," and Marriott immediately notified Ramsey that it was mistaken. Ramsey subsequently filed a so-called "Notice of Scrivener's Error" [Doc. No. 55], admitting that Marriott never took this position and that the error was due to Ramsey's "inadvertence." In light of Ramsey's "Notice of Scrivener's Error," coupled with its stated belief that illegality is not a proper affirmative defense to challenge enforceability of a liquidated damage clause, presumably Ramsey no longer seeks to add "illegality" as an additional affirmative defense to enforceability of liquidated damages.

Marriott's counterclaim seeks to recover liquidated damages against Ramsey for improperly terminating the Gaylord Contracts. In order to challenge the enforceability of a liquidated damage clause, the breaching party must raise an affirmative defense in its first responsive pleading. Because Ramsey failed to do so, the defense has been waived.

1.  <u>Federal Law Governs Whether an Affirmative Defense Has Been Waived in Federal Court</u>

Federal Rule of Civil Procedure 8(c) requires defendants to raise an affirmative defense in the first responsive pleading. *Brent v. Wayne Cty. Dep't of Human Serv.*, 901 F.3d 656 (6th Cir. 2018).

2.  <u>In a Diversity Case, Determining Whether a Defense Is an Affirmative Defense for FRCP 8(c) Purposes Is a Matter of State Law</u>

In a diversity case, determining whether a contention is an affirmative defense for FRCP 8(c) purposes is a matter of state law. *Roskam Baking Co. v. Lanham Mach. Co.*, 288 F.3d 895, 901 (6th Cir. 2002); *Cherry v. Apple CLK, LLC*, 2020 WL 5912814, at *3 (M.D. Tenn. Oct. 6, 2020) (citing *Roskam Baking*); *Brent v. Wayne Cty. Dep't of Hum. Servs.*, 901 F.3d 656, 680 (6th Cir. 2018) ("Federal law governs whether a defense has been waived in federal court, but state law governs which defenses must be pleaded affirmatively to avoid waiver."). Once a determination has been made as to whether a defense is an affirmative defense under state law, the Federal Rules of Civil Procedure provide the manner and time in which defenses are raised. *Brent,* 901 F.3d at 680.[5]

Thus, in order to determine whether Ramsey was required to assert an affirmative defense

---

[5] If a defense is an affirmative defense under state law, a state court determination that the affirmative defense is not waived under the state court rules of civil procedure if not pleaded is not binding on a federal court. *Technip Offshore Contractors v. Williams Field Servs.*, No. CIV.A.H 04 0096, 2006 WL 581273, at *14 (S.D. Tex. Mar. 7, 2006); *Bos. Pizza Restaurants, L.P. v. Bay Three Ltd., Inc.*, 2013 WL 12123895, at *6 (N.D. Tex. July 8, 2013). Instead, the issue of waiver of the affirmative defense is governed by the Federal Rules of Civil Procedure. *Id.*

challenging the enforceability of the liquidated damage clauses in its Answer, a separate choice of law analysis is required with regard to the Gaylord Contracts.

### 3. Under Tennessee's Choice of Law Rules, Determining Whether a Challenge to the Enforceability of the Liquidated Damage Clauses in the Gaylord Contracts Is an Affirmative Defense Is Governed by the Law of the States of Florida, Texas and Colorado

"In cases arising under the Court's diversity jurisdiction under 28 U.S.C. § 1332, the Court must apply the choice of law rules of the state in which the Court sits." *Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 501 (6th Cir. 2003). In Tennessee, in the absence of a choice of law provision in a contract, the law of the place where a contract is made governs the construction and validity of the contract. *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 466 (Tenn. 1973); *Trinity Commc'ns*, LLC v. Titan Glob. Ent., Inc., 2007 WL 9734647, at *5 (E.D. Tenn. Mar. 8, 2007) (same).

In contract cases, unless an exception to the general rule applies, Tennessee follows the rule of *lex loci contractus*. *Texas Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 672 (6th Cir. 2006) (applying Tennessee law); Ohio Cas. Ins. Co. v. Travelers Indem. Co., 493 S.W.2d 465, 467 (Tenn. 1973). This means that "a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent," such as a valid contractual choice-of-law provision. *Id.*

"The place of contracting is the place where the contract is consummated." *Chase Manhattan Bank, N.A. v. CVE, Inc.*, 206 F. Supp. 2d 900, 905 (M.D. Tenn. 2002); *see also Transit Bus Sales v. Kalamazoo Coaches*, 145 F.2d 804, 806 (6th Cir. 1944)("The general rule is that a contract is made where the last act necessary to make it a binding obligation is performed."); *accord, D.L. Peoples Grp., Inc. v. Hawley*, 805 So.2d 561, 563 (Fla. 1st DCA 2002)("[T]he last act necessary for a written contract is the last signature on the contract.

