# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

THE LAMPO GROUP, LLC d/b/a )
RAMSEY, )
a Tennessee Limited Liability Company, )
       )
      Plaintiff, )
       )
v. )     Case No. 3:20-cv-00641
       )     Hon. Aleta A. Trauger
MARRIOTT HOTEL SERVICES, INC., )
a Delaware Corporation; )     JURY DEMAND
       )
      Defendant. )
_____)
MARRIOTT HOTEL SERVICES, INC., )
a Delaware Corporation, )
       )
      Counter-Plaintiff, )
       )
v. )
       )
THE LAMPO GROUP, LLC d/b/a )
RAMSEY, )
a Tennessee Limited Liability Company, )
       )
      Counter-Defendant. )

## MARRIOTT HOTEL SERVICES, INC.'S
## MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
## & MEMORANDUM OF LAW IN SUPPORT

Pursuant to Federal Rule of Civil Procedure 12(c), Defendant/Counter-Plaintiff Marriott

Hotel Services, Inc. ("Marriott"), hereby moves for partial judgment on the pleadings on Claims

II and IV of Plaintiff/Counter-Defendant The Lampo Group, LLC d/b/a Ramsey (hereinafter,

"Ramsey")'s First Amended Complaint in their entirety; portions of Claims I and III of Ramsey's

First Amended Complaint; and on Counts II and III of Marriott's Counterclaim. Based upon the

Court's August 9, 2021 Memorandum and Order, and for the following reasons, the motion should

{02290396.2 }

be granted. The Motion is supported by the accompanying Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   INTRODUCTION AND PREFATORY REMARKS**

This matter arises out of Ramsey's improper termination of three separate contracted events it was scheduled to hold at the Gaylord Palms Resort & Convention Center ("Gaylord Palms"), located in Kissimmee Florida, in July 2020 (hereinafter, the "Palms Contract" and "Palms Event"); the Gaylord Texan Resort & Convention Center ("Gaylord Texan"), located in Grapevine, Texas, in May 2021 (hereinafter, the "Texan Contract" and "Texas Event"); and the Gaylord Rockies Resort & Convention Center ("Gaylord Rockies"), located in Aurora, Colorado, in May 2022 (hereinafter, the "Rockies Contract" and "Rockies Event"). As the result of these cancellations, Ramsey owes Marriott liquidated damages totaling $2,806,894.30. Marriott has asserted a counterclaim against Ramsey to recover the liquidated damages for the improper termination of the contracts.

Claims I, II and IV of Ramsey's First Amended Complaint ("FAC") (Doc. 10) seek a declaration from the Court that Ramsey properly terminated the contracts without liability under various provisions of the three agreements. In Claim I, Ramsey claims "the Palms agreement provides multiple bases for termination, both based upon Ramsey Solutions' own determination of resulting damage to its brand and good will and through the Force Majeure Clause." [FAC ¶83] In regard to Claim II, Ramsey states: "Based on the plain language of the Amendment to the Agreement [], Ramsey Solutions was well within its rights to terminate the Agreement. [FAC ¶93] In Claim IV, Ramsey states: "Ramsey Solutions terminated the Agreements between itself and

Gaylord Rockies and Gaylord Texan in reliance of the above provision,[1] as well as the Force Majeure and For Cause Termination Provisions in the parties' agreements." [FAC ¶105]

Claim III of the FAC asserts that Marriott breached the Palms Contract by failing to refund the approximately $1.2 million dollars in deposits Ramsey paid to Marriott. [FAC ¶¶ 97-102] In addition to seeking return of the deposits, the FAC also seeks to improperly recover alleged damages from changing the venue from Orlando to Ramsey's headquarters in Franklin, Tennessee. [FAC ¶100]

As the FAC includes no allegation of misconduct on the part of Marriott that would permit termination under the For Cause Termination Provision, and as Ramsey's cancellation of the Palms Event (FAC Exhibit C) contains no notice it was invoking the provision as required under the provision's terms, the Court should grant judgment on the pleadings in Marriott's favor on Claim I in respect to "for cause" termination.

As "Additional Impossibility Language" cited by Ramsey grants no separate or additional right to terminate the Palm Agreement, the Court should grant judgment on the pleadings in Marriott's favor on Claim II in its entirety.

As Ramsey's lost profits claim does not flow naturally from the Marriott's alleged breach of contract (i.e., failing to refund the $1.2 million deposits), the Court should grant judgment on the pleadings on Claim III as to Ramsey's claim to consequential damages.

Finally, as Ramsey's cancellation of the Texan Contract and Rockies Contract (Defendant's Answer and Counterclaim, Exhibit G) invokes neither the For Cause Termination Clause nor the Force Majeure Clause, and as no performance occurred that would allow Ramsey

---

[1] The "above provision" Ramsey cites in FAC ¶104 is the For Cause Termination Provision, which would make redundant FAC ¶106, in which it repeats the language of the For Cause Termination Provision. For the purposes of this Motion, Marriott will assume the "above provision" under which Ramsey claims it terminated the Texan Contract and Rockies Contract is in fact the Performance Clause, under which Ramsey claims it acted in FAC ¶64.

to invoke the Performance Clause, the Court should grant judgment on the pleadings in Marriott's favor on Claim IV in its entirety, and grant judgment on the pleadings in Marriott's favor on Counts II and III of its counterclaim as a result of Ramsey's breach of the Texan Contract and Rockies Contracts.

