# UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF TENNESSEE

## NASHVILLE DIVISION

|  |  |
|---|---|
| THE LAMPO GROUP, LLC d/b/a RAMSEY SOLUTIONS, a Tennessee Limited Liability Company, <br><br> *Plaintiff*, <br><br> v. <br><br> MARRIOTT HOTEL SERVICES, INC., A Delaware Corporation; <br> *Defendant.* <br><br> MARRIOTT HOTEL SERVICES, INC., A Delaware Corporation, <br><br> *Counter-Plaintiff*, <br><br> v. <br><br> THE LAMPO GROUP, LLC d/b/a RAMSEY SOLUTIONS, a Tennessee Limited Liability Company, <br><br> *Counter-Defendant.* | Case No. 3:20-cv-00641 <br> Judge Aleta A. Trauger |

## NOTICE OF SCRIVENERS' ERROR

Plaintiff/Counter-defendant, The Lampo Group, LLC d/b/a Ramsey Solutions ("Ramsey Solutions"), provides notice of a scriveners' error in its *Opposition to Defendant's Motion for Judgment on the Pleadings* [Dkt. 68]. Specifically, when it was sent to word processing and then filing, word processing was unaware of Local Rule 7.03(a) and changed the font size of the footnotes to 10 pt font rather than 12 pt font. Attached is the corrected Opposition with the correct footnote size.

Respectfully Submitted,

/s/ Jennifer G. Altman
Ashley E. Cowgill (TN Bar No. 033042)
PILLSBURY WINTHROP SHAW PITTMAN LLP
500 Capitol Mall, Suite 1800
Sacramento, CA 95814
Telephone: 916-329-4721
ashley.cowgill@pillsburylaw.com

Jennifer Altman (FL Bar No. 881384)
(admitted *pro hac*)
Markenzy Lapointe (FL Bar No. 172601)
(admitted *pro hac*)
PILLSBURY WINTHROP SHAW PITTMAN LLP
600 Brickell Avenue, Suite 3100
Miami, Florida 33131
Telephone: 786-913-4880
jennifer.altman@pillsburylaw.com
markenzy.lapointe@pillsburylaw.com

***Attorneys for The Lampo Group, LLC d/b/a Ramsey Solutions***

2

## CERTIFICATE OF SERVICE

I hereby certify that on the 11**th day of October, 2021**, a true and correct copy of the foregoing was served by CM/ECF notifications to the following parties registered to receive notices in this case:

Steven M. Rudner, appearing *pro hac vice*
John C. Josefsberg, appearing *pro hac vice*
**RUDNER LAW OFFICES**
12740 Hillcrest Road, Suite 240
Dallas, TX 75230
Telephone: (214) 373-1900
Facsimile: (214) 360-7845
Rudner@HotelLawyers.com
josefsberg@HotelLawyers.com

-and-

Stephen J. Zralek, No. 18971
**BONE MCALLESTER NORTON PLLC**
511 Union St., Ste. 1000
Nashville, TN 37219
Telephone: (615) 238-6305
Facsimile: (615) 687-2763
szralek@bonelaw.com

***Counsel for Marriott Hotel Services, Inc.***
***and Marriott International, Inc.***

/s/ *Jennifer G. Altman*

3

| | | |
|---|---|---|
| THE LAMPO GROUP, LLC d/b/a<br>RAMSEY SOLUTIONS,<br>a Tennessee Limited Liability Company,<br><br>     Plaintiff,<br><br>v.<br><br>MARRIOTT HOTEL SERVICES, INC.,<br>a Delaware Corporation<br><br>     Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 3:20-cv-00641<br>Judge Aleta A. Trauger<br><br>JURY DEMAND |
| MARRIOTT HOTEL SERVICES, INC.,<br>a Delaware Corporation,<br><br>     Counter-Plaintiff,<br><br>v.<br><br>THE LAMPO GROUP, LLC d/b/a<br>RAMSEY SOLUTIONS,<br>a Tennessee Limited Liability Company,<br><br>     Counter-Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) | |

## THE LAMPO GROUP, LLC d/b/a RAMSEY SOLUTIONS' OPPOSITION TO MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

## INTRODUCTION

Plaintiff/Counter-Defendant The Lampo Group, LLC d/b/a Ramsey Solutions' ("Plaintiff" or "Ramsey Solutions") Amended Complaint ("FAC") seeks declaratory relief and contract damages from Defendant/Counter-Plaintiff Marriott Hotel Services, Inc. ("Defendant"). As more fully alleged in the FAC, Defendant's unilateral elimination and alteration of contracted-for benefits at Ramsey Solutions' premiere *EntreSummit* event fundamentally changed the terms of the Palms Agreement. These unapproved changes, standing alone, constituted a breach of the Palms Agreement and entitled Ramsey Solutions to terminate all three agreements between the parties – the Palms Agreement, Texan Agreement, and Rockies Agreement – without more.

But, alas, there is much more here. The evidence will show that, due to COVID-19, Ramsey Solutions attempted to work with Defendant to reach accommodation on a myriad of issues. Just one of those issues related to mask-wearing by attendees. Defendant agreed that masks would be made available and signage regarding the local ordinance would be placed, but that it would not actively enforce mask wearing. Despite agreeing to the above procedure, lulling Ramsey Solutions into moving forward with the event at Gaylord Palms at great expense, internally Defendant decided it was going to do the opposite, namely, to strictly enforce mask wearing. Unfortunately, this change of heart was not communicated to Ramsey Solutions until July 2, 2020 (only a week or so before the event was to take place).[1]

Adding insult to injury, on the same day, Defendant also advised Ramsey Solutions that it may

---

[1] Certainly, Ramsey Solutions could not include allegations in its FAC about Defendant's internal *sub rosa* discussions as those communications were only obtained through discovery, and produced long after the date for amendment of pleadings. But the underlying allegations—that they agreed not to aggressively enforce the policy, and then on July 2nd took a different position, and also advised Ramsey Solutions that Defendant could cancel the event altogether including while it was ongoing—were specifically plead. This is why, as outlined below, the issues on which Defendant seeks judgment on the pleadings are not appropriate for that relief as they are quintessential fact questions.

