# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| THE LAMPO GROUP, LLC d/b/a RAMSEY, a Tennessee Limited Liability Company, <br><br> Plaintiff, <br><br> v. <br><br> MARRIOTT HOTEL SERVICES, INC., a Delaware Corporation; <br><br> Defendant. | Case No. 3:20-cv-00641 <br> Judge Aleta A. Trauger <br><br> JURY DEMAND |
| MARRIOTT HOTEL SERVICES, INC., a Delaware Corporation, <br><br> Counter-Plaintiff, <br><br> v. <br><br> THE LAMPO GROUP, LLC d/b/a RAMSEY, a Tennessee Limited Liability Company, <br><br> Counter-Defendant. | |

## MARRIOTT HOTEL SERVICES, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

Defendant/Counter-Plaintiff Marriott Hotel Services, Inc. ("Marriott"), pursuant to Federal Rule of Civil Procedure 12(c) and Local Rule 7.01(a)(4), hereby submits the following Reply Memorandum in Support of its Motion for Partial Summary Judgment on the Pleadings against Plaintiff/Counter-Defendant The Lampo Group, LLC d/b/a Ramsey ("Ramsey"). The Reply is supported by the accompanying Memorandum of Points and Authorities.

# MEMORANDUM OF POINTS AND AUTHORITIES

1. <u>The Court has already ruled that Ramsey did not cancel the Palms Agreement pursuant to the For Cause Termination clause.</u>

   Ramsey claims that "whether Ramsey Solutions properly invoked the For Cause Clause is a disputed issue of material fact not subject to adjudication based on the pleadings alone." (Doc. 68, Page ID # 993). However, whether Ramsey "*properly* invoked" the For Cause Clause cannot be an issue of fact, when – as the Court has already found – Ramsey never invoked the For Cause Clause *at all.* (Doc. 50, Page ID # 555).

   Furthermore, Ramsey oddly claims that there is no language in the Palms Agreement to requiring it to identify the specific contract provision "that supported the notice of default." (Doc. 68, Page ID # 993). In other words, a party can be found to have invoked a particular clause, without ever having stated it is invoking the particular clause. This argument defies logic, as well as the clear terms of the For Cause Clause, which require that in order to terminate under the provision, "the Group shall provide prompt notice" to the Hotel that, in the Group's sole judgment, an event has taken place "that will impair or damages its brand or good will by Hosting an event at the Hotel." (Doc. 10, Page ID # 98, ¶ 48). Again, not only did Ramsey not provide "prompt" or "proper" notice pursuant to this clause, it provided *no notice* pursuant to this cause.

2. <u>The Court already has ruled that Marriott's alleged actions cannot constitute a triggering event to the For Cause Termination Clause of any of the contracts</u>

   Ramsey supports its argument that it properly alleged "a triggering event" to invoke the For Cause Clause (even though the clause was never invoked) by stating in its First Amended Complaint that Marriott insisted on enforcing public health ordinances because it feared it would be subject to "bad press," a "public outcry," and/or "political blowback" if it did not do so. (Doc. 68, Page ID # 995-996). If the Court concludes Marriott's conduct does not qualify as a public

scandal, Ramsey argues, it must qualify as an "other event" under the principal of *ejusdem generis*. (Doc. 68, Page ID # 997).

Again, the Court has already addressed this issue, finding that under the principal of *ejusdem generis*, Marriott's actions *cannot* as a matter of law constitute a triggering event to invoke the For Cause Clause. (Doc. 50, Page ID # 553). But regardless, the plain language of the clause does not allow Ramsey to terminate the contract if the Hotel takes an action because it *fears* or *anticipates* a public scandal that would be caused by Ramsey's own actions;[1] it only allows termination if Marriott becomes "*engaged in, accused of or subject* to" a public scandal. (Doc. 10, Page ID # 98, ¶ 48). Nowhere has Ramsey ever alleged that Marriott at any time ever became "engaged in, accused of, or subject to" a public scandal, additionally precluding relief under Claim I.

3. <u>The Additional Impossibility Clause is not a termination provision.</u>

Ramsey continues to ignore that the plain language of the Additional Impossibility Clause of the Palms Agreement, which grants no separate power to terminate the Contract. It further ignores the fact that the Court has already found that Ramsey's termination letter does not reference this clause. (Doc. 50, Page ID # 549). Ramsey disagrees with the Court, stating that a reference to a "change in circumstances" in the termination letter is sufficient to invoke the clause. (Doc. 68, Page ID # 998). Ramsey however does not demonstrate, or even allege, the requisite existence of a "travel advisory, notice or warning" that "specifically advises travelers to avoid all

---

[1] In a scenario where Ramsey's own actions (*i.e.,* holding an event without face masks or social distancing) would cause the Hotel to become involved in a public scandal, the Prevention Doctrine would bar Ramsey from exercising any rights under the For Cause Clause. *See In re Kraz, LLC,* 626 B.R. 432, 439 (M.D. Fla. 2020), *reh'g denied*, No. 8:15-BK-7039-MGW, 2020 WL 6082716 (M.D. Fla. Oct. 15, 2020)

NSH 2363339.1

non-essential travel to the specific city in which the Hotel is located [*i.e.,* Orlando]," (Doc. 10, Page ID # 99-100, ¶ 54), alone precluding the invocation of this clause.