The Tennessee Supreme Court has carved out two exceptions to the general rule. *Solomon v. FloWarr Mgmt., Inc.*, 777 S.W.2d 701, 705 n.5 (Tenn. Ct. App. 1989). First, the parties may choose to be governed by the law of a state other than where the contract is made. *Id.* The second exception provides that, "[i]f the contract is made in one place, and it is agreed to be performed in another place, the law of the place of performance ... will govern the contract." *Id.*; *Edgington v. Edgington, 179 Tenn. 83, 162 S.W.2d 1082, 1085 (1942)*; *Frix v. Integrity Med. Sys., Inc.*, 2017 WL 4171987, at *4 (W.D. Tenn. Sept. 20, 2017).

The first exception does not apply because none of the Gaylord Contracts contain a choice of law provision. The second exception does not apply because Tennessee is not the place of performance in any of the Gaylord Contracts. Rather, the place of performance of the Palms Contract, the Texan Contract and the Rockies Contract is Florida, Texas and Colorado, respectively.

4. <u>Florida, Texas and Colorado Law Determine Whether Unenforceable Liquidated Damages Constitute an Affirmative Defense for Purposes of FRCP 8(c) Because the Palms Contract, Texan Contract and Rockies Contract Were Made In, and Were to Be Performed In, Florida, Texas and Colorado, Respectively</u>

Under the facts presented in the pleadings before the Court and applying the choice of law principals of the forum state, whether a challenge to a liquidated damage clause constitutes an affirmative defense will be decided under the laws of Florida, Texas and Colorado. Each of the Gaylord Contracts contain identical "ACCEPTANCE" provisions, which state:

> When presented by the Hotel to Ramsey Solutions, this document is an invitation buy the Hotel to Ramsey Solutions to make an offer. Upon signature by Ramsey Solutions, this document will be an offer by Ramsey Solutions. Only upon signature of this document by all parties will this document constitute a binding agreement.

[*See, e.g.*, Gaylord Contract, Ex. "A" to Marriott's Answer and Counterclaim (Doc. No.), p. 16] In other words, by the explicit terms of the Contract the signature of Ramsey was a predicate

act, constituting an offer. The agreement only becomes binding upon the signature of a Gaylord representative. Moreover, each of the Gaylord Contracts was countersigned by a Gaylord representative **after** Ramsey had affixed its signature to the Gaylord Contracts. Therefore, "the last act necessary to make" [the contract] a binding obligation" - i.e., the signature of a Gaylord representative - was performed in Florida, Texas and Colorado, respectively. Moreover, because the place of performance of the Palms Contract, Texan Contract and Rockies contract is Florida, Texas and Colorado, respectively, the law of the place of performance ... will govern the contract." *See, FloWarr Mgmt.*, *supra*, 777 S.W.2d 701, 705 n.5; Titan Glob. Ent., 2007 WL 9734647, at *5.

Under the clear choice of law rules of the forum state, Florida, Texas and Colorado govern whether a challenge to the enforceability of a liquidated damage clause constitutes an affirmative defense. *See Waste Services*, 367 F. Supp. at 802-03.

5.  Unenforceable Liquidated Damages Is An Affirmative Defense Under Florida, Texas and Colorado Law

A challenge to the enforceability of a liquidated damage clause is an affirmative defense under substantive laws of Florida, Texas and Colorado.[6] *Public Health Trust of Dade Co. v. Romart Constr., Inc.*, 577 So. 2d 636, 638 (Fla. App. 1991) (defense that liquidated damages are unreasonable or unenforceable is an affirmative defense); *see also J.M. Beeson Co. v. Sartori*, 553 So. 2d 180, 181 (Fla. Dist. Ct. App. 1989) ("where liquidated damages are attacked, it is the burden of the defendant to raise the excessiveness of the damages as an affirmative defense") (*citing* C.T. McCormick, Handbook on the Law of Damages at 622–623 (1977); *Urban Television Network Corp. v. Liquidity Solutions*, 277 S.W.3d 917, 919 (Tex.App.-Dallas 2009, no pet.) (An assertion

---

[6] While Tennessee law does not govern the rights of the parties under the contract, a challenge to the enforceability of a liquidated damages clause is also affirmative defense under Tennessee law. *Shelbyville Hosp. Corp. v. Mosley*, 2017 WL 5586729, at *14 (E.D. Tenn. Nov. 20, 2017) (*citing Anesthesia Med. Grp., P.C. v. Buras*, 2006 WL 2737829, at *3 (Tenn. Ct. App. Sept. 25, 2006).