## II.     MEMORANDUM OF POINTS AND AUTHORITIES

### A.     SALIENT FACTUAL ALLEGATIONS IN PLEADINGS

1.     Ramsey is in the business of, among other things, putting on various seminars across the country.  [FAC ¶ 24]

2.     The largest event Ramsey hosts is the "Summit" event; EntreSummit 2020 was scheduled to be held at Gaylord Palms from July 12 to July 14, 2020. [FAC ¶ 24]  The Summit events at the Gaylord Rockies and the Gaylord Texan were scheduled for May of 2022 and May of 2021.  [FAC ¶ 24]

3.     On September 29, 2017, Ramsey and Marriott entered into a contract, pursuant to which Ramsey was to hold its EntreSummit 2020 Summit at the Gaylord Palms in May 2020. [FAC ¶ 28]

4.     On April 4, 2020, the parties entered into an addendum ("Palms Addendum"), pursuant to which the dates were changed from May 2020 to July 2020.  [FAC ¶ 36]

5.     The Palms Contract contains provisions that, under limited circumstances, permit Ramsey Solutions to terminate the Palms Agreement and provided that Ramsey Solutions would be returned all amounts that it had paid to Gaylord Palms, totaling $1.2 million dollars.  [FAC ¶ 47]

6.     The  "For Cause Termination" provision, provides in part:

"Notwithstanding any provision to the contrary herein, Group [Ramsey Solutions] may at any time terminate this Agreement without penalty in the event Hotel, its

parent, subsidiary or affiliated businesses, principals or executives become engaged in, accused of or subject to any public scandal, political controversy, crime, fraud or other event that in Group's sole judgment will impair or damage its brand or good will by hosting an event at Hotel. In such event, Group shall provide prompt notice and the Hotel shall refund all deposits and/or prepayments made by the Group within thirty (30) days of receipt of the notice of termination."

[FAC ¶ 48]

7.  The "Force Majeure" clause provides:

Either party may be excused from performance without liability if circumstances beyond its reasonable control, such as acts of God, war, acts of domestic terrorism, strikes, or similar circumstances, make it illegal or impossible to provide or use the Hotel facilities. The ability to terminate pursuant to this clause is conditioned upon delivery [sic] written notice to the other party setting forth the basis for such termination within ten (10) days after learning of such basis. Id. (emphasis supplied)

[FAC ¶ 52]

8.  The Palms Addendum includes a clause entitled "Additional Impossibility Language," which states in its entirety:

Should the federal agency responsible for public health, emergency preparedness and infectious disease control and prevention in the country where the hotel is located (i.e., the Centers for Disease Control and Prevention in the U.S. or the Public Health Agency of Canada) issue a travel advisory, notice, or warning at any time within the 30 day period prior to the first arrival date of the Event that specifically advises travelers to avoid all non-essential travel to the specific city in which the Hotel is located, and should Group have suspended all of its business operations in the city where the Hotel is located or if the Group has no business operations in the city where the Hotel is located, has otherwise recommended that its attendees not travel to the city for any non-essential reason, then Group may contact the Hotel in order for the parties to engage in discussions regarding the scope of the advisory, notice or warning. The parties agree to negotiate in good faith to resolve any concerns raised as a result of the advisory, notice, or warning and to enter into such amendments of this Agreement as may be necessary to reasonably accommodate both parties' interests (such as an adjustment to the performance (attrition) clauses of this Agreement or the addition of a re-book clause to the Agreement).

[FAC ¶ 54]

9. In December 2017, in addition to the Palms Agreement, the parties entered into similar Agreements with Gaylord Rockies ("Rockies Contract") and Gaylord Texan ("Texan Contract"), with specific references to the Gaylord Palms event as part of those Agreements. [FAC ¶ 60]

10. The Rockies Contract and Texan Contract each contain the following "Performance Clause":

> It is understood that the booking of the Gaylord Texan for Ramsey Solutions EntreLeadership Summit May 2021 is part of the following multiple bookings with Gaylord Hotels (each, a "Prior Event"): Ramsey Solutions EntreLeadership Summit May 2020 at Gaylord Palms and Ramsey Solutions EntreLeadership Summit May 2022 at Gaylord Rockies. Ramsey Solutions will have the right to cancel this Agreement without liability in the event of the following: (i) if, within thirty (30) days following the last day of the Prior Event, Ramsey Solutions gives written notice to Gaylord Hotels detailing material service or performance issues by Gaylord Hotels at the Prior Event; and (ii) the Hotel does not propose and implement a plan addressing the issues raised in Ramsey Solutions notice.

[FAC ¶ 60]

11. Ramsey alleges that various COVID-19 related restrictions in place at the time of EntreSummit 2020 was scheduled to take place resulted in reduced amenities and limited mobilization of Ramsey's attendees due to social distancing requirements. [*See, generally*, FAC ¶ 37-45]

12. As a result, Ramsey claims it was "forced" to send a termination letter to Marriott on July 3, 2020, advising that the Palms Contract was terminated. [FAC ¶ 46]

13. In its termination letter to Marriott, Ramsey stated that it was terminating the Palms Contract for the following reasons: "The Global COVID-19 pandemic and the inadequate responses of Osceola County, the State of Florida and Gaylord to that pandemic have created a change in circumstances which now renders the provision of the first-class guest and conference

experience that the parties contracted for under the Agreement an impossibility." [Exhibit C to FAC]

14.     By email dated July 22, 2020, Ramsey Solutions canceled the Texan Event and Rockies Event. [*See* ¶ 52 and ¶ 84 of Marriott's Counterclaim [Docket 21]; and  ¶ 52 and ¶84 of Ramsey's Answer to Counterclaim [Docket 27]]

15.     The July 22, 2020 email provides as follows:

From: Joe Leavitt Date: July 22, 2020 at 8:07:57 AM CDT

To: "Story, Lori" Subject: Gaylord Texan and Rockies

Lori – Hope this finds you well. This email will serve as official notice of cancelation for the events booked at the Gaylord Texan in 2021 and Gaylord Rockies in 2022. Upon signing our multi-year deal we asked for, and given, a performance clause provision. This provision was designed to insure that we would be 100% satisfied with our event at The Palms before moving on to future years. The event did not actualize at the Palms so we have no ability to judge or base the performance of the Palms. Due to the inability to produce our event at the Gaylord Palms we are exercising the performance clause that will cancel, at no penalty, our agreements for 2021 and 2022 with Gaylord Texan and Gaylord Rockies. Joe Leavitt Director Event Production Ramsey Solutions.