1

decide to terminate the event altogether, including while was attendees were at the hotel and the event was in progress. This is the reason Ramsey Solutions was left with no choice but to terminate the Palms Agreement and these allegations are in the FAC. Defendant has denied the allegations in the FAC, creating material issues of fact that cannot be resolved on summary disposition.

## ARGUMENT

### I.    Statement of Disputed Facts Raised by the Pleadings.

A review of Defendant's responsive pleading confirms that it denied each of the following well-pleaded allegations and, therefore, material questions of fact exist that cannot be resolved by the instant Motion. Specifically, Ramsey Solutions alleges (and Defendant denies) that Defendant placed significant restrictions on the *EntreSummit* event that impaired the use and enjoyment of the facilities (and the agreed-upon performance obligations) in contravention of the provisions in the Palms Agreement and the intentions of the parties. FAC, ¶ 8. Ultimately, Ramsey Solutions was forced to terminate the Palms Agreement because Defendant could not provide assurance that it would provide the contracted-for experience or, in the end, even host the event at all. *Id.*

To the point, Ramsey Solutions alleges that Defendant was aware of the caliber of live event experience Ramsey Solutions offered to attendees/guests, to wit: a high-end luxury experience. *Id.* at ¶¶ 29-30. At the time the contract was executed, Defendant agreed it would provide attendees with the white-glove service they historically received. *Id.* Some of these amenities were outlined in the Palms Agreement. For example, a $22 resort fee was added to each room to cover additional services such as transport to the Walt Disney World Resort, access to the hotel's fitness center, private fitness training, complimentary valet for a limited number of Ramsey Solutions' staff and available valet service for all attendees. *Id.* at ¶ 32. But those amenities were eliminated or curtailed by Defendant without agreement by Ramsey Solutions. *Id.* at ¶¶ 37, 43.

2

Pursuant to the Palms Agreement, Defendant was also to provide continental breakfast, buffet-style food service during the live events, coffee and beverage service and snacks throughout the day, as well as passed hors-d'oeuvres at the various cocktail events. *Id.* at ¶ 33. This in addition to having available the various on-site restaurants and other leisure opportunities at the convention center. But Defendant eliminated or narrowed each of these agreed upon amenities. *Id*.; *see also* FAC, ¶ 35. Notably, although it attempted to unilaterally reduce the amenities, it did not reduce the contracted-for price.

Due to the pandemic, in February 2020, the parties began discussions to reschedule the event at the Gaylord Palms. *Id.* At the time, Defendant proposed alternative dates but did not advise Ramsey Solutions that there would be restrictions placed on attendees or reductions in the contracted for benefits.[2] *Id.* Ramsey Solutions worked in earnest with Defendant to move forward the event at the Gaylord Palms and ultimate selected July 12-15 as the new dates for the event. *Id.* at ¶¶ 35-36, 55-56 and 100.

In May 2020 and continuing thereafter, Defendant began unilaterally changing details and amenities that would be available to Ramsey Solutions and its guests. *Id.* at ¶ 37. Those changes would materially impair the high-end guest experience that Ramsey Solutions is known for and that attendees expect and pay for. *Id.; see also Id.* at ¶¶ 8 and 43. Those unilateral changes included requiring new seating requirements in seminar rooms that limited the capacity and layout of the rooms, eliminating buffets and self-service food that would have been available to attendees throughout the day during the seminars and live events, eliminating self-service coffee and

---

[2] The evidence will show that had Defendant been upfront with Ramsey Solutions about the limitations it would impose, Ramsey Solutions could have chosen not to proceed with the event and asked for its deposit back. Instead, Ramsey Solutions wasted months of time and incurred significant costs preparing to host the event at the Gaylord Palms only to switch it up at the last minute. This resulted in attendees either demanding refunds or requesting that their attendance fee be transferred to a later event and significant wasted expenses.

3

beverage services, eliminating passed hors d'oeuvres at receptions and requiring masks and health checks at all times. *Id.*[3] Defendant also eliminated valet service and access to the spa, reduced gym availability, imposed limitations on room-service and housekeeping and closed onsite restaurants. *Id.* at ¶ 43. The unilateral reduction in amenities drastically reduced the contracted-for benefits under the Palms Agreement and would have diminished attendees' experience including by reducing their networking and social opportunities. *Id.*

Defendant answered, claiming it "was required to make [these changes], by law, to comply with governmental regulations and city ordinances, would not be acceptable to Ramsey." Answer, ¶ 39. But the evidence will show that there were no governmental regulations or city ordinances that required many of the changes that were being imposed including: the elimination of valet service, the closing of on premises restaurants, closing and/or severely limiting spa and gym services, or the elimination or reduction in room service and housekeeping to name a few. There likewise is no evidence to support the existence of any ordinance or regulation that required Defendant to anoint itself with the ability to unilaterally cancel the event while it was ongoing, but that is precisely what it told Ramsey Solutions it could do. Compare FAC, ¶¶ 37-51 with Answer, ¶ 39. Many of the changes being imposed were not required by law, but, rather, were determined by Defendant to be in its own best interest. FAC, ¶¶ 50 and 91.