4. <u>No breach is alleged other than the failure to return Ramsey's deposit.</u>

Ramsey asserts that, despite that fact that the only breach of contract asserted in Claim III of the FAC was the "Gaylord Palms … failing to repay the deposit amounts" (Doc. 10, Page ID # 111, ¶ 101), allegations made in other portions of the FAC "constituted separate breaches supporting termination particularly given the timing." (Doc. 68, Page ID # 1000). Even if the Court were to accept this argument, Ramsey is incorrect that Marriott's alleged actions support a claim for *actual* breach, because Ramsey terminated the Agreement before the Hotel's performance was due.[2] Nor can Ramsey's allegations constitute a claim for repudiation or *anticipatory* breach, as Ramsey did not elect to treat any alleged repudiation as a breach prior to the time of performance.[3] Instead, Ramsey's termination letter only claimed that event had been rendered "an impossibility." (Doc. 10, Page ID # 97, ¶ 46). An alleged repudiation would require an acceptance of that alleged repudiation, in order to constitute a valid claim for anticipatory breach. *See, e.g., Degirmenci v. Sapphire-Fort Lauderdale, LLLP,* 693 F.Supp.2d 1325, 1345 (S.D. Fla. 2010).

---

[2] *See, e.g., Hewlett-Packard Co. v. Oracle Corp.*, 65 Cal.App.5th 506, 550, 280 Cal.Rptr.3d 21, 59 (2021), *reh'g denied* (July 8, 2021)("There can be no actual breach of a contract until the time specified therein for performance has arrived.") (*citing* 23 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 63:30 (4th ed. 2002).

[3] When an anticipatory breach occurs, the non-breaching party has the right: (1) to rescind the contract altogether; (2) to elect to treat the repudiation as a breach by bringing suit or by making some change in position; or (3) to await the time for performance of the contract and bring suit after that time has arrived. *Dutra v. Kaplan,* 137 So.3d 1190, 1192 (Fla. Dist. Ct. App. 2014). But a repudiation constitutes a breach only if the non-repudiating party elects to treat it as such. *Degirmenci, supra,* 693 F.Supp.2d at 1345. Rather than treating the alleged anticipatory breach as a repudiation, Ramsey treated the contract as valid until it provided a notice of termination under the Force Majeure Clause on July 3, 2020.

NSH 2363339.1

Case 3:20-cv-00641   Document 70   Filed 10/15/21   Page 4 of 7 PageID #: 1037

Furthermore, a claim of an actual breach by the Hotel for allegedly failing to provide contracted services is incompatible with Ramsey's claim that its performance was excused under the reciprocal Force Majeure Clause. If Ramsey's performance of holding the event was excused without liability under existing conditions, the Hotel's performance of hosting the event would have been excused without liability as well, precluding a claim of anticipatory breach.[4]

5. <u>The For Cause Clause was the only basis invoked for termination of the Rockies and Texan Contracts</u>

As with the Palms Agreement, Ramsey makes the baffling claim that it actually invoked the For Cause and Force Majeure Clauses of the Texan and Rockies Agreements without actually invoking them. The "single email" invoking solely the Performance Clause that Ramsey summarily dismisses as irrelevant is not just *any* email; it is Ramsey's July 22, 2020 email *terminating the contracts.* Ramsey's claim that there is no legal requirement that a party "must announce the specific clause or clauses under which that party is terminating" (Doc. 68, Page ID # 1002) is also mystifying, as both the For Cause and Force Majeure Clauses explicitly require a party to give prompt notice when termination is made under those provisions. (Doc. 10, Page ID # 97, ¶ 46; Page ID # 99, ¶ 52).

6. <u>Ramsey's force majeure claim under the Palms Agreement cannot serve as the basis of cancellation for other unrelated contracts</u>

Finally, Ramsey makes the inexplicable argument that "references to the pandemic" related to its termination of the Palms Agreement "apply equally, and at time explicitly, to the Texan and Rockies Agreements," constituting an allegation of a triggering force majeure event. (Doc. 68,

---

[4] To the extent that Ramsey is alleging any breach based upon failure to provide adequate assurances, Florida law does not recognize a right to demand adequate assurances in non-UCC contracts. *See Nova Bank v. Madison House Group,* No. 11-1291, 2011 WL 6028213 (D. N.J. Dec. 5, 2011), at *6.

Page ID # 1003). No allegation is made anywhere in the FAC that conditions existing in Florida in July 2020 could possibly makes use of hotel facilities illegal or impossible in Texas in May 2021 or in Colorado in May 2022.

DATED: October 15, 2021

Respectfully submitted,

/s/ Steven M. Rudner
Steven M. Rudner, admitted *pro hac vice*
John C. Josefsberg, admitted *pro hac vice*
RUDNER LAW OFFICES
12740 Hillcrest Road, Suite 240
Dallas, TX 75230
Telephone: (214) 373-1900
Rudner@HotelLawyers.com
josefsberg@HotelLawyers.com

/s/ Stephen J. Zralek
Stephen J. Zralek, No. 18971
SPENCER FANE LLP
511 Union St., Ste. 1000
Nashville, TN 37219
Telephone: (615) 238-6305
szralek@spencerfane.com

*Counsel for Marriott Hotel Services, Inc.*

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that on, this 15th day of October, 2021, we electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send transmissions of Notices of Electronic Filing on all Counsel of Record. Courtesy copies of the foregoing were also served on the following parties via email to:

Ashley E. Cowgill, Esq.
ashley.cowgill@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
500 Capitol Mall, Suite 1800
Sacramento, CA 95814

Jennifer Altman, Esq.
jennifer.altman@pillsburylaw.com
Markenzy Lapointe, Esq.
markenzy.lapointe@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
600 Brickell Avenue, Suite 3100
Miami, FL 33131

                                                      /s/ Stephen J. Zralek