that a liquidated damages provision is a penalty is an affirmative defense that the defendant has the burden of pleading and proving); *Fluid Concepts, Inc. v. DA Apts., LP*, 159 S.W.3d 226, 231 (Tex.App.-Dallas 2005, no pet) (same); *Town of Carbondale v. GSS Properties, LLC*, 169 P.3d 675, 681 (Colo. 2007) (If a defense is not raised in the answer or through a successful amendment of the answer, it is waived); *see also Duke v. Pickett*, 451 P.2d 288, 290 (1969) (holding that, under C.R.C.P. 8(c), a defendant "waives all defenses and objections which he does not present in his answer"); *Jobe v. Writer Corp.*, 34 Colo. App. 240, 241, 526 P.2d 151, 152 (1974) (defense that liquidated damages constitute an unenforceable penalty is an affirmative defense).

As shown above, by failing to raise an affirmative defense in its Answer challenging the enforceability of the liquidated damage clauses in the Gaylord Contracts, Ramsey has waived the defense.

**B.     Ramsey's Motion under Rule 15(a) Is Improper**

The deadline to amend pleadings is part of this Court's Initial Case Management Order (Doc. No. 31, par. "G"). Paragraph "G" of the Initial Case Management Order provides that, "[T]he parties shall file all Motions to Amend on or before December 15, 2020." Rule  16(b)(4) of the Federal Rules of Civil Procedure governs mandatory scheduling orders. This rules provides that: "[A] schedule may be modified only for good cause and with the judge's consent."

Ramsey moves to amend its pleadings under FRCP 15(a). [Mot. at 5]. Since the deadline to amend the scheduling order has passed, Ramsey's ability to amend its pleadings to assert additional affirmative defenses is governed by Rule 16(b), not Rule 15(a). *See Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C.1987) (party seeking to amend pleading after date specified in scheduling order must first show "good cause" for amendment under Rule 16(b), then, if "good

cause" be shown, the party must demonstrate that amendment was proper under Rule 15);

*Financial Holding Corp. v. Garnac Grain Co.*, 127 F.R.D. 165, 166 (W.D.Mo.1989) (same).

Ramsey's motion should be denied for this reason alone.

**C.     Even If the Court Were to Treat Ramsey's Motion as Having Been Filed under Rule 16(b)(4), Ramsey Cannot Satisfy the Rule's "Good Cause" Standard**

   1.     "Good Cause" under Rule 16(b)(4) Is Not Coextensive with Inquiry into the Propriety of an Amendment under Rule 15

Ramsey did not request that the Court modify its scheduling order; Ramsey merely moved

to amend its answer to Marriott's Counterclaim under FRCP 15(a).  "A court's evaluation of good

cause is not coextensive with an inquiry into the propriety of the amendment under ... Rule 15."

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992); *Forstmann*, 114 F.R.D.

at 85 (same). As the *Mammoth Recreations* court observed,

> Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Fed.R.Civ.P. 16 advisory committee's notes (1983 amendment); Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 469 (D.N.J.1990); Amcast Indus. Corp. v. Detrex Corp., 132 F.R.D. 213, 217 (N.D.Ind.1990); Forstmann, 114 F.R.D. at 85; 6A Wright, Miller & Kane, Federal Practice and Procedure § 1522.1 at 231 (2d ed. 1990) ("good cause" means scheduling deadlines cannot be met despite party's diligence). **Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.** Cf. Engleson v. Burlington Northern R.R. Co., 972 F.2d 1038, 1043 (9th Cir.1992) (carelessness not a ground for relief under Rule 60(b)); Martella v. Marine Cooks & Stewards Union, 448 F.2d 729, 730 (9th Cir.1971) (same), cert. denied, 405 U.S. 974, 92 S.Ct. 1191, 31 L.Ed.2d 248 (1972); Smith v. Stone, 308 F.2d 15, 18 (9th Cir.1962) (same). **Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. See Gestetner Corp. v. Case Equip. Co., 108 F.R.D. 138, 141 (D.Me.1985). If that party was not diligent, the inquiry should end.**

*Mammoth*, 975 F.2d at 609 (emphasis added).

2.    Ignorance Of The Law Is An Insufficient Basis For Modifying A Scheduling Order

As discussed above, ignorance of the law is an insufficient basis to establish good cause for modifying a scheduling order under FRCP 16(4)(b).  In *Troxel*, the plaintiff moved to amend the pleadings to present an alternative theory of recovery based on a modification to a license agreement that was already part of the record.  *Id.* According to the *Troxel* court, "[T]he only excuse offered for this delayed presentation is that Troxel misconceived the law." *Id.*  The plaintiff moved to amend the complaint to present a theory of law that is alleged to be consistent with prior law in the Sixth Circuit. *Id.*   The *Troxel* Court rejected plaintiff's argument, holding that:

> A misconception of the law is not an excuse for the late presentation of an alternative theory of recovery. No reason is shown why Troxel could not have presented its alternative theory initially. *Drackett Chemical Co. v. Chamberlain Co.*, 63 F.2d 853, 858 (6th Cir. 1933), the case relied on, was and still is the law of this Circuit. That Troxel misconceived the effect of *Lear v. Adkins*, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969), is of no consequence. A losing party can always argue in retrospect that he misconceived the law. Rule 15(a) mandates more of a showing than Troxel has presented here.