[Exhibit G to Answer and Counterclaim]

16.     On July 30, 2020, Ramsey filed its First Amended Complaint. [Docket 10]

17.     Ramsey's FAC contains three Claims for declaratory relief:

    a.  Claim I – declaratory relief under the Palms Contract based upon the "Force Majeure" clause and "For Cause Termination" provision;

    b.  Claim II – declaratory relief under Palms Contract based on "Additional Impossibility" language;

    c.  Claim IV – declaratory relief under Texan and Rocket Contracts based on "Force Majeure," "For Cause Termination" and the "Performance Clause."

18.     All three Claims for declaratory relief seek an order from the Court declaring that Ramsey properly terminated the Palms Contract, Texan Contract and Rockies Contract without liability pursuant to "Force Majeure," "For Cause Termination," "Additional Impossibility" and the Performance clause."

19.     The remaining Claim contained in the FAC (Claim III) is a claim for breach of express contract under the Palms Contract.

20.     Claim III claims that Marriott breached the Palms Agreement by failing to return the initial deposits paid by Ramsey (approximately $1.2 million) ("Gaylord Palms has breached the Palms Agreement by failing to repay the deposit amounts that Ramsey Solutions paid"). [FAC ¶ 101]

21.     Failing to return the deposits is the only breach alleged by Ramsey in Claim III. [See FAC ¶¶ 97-102]

### B.     JUDGMENT ON THE PLEADINGS LEGAL STANDARDS

"A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6)." *Bates v. Green Farms Condo. Ass'n,* 958 F.3d 470, 480 (6th Cir. 2020) (*citing D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014)). Courts must accept as true all well-pleaded factual allegations, but they need not accept legal conclusions, *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) or "unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). The well-pleaded factual allegations must "plausibly give rise to an entitlement to relief." *Id.* Pleaded facts will do so if they "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Pleaded facts will *not* do so if they "are 'merely consistent

with' a defendant's liability." *Id.* (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

Although a court's decision on a judgment on the pleading "rests primarily upon the allegations of the complaint, 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[ ] also may be taken into account.'" *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir. 2001); *see also Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008). Courts also may consider "items appearing in the record of the case and exhibits attached to [the] defendant's motion [for judgment on the pleadings], as long as they are referred to in the [c]omplaint and are central to the claims contained therein' without converting a motion for judgment on the pleadings to a motion for summary judgment." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

## C.     CLAIM I: RAMSEY IS NOT PLAUSIBLY ENTITLED TO RELIEF UNDER THE FOR CAUSE PROVISION OF THE PALMS CONTRACT

### 1.     Ramsey Did Not Invoke the For Cause Clause, Or Provide Required Notice Thereof

As stated, the For Cause Clause of the Palms Contract authorizes Ramsey Solutions to terminate the Agreement without paying liquidated damages for the cancellation if the Hotel, any entity affiliated with it, or any of its principals or executives "become engaged in, accused of or subject to any public scandal, political controversy, crime, fraud or other event that in Group's sole judgment will impair or damage its brand or good will by hosting an event at Hotel." [FAC ¶ 48]   If such an event occurs, Ramsey Solutions is required to "provide prompt notice" of termination based on this clause. (*Id.*)

Yet as noted by the Court in its August 9, 2021 Memorandum, Ramsey in its July 3, 2020 notice of termination did not invoke the For Cause Clause in any way, either expressly or

implicitly. [Exhibit C to FAC] While Ramsey claims the Palms Contract "contains several provisions supporting the termination," including the For Cause Clause [FAC ¶ 48] , nowhere in its First Amended Complaint does Ramsey even allege its July 3, 2020 termination was made pursuant to the For Cause Clause. [*See* FAC] The fact a For Cause Clause exists in a Contract is irrelevant if a party has never invoked it. Ramsey also makes no allegation that language of the Contract or governing law allows a party to invoke the clause retroactively. [*See id.*]

In addition, the express language of the Contract requires that if the Group terminates the Agreement "in the event that Hotel, its parent, subsidiary or affiliated businesses, principals or executives become engaged in, accused of or subject to any public scandal, political controversy, crime or other event … [i]n such event, Group *shall* provide prompt notice …" [FAC ¶ 48] (*emphasis added*).  Here, Ramsey not only does not allege that it provided prompt notice that it was terminating the agreement under this clause, it does not allege it provided *any* notice it was terminating under this clause. [*See* FAC] Without an allegation of notice as required under the language of the Contract, Ramsey cannot be deemed plausibly entitled to relief under the For Cause provision of the Palms Contract.

### 2.     Ramsey Did Not Allege A Triggering Event That Would Permit Cancellation Under The For Cause Clause

Even if Ramsey had invoked the For Cause Clause in its termination notice, Ramsey still would not be plausibly entitled to relief under this provision for reasons previously identified by the Court.

Ramsey asserts that the For Cause Clause afforded it the "sole discretion" to terminate the Agreement if it believed that "holding the Event would 'impair or damage its brand or good will.'" [FAC ¶ 49]  As the Court noted in its August 9, 2021 Memorandum:

Ramsey's proposed interpretation of the For Cause Clause completely ignores a material portion of it. The contract does not grant it unilateral, unfettered discretion to terminate the Agreement based simply on the belief that holding the event would impair or damage its brand or good will. Rather, **there must be some prior triggering event:** the Hotel, or an individual or entity affiliated therewith, must have "become engaged in, accused of or subject to [a] public scandal, political controversy, crime, fraud or other event" as a result of which Ramsey Solutions believesthat hosting the event at Gaylord Palms will impair its brand.