In June 2020, Defendant agreed that it would not aggressively enforce a City of Orlando ordinance that required masks when outside one's residence. *Id.* at ¶ 40. Masks were to be made available to all guests and signage posted, but Defendant advised that it was not going to strictly enforce the wearing of masks for event attendees. *Id.* Unbeknownst to Ramsey Solutions—and the evidence will establish—Defendant internally decided it had no intention of proceeding as it

---

[3] Defendant denies the allegations in ¶ 37 of the FAC, "excluding the changes that the Gaylord Palms was required to make...." *See, e.g.,* Answer, ¶¶ 33-37.

4

agreed. Rather, due to its own heightened concerns about the impact on its brand of having an

event at all, Defendant's executives decided not only that it would strictly enforce the mask policy,

but also that it would throw out anyone who did not comply; and, even worse for Ramsey

Solutions, Defendant belatedly advised that it may decide to cancel the event altogether even while

it was in progress. *Id.* at ¶¶ 42, 5-50-51. These changes were for the first time communicated to

Ramsey Solutions on July 2, 2020, just a week or so out from the event. *Id.* at ¶¶ 42 and 56; *Id.* at

¶¶ 41-2.

Defendant apprised Ramsey Solutions of the unilaterally imposed reduction in benefits

over a period of months between February and July 2, 2020, principally in June through July 2nd.

*Id.* at ¶ 44. Ramsey Solutions tried to work cooperatively with Defendant (*Id.* at ¶ 55), but any

failure to put on first-rate event would be held against Ramsey Solutions rather than Defendant.

*Id.* The failure to meet Ramsey Solutions' quality standards would permanently and significantly

impact its reputation and goodwill. *Id.* at ¶ 45. And, as noted throughout, most of the changes

were contrary to the language and intent of the Palms Agreement. *Id.*

Although Defendant now takes the position that it was required to implement these changes

due to regulatory restrictions, that is not the case. Defendant's actions were motivated by its own

public-relations concerns. *Id.* at ¶¶ 50 and 91. Indeed, one of Defendant's executives expressed

concern that "Inside Edition" might do a story regarding the event, leading Defendant to choose

its own brand acceptance and fears of public backlash over that of Ramsey Solutions.[4] *Id.* Due to

Defendant's breaches of the Palms Agreement, Ramsey Solutions—contrary to the assertion of

[4] As part of the production, there are internal emails from Defendant starting at least by June 22nd that confirm Defendant was concerned with the public blowback it might receive from hosting the Ramsey Solutions event and other slated events. As a result, internally it was considering how to best navigate those issues politically including by cancelling the events altogether. Defendant's handling of the Palms Agreement and its negotiations with Ramsey Solutions are quintessential fact questions that are not properly resolved on a judgment on the pleadings.

5

Defendant—*did* properly invoke the existence of the COVID-19 pandemic and Defendant's refusal to make reasonable accommodations to attempt to provide the guest and conference event experience the parties contemplated and contracted for. *See* FAC, Ex. C. Ramsey Solutions additionally specified that Defendant's inadequate response to the pandemic "created a change in circumstance which now renders the provision of the first-class guest and conference event experience that the parties contracted for under the Agreement an impossibility." *Id.* As a result of Defendant's material breaches of the Palms Agreement, Ramsey Solutions sustained significant damages. *Id.* at ¶ 59 ("Ramsey Solutions has sustained significant damages as a result of Gaylord Palms' conduct, including the amounts that it paid to Gaylord Palms in connection with the event…exclusive of the lost revenue associated with attendees who could not attend the last-minute relocation to another venue. Upon information and belief, the lost revenue will approximate $10.1 million dollars."). Since Defendant denies these allegations, there are questions of fact to be resolved at trial or, at a minimum after discovery is complete.

## II.  Legal Standard

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." *Willis v. RhinoAg, Inc.*, No. 10-cv-01276-STA, 2020 WL 2529842, at *1 (W.D. Tenn. May 18, 2020) (quoting Fed. R. Civ. P. 12(c). "The standard of review for a judgment on the pleadings is the same as that for a motion to dismiss under Federal Rule of Procedure 12(b)." *Id.* (citing *EEOC v. J.H. Routh Packing Co.*, 245 F3d 850, 851 (6th Cir. 2001)). "When a party invokes FRCP 12(c), the Court construes 'all well-pleaded material allegations of the pleadings of the [non-movant] ... as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'" *Massachusetts Mut. Life Ins. Co. v. RCS – Germantown I, LLC*, 2020 WL 6999223,

at *2 (W.D. Tenn. Jan. 2, 2020) (citing *JPMorgan Chase Bank, N.A. v. Winget*, No. 19-cv-02198-

SHL, 510 F.3d 577, 581 (6th Cir. 2007)). A motion for judgment on the pleadings should only be

granted "when there is no material issue of fact and the moving party is entitled to judgment as a

matter of law." *Champluvier v. Simpson*, No. 21-cv-2072-JPM, 2021 WL 1555098, at *4 (W.D.

Tenn. Mar. 30, 2021) (quoting *Guy v. Spader Freight Servs.*, No. 17-2038, 2017 WL 6939377, at

*2 (6th Cir. Oct. 18, 2017)).

## III.    Argument

### A.    *There are Disputed Facts Relating to Notice and the "Triggering Event" Requiring that the Motion Directed to Claim I be Denied.*

Although Ramsey Solutions properly terminated the Palms Agreement, Defendant is not

entitled to judgment on the pleadings because material factual disputes exist.