*Id.*

3.    Ramsey Has Not Established "Good Cause" to Amend the Scheduling Order to Assert the Affirmative Defense That Liquidated Damages Are Unenforceable

   a.    Ignorance of the Law Is Insufficient to Satisfy the "Good Cause" Requirement

Ramsey acknowledges that the deadline to amend the pleadings under Paragraph "G" of the Initial Case Management Order has passed. [Mot. at 6]  Ramsey's motion fails to mention, however, let alone discuss, the Rule 16(b)(4) "good cause" standard for modifying a scheduling order.  Instead, Ramsey's entire analysis is under Federal Rule 15, which governs motions to amend.

The only plausible explanation for Ramsey's failure to challenge liquidated damages by way of an affirmative defense is that Ramsey completely miscomprehends the law governing

liquidated damages. Ramsey's contends that; (1) Marriott has the burden of proving the enforceability of liquidated damages; and (2) absent a proper challenge to liquidated damages (*i.e*, by raising enforceability as an affirmative defense), Marriott was required to put on evidence of its actual damages.[7] If Ramsey is correct, then there would be no need to challenge liquidated damages at all, and pleading an affirmative defense would not be required. But that is not the law.

It is axiomatic that the burden of proving that the liquidated damage clause is unenforceable is on its challenger. *J.M. Beeson Co. v. Sartori*, 553 So.2d 180, 181 (Fla. App. 1989) ("where liquidated damages are attacked, it is the burden of the defendant to raise the excessiveness of the damages as an affirmative defense.") (citing C.T. McCormick, Handbook on the Law of Damages at 622–623 (1977); *Pub. Health Tr. of Dade Cty. v. Romart Const., Inc.*, 577 So. 2d 636, 638 (Fla. Dist. Ct. App. 1991) (where plaintiff did not raise in its answer to Defendant's counterclaim the affirmative defense that liquidated damages were unreasonable or unenforceable, the trial court had no authority to void the subject liquidated damages clause); The party asserting that a liquidated-damages clause is a penalty provision bears the burden of pleading and proof. *Garden Ridge, L.P. v. Advance Int'l, Inc.*, 403 S.W.3d 432, 438 (Tex. App. 2013) (same); *Gator Apple, LLC v. Apple Texas Restaurants, Inc.*, 442 S.W.3d 521, 535 (Tex. App. 2014) (same); *Bd. of Cty. Comm'rs of Adams Cty. v. City & Cty. of Denver*, 40 P.3d 25, 29 (Colo. App. 2001) (*citing Rohauer v. Little*, 736 P.2d 403 (Colo.1987).

It is also firmly established that actual damages need not be proved in order to enforce a liquidated damages provision. *Murray v. Hidden Lake Dev. Corp.*, 281 So.2d 537 (Fla. Dist. Ct. App. 1973) ("[A]ppellant's claim that actual damages must be proved in order to establish that the

---

[7] In its Motion, Ramsey incorrectly contends that: "As this Court is no doubt aware, Marriott has the burden on its Counterclaim of establishing its actual damages; where there are liquidated damages provisions, as here, Marriott has the burden of showing that the stipulated damages are reflective of its actual damages." [Mot. at 2]

{02283176.1 }

liquidated damages are not a penalty is refuted by the holding in Hutchinson. . ."); *Specialized Transp. of Tampa Bay, Inc. v. Nestle Waters N. Am., Inc.*, 2008 WL 4164931, at *3 (M.D. Fla. Sept. 5, 2008); *Community Dev. Serv., Inc. v. Replacement Parts Mfg., Inc.*, 679 S.W.2d 721, 727 (Tex. Ct. App. — Houston 1984, no writ) (The party seeking to enforce the clause is not required to offer evidence of actual damages); *c.f., Johnson Engineers, Inc. v. Tri-Water Supply Corp.*, 582 S.W.2d 555, 557 (Tex. Civ. App. 1979) (challenger obliged to prove the amount of non-breaching party's actual damages, if any, for the purpose of showing an absence of an approximation between the actual loss and the stipulated sum); *Esecson v. Bushnell*, 663 P.2d 258, 261 (Colo. App. 1983) ("liquidated damages clause was enforceable, even in the absence of proof of actual damages." (*citing Lundstrom v. Hackl*, 579 P.2d 85 (1974)).