*Id.* at p. 9 (emphasis added). Ramsey's FAC does not specifically identify any triggering event that would allow it to invoke and terminate the Contract under the For Cause Clause. Instead, the FAC states: the Hotel "expressly advised Ramsey Solutions that it was imposing certain restrictions because of Gaylord Palms' concerns regarding bad press that it might receive if the event were to take place . . . in the manner contemplated" and that the Hotel "was choosing its own brand acceptance over that of its customer, Ramsey Solutions." [FAC ¶50] The Court has ruled that "the triggering event as alleged does not, *as a matter of law*, fall within the scope of the For Cause Clause." August 9 Memorandum, p. 10 (*emphasis added*)

Under this principle [of *ejusdem generis*], the phrase "other event" must be interpreted to be of the "same type" as the specifically enumerated activities, which are limited to "public scandal, political controversy, crime, fraud." By no stretch of the imagination could the Hotel's decision, as Ramsey Solutions describes it, to limit the amenities that would be available to attendees in light of concerns arising from the spread of the pandemic, thus substantially altering the "attendee experience" [ ] be considered the same type of activity as becoming engaged in, or being accused of engaging in, "public scandal, political controversy, crime, [or] fraud." Ramsey Solutions makes no attempt even to argue that it would. For this reason, too, Ramsey Solutions cannot show that the For Cause Clause was properly invoked.

*Id.* at 10-11.

Because the Court has found that as a matter of law Ramsey cannot show that the For Cause Clause was properly invoked, Ramsey is not plausibly entitled to relief under the For Cause Clause of the Palms Contract. Accordingly, judgment should be granted in Marriott's favor on this portion of Claim I of Ramsey's First Amended Complaint.

**D.      CLAIM II: RAMSEY IS NOT PLAUSIBLY ENTITLED TO RELIEF UNDER THE "ADDITIONAL IMPOSSIBILITY LANGUAGE" OF THE PALMS AMENDMENT**

In Claim II of Ramsey's First Amended Complaint, Ramsey states: "Based on the plain language of the Amendment to the Agreement [*i.e.,* the "Additional Impossibility Language"], however, Ramsey Solutions was well within its rights to terminate the Agreement." [FAC ¶93]. Claim II further states "Ramsey Solutions needs a declaration from this Court regarding the meaning and interpretation of the *termination provision* of the Amendment." [FAC ¶95] (emphasis added).

As a primary matter, as the Court correctly notes in its August 9, 2021 Memorandum, Ramsey's Notice of Termination of the Palms Agreement does not reference the Amendment's Additional Impossibility Language. (*Id.* at 6) And as with the For Cause Clause, as a matter of logic Ramsey cannot plausibly be entitled to relief under a clause that it never invoked. *See* Part I. C, *supra.*

However, there is an even more fundamental reason why Ramsey is not entitled to relief excusing its cancellation under the Additional Impossibility Language: The Additional Impossibility Language by its own explicit terms is not a "termination provision" at all, as it does not grant *any* right to terminate the Palms Event. *See* [FAC ¶54]

Instead, the "Additional Impossibility Languages explicitly sets forth the following:

(1)      Should the federal agency responsible for public health, emergency preparedness and infectious disease control and prevention in the country where the hotel is located (*i.e.*, the Centers for Disease Control and Prevention in the U.S. or the Public Health Agency of Canada) issue a travel advisory, notice, or warning;

(2)      At any time within the 30 day period prior to the first arrival date of the Event;

(3)     That specifically advises travelers to avoid all non-essential travel to the specific city in which the Hotel is located; **and**

(4)     Should Group have suspended all of its business operations in the city where the Hotel is located or, if Group has no business operations in the city where the Hotel is located, has otherwise recommended that its attendees not travel to the city for any non-essential reason, **then the Group may:**

(5)     Contact the Hotel in order for the parties to engage in discussions regarding the scope of the advisory, notice, or warning. [FAC ¶54]

If the Group [*i.e.,* Ramsey] choses to "[c]ontact the Hotel in order for the parties to engage in discussions regarding the scope of the advisory, notice, or warning," then the parties agree to:

(1)     Negotiate in good faith to resolve any concerns raised as a result of the advisory, notice, or warning; and

(2)     To enter into such amendments of this Agreement as may be necessary to reasonably accommodate both parties' interests. [FAC ¶54]

In other words, all the "Additional Impossibility Language" of the Amendment provides is the right for Ramsey – under certain conditions – to contact the Hotel and discuss any travel advisory, notice or warning. If this occurred, both parties would obligated to negotiate in good faith to resolve any concerns and to enter into any necessary amendments. (*See id*.) No right to termination is stated, or even inferred. Therefore under the plain language of the Amendment, Ramsey is not plausibly entitled to a declaration for the Court that it was entitled to terminate the Palms Contract under this provision.

Additionally, even if Ramsey were to claim that this language somehow infers a right to terminate the Contract, nowhere in the First Amended Complaint does Ramsey even allege that the requisite conditions existed to invoke the clause. Nowhere does Ramsey allege that the Center for Disease Control ("the federal agency responsible for public health, emergency preparedness and infectious disease control and prevention in the country where the hotel is located") issued a

travel advisory, notice, or warning any time thirty (30) days prior to July 10, 2020 that specifically advised travelers to avoid all non-essential travel to Kissimmee, Florida, or to the greater Orlando, Florida area. [*See* FAC]. Nor does Ramsey anywhere allege that Ramsey either suspended all of its business operations in Kissimmee, Florida, or recommended that its' attendees not travel to Kissimmee, Florida for any non-essential reason. [*See id.*] Without even the allegation of these requisite events, the "Additional Impossibility Language" by its own terms cannot excuse any Ramsey performance as a matter of law.

**E.    CLAIM III: RAMSEY IS NOT PLAUSIBLY ENTITLED TO CONSEQUENTIAL DAMAGES FOR THE ALLEGED BREACH OF THE PALMS CONTRACT**

### 1.    <u>Florida Substantive Law Applies to Ramsey's Damages Claim</u>

"It is well established that federal courts sitting in diversity must apply the choice-of-law rules of the forum state." *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir. 1998) (*citing Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941)). "In contract cases, Tennessee follows the rule of *lex loci contractus*, meaning that 'a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent.'" *Waste Services of Decatur, LLC v. Decatur County, Tennessee,* 367 F. Supp. 3d 792, 802–03 (W.D. Tenn. 2019) (applying Tennessee law).