### i.  The Notice was Sufficient.[5]

Defendant incorrectly argues that Ramsey Solutions failed to invoke the For Cause Clause

in the Palms Agreement and failed to provide proper notice of termination. Mot., 9. Although

incorrect, whether Ramsey Solutions properly invoked the For Cause Clause is a disputed issue of

material fact not subject to adjudication based on the pleadings alone.[6] Defendant concedes that

the For Cause Clause permits Ramsey Solutions to terminate the Agreement if Defendant

---

[5] Defendant did not assert the affirmative defense of the failure to fulfill a condition precedent. Defendant has the burden of establishing the non-performance of a condition precedent. *See Harlan v. Hardaway*, 796 S.W. 953, 957 (Tenn. Ct. App. 1990); *Acute Care Holdings, LLC v. Houston Cty.*, No. M2018-01534-COA-R3-CV, 2019 WL 2337434, at *4 (Tenn. Ct. App. June 3, 2019).

[6] It is noteworthy that Defendant acknowledges that in each instance it received written termination letters and those are attached to the pleadings. Defendant was also served with the above-styled lawsuit within the relevant time-period. Although not yet before the Court, there were also multiple written communications as well as oral communications wherein Ramsey Solutions attempted to work in good faith to resolve the disputed issues, which likewise will establish—on a full record—that the notice requirement in the Palms Amendment relating to the Additional Impossibility Language was satisfied.

"become(s) engaged in, accused of or *subject to any public scandal, political controversy*, crime, fraud *or other event that in [Defendant's] sole judgment will impair or damage its brand or good will by hosting an event at Hotel*."  Mot., 9 (quoting FAC, ¶ 48) (emphasis supplied).  In the operative pleading, Ramsey Solutions alleged that Defendant "expressly advised Ramsey Solutions that it was imposing certain restrictions because of Gaylord Palms' concerns regarding bad press that it may receive if the event were to take place as scheduled and in the manner contemplated," and that Defendant "was choosing its own brand acceptance over that of its customer, Ramsey Solutions."[7] FAC, ¶ 50.  Defendant denies these facts.  Answer, ¶ 50.  This discrepancy in the facts is sufficient standing alone to warrant denial of the Motion.

Further, in its July 3, 2020, termination letter to Defendant, Ramsey Solutions expressly invoked the existence of the COVID-19 pandemic and Defendant's refusal to make reasonable accommodations to attempt to provide the guest and conference event experience the parties contemplated and contracted for.  FAC, Ex. C.  Ramsey Solutions additionally specified that Defendant's inadequate response to the pandemic "created a change in circumstance which now renders the provision of the first-class guest and conference event experience that the parties contracted for under the Agreement an impossibility."  *Id.*  Taking those allegations as true, Ramsey Solutions has properly alleged termination under each of the various provisions including the For Cause Clause in its termination letter. Notably, there is no language in the Palms Agreement that required Ramsey Solutions to identify any specific contractual provision or to identify the specific actions or inactions of Defendant that supported the notice of default.  *See* FAC, Ex A (Palms Agreement).   Defendant cites to no such provision or language.

---

[7] Although the Court presumed that these facts are not true for the purposes of Ramsey Solutions' Motion for Judgment on the Pleadings because Defendant denied these facts, the opposite presumption must apply here.  On Defendant's Motion, the Court must take the well-pleaded allegations as true.

In addition to the written notice, Ramsey Solutions separately filed this action outlining in detail the various bases for its position that Defendant breached the Palms Agreement. And, as the evidence will show, there are numerous communications between the parties evidencing Ramsey Solutions' efforts to negotiate in good faith with Defendant to resolve the breaches of the Palms Agreement. Thus, as evidenced by the pleadings, there is a factual dispute as to whether Ramsey Solutions properly invoked the For Cause Clause by its written termination letter, particularly when taken with the other written and oral communications that surrounded Defendant's breaches of the Palms Agreement and the ensuing termination, and the fact that the Palms Agreement does not require either party to identify any specific provision in order to invoke their right to terminate. *See* FAC, Ex A (Palms Agreement).

**ii. Ramsey Solutions Properly Alleged a Triggering Event.**

Defendant next argues that Ramsey Solutions did not allege a triggering event that permitted cancelation under the For Cause Clause. Mot., 10. However, it is not, as Defendant suggests, merely the pandemic itself that entitled Ramsey Solutions to terminate the Palms Agreement. Rather, Ramsey Solutions' termination letter states that Defendant's *inadequate response to the pandemic* rendered performance under the contract impossible. FAC, Ex. C. Ramsey Solutions alleged that Defendant's breaches were not the result of any rule, law or ordinance, but rather were the result of Defendant's concerns regarding bad press it may receive if the event were to take place. FAC, ¶¶ 49-51, 56, 63-65. To the point, Ramsey Solutions alleged that one of Defendant's executives expressed concern that "Inside Edition" might do a story regarding Defendant's treatment of Ramsey Solutions and the event, leading Defendant to choose its own brand acceptance over that of Ramsey Solutions. *Id.* A plain reading of the ordinances relied upon by Defendant in its filings confirms that the bulk of the limitations being imposed by

Defendant were not required at all including, without limitation, the elimination of valet and housekeeping services, closing and/or reduction of spa and gym services, closing of onsite restaurants and the removal of buffet food and beverage service.[8]  As with all other allegations, Defendant has denied them, creating genuine factual disputes.  *See, e.g.*,Answer, ¶ 50.