Ramsey's ignorance of the law is further evidenced by its failure to understand the nature of an affirmative defense. An affirmative defense is an "assertion of facts and arguments that, if true, will defeat the plaintiff's ... claim, even if all the allegations in the complaint are true." *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir.2003); *see also Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1, 6 (Tenn.2008) (explaining that the "most commonly understood definition" of affirmative defense is a "matter asserted by defendant which, assuming the complaint to be true, constitutes a defense to it") (citations omitted). It is a defense on which the defendant has the burden of proof. *See, e.g., Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489, 492 n. 4 (9th Cir.1988).

As discussed above, Ramsey contends that Marriott bears the burden of proof on the enforceability of liquidated damages. Although Ramsey is incorrect about which party bears the burden of proof, it is absurd for Ramsey to move to amend to assert as an affirmative defense that which it claims it need not prove. *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*,

718 F. Supp. 2d 1167, 1174 (N.D. Cal. 2010). Once again, the only plausible explanation for Ramsey's failure to assert an affirmative defense is its ignorance of the law. Because "carelessness" and "ignorance of the law" is not compatible with a finding of diligence under FRCP 16(b)(4), Ramsey has offered no valid reason for a grant of relief. *Mammoth Recreations*, 975 F.2d at 609; *Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 971.

      4.    <u>Ramsey Has Not Acted Diligently</u>

Ramsey waited nearly eleven months before moving to amend its Answer to assert the affirmative defense that liquidated damages are unenforceable [Mot. at 6] Yet, as demonstrated above, the only possible explanation for Ramsey's delay is that it was unaware that it was required to raise the affirmative defense in its first responsive pleading and that it was mistaken about the substantive law governing liquidated damages. "Counsel's ignorance of the law is inconsistent with diligence and carefulness and, thus, cannot constitute good cause under Rule 16(b)(4)." *Billingsley v. Orr*, 2015 WL 1538789, at *3 (N.D. Ala. Apr. 7, 2015); *Shilling v. Corr. Corp. of Am.*, 2016 WL 3952118, at *1 (N.D. Ohio July 22, 2016) (same).

Ramsey's lack of diligence is evidenced by more than the length of time between filing its Answer and motion to amend. Ramsey served its first set of requests for documents on January 19, 2021. Request number 8 requires Marriott to "Produce all documents supporting any claim for damages claimed in connection with Your Counterclaim." Marriott responded on March 5, 2021. Marriott provided all documents supporting its claim for liquidated damages, including copies of the Gaylord Contracts, cancellation invoices and documents reflecting how liquidated damages were computed under the terms of the Gaylord Contracts.

On June 22, 2021, Ramsey sent a letter purporting to constitute its attempt to meet and confer about Marriott's objections, including its response to Document Request Number 8. A copy of the letter is attached hereto as Exhibit "A." The June 22, 2021 letter relevantly provides:

> With respect to Request No. 8, the attachments to the Counterclaim do not comply with this request, which seeks the documents "supporting" the claim for damages. As you are no doubt aware, summary schedules are only admissible if the underlying documents themselves are produced. Marriott has failed to produce the underlying documents supporting its calculations including any emails, excel spreadsheets, documents from Marriott's finance department or the like that support the same. These documents are highly relevant, and Marriott has no legitimate basis to withhold such information given that it has the burden of proof on its own damages. Also responsive would be any A/R aging report as well as documents evidencing sources of funds other than Ramsey Solutions that made Marriott whole. See Requests 1-5 above.

Marriott responded by letter dated June 28, 2021. A copy of this letter is attached hereto as Exhibit "B." With regard to Document Request Number 8, Marriott responded that,

> Request Number 8 requires Marriott to "Produce all documents supporting any claim for damages claimed in connection with Your Counterclaim." Marriott's claim is for liquidated damages. The enforceability of a liquidated damage clause is an affirmative defense, which must be asserted in the answer or the defense is waived.
>
> Ramsey did not assert an affirmative defense challenging liquidated damages sought by Marriott in its counterclaim. Having failed to do so, Marriott is only required to establish that the contract contains a liquidated damage clause and that liquidated damages have been properly computed. Marriott has produced all such documents.

On June 29, 2021, counsel for the parties participated in a telephonic meet and confer regarding Marriott's responses to Ramsey's document requests. Request Number 8 was specifically discussed during the call, including Marriott's position that because Ramsey had failed to assert an affirmative defense challenging liquidated damages, Marriott was not required to produce any documents relating to its actual damages.