"The place of contracting is the place where the contract is consummated." *Chase Manhattan Bank, N.A. v. CVE, Inc.*, 206 F. Supp. 2d 900, 905 (M.D. Tenn. 2002); *see also Transit Bus Sales v. Kalamazoo Coaches*, 145 F.2d 804, 806 (6th Cir. 1944)("The general rule is that a contract is made where the last act necessary to make it a binding obligation is performed."); *accord, D.L. Peoples Grp., Inc. v. Hawley*, 805 So.2d 561, 563 (Fla. 1st DCA 2002)("[T]he last act necessary for a written contract is the last signature on the contract").

Under the facts presented in the pleadings before the Court and applying the choice of law principles of the forum state, Florida law will govern interpretation of the Contact. The Contract, attached to Ramsey's First Amended Complaint as Exhibit A, contains a provision labelled ACCEPTANCE, which states:

> When presented by the Hotel to Ramsey Solutions, this document is an invitation by the Hotel to Ramsey Solutions to make an offer. Upon signature by Ramsey Solutions, this document will be an offer by Ramsey Solutions. *Only upon signature of this document by all parties will this document constitute a binding agreement.*

Contract, p. 16. (emphasis added) In other words, by the explicit terms of the Contract the signature of Ramsey Solutions was a predicate act, constituting an offer. The agreement only becomes binding upon the signature of the Gaylord Palms' representative. Therefore, "the last act necessary to make" [the contract] a binding obligation" – *i.e.*, the signature of the Gaylord Palms' representative – was performed in Florida, not Tennessee. Under the clear choice of law rules of the forum state, Florida law, not Tennessee law, must be applied to the interpretation of the Contract. *See Waste Services*, 367 F. Supp. at 802–03.

## 2. Ramsey's Alleged Lost Profits in Claim III Do Not Flow From The Alleged Breach

Only damages which flow naturally from a breach, and are foreseeable by the breaching party at the time the contract is entered, are recoverable under Florida law. *Scott v. Rolling Hills Place Inc.*, 688 So. 2d 937, 940 (Fla. Dist. Ct. App. 1996). This is still the law today in this country. *Id.* (*citing Globe Ref. Co. v. Landa Cotton Oil Co.*, 190 U.S. 540 (1903); *Poinsettia Dairy Products v. Wessel Co.*, 166 So. 306, 310 (Fla. 1936); *Tillman v. Howell*, 634 So.2d 268, 270 (Fla. App. 1994); *Florida East Coast Ry. Co. v. Beaver Street Fisheries, Inc.*, 537 So.2d 1065, 1068 (Fla. App. 1989)).

The purpose of damages is to restore an injured party to the same position that he would have been in had the other party not breached the contract. *Lindon v. Dalton Hotel Corp.*, 49 So.3d 299, 305 (Fla. DCA 5th 2010). It is well-settled that the injured party in a breach of contract action is entitled to recover monetary damages that will put it in the same position it would have been had the other party not breached the contract. The injured party is entitled to recover all damages that are causally related to the breach so long as the damages were reasonably foreseeable at the time the parties entered into the contract. Damages are foreseeable if they are the proximate and usual consequence of the breaching party's act. It is not necessary that the parties have contemplated the exact injury which occurred as long as the actual consequences could have been reasonably expected to flow from the breach. *Capitol Envtl. Servs., Inc. v. Earth Tech, Inc.*, 25 So.3d 593, 596 (Fla. 1st DCA 2009) (internal quotations and citations omitted).

In restoring the injured party to the same position, he is not entitled to be placed, because of the breach, in a position better than that which he would have occupied had the contract been performed. *Lindon*, 49 So.3d at 305 (citations and quotations omitted). Instead, the injured party may only recover those damages that naturally flow from the breach and can reasonably be said to have been contemplated by the parties at the time that the contract was made. *Id.* at 306. It is not necessary that the parties have contemplated the exact injury that occurred as long as the actual consequences could have reasonably been expected to flow from the breach. *Id.*

A decision from the Middle District of Florida is illustrative and controlling. In *Feldkamp v. Long Bay Partners, LLC*, 773 F. Supp. 2d 1273, 1284–86 (M.D. Fla. 2011), *aff'd*, 453 F. App'x 929 (11th Cir. 2012), the plaintiffs purchased a golf membership and parcel of land to build a home. *Id.* at 1277-78. The contract obligated the club to refund "one hundred percent (100%) of the membership deposit paid by a member ..." thirty days after resignation." *Id.* The plaintiffs

resigned and requested a refund, which was not provided by the Club. *Id.* In addition to requesting the return of the deposits, plaintiffs further request consequential damages, including the cost of improvements to and the loss of value to their home. The court rejected the claim for consequential damages:

> Neither of these are consequential damages to the breach of the Club membership contract. The Club membership was a license to use the golf and club facilities, and was not transferrable to anyone other than back to the Club. Nothing about this dispute would have caused a need for improvements to the Feldkamps house or have caused the loss of value in the house. No purchaser would have the right to the Feldkamps' membership. Had the contract not been breached, the Feldkamps would have had their $92,000 returned, but nothing about the house would have changed. The Court cannot award such damages since they cannot be said to "naturally flow" from the Club's breach of its club membership contract with plaintiffs. ***The Club breached its agreement with plaintiffs by failing to return their deposit related to their golf club membership. No reasonable jury could find that the failure to return the Club membership deposit caused these damages.***

*Id.* at 1285-86 (emphasis added).

As in *Feldkamp*, Ramsey's alleged lost profits from changing the venue to its headquarters in Franklin, Tennessee, do not flow from the alleged breach – the alleged failure to refund the $1.2 million in deposits. Even if Ramsey had properly terminated the Palms Contract (which it did not), refunding the $1.2 million in deposits would place Ramsey in the same position it would have been in had Marriott not allegedly breached the contract. *Lindon, supra*, 49 So. 3d at 305. In restoring the injured part to the same position, however, he/ she is not entitled to be placed because of the breach in a better position than which he/ she would have occupied had the contract been performed. *Id.* Awarding Ramsey lost profits associated with moving its conference from Orlando to Ramsey's headquarters in Franklin, Tennessee, would place Ramsey in a better position than had the contract been performed – *i.e.*, a refund of the $1.2 million in deposits.