Defendant's anticipated bad press, for which fears of a public outcry or of political blowback led it to unilaterally eliminate and reduce the agreed-upon amenities (and ultimately advise Ramsey Solutions that it could decide to cancel the event altogether even while it was in progress), is precisely the kind of "public scandal … or other event" the parties intended the For Cause Clause to protect against.  Defendant's concern of being outed on "Inside Edition" falls squarely within the ambit of a "public scandal" and, thus, allowed Ramsey Solutions to invoke the For Cause Clause.  It was this negative publicity that Defendant was concerned it would face by hosting the event—clearly within the construct of a "public scandal"—that has been evident in Tennessee and throughout the country during the pandemic.  At worst, these are fact questions that should be explored looking at the contemporaneous emails—including the internal emails of Defendant—not by dispositive motion given the allegations in the FAC.  *See, e.g.,  Mendenhall v. Hanesbrands, Inc.*, 856 F. Supp. 2d 717, 727-28 (M.D.N.C. 2012) (material dispute of fact as to nature of public's response regarding bringing party into "public disrepute, contempt, scandal, or ridicule" rendered judgment on pleadings inappropriate, and public scandal is evidence that act

---

[8] Defendant failed to cite to any regulation, law or ordinance that required the majority of the changes that it required.  This Court may take judicial notice of laws, rules, and ordinances.  Fed. R. Evid. 201(b); *Robinson v. Purkey*, 326 F.R.D. 105, 165 (M.D. Tenn. 2018) ("'[P]ublic records and government documents available from reliable sources' are generally appropriate for judicial notice.") (quoting *U.S. ex rel. Dingle v. BioPort Corp.*, 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003)); *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327 (6th Cir. 2007). *Compare*, *e.g.*, Exec. Order 20-139, Fla. ("The direction to follow such protocols, and those additional protocols listed below in this section, is guidance and not enforceable under section 252.47, Florida Statutes.")

has negatively affected the party's reputation); *Nader v. ABC Television, Inc.*, 330 F. Supp. 2d 345, 347-48 (S.D.N.Y.) ("morals clause" permitting employer to terminate contract where party "commit[ted] any act or [did] anything which might tend to bring [party] into public dispute, contempt, scandal, or ridicule, or which might tend to reflect unfavorably on [employer]" satisfied where party's arrest "occasioned publicity and media attention … and that [employer] was concerned about the coverage…."). Public scandal is one of the specifically enumerated examples under the For Cause Clause and Defendant's fear of bad press falls squarely within the provision.[9]

However, even if the Court ultimately concludes Defendant's conduct does not qualify as a "public scandal", based on the doctrine of *ejusdem generis*, Defendant's conduct clearly qualifies as an "other event" within the For Cause Claus as it is the kind of "other event" that is of the "same type" as those listed in the For Cause Clause. FAC, ¶ 81 (quoting Ex. A, 13); *see Ergas v. Universal Prop. & Cas. Ins. Co.*, 114 So.3d 286, 290 (Fla. 4th DCA 2013) (*ejusdem generis* "literally means 'of the same kind or class,'" and holds that "when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same type as those listed.") (quoting *Black's Law Dictionary* 556 (8th ed. 2004)). This allowed Ramsey Solutions to properly terminate the Palms Agreement under the For Cause Clause. At a minimum, there is a dispute of fact regarding Defendant's stated reasons for impermissibly altering the services and amenities offered under the Palms Agreement and the anticipated ensuing scandal. Defendant's Motion should be denied.

---

[9] Defendant cannot plausibly argue that, like 2017's infamous Fyre Festival (*Fyre Festival*, https://en.wikipedia.org/wiki/Fyre_Festival (last visited October 5, 2021)), the Palms Agreement required Ramsey Solutions to move forward with the *EntreSummit* event in the face of Defendant's statement that it could cancel the event while it was ongoing. Ramsey Solutions was not required to wait until Defendant's public scandal fully matured before terminating the agreement as that would be contrary to the purpose of that provision – to protect Ramsey Solutions from harm - and ignores the duty to mitigate its damages.

11

**B.** *Factual Disputes Regarding Notice and Ramsey Solutions' Efforts to Resolve Defendants' Breach Prevent Resolution on Claim II.*

Ramsey Solutions also alleges that it was entitled to terminate the Palms Agreement pursuant to the Additional Impossibility Language in the Palms Amendment. FAC, ¶ 93. Contrary to Defendant's representations, Ramsey Solutions worked in good faith to resolve the disputed issues that arose. Compare *Id*. at ¶¶ 8, 35-36, 39-44, 74; Mot., 5, 13. As a result, there are factual questions as to whether Ramsey Solutions' efforts were sufficient to invoke the Additional Impossibility Language. Accordingly, Claim II is not ripe for adjudication on the pleadings.

**i.** **Ramsey Solutions Properly Invoked the Additional Impossibility Language.**

In support of its relief, Defendant first argues that Ramsey Solutions' termination letter does not reference the Additional Impossibility Language. Mot., 12. This argument fails for two reasons. Defendant's assertion is factually inaccurate. Ramsey Solutions' termination letter refers implicitly but overtly to the Additional Impossibility Language. For example, Ramsey Solutions advises in the termination letter that "[t]he global COVID-19 pandemic and the inadequate responses of Osceola County, the State of Florida, and Gaylord to that pandemic have created a change in circumstance that which now renders the provision of the first-class guest and conference event experience that the parties contracted for under the Agreement an impossibility." FAC, Ex. C. The Additional Impossibility Language specifies that should certain government agencies issue certain restrictions, the parties agree to negotiate in good faith to resolve any related concerns. FAC, ¶ 90. The "change in circumstances" referred to in the termination letter was clearly intended to relate to and invoke the Additional Impossibility Language; as alleged in the pleadings, Ramsey Solutions spent considerable time trying to reach an accord on disputed issues with Defendant. FAC, ¶¶ 8, 35-36, 39-44, 55, 74. As such, there are factual questions as to whether that provision was properly invoked.

ii.    **Factual Disputes and Incorrect Legal Conclusions Doom Defendant's Arguments.**