Ramsey's Motion fails to mention that it was first placed on notice on June 28, 2021 rather than in August 6, 2021, that it had failed to raise unenforceable liquidated damages as an affirmative defense.[8]  Yet, Ramsey waited six weeks before moving to amend its Answer. Ramsey's inexplicable six-week delay "is not compatible with a finding of diligence under FRCP 16(b)(4) and offers no reason for a grant of relief."  *Mammoth Recreations*, 975 F.2d at 609; *Troxel*, 489 F.2d at 971; *See also* Billingsley, 2015 WL 1538789, at *3 (Mr. Billingsley should have immediately sought leave to amend his complaint when he became aware of his pleading problem over 2 months ago).

Because Ramsey has not shown diligence necessary to establish "good cause" under FRCP 16(b)(4), the inquiry ends and the Motion should be denied.  *Mammoth Recreations, Inc.*, 975 F.2d at 609; *Sharp v. Covenant Care LLC*, 288 F.R.D. 465, 467 (S.D. Cal. 2012) (same).

     5.    <u>Granting Ramsey's Proposed Amendment Would Be Highly Prejudicial to Marriott</u>

Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. *See Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D.Me.1985).  In addition to lack of diligence, the substantial prejudice Marriott will experience if the amendment is permitted is yet another compelling reason to deny Ramsey's motion.

Ramsey's cancellation of its 2020 conference at the Gaylord Palms on one-weeks' notice significantly damaged Marriott.  Fortunately, the Gaylord Contracts contain identical liquidated damage provisions governing the amount Ramsey would pay for canceling its contracted events, though the amounts due pursuant to each clause are different, based on the length of time between

---

[8] Instead, Ramsey erroneously claims that it was first placed on notice on August 6, 2021, when Marriott objected to its second set of written discovery. [Mot. At 7] Marriott's objections were, once again, based on the fact that Ramsey had failed to challenge liquidated damages by way of an affirmative defense. [*Id.*]

the notice of cancellation and the event commencement date.

Ramsey brought suit against Marriott in July, 2020. [Mot. At 6] Marriott filed its counterclaim in August 2020, and Ramsey filed its Answer in October 2021. [*Id.*] Ramsey did not raise unenforceable liquidated damages as an affirmative defense. Because Ramsey had not challenged the enforceability of the liquidated damage provisions in the Gaylord Contracts, Marriott was not be required to offer evidence on its claim for actual damages in the alternative.[9]

If Ramsey had challenged enforceability by raising an appropriate affirmative defense, Marriott would have to immediately begin the process of computing actual damages in connection with its claim for actual damages in the alternative. Moreover, a challenge to enforceability of liquidated damages would also require Marriott to prepare a financial analysis demonstrating that the liquidated damage clauses are enforceable. Marriott would have to act quickly since mandatory disclosures under Rule 26(A)(iii) require the disclosing party to provide a "computation of each category of damages claimed by the disclosing party" as well as providing the documents upon which such calculations are made." *Id.*

The parties exchanged disclosures on November 20, 2020 - which was seven weeks after Ramsey filed its Answer. Had Ramsey raised an affirmative defense challenging the enforceability of liquidated damages, Marriott would have been required to perform an analysis of its actual damages in the alternative. Marriott would have been required to identify witnesses on its disclosure statement on the issue of actual damages in the alternative. Additionally, Marriott would have to perform a detailed financial analysis in order to demonstrate the enforceability of

---

[9] If the court determines that liquidated damages are unenforceable, then the non-breaching party is limited to whatever actual damages it can prove on claim for actual damages in the alternative. *Hutchison v. Tompkins*, 240 So. 2d 180, 182 (Fla. Dist. Ct. App. 1970)

liquidated damages.[10]  Marriott would have needed the full seven-week period to complete the extensive work necessary to perform these tasks.

Even if Marriott decided to perform the initial damage calculations, Marriott still would have to decide whether to retain an outside damage expert to either independently perform the calculations or render an opinion about the calculations performed by Marriott.  A significant amount of time is required to identify and retain an appropriate damage expert. Once retained, additional time is needed by the expert to undertake the work necessary to perform the damage calculations and render an opinion.[11]  The deadline to disclose expert and their reports of the party with the burden of proof on an issue passed in May 2021.

Discovery is currently scheduled to close on October 22, 2021.[12]  If Ramsey's motion to amend is permitted, Marriott will have to undertake the aforementioned tasks.  Whatever additional time is added to the existing fact discovery deadline will be insufficient to afford Marriott the time it will need to complete these critical tasks.  Moreover, Marriott would still have to respond to Ramsey's second set of discovery, all of which is directed at Marriott's actual damages.