The court should therefore grant Marriott's motion for partial judgment on the pleadings on Claim III of the FAC and limit Ramsey's alleged breach of contract damages, should Ramsey prove such a breach, to return of the $1.2 million in deposits.

**F.    CLAIM IV:    RAMSEY IS NOT PLAUSIBLY ENTITLED TO RELIEF UNDER ANY PROVISION OF THE TEXAN CONTRACT OR ROCKIES CONTRACT**

### 1.    Termination Of The Texan Contract And Rockies Contract Was Made Pursuant To The Performance Clause Only

In Claim IV of its First Amended Complaint, Ramsey claims "it terminated the Agreements between itself and Gaylord Rockies and Gaylord Texan in reliance on the above provision,[2] as well as the Force Majeure and the For Cause Termination Provisions in the parties." [FAC ¶ 105] Conspicuously absent from the First Amended Complaint is an allegation of how or when Ramsey terminated the Texan Contract and Gaylord Contract. [*See* FAC] Instead, Ramsey states "Ramsey Solutions advised that it was terminating these two Agreements – the Rockies Agreement and the Texas Agreement – in conformance with its rights under these various Agreements, but in response, it received a demand letter making clear that Marriott rejected Ramsey Solutions' rights under the Agreements." [FAC ¶ 105] It adds: "Counsel for Ramsey Solutions *also* sent a termination letter on July 29, 2020, which makes clear that Ramsey Solutions was terminating pursuant to the above provisions. *See* Ex. I." (*Id.*)[3]

Ramsey's omission of the actual termination notice from the First Amended Complaint is perhaps understandable, given that its content contradicts Ramsey's stated position. The

---

[2] As previously noted, for the purposes of this Motion Marriott will assume the "above provision" in FAC ¶ 104 under which Ramsey claims it terminated the Texan Contract and Rockies Contract is in fact the Performance Clause which Ramsey claims it acted under in FAC ¶ 64, as well as the Force Majeure and For Cause Termination Provisions.

[3] There is no letter from Ramsey's counsel dated July 29, 2020 attached to the First Amended Complaint, nor is any document attached to the First Amended Complaint as Exhibit I. There is a letter from Ramsey's Counsel dated July 30, 2020, attached as Exhibit G (*not* Exhibit I). For the purposes of this motion, Marriott will assume the document attached as Exhibit G is the document referred to in FAC ¶ 108.

{02290396.2 }

termination notice was sent to Marriott via an email dated July 22, 2020 from Ramsey's Director of Event Production, Joe Leavitt. The email, in its entirety, states:

> From: Joe Leavitt Date: July 22, 2020 at 8:07:57 AM CDT
>
> To: "Story, Lori" Subject: Gaylord Texan and Rockies
>
> Lori – Hope this finds you well. This email will serve as official notice of cancelation for the events booked at the Gaylord Texan in 2021 and Gaylord Rockies in 2022. Upon signing our multi-year deal we asked for, and given, a performance clause provision. This provision was designed to insure that we would be 100% satisfied with our event at The Palms before moving on to future years. **The event did not actualize at the Palms so we have no ability to judge or base the performance of the Palms.** Due to the inability to produce our event at the Gaylord Palms we are exercising the performance clause that will cancel, at no penalty, our agreements for 2021 and 2022 with Gaylord Texan and Gaylord Rockies. Joe Leavitt Director Event Production Ramsey Solutions.

[Exhibit G to Answer and Counterclaim] (emphasis added) In other words, despite Ramsey's claims to the contrary, the Texan Contract and Rockies Contract were terminated *only* pursuant to the Performance Clause of the contracts, not (as claimed), "as well as the Force Majeure and the For Cause Termination Provisions in the parties' Agreements." [FAC ¶ 105] The fact that more than a week following the notice of termination Ramsey's counsel sent correspondence to Marriott's counsel that claims to invoke the Force Majeure and For Cause clauses is irrelevant to Ramsey's claim. The First Amended Complaint makes no statement or allegation that a termination clause contained in a contract that has already been terminated may be retroactively invoked by a party's attorney.

### 2. Even If Properly Invoked, Ramsey Does Not Allege Or Identity A Triggering Event Of The For Cause Clauses Of The Texan Contract Or Rockies Contract

For the same reasons explained by the Court in its August 9, 2021 Memorandum in regard to For Cause Clause of the Palms Contact (*Id.*, pp. 9-12), Ramsey is not plausibly entitled to relief based upon the For Cause clauses of the Texan Contract or Rockies Contract. As the Court found,

the For Cause clauses did not give Ramsey unilateral "sole discretion" to terminate the Agreements. Instead, there must be some prior triggering occurrence related to "public scandal, political controversy, crime, fraud or other [same kind or class of] event. (*Id.* at 9-10).

As "Ramsey Solutions cannot show that the For Cause Clause was properly invoked" as a matter of law in regard to the Palms Contract (*Id.* at 11), likewise it cannot show that the For Cause Clause was properly invoked (even if it was invoked) in regard to the Texan Contract and Rockies Contract. As no triggering event was alleged or identified, and as required notice was not provided to Marriott, Ramsey's performance of the two contracts cannot be excused under this provision as a matter of law.