Second, Defendant argues—entirely without support—that "as a matter of logic Ramsey cannot plausibly be entitled to relief under a clause that it never invoked." Mot., 12. Defendant points to no authority, nor can it do so, for the proposition that a party to a contract must announce the specific provision or provisions under which it is terminating the contract where there is no such requirement in the agreement. *See, e.g., Liberty Constr. Co. LLC v. Curry*, 2020 WL 6158461 (Tenn. Ct. App. Oct. 21, 2020) (in a construction case, the court found a single email sufficient notice and opportunity to cure where the party merely stated that he "ha[d] little faith that any instruction [he] [would give] the Contractor would be followed." Defendant is attempting to write in language and obligations into the agreement that simply do not exist. In contrast to the For Cause Clause, which specifically requires Ramsey Solutions to provide notice of termination for that provision to apply,[10] the Additional Impossibility Language has no such requirement. And— as alleged in the FAC—Ramsey Solutions did attempt to resolve the dispute with Defendant, to no avail. FAC, ¶¶ 8, 35-36, 39-44, 55, 74.

Defendant also argues that the Additional Impossibility Language is not a termination provision. While that is inaccurate, as the provision merely required the parties to attempt to resolve any disputes in advance of termination (as Ramsey Solutions alleges it did), there are disputed issues of fact rendering judgment on the pleadings inappropriate as to Claim II. It is noteworthy that the Additional Impossibility Language obligated both parties to negotiate in good faith to resolve concerns. FAC, ¶ 90. Contrary to Defendant's assertion, Ramsey Solutions did so

---

[10] Although the For Cause Clause requires Ramsey Solutions to provide notice of termination and the reason(s) therefore, it does not require Ramsey Solutions to explicitly identify that clause.

13

(Defendant did not) pursuant to the Additional Impossibility Language. This Court must take the allegation as true for the purposes of Defendant's Motion, despite Defendant's denial. *Id.* at ¶¶ 8, 35-36, 39-44, 55, 74; Answer, ¶¶ 8, 35-36, 39-44, 55, 74.

Ramsey Solutions specifically alleged that "[w]hether the restrictions were the result of the spike in COVID-19 cases in Florida, *recent advisories by the CDC and other agencies regarding non-essential travel* (as well as additional burdens placed by local ordinances), *or Gaylord Palms simply not negotiating in good faith*, Ramsey Solutions was forced to terminate the Palms Agreement on July 3, 2020." FAC, ¶ 56 (emphasis added). It also alleged (and was denied by Defendant), that Defendant's failure to meet its obligation under the Additional Impossibility Language to negotiate in good faith was a breach of the Additional Impossibility Language thereby entitling Ramsey Solutions to terminate the Palms Agreement. These are all quintessential fact issues that warrant denial of the Motion as to Claim II.

### C. *Defendant's Misleading Interpretation of Ramsey Solutions' Alleged Breach Leads to Faulty Conclusions Regarding Damages.*

Defendant's construction of Ramsey Solutions' Claim III for breach of contract is simply wrong. By its Claim III, Ramsey Solutions alleges that Defendant breached the Palms Agreement by, among other things, unilaterally reducing the agreed upon services and amenities under the Palms Agreement. FAC, ¶ 100. Ramsey Solutions also alleged, constituting a separate breach, that on July 2, 2020, Defendant did not negotiate in good faith, reneged on its agreement to not aggressively enforce masking, and separately advised that it could cancel the event altogether including while the event is ongoing. *Id.* at ¶¶ 40-41, 55-56, 59,63-64 and 74. Those acts constituted separate breaches supporting termination particularly given the timing. Thus, the alleged breach is not, as Defendant would mislead the Court, merely Defendant's failure to refund Ramsey Solutions' $1.2 million in deposits (although that was also a breach). Rather, as outlined

in the FAC, there are a myriad of other actions Ramsey Solutions alleged that constitute a breach. Defendant denies having reduced the amenities and benefits that Ramsey Solutions' guests would have received and seems to likewise deny that it did not agree that it would not enforce the mask policy either (but it did), once again giving rise to a factual dispute that renders adjudication on the pleadings inappropriate.

Defendant also incorrectly categorizes Ramsey Solutions' damages as consequential damages. Mot., 14-18.[11] This is because Defendant incorrectly frames the alleged breach as only its failure to refund Ramsey Solutions' deposit. But Defendant's breach is not so limited. Rather, Defendant breached the Palms Agreement by, in part, unilaterally eliminating and reducing contracted-for services and amenities, and by failing to provide assurances that the *EntreSummit* event could even proceed. *Id*. Ramsey Solutions damages flow directly from Defendant's breach, some of which occurred at the eleventh hour just before the event was slated to occur. Defendant can hardly be heard to complain that the damages were not foreseeable when it only advised Ramsey Solutions days before the live event—after all of the preparations were made—that it may cancel the event *even while it was in progress*. As a result of Defendant's late notice that it can cancel the event scheduled only a week away and after all of the preparations were made, it was predictable that Ramsey Solutions would suffer guest cancellations and other costs due to moving the event. These damages do *not* merely flow from Defendant's failure to refund the deposits paid by Ramsey Solutions, but due to Defendant's late declaration that it could terminate the event while in progress. FAC, ¶¶ 59, 65, 100.

---

[11] Defendant's assertion that Florida substantive law applies to Ramsey Solutions' damages claim for breach of contract is premature. Although Defendant asserts that the Palms Agreement was consummated in Florida, there is no evidence to support this allegation and Ramsey Solutions believes that it is incorrect. That said, it has been a non-issue on the merits presented because the law in Florida and Tennessee have been aligned.

To be clear, the amount sought as damages are the amount necessary to put Ramsey Solutions back in the position it would have been in but for Defendant's breach. *Rice v. Wagoner Cos., Inc.*, 738 F. Supp. 252, 254 (M.D. Tenn. 1990) (consequential damages generally recoverable for breach of contract where parties reasonably contemplated at time of execution that "such consequences would naturally result from a breach of the contract."). But for Defendant's breach, the damages could have been curtailed or otherwise reduced. Defendant is simply wrong on the pleadings and the law.