---

[10] Ramsey's discussion about the cancellation fee provisions [Mot. at 8-11] is not only superfluous, but is once again contrary to established law.  Although the liquidated damage clause in the Gaylord Contracts are expressed as percentage of total contracted revenues, this does not demonstrate that Marriott is seeking gross profits disguised in the form of liquidated damages.  Marriott's sliding scale cancellation provision is industry standard, and contracts Ramsey signs for its conferences with other hotel companies include such clauses.  When a liquidated damage clause is properly challenged by way of an affirmative defense, in addition to demonstrating that it is difficult to prospectively forecast actual damage flowing from a breach, the non-breaching party is only required to demonstrate that the amount sought as liquidated damages, no matter how expressed,  is a reasonable estimate of its anticipated loss.  *See., e.g., Rusniaczek v. Tableau Fine Art Grp., Inc.*, 139 So. 3d 355, 358 (Fla. Dist. Ct. App. 2014) (*citing Lefemine v. Baron*, 573 So.2d 326, 328 (Fla.1991).  Provided the amount set as liquidated damages represents a reasonable **prospective** forecast of the actual loss, the clause will be enforced.  It matters not that liquidated damages are expressed as a percentage of total revenues.
[11] Ramsey concedes this point, as it claims it was expecting Marriott to disclose its expert in May 2021, which was the deadline established for the party with the burden of proof to disclose its experts and their reports. [See Mot. at 2, fn 1: "The Discovery was served because Marriott did not submit an expert report on the claims for which it has the affirmative burden of proof."]   Because Ramsey had not raised as affirmative defense challenging the enforceability of liquidated damages, there was no need for Marriott to provide expert testimony on the enforceability of liquidated damages or actual damages in the alternative.
[12] With trial continued to August 2, 2022, the parties are in the process of establishing new pretrial deadlines.  The parties anticipate filing a joint motion requesting the Court to modify certain deadlines in the scheduling order as soon as possible.

Finally, permitting Ramsey to amend at this late stage will jeopardize the existing trial date. Ramsey's amended complaint seeks a judicial determination that it properly terminated conferences it was scheduled to hold not only at the Gaylord Palms in July 2020, but also conferences it was scheduled to hold at the Gaylord Texan in May 2021, and the Gaylord Rockies in May 2022. Marriott will not have financial information necessary to compute actual damages for the 2022 conference until sometime in June 2022, when the financial books and records will have closed for the month of May 2022. Further, actual damages cannot be computed until Marriott determines how many rooms were resold, if any, from Ramsey's contracted room block commitment at the Gaylord Texan in May 2022.

**D.** **Ramsey Has Not Established Good Cause For Seeking Leave To Add Frustration Of Purpose as an Additional Affirmative Defense**

    1.  <u>Ramsey Has Not Demonstrated Good Cause</u>

The only plausible reason Ramsey failed to assert the defense in its first responsive pleadings was due to carelessness, oversight and ignorance of the law. Once again, such conduct is inconsistent with the diligence requirement and, as such, cannot satisfy the "good cause" standard under Rule 16(b)(4). Moreover, Ramsey never provided Marriott with a proposed motion, accompanied by a proposed amended complaint, showing that Ramsey intended to add frustration of purpose as an additional affirmative defense. The first time Marriott learned that Ramsey was seeking leave to assert this additional defense was when Ramsey filed its motion.[13] This is yet another reason to deny the request.

---

[13] After Ramsey advised Marriott that it was filing the motion to amend because Marriott had not changed its position on whether it would consent to Ramsey's request to amend the pleadings to assert the defense of unenforceable liquidated damages, Ramsey advised Marriott that the motion it was filing included a third additional defense. [*See* Exhibit "C" attached hereto] Ramsey never provided to Marriott a revised proposed motion to amend, or a revised proposed amended complaint, adding frustration of purpose as an additional affirmative defense prior to filing its motion.

2. Marriott Has Not Been On Notice Of The "Underpinnings" Of Ramsey's Frustration Of Purpose Defense

Ramsey's contention that Marriott has been aware of the factual "underpinnings" of the affirmative defense since July of 2020 is inaccurate and misleading. [Mot. at 3] The "underpinnings" of the defense of frustration of purpose are not set forth in Ramsey's Amended Complaint. Nor does Ramsey's motion to amend provide any details about where in the amended complaint such "underpinnings" can be found.

Frustration of Purpose refers to the condition where one of the parties finds that the purpose for which it bargained, *and which purpose was known to the other party*, has been frustrated because of the failure of consideration or impossibility of performance. *See, e.g., Home Design Ctr.-Joint Venture v. Cty. Appliances of Naples, Inc.*, 563 So.2d 767, 770 (Fla. Ct. App. 1990). The purpose that is frustrated must be the "principal purpose" of that party. *See, e.g., Pendledon v. Witcoski*, 836 So.2d 1025, 1029-30 (Fla. Dist. Ct. App. 2002). It is not enough that the party have in mind some specific object without which it would not have made the contract; the object must be so completely the basis of the contract that, as both parties understand, without it the transaction would make little sense. *See id.;* Restatement (Second) of Contracts, §265, cmt. a.