### 3. Even If Properly Invoked, Ramsey Does Not Allege A Triggering Event Or Notice Of The Force Majeure Clauses Of The Texan Contract Or Rockies Contract

The Force Majeure clauses of the Texan Contract and Rockies Contract states as follows:

Either party may be excused from performance without liability if circumstances beyond its reasonable control, such as acts of God, war, acts of domestic terrorism, strikes, or similar circumstances, make it illegal or impossible to provide or use the Hotel facilities. The ability to terminate pursuant to this clause is conditioned upon delivery [sic] **written notice to the other party setting forth the basis for such termination within ten (10) days after learning of such basis.** *Id.* (emphasis supplied)

[FAC ¶ 52] Nowhere does Ramsey's First Amended Complaint identify what force majeure event had occurred that prevented performance of the Texan Contract and Rockies Contract. (Even if Ramsey had thought to provide such notice when it terminated the contracts on July 22, 2020, it would be difficult to explain how Ramsey had determined that a force majeure event had rendered performance of scheduled conferences taking place 10 months and 22 months in the future illegal or impossible.) Nor does the First Amended Complaint even allege that it provided notice to Marriott setting forth the force majeure basis for termination of the Texan Contract or Rockies

Contract. The ability to terminate pursuant to the Force Majeure Clause is expressly conditioned on delivery of such written notice. *See* FAC ¶ 52.

Because Ramsey does not allege or identify a force majeure event making performance of the Texan Contract and Rockies Contract illegal or impossible to perform, and because Ramsey does allege or identify how or when it provided notice setting for the basis for termination under the Force Majeure Clause, Ramsey is not plausibly entitled any relief under this provision.

### 4. <u>The Performance Clause Cannot Be Invoked, As No Performance Took Place At A "Prior Event"</u>

Ramsey alleges in its First Amended Complaint that its "decision to proceed with the Gaylord Texan and Gaylord Rockies in 2021 and 2022, respectively, was contingent upon Gaylord's material performance with *EntreSummit 2020* [at the Gaylord Palms]." [FAC ¶ 62] It claims "there were significant performance issues with the Gaylord Palms," and that "[u]nder the Palms Agreement, Ramsey Solutions was not required to proceed with the scheduled event at the Gaylord Palms in order for it to exercise its rights under the Performance Clause …" [FAC ¶ 63, 64] Ramsey concludes that it "terminated the Rockies and Texan Agreements" pursuant to "the plain language of the Performance Clause in the Rockies Agreement and Texan Agreement." [FAC ¶ 64][4] This is a misreading of the plain language of the Performance Clause of the Texan Contract, as well as a misstatement of what both parties alleged occurred.

The plain language of the Performance Clauses gives Ramsey the right to cancel without liability upon two occurrences:

---

[4] Again, Ramsey cites not to the cancellation notice sent via email on July 22, 2020 [Exhibit G to Answer and Counterclaim], but to correspondence from Ramsey's attorney in response to the Hotels' demand for payment of liquidated damages, sent eight days later. [FAC ¶ 64; FAC Exh. G]

(i)     if, within thirty (30) days following the last day of the Prior Event, Ramsey Solutions gives written notice to Gaylord Hotels detailing material service or performance issues by Gaylord Hotels at the Prior Event; and

(ii)    the Hotel does not propose and implement a plan addressing the issues raised in Ramsey Solutions notice. [*See* FAC ¶ 61]

However, Ramsey's "official notice of cancellation" makes no mention and gives notice of any "material service or performance issues by Gaylord Hotels at the Prior Event." [*See* 7/22/20 termination notice, Exh. G to Answer and Counterclaim]. Without any such written notice "detailing material service or performance issues," the Hotel could not respond and "propose and implement a plan addressing the issues raised in Ramsey Solutions notice." [FAC ¶ 61] Under the plain language of the Performance Clause, Ramsey was *not* entitled to terminate the contracts without liability unless these two events occurred. [*See id.*]

In fact, Ramsey's termination notice makes clear that Ramsey could not give notice of "material service or performance issues by Gaylord at the Prior Event, because the Prior Event never took place.  In the termination notice, Ramsey's Director of Event Production Joe Leavitt writes: **"The event did not actualize at the Palms so we have no ability to judge or base the performance of the Palms."** [7/22/20 termination notice, Exh. G to Answer and Counterclaim (emphasis added)]. In other words, there were no "material service or performance issues by Gaylord at the Prior Event," for the simple reason that the Prior Event never occurred. In spite of Ramsey's legally unsupported claim that it "was not required to proceed with the scheduled event at the Gaylord Palms in order for it to exercise its rights under the Performance Clause" [FAC ¶ 63],  the plain language of the Performance Clause makes clear that a Prior Event must occur in order for there to be "service or performance issues" at the Prior Event.

Finally, Ramsey's argument overlooks a major significant fact: the "event did not actualize at the Palms" because Ramsey *canceled* the event at the Palms. If, as Ramsey claims, its "decision to proceed with the Gaylord Texan and Gaylord Rockies in 2021 and 2022, respectively, was contingent upon Gaylord's material performance with *EntreSummit 2020* [at the Gaylord Palms]," [FAC ¶ 62], then as a matter of law that contingency was "considered fulfilled" as a result of Ramsey's own actions.

Both Texas law (governing the Texas Contract) and Colorado Law (governing the Rockies Contract) recognize the long-standing principle known as "the prevention doctrine" which "is a generally recognized principle of contract law according to which if a promisor prevents or hinders fulfillment of a condition to his performance, the condition may be waived or excused." *New Design Constr. Co., Inc. v. Hamon Contractors, Inc.,* 215 P.3d 1172, 1184 (Colo. App. 2008); *see also Moore Bros. Co. v. Brown & Root, Inc.,* 207 F.3d 717, 725 (4th Cir. 2000) (citing Restatement (Second) of Contracts § 245 (1981); 13 Lord, *Williston on Contracts* § 39:4 (4th ed. 1993). "A party may not rely on the failure of a contract condition if that party contributed to its failure." *Brush Creek Airport, L.L.C. v. Avion Park, L.L.C.,* 57 P.3d 738, 742 (Colo. App. 2002)

Likewise, Texas courts recognize that "where the obligation of a party depends upon a certain condition being performed and the fulfillment of that condition is prevented by the act of the other party, the condition is considered fulfilled." *Anderson v. Jasper Federal Savings & Loan Ass'n,* 738 S.W.2d 768, 770 (Tex. Ct. App. 1987); *see also Sargent v. Highlite Broadcasting Co.,* 466 S.W.2d 866, 867 (Tex. Civ. App. 1971). This is also true where the other party hinders or makes impossible the fulfillment of a condition. *See Fair v. Uhr,* 310 S.W.2d 125, 128 (Tex. Civ. App. 1958); *Rich v. McMullan,* 506 S.W.2d 745, 747 (Tex. Civ. App. 1974).[5]

It is undisputable that Ramsey's own action (its cancellation of the Palms Event) prevented the Gaylord Palms from performing its obligations (satisfactory service and performance at the Palms Event) under the contract. This action bars Ramsey from availing itself of the Hotel's non-performance of the Event. It is not entitled to rely on the failure of a contract condition if its own actions contributed to that failure. *Brush Creek Airport,* 57 P.3d at 742; *Fair,* 310 S.W.2d at 128.