### D. *Defendant's Arguments Regarding the Texan and Rockies Agreements Highlight the Disputed Facts.*

Claim IV seeks declaratory relief under the Rockies Agreement and Texan Agreement. Defendant first argues that termination of the Texan Agreement and Rockies Agreement was made pursuant to the Performance Clause only. Mot., 18; *see also* Answer, ¶ 105. However, Defendant concedes that Ramsey Solutions alleged "it terminated the Agreements between itself and Gaylord Rockies and Gaylord Texan in reliance on the above provision, as well as the Force Majeure and the For Cause Termination Provisions in the parties [*sic*]." *Id.* (quoting FAC, ¶ 105). As with the claims discussed above, the Court must take as true Ramsey Solutions' well-pleaded allegations that it terminated the Texan Agreement and Rockies Agreement pursuant to the Performance Clause, Force Majeure Clause, and For Cause Termination Provision.

Defendant points to an email from Ramsey Solutions dated July 22, 2020, that invokes the Performance Clause of the Texan Agreement and Rockies Agreement. Mot., 18 (quoting Ex. G to Answer). It then curiously argues that because this single email refers to the Performance Clause, Ramsey Solutions terminated those agreements *only* based on that provision. Mot., 18. Defendant fails to cite to any authority for the proposition that a party terminating a contract must announce the specific clause or clauses under which that party is terminating. Neither the Force Majeure

Provision nor the For Cause Clause of the Texan or Rockies Agreements require notice that a party is terminating pursuant to those provisions rather than simply notice of termination. Because material fact issues exist as to whether Ramsey Solutions properly terminated the Texan and Rockies Agreements pursuant to the Force Majeure and For Cause Clause, Defendant's motion should be denied as to Claim IV.

Moreover, Ramsey Solutions properly alleged that it "advised that it was terminating [the Rockies Agreement and the Texan Agreement] in conformance with its rights under these various agreements…." FAC, ¶ 108. Defendant admits that Ramsey Solutions "advised Marriott that it was terminating the Rockies Agreement and the Texan Agreement," but then denies that Ramsey Solutions provided specific notice that termination was pursuant to the For Cause Clause. Answer, ¶ 108. But the denial begs the question given that there is no such language in the For Cause Clause that supports Defendant's position.

Defendant then argues, similar to its flawed argument related to Claim I, that Ramsey Solutions did not allege a triggering event related to the For Cause Clauses of the Texan Agreement or Rockies Agreement. The triggering event was indeed alleged. The For Cause Clause in the Texan Agreement and the Rockies Agreement are identical to the one in the Palms Agreement, authorizing Ramsey Solutions to terminate where, as alleged here, Defendant "become(s) engaged in, accused of or subject to any public scandal… or other event that in [Ramsey Solutions'] sole judgment will impair or damage its brand or good will by hosting an event at Hotel." As discussed above, the alleged triggering event was not merely the pandemic, but as Defendant itself stated, the public scandal Defendant feared – that it would receive bad press (or worse) if the event were to take place as scheduled and, in the manner contemplated. *See, e.g.,* FAC, ¶¶ 8, 41-42, 50, 63-65. An executive at Defendant expressed fear "that 'Inside Edition' might come in and do a story."

17

*Id.* at ¶ 50. Defendant's denial of these allegations renders this issue inappropriate for adjudication on the pleadings.

Defendant's argument that Ramsey Solutions does not allege a triggering event of the Force Majeure Clause nor notice of termination subject to that clause ignores the plain facts. First, to the extent Defendant argues Ramsey Solutions did not identify in the FAC "what force majeure event had occurred that prevented performance of the Texan Contract and Rockies Contract,"[12] Defendant misses multiple direct references to the pandemic, which, in the context of Defendant's anticipatory breach of the Palms Agreement, apply equally, and at times explicitly, to the Texan and Rockies Agreements, which required Defendant to perform to Ramsey Solutions satisfaction at the Palms Event.

Similarly, Defendant ignores that Ramsey Solutions provided notice of termination pursuant to the Palms Agreement's Force Majeure Clause as well as in the other two agreements. *See* FAC, ¶ 64 (citing Exhibit G, July 2020 letter). In that letter, counsel for Ramsey Solutions refers to Defendant's anticipatory breach of the Palms Agreement due to Defendant's inability to provide the services and amenities agreed to and its other breaches including advising that it could cancel the event while it was ongoing. Because acceptable performance under the Palms Agreement was a condition precedent to performance under the other two, Ramsey Solutions was permitted to terminate them having lost all confidence in Defendant's ability to perform as expected. Regardless, there is a factual dispute relating to Ramsey Solutions' termination under

---

[12] *See, e.g.*, FAC, ¶ 44 ("While Ramsey Solutions tried to work cooperatively with Gaylord Palms, dating back to when concerns about the pandemic first arose, … the failure to put on a first-rate event would be held against Ramsey Solutions, not Gaylord Palms."); ¶ 53 ("The current pandemic, which imposed a series of untenable burdens and contingencies on Ramsey Solutions … clearly falls squarely within [the Force Majeure] provision."); ¶ 67 ("… the Agreements contemplate that a worldwide pandemic qualifies as a basis to terminate."); ¶ 68 ("Proceeding either during a pandemic or under the cloud of a pandemic adversely impacts many of the purposes and goals of the *EntreSummit* events.").

18

the Force Majeure Clauses of the Texan and Rockies Agreements, and for that reason, judgment on the pleadings is inappropriate.