Ramsey's amended complaint does not contain factual allegations that can possibly put Marriott on notice that Ramsey was seeking to avoid the Gaylord Contracts under the doctrine of frustration of purpose. Granting leave at this late stage to add the defense will result in significant prejudice to Marriott.

3. The Proposed Amendment is Futile

Under Restatement 2d Contracts § 265 cmt. a., the frustration must be such that the intervening event cannot fairly be regarded as within the risks the frustrated party assumed under

the contract. *Id.* Further, "the non-occurrence of the frustrating event must have been a basic assumption on which the contract was made." *Id.*

When "the parties have contracted with reference (to the frustrating event) or have contemplated the risks arising from it . . . the parties may not invoke the doctrine of frustration, to escape their obligations." *Glenn R. Sewell Sheet Metal, Inc. v. Loverde*, 70 Cal.2d 666, 75 Cal.Rptr. 889, 895 n. 13, 451 P.2d 721, 728 n. 13 (1969); *Chicago, M., St. P. & P. R. Co. v. Chicago & N. W. Transp. Co.*, 263 N.W.2d 189, 195 (Wis. 1978) (same); *In re CEC Ent., Inc.*, 625 B.R. 344, 361 (Bankr. S.D. Tex. 2020) (same).

In the present case, not only was the non-occurrence of COVID-19 not a basic assumption of the Palms Contract, but COVID-related concerns were specifically negotiated and included in the addendum the parties executed to move the conference dates from May 2020 to July 2020 because of COVID-19. The addendum contains an "Additional Impossibility Clause," which provides in relevant part:

> Should the federal agency responsible for public health, emergency preparedness and infectious disease control and prevention in the country where the hotel is located (i.e., the Centers for Disease Control and Prevention in the U.S. or the Public Health Agency of Canada) issue a travel advisory, notice, or warning at any time within the 30 day period prior to the first arrival date of the Event that specifically advises travelers to avoid all non-essential travel to the specific city in which the Hotel is located, and should Group have suspended all of its business operations in the city where the Hotel is located or if the Group has no business operations in the city where the Hotel is located, has otherwise recommended that its attendees not travel to the city for any non-essential reason, then Group may contact the Hotel in order for the parties to engage in discussions regarding the scope of the advisory, notice or warning.

[*See* Amended Complaint, ¶ 52]

Because the non-occurrence of issues related to COVID-19 was not a basic assumption of the parties, and because issues related to COVID-19 were specifically mentioned in the addenda to the Palms Contract, Ramsey cannot invoke the doctrine of frustration of purpose to escape its

{02283176.1 }

contractual obligations.   Since the proposed amendment to add frustration of purpose as an additional affirmative defense is futile, the amendment should not be allowed.

## III.
## CONCLUSION

Ramsey's failure to timely and properly assert its affirmative defenses is based on ignorance of the law.   As such, it does not satisfy Rule 16(b)(4)'s "good cause" standard for modifying the scheduling order.   The motion should be denied in its entirety.

RESPECTFULLY SUBMITTED this 25th day of August, 2021.

RUDNER LAW OFFICES

/s/ Steven M. Rudner
Steven M. Rudner, admitted *pro hac vice*
John C. Josefsberg, admitted *pro hac vice*
12740 Hillcrest Road, Suite 240
Dallas, TX  75230
Telephone:   (214) 373-1900
Facsimile:   (214) 360-7845
Rudner@HotelLawyers.com
josefsberg@HotelLawyers.com

and

Stephen J. Zralek, No. 18971
BONE McALLESTER NORTON PLLC
511 Union St., Ste. 1600
Nashville, TN 37219
Telephone:  (615) 780-7975
Facsimile:  (615) 780-7976
szralek@bonelaw.com
*Counsel for Marriott Hotel Services, Inc.*
*and Marriott International, Inc.*

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on, this 25th day of August 2021, we electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send transmissions of Notices of Electronic Filing on all Counsel of Record.  Courtesy copies of the foregoing were also served on the following parties via email to:

Ashley E. Cowgill, Esq.
ashley.cowgill@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
500 Capitol Mall, Suite 1800
Sacramento, CA 95814

Jennifer Altman, Esq. (admitted *pro hac vice*)
jennifer.altman@pillsburylaw.com
Markenzy Lapointe, Esq. (admitted *pro hac vice*)
markenzy.lapointe@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
600 Brickell Avenue, Suite 3100
Miami, FL 33131

/s/ Stephen J. Zralek