## G. AS RAMSEY'S PERFORMANCE OF THE TEXAN CONTRACT AND ROCKIES CONTRACT IS UNEXCUSED, MARRIOTT IS ENTITLED TO JUDGMENT ON COUNTS II AND III OF ITS COUNTERCLAIM

There is no dispute that the parties entered into the Texan Contract and Rockies Contract for events to take place in 2021 and 2022. There is no dispute that both of the contracts contain a Cancellation Provision which stipulates the amounts of liquidated damages Ramsey agreed to pay if it canceled the events. There is no dispute as to the amounts of liquidated damages that are stipulated. There is no dispute that Ramsey canceled both the Texan Event and the Rockies Event via email on July 22, 2020 [See Answer and Counterclaim, Exh. G]. There is no dispute that Ramsey did not make any advance deposits for the Texan Event or the Rockies Event. There is no dispute that the amount of liquidated damages due under the Cancellation Provision of the Texan Contract for a cancellation occurring between 181-365 days prior to arrival is $1,491,661.55. There is no dispute that that the amount of liquidated damages due under the Cancellation Provision of

---

[5] While not governing the either the Texan Contract or Rockies Contract, both Tennessee and Florida law also recognize this principal. *See Moody Realty Co., Inc. v. Huestis*, 237 S.W.3d 666, 678–79 (Tenn. Ct. App. 2007)("[W]here the obligation of a party depends upon a certain condition being performed and the fulfillment of that condition is prevented by the act of the other party, the condition is considered fulfilled."); *In re Kraz, LLC*, 626 B.R. 432, 439 (M.D. Fla. 2020), *reh'g denied*, No. 8:15-BK-7039-MGW, 2020 WL 6082716 (M.D. Fla. Oct. 15, 2020)("Under Florida law, the doctrine of prevention of performance may be applied when one party to a contract prevents another from performing its obligations under a contract; it bars the preventing party from availing himself of the other party's nonperformance.").

the Rockies Contract for a cancellation occurring between 366-729 days prior to arrival is $656,633.20.

The *only* dispute between the parties in regard to the Texan Contract and Rockies Contract is whether Ramsey's cancellation of the events was excused under the For Cause Clause, Force Majeure Clause, or Performance Clause of the contracts. As demonstrated *supra*, Ramsey cancellation is not plausibly excused under any of these provisions. For this reason, Marriott is entitled to judgment on the pleadings on Counts II and III of is Counterclaim as matter of law.

## III.    CONCLUSION

The Court should grant Marriott's Motion for Partial Judgment on the Pleadings, leaving only three issues remaining in the case: (1) Ramsey's Claim I for declaratory relief under the Force Majeure provision of the Palms Contract; (2) Ramsey's Claim III for breach of the Palms Contract for return of its paid deposit; and (3) Marriott's Count I for breach of the Palms Contract for liquidated damages.

For the foregoing reasons, Marriott respectfully requests the Court grant its Motion for Partial Judgment on the Pleadings and enter an Order finding Marriott is entitled to:

(1)     Partial judgment on the Pleadings of Claim I of the First Amended Complaint, as Ramsey is not plausibly entitled to relief under the For Cause Provision of the Palms Contract;

(2)     Judgment in its entirety on Claim II of the First Amended Complaint, as Ramsey is not plausibly entitled to relief under the "Additional Impossibility Language" of the Palms Amendment;

(3)     Partial Judgment on the Pleadings on Claim III of the First Amended Complaint, as Ramsey is not plausibly entitled to consequential damages for an alleged breach of the Palms Contract;

(4)     Judgment in its entirety on Claim IV of the First Amended Complaint, as Ramsey

is not plausibly entitled to relief under any provision of the Texan Contract or Rockies Contract;

and

(5)     Judgment in its entirety on Counts II and III of Marriott's Counterclaim.

DATED:        September 9, 2021

Respectfully submitted,

/s/ Steven M. Rudner
Steven M. Rudner, admitted *pro hac vice*
John C. Josefsberg, admitted *pro hac vice*
RUDNER LAW OFFICES
12740 Hillcrest Road, Suite 240
Dallas, TX  75230
Telephone:   (214) 373-1900
Rudner@HotelLawyers.com
josefsberg@HotelLawyers.com

Stephen J. Zralek, No. 18971
BONE McALLESTER NORTON PLLC
511 Union St., Ste. 1000
Nashville, TN 37219
Telephone:  (615) 238-6305
szralek@bonelaw.com

*Counsel for Marriott Hotel Services, Inc.*

## CERTIFICATE OF SERVICE

I certify that on, this 9th day of September 2021, we electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send transmissions of Notices of Electronic Filing on all Counsel of Record. Courtesy copies of the foregoing were also served on the following parties via email to:

    Ashley E. Cowgill, Esq.
    ashley.cowgill@pillsburylaw.com
    PILLSBURY WINTHROP SHAW PITTMAN LLP
    500 Capitol Mall, Suite 1800
    Sacramento, CA 95814

    Jennifer Altman, Esq.
    jennifer.altman@pillsburylaw.com
    Markenzy Lapointe, Esq.
    markenzy.lapointe@pillsburylaw.com
    PILLSBURY WINTHROP SHAW PITTMAN LLP
    600 Brickell Avenue, Suite 3100
    Miami, FL 33131

                         /s/ Stephen J. Zralek

{02290396.2 }