Defendant's last argument regarding the Texan and Rockies Agreements is its most misguided. Both the Texan and Rockies Agreements contain a Performance Clause, which excuses performance by Ramsey Solutions without liability if (1) Ramsey Solutions notifies Defendant in writing of material service or performance issues by Defendant at the prior event and (2) Defendant does not propose and implement a plan addressing the issues raised in Ramsey Solutions' written notice. FAC, Ex. F, p.10; Ex. E, p.10. Defendant argues that because the event at the Gaylord Palms did not take place, Ramsey Solutions could not invoke the Performance Clause. But Defendant's argument is belied by the allegations and the facts. It is precisely Defendant's failure to perform and its material breaches of the Palms Agreement that allowed Ramsey Solutions to invoke the Performance Clause at all. The Texan Agreement and the Rockies Agreement were inextricably tied to Defendant's performance under the Palms Agreement.

As counsel for the Ramsey Solutions reminded Defendant in the July letter, Defendant itself advised Ramsey Solutions that it could not properly perform under the Palms Agreement. FAC, Ex. G, p.2. Ramsey Solutions made repeated efforts to work with Defendant to accommodate Defendant's moving target of restrictions and limitations, but Defendant's unilateral modifications fundamentally altered the contract, confirming that Defendant did not and could not propose or implement a plan resolving the issues raised by Ramsey Solutions. Defendant's reliance on the prevention doctrine is telling. As a matter of logic, Defendant cannot be permitted to materially breach the Palms Agreement, necessitating termination by Ramsey Solutions, then complain that because the event at the Gaylord Palms didn't take place, there were no performance issues justifying termination. It was Defendant's obligation to perform at a level that was

satisfactory to Ramsey Solutions under the Palms Agreement in order to proceed with the other two events; a successful Palms Event was a prerequisite because Ramsey Solutions and Defendant were already experiencing performance related issues. The issue of whether termination was appropriate is not ripe for adjudication on the pleadings and the Motion should be denied.

E.     *Factual Disputes Regarding that Breach Negates Judgment on the Pleadings as to the Rockies and Texan Agreements.*

Defendant argues, without support, that it is entitled to liquidated damages under the Texan Agreement and Rockies Agreement. This argument fails for two reasons. First and most fundamentally, as detailed above, Defendant's breach of the Palms Agreement entitled Ramsey Solutions to terminate the Texan Agreement and Rockies Agreement. To be clear, a successful execution of the Palms Event was a condition precedent to Ramsey Solutions obligation to proceed with the Texan Agreement and the Rockies Agreement. FAC, ¶¶ 60-65. Given Defendant's breach of the Palms Agreement in failing to perform and its complete failure to honor the letter and spirit of the Palms Agreement, Ramsey Solutions could terminate the other two agreements in its sole discretion. *Id*. Second, given there are disputed factual issues regarding Defendant's failure to perform under the Palms Agreement, the resolution of this claim is not a question of law. *Greater Houston Radiation Oncology, P.A. v. Sadler Clinic Ass'n, P.A.*, 384 S.W. 875, 889 (Tex. App. Beaumont 2012) ("Where there are disputed fact issues regarding a party's failure to perform under an agreement, those fact issues shall be submitted to the jury.") (citation omitted); *see State Farm Mut. Auto. Ins. Co. v. Goddard*, 484 P.3d 765, 769 (Colo. App. 2021) (breach of contract is question for fact finder). The issue of whether Defendant's breach is so material as to render the contract unenforceable is also a question of fact. *Pelco Constr. Co. v. Chambers Cnty.*, 495 S.W.3d 514 (Tex. App. Houston 1st Dist. 2016); *Carder, Inc. v. Cash*, 97 P.3d 174 (Colo. App. 2003).

20

## CONCLUSION

In sum, Defendant engages in pretzel logic—ignoring a myriad of disputed issues of fact and misinterpreting long-standing legal authority—to arrive at flawed conclusions.  Judgment on the pleadings on the bases sought by Defendant is improper and the Motion should be denied.

Respectfully submitted,

By:     /s/  Jennifer G. Altman
        Jennifer Altman, Esq.
        (admitted *pro hac*)
        Markenzy Lapointe, Esq.
        (admitted *pro hac*)
        PILLSBURY WINTHROP SHAW PITTMAN LLP
        600 Brickell Avenue, Suite 3100
        Miami, FL 33131
        jennifer.altman@pillsburylaw.com
        markenzy.lapointe@pillsburylaw.com

        Ashley E. Cowgill, Esq.
        PILLSBURY WINTHROP SHAW PITTMAN LLP
        500 Capitol Mall, Suite 1800
        Sacramento, CA 95814
        ashley.cowgill@pillsburylaw.com

        ***Counsel for The Lampo Group, LLC***

21

## CERTIFICATE OF SERVICE

I hereby certify that on the **11th day of October, 2021**, a true and correct copy of the foregoing was served by CM/ECF notifications to the following parties registered to receive notices in this case:

Steven M. Rudner, appearing *pro hac vice*
John C. Josefsberg, appearing *pro hac vice*
**RUDNER LAW OFFICES**
12740 Hillcrest Road, Suite 240
Dallas, TX 75230
Telephone: (214) 373-1900
Facsimile: (214) 360-7845
Rudner@HotelLawyers.com
josefsberg@HotelLawyers.com

-and-

Stephen J. Zralek, No. 18971
**BONE MCALLESTER NORTON PLLC**
511 Union St., Ste. 1000
Nashville, TN 37219
Telephone: (615) 238-6305
Facsimile: (615) 687-2763
szralek@bonelaw.com

***Counsel for Marriott Hotel Services, Inc.
and Marriott International, Inc.***

/s/ *Jennifer G. Altman*