**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **THE LAMPO GROUP, LLC, d/b/a RAMSEY SOLUTIONS, a Tennessee Limited Liability Company,** | ) | |
| **Plaintiff/Counter-defendant,** | ) | |
| **v.** | ) | **Case No. 3:20-cv-00641** |
| | ) | **Judge Aleta A. Trauger** |
| **MARRIOTT HOTEL SERVICES, INC., a Delaware Corporation,** | ) | |
| **Defendant/Counter-plaintiff.** | ) | |

**MEMORANDUM**

Before the court is the Motion to Amend Affirmative Defenses to Counterclaim and Memorandum of Law in Support Thereof ("Motion to Amend") (Doc. No. 54) filed by plaintiff/counter-defendant The Lampo Group, LLC, d/b/a Ramsey Solutions ("Ramsey Solutions"). Citing Rule 15(a) of the Federal Rules of Civil Procedure, Ramsey Solutions seeks to amend its affirmative defenses to the Counterclaim asserted by defendant/counter-plaintiff Marriott Hotel Services, Inc. ("Marriott") to include three additional affirmative defenses.

For the reasons set forth herein, the motion will be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ramsey Solutions filed its original Complaint initiating this case on July 22, 2020 and its Amended Complaint (Doc. No. 10) within a week of that date. It seeks declarations from the court regarding the "meaning and interpretation" of specific provisions in three contracts governing the parties' relationship (Claims I, II, and IV), to which the parties refer as the "Palms Agreement," the "Texan Agreement," and the "Rockies Agreement" (collectively, the "Gaylord Agreements").

The Gaylord Agreements, executed in 2017, all pertain to conferences or events that Ramsey Solutions agreed to hold at different hotel/conference centers operated by Marriott in 2020 (at the Gaylord Palms Resort & Convention Center ("Gaylord Palms") in Florida), 2021 (at the Gaylord Texan Resort & Convention Center ("Gaylord Texan") in Texas), and 2022 (at the Gaylord Rockies Resort & Convention Center ("Gaylord Rockies") in Colorado). Ramsey Solutions also asserts a claim for breach of the Palms Agreement (Claim III). Marriott filed its timely Answer and Counterclaim, in which it disputes Ramsey Solutions' proposed interpretation of the relevant contract provisions, denies liability for breach of contract, asserts numerous affirmative defenses, and brings counterclaims for breach of contract. (Doc. No. 21.) Ramsey Solutions filed its original Answer and Affirmative Defenses to Counterclaim on September 18, 2020. (Doc. No. 27.)

The Initial Case Management Order proposed by the parties and adopted by the court on October 19, 2020, established a deadline for amending pleadings of December 15, 2020 and a discovery cut-off date of June 30, 2021 (Doc. No. 31), among other deadlines. The trial was set for February 15, 2022. (Doc. No. 32.) Since entry of the Initial Case Management Order, virtually all of the scheduling deadlines have been extended by agreement or by court order *except* the deadline for amending pleadings. The trial has been reset for August 2, 2022 (Doc. No. 58), and, more recently, the court entered an Order on September 14, 2021, extending the fact discovery deadline to March 1, 2022 and the deadline for *Daubert* motions and dispositive motions to April 1, 2022 (Doc. No. 65). In the same Order, the court noted that it would not extend the deadline for amending pleadings but would rule on Ramsey Solutions' Motion to Amend. (Doc. No. 65 ¶ 5.)

In its Counterclaim, as relevant here, Marriott states claims for breach of the three Gaylord Agreements and further expressly asserts that it is entitled to liquidated damages under the terms of those contracts, based on the Cancellation Policy provisions thereof. (Doc. No. 21,

Counterclaim ¶¶ 25–26, 58–59, 90–91.) In addition, Marriott pleads "in the alternative" that it is entitled to its "actual damages in an amount to be proven at trial" for breach of each of these contracts. (*Id.* ¶¶ 27, 60, 92.)

The Cancellation Policy provisions are largely the same in each of the three contracts. They provide, in relevant part, that Ramsey Solutions ("Group")

> bears responsibility for the Room Block and the F&B [Food and Beverage] Guarantee.[1] Group also agrees that the Hotel will suffer actual harm that will be difficult to determine if the Group cancels this Agreement after the date hereof for reasons other than those specified in this Agreement. The Group will pay as liquidated damages to the Hotel, depending upon the timing of such cancellation, the following amounts, as a reasonable estimate of harm to Hotel for the cancellation:

| Time Period of Cancellation | Amount of Liquidated Damages Due |
|---|---|
| 0–180 days prior to arrival | 100% of total room revenue[2] plus 75% of F&B Guarantee |
| 181–365 days prior to arrival | 75% of total room revenue plus 50% of F&B Guarantee |
| 366–551 days prior to arrival | 40% of total room revenue |
| 552 or more days prior to arrival | 10% of total room revenue |

(Doc. No. 10-1, at 14.[3])

[1] The F&B Guarantee in each contract is a minimum of $700,000. (*See, e.g.*, Doc. No. 10-1, at 12.)

[2] "Total room revenue" is defined as "the dollar amount equal to the Room Block multiplied by the Group's average room rate, exclusive of resort fee." (Doc. No. 10-1, at 14.) The "Room Block" is the number of sleeping rooms reserved by Ramsey Solutions for conference attendees.

[3] The timelines in the Texan and Rockies Agreements differ slightly. The Texan Agreement also requires liquidated damages of $25,000 for cancellations made 913 to 1095 days (2.5 to 3 years) in advance of the event and of $10,000 for cancellations 1096 days or more (3 to 3.5 years) from the signing of the contract. (Doc. No. 10-6, at 12.) The Rockies Agreement calls for liquidated damages of 40% of the total room revenue for cancellations 366 to 729 days prior to arrival, 10% of total room revenue for cancellations 730 to 1,094 days prior to arrival, $25,000 for cancellations 1,095 to 1,459 days prior to arrival, and $10,000 for cancellations more than 1,460 days prior to arrival. (Doc. No. 10-5, at 11.)

In its original Answer to the Counterclaim, Ramsey Solutions generally denies any allegations or liability inconsistent with the terms of the contracts themselves. (*See, e.g.*, Doc. No. 27, Answer to Counterclaim ¶¶ 25–27.) Its Affirmative Defenses did not expressly incorporate a defense objecting to the enforceability of the liquidated damages provisions in the Gaylord Agreements. However, for its Thirteenth Affirmative defense, Ramsey Solutions asserted that Marriott's claims are "barred because of illegality." (Doc. No. 27, at 28.) It narrowed the defense, however, to the Palms Agreement, explaining: "As contemplated and written the 'Palms Agreement,' the fulfillment of the same would have been illegal [sic]." (*Id.* at 28–29.) Curiously, it does not assert that "fulfillment" of the other two Gaylord Agreements, which are materially identical, would be "illegal."

However, Ramsey Solutions filed its Motion to Amend and proposed Amended Answer and Affirmative Defenses on August 11, 2021, seeking to add three new affirmative defenses:

> **Eighteenth Affirmative Defense**. As and for its eighteenth affirmative defense, Ramsey Solutions states that the liquidated damages provisions in the Palms Agreement, Texan Agreement and Rockies Agreement that are being sued upon in the Counterclaim are illegal.
>
> **Nineteenth Affirmative Defense**. As and for its nineteenth affirmative defense, Ramsey Solutions states that the liquidated damages provisions in the Palms Agreement, Texan Agreement and Rockies Agreement are unenforceable. The provisions provide for a windfall to Marriott as they fail to deduct any of the expenses associated with generating the revenue and, therefore, have no rationale [sic] relationship to Marriott's actual damages. The stipulated damages sought in the Counterclaim are actually a penalty and, accordingly, the provisions cannot be enforced.
>
> **Twentieth Affirmative Defense**. As and for its twentieth affirmative defense, Ramsey Solutions states that the purposes of the agreements were frustrated or otherwise made impossible to perform and should be rescinded because, among other things, (1) on July 2, 2020, Michael Wainwright and Michael Stengel, on behalf of Marriott, told Ramsey Solutions during a telephone call to discuss the Palms Event that Marriott may still cancel the Palms Event (even as late as during the event itself) and that Marriott may continue to impose additional restrictions and limitations on the Palms Event as the event was now only a week or so away; and, (2) despite being familiar with Ramsey Solutions' live events and the

> importance of the guest experience to attendees, Marriott imposed a myriad of restrictions and limitations on the event that removed the benefit of the bargain including, without limitation, closing of on-site restaurants, closing and/or limitation of the spa facilities, room service and valet, removal of the food service as outlined in the agreement and limitation on gym and pool access. None of these restrictions or limitations were required by federal, state or local laws, regulations or ordinances and severely limited the benefit of the bargain to Ramsey Solutions and frustrated the purposes of the Palms Agreement such that it should be rescinded as it would otherwise be inequitable.

(Doc. No. 54-1, at 29–30.)

Marriott filed a Memorandum of Law in Opposition to the Motion to Amend (Doc. No. 60), and Ramsey Solutions filed a Reply in further support of its motion (Doc. No. 62).

## II. STANDARD OF REVIEW

"[W]hen a party seeks to amend its pleadings . . . after the expiration of scheduling order deadlines, it must show good cause under Rule 16(b)." *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 879 (6th Cir. 2020) (citing *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002); Fed. R. Civ. P. 16(b)(4)). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet" the scheduling order's requirements, but courts also consider 'possible prejudice to the party opposing the modification.'" *Id.* (quoting *Inge*, 281 F.3d at 625). To be clear, "[w]hile the absence of prejudice to a non-moving party may be relevant in determining whether leave to amend should be granted . . . , it does not fulfill the 'good cause' requirement of Rule 16(b)." *Woodcock v. Ky. Dep't of Corrs.*, No. 5:12-CV-00135-GNS-LKK, 2016 WL 3676768, at *1 (W.D. Ky. July 6, 2016) (citation omitted).

Assuming the movant clears the Rule 16 "good cause" hurdle, the court must then consider whether the proposed amendment is permissible under Rule 15. *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003). Under that rule, the court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) "embodies a 'liberal amendment policy.'" *Brown v. Chapman*, 814 F.3d 436, 442 (6th Cir. 2016) (citation omitted). To determine whether to

grant leave under this liberal policy, courts weigh several factors, including: "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458–59 (6th Cir. 2001) (citation omitted).

**III. THE PARTIES' POSITIONS**

In its Motion to Amend, Ramsey Solutions cites only Rule 15 as providing the governing standard, although it also asserts, in passing, that "there is good cause" to allow it to amend. (Doc. No. 54, at 4.) The focus of its argument, however, is on the lack of any possible prejudice to Marriott if Ramsey Solutions is permitted to amend. It argues that its proposed amendment would not prejudice Marriott, because discovery is ongoing, no depositions have been taken, and Marriott was on notice of Ramsey Solutions' position regarding the enforceability of the liquidated damages provisions in the Gaylord Agreements based on the "discovery served directed to the issue" and on notice of the allegations underlying the proposed Twentieth Affirmative Defense since the filing of the initial Complaint. (*Id.* at 3–4, 13–15). It also asserts that it did not unduly delay in seeking to amend, despite the passage of the deadline for amending pleadings, because it sought leave to amend "expeditiously after learning of Marriott's position regarding the [unenforceability] defense." (*Id.* at 4; *see also id.* at 15–16.) It also asserts that the proposed amendment is not futile, frivolous or brought in bad faith (*id.* at 4, 17–19), that "strong public policy" supports having cases tried on their merits (*id.* at 15), and that it would be significantly prejudiced if not permitted to amend.

Under the heading "Illegality Defense," which appears to be inserted in support of Ramsey Solutions' claim that Marriott would not be prejudiced by the proposed amendment and that it acted promptly in seeking to amend, Ramsey Solutions represents that it served discovery on

Marriott requesting, among other things, evidence regarding its damages and the quantification of its damages in the summer of 2021. Marriott served its answers to Ramsey Solutions' Second Set of Interrogatories on August 6, 2021, in which it responded to all requests for information regarding its damages by objecting that the information sought was "not relevant to the subject matter of the lawsuit" and "not reasonably calculated to lead to the discovery of admissible evidence." (See, e.g., Doc. No. 54-3, at 11 (Answer to Interrog. No. 18).) More specifically, Marriott asserted that the requested information about damages was not relevant, because Ramsey Solutions had not preserved its objection to Marriott's claim for liquidated damages by raising it as an affirmative defense, as follows:

> In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable.
>
> . . . .
>
> Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

(Id.) In its August 10, 2021 Responses and Objections to Ramsey Solutions' Second Request to Produce, Marriott objected to providing documents relating to its actual damages on the same grounds. (See, e.g., id. at 34 (Response to Request No. 1).)

Ramsey Solutions now maintains that, indeed, the liquidated damages provisions are unenforceable "on their face" under Florida and Tennessee law, because they provide damages well in excess of what Marriott's actual damages would be if, in fact, it is able to establish its claims for breach of contract. (Doc. No. 54, at 7.)[4] Ramsey Solutions argues that "unreasonably

[4] Ramsey Solutions actually states that Marriott's position is that Ramsey Solutions was required, but failed, to raise a defense of "illegality." (Doc. No. 54, at 7.) In response to that

large liquidated damages [are] not just compensation and operate[] as a penalty. Under these circumstances, the liquidated damages clause is unenforceable, and the nonbreaching party is not entitled to recover the damages specified in the contract but must prove actual damages." (Doc. No. 54, at 11 n.10 (citation omitted).) Ramsey Solutions appears to be arguing that, because the invalidity of the liquidated damages provisions is "facially obvious from a review of the agreements," it had no obligation to raise their unenforceability, and the matter is, instead, one of "law for this Court." (*Id.* at 11.) Ramsey Solutions insists that it is Marriott's burden to prove that the damages it seeks in its Counterclaim, including damages under the liquidated damages provisions of the Gaylord Agreements, "accurately reflect[] its *actual* damages." (Doc. No. 54, at 11 (citing *MCA Television Ltd. v. Pub. Int. Corp.*, 171 F.3d 1265, 1276 (11th Cir. 1999) ("Under Florida law, when a damages clause is held to be an unenforceable penalty, the party seeking to recover for the breach must allege and prove his actual damages."); *Keck v. Meek*, No. E2017-01465-COA-R3-CV, 2018 WL 3199220, at *15 (Tenn. Ct. App. June 28, 2018)).) Alternatively, Ramsey Solutions argues that, "even if Marriott's position were correct that the illegality defense applies" (although it has now acknowledged that this is not Marriott's position), "there is authority for the proposition that the defense of illegality cannot be waived [by the failure to raise it as an affirmative defense] because a court may not enforce a contract that is illegal or contrary to public policy." (*Id.* (citations omitted).)

argument, Ramsey Solutions states that it "does not believe that illegality is the appropriate defense" and that, instead, its position is that the "liquidated damages provisions are unenforceable on their face because they purport to provide as damages more than Marriott could have ever recovered if it fully performed the contracts." (*Id.*) In a Notice of Scrivenors' Error, Ramsey Solutions now acknowledges that Marriott used the term "enforceability" rather than "illegality" it its discovery responses. (Doc. No. 55, at 1.) It also states that this "error" does not "in any way change the outcome or merits" of its motion (*id.* at 2), but the court must acknowledge that this "error" does make its argument in its Motion to Amend all the more difficult to follow.

Although Ramsey Solutions does not expressly address whether the failure to raise unenforceability as an affirmative defense results in waiver of the defense when the penalizing nature of the liquidated damages provision is *not* facially obvious, it asserts that, "in an abundance of caution, given Marriott's objection to Discovery," Ramsey Solutions now seeks to amend its defenses to include both unenforceability and illegality as affirmative defenses. It also argues, in the context of whether amendment would prejudice Marriott, that Marriott at all times has the affirmative burden of proving its damages or that its actual damages are not readily ascertainable, in order to enforce the liquidated damages provisions. That is, "[t]he very same evidence is needed for Marriott [to prove its damages] as Ramsey Solutions will need to establish its defenses, so there is no prejudice to Marriott." (Doc. No. 54, at 14.)

In addition, Ramsey Solutions seeks to add "frustration of purpose" as an affirmative defense, based on facts that have admittedly been in its possession since before it filed this lawsuit. It asserts that the facts supporting this "defense" are included in its affirmative pleading, but it now seeks to "add the defense to the Counterclaim as well." (Doc. No. 54, at 12.) It asserts that it would be "inequitable and prejudicial to enforce the Palms Agreement where the benefit of the bargain was removed by Marriott." (*Id.*)

In response, Marriott argues that granting leave to amend would "greatly prejudice" it, essentially because it would be required to compute its actual damages, "prepare a financial analysis demonstrating that the liquidated damages are enforceable," identify witnesses who could testify about damages, and decide whether to retain a damages expert. (*Id.* at 16–17.) In addition, it would have to respond to Ramsey Solutions' second set of discovery, and the discovery deadlines

are all fast-approaching. It posits that permitting amendment would "jeopardize the existing trial date." (*Id.* at 18.)[5]

Marriott also contends that, regardless, Ramsey Solutions has failed to establish "good cause" for an amendment following expiration of the deadline for amending pleadings, as required by Rule 16(b)(4), because "[t]he only plausible explanation for Ramsey's failure to raise an affirmative defense challenging the enforceability of the liquidated damage clauses is that Ramsey completely misapprehends the law governing liquidated damages," and mere ignorance of the law does not constitute "good cause." (*Id.*) In particular, it argues that Ramsey Solutions is "mistaken about which party bears the burden of proof on enforceability of liquidated damages" and about whether the "non-breaching party is required to put on evidence of actual damages in the absence of a proper affirmative defense." (*Id.* at 3.)

Marriott also argues that Ramsey Solutions has not acted "diligently" to protect its interests. (*Id.* at 9, 13–15.) In addition to pointing out the length of time between the expiration of the amendment deadline and the Motion to Amend, Marriott takes issue with Ramsey Solutions' timeline, stating that Marriott responded to Ramsey Solutions' first set of discovery in March 2021, at which time, in support of the request that it provide documents supporting its claim for damages, it provided "all documents supporting its claim for liquidated damages, including copies of the Gaylord [Agreements], cancellation invoices and documents reflecting how liquidated damages

[5] Marriott also asserts that the Motion to Amend should be denied outright simply because Ramsey Solutions failed to file a motion to amend the scheduling order first, prior to seeking leave to amend. (Doc. No. 60, at 2.) The plaintiff is correct that the failure to style its motion as one seeking leave to amend the scheduling order, *per se*, is not fatal to its motion. Rather, in the Sixth Circuit, courts are simply required to apply the Rule 16 standard to motions to amend filed after the deadline for amending pleadings has expired. *See, e.g.*, *Leary*, 349 F.3d at 909 (holding that the district court had not abused its discretion in applying the Rule 16 "good cause" standard to deny the plaintiffs' motion for leave to amend their complaint).

were computed" under the Agreements. (Doc. No. 60, at 13.) In June, Ramsey Solutions sent a letter objecting that this response did not adequately support Marriott's claim for damages (*see* Doc. No. 60-1, at 4), to which Marriott responded by letter dated June 28, 2021 in which it expressly pointed out the reason for its response:

> Marriott's claim is for liquidated damages. The enforceability of a liquidated damage clause is an affirmative defense, which must be asserted in the answer or the defense is waived.
>
> Ramsey did not assert an affirmative defense challenging liquidated damages sought by Marriott in its counterclaim. [Since Ramsey] failed to do so, Marriott is only required to establish that the contract contains a liquidated damage clause and that liquidated damages have been properly computed. Marriott has produced all such documents.

(Doc. No. 60-2, at 3–4.) Counsel for the parties then held a telephone conference call on June 29, 2021, in which Marriott's response to Ramsey Solutions' request for documentation of damages was further discussed. (*See* Doc. No. 60, at 14.) Rather than immediately seeking to amend its affirmative defenses at that time, Ramsey Solutions served a second set of discovery expressly asking for additional information and documentation of damages and, upon receiving the responses to that discovery, filed its Motion to Amend on August 11, 2021, six weeks after first learning of Marriott's position. Marriott asserts that this delay demonstrates Ramsey Solutions' lack of diligence. (Doc. No. 60, at 15.)

Regarding the "frustration of purpose" proposed amendment, Marriott maintains that Ramsey Solutions has not provided good cause for failing to seek to amend within the deadline; that Marriott has not been "on notice" of the "underpinnings" of this defense; and that the proposed amendment is futile. (*Id.* at 18–21.)

While Marriott nominally focuses on the Rule 16(b)(4) standard and whether Ramsey Solutions should be permitted to amend, Marriott's true focus is on waiver. It argues that Ramsey Solutions' failure to raise the proposed affirmative defenses within the deadline for amending

pleadings means, not only that it should not be allowed to amend its Answer to the Counterclaim, but also that it has waived its ability to argue that the liquidated damages provisions in the Gaylord Agreements are unenforceable as a penalty or otherwise.

In its Reply, Ramsey Solutions contends that, by the time Marriott filed its Opposition to the Motion to Amend, the trial date had already been pushed back to August 2, 2022, basically a full year after the filing of the Motion to Amend, as a result of which it is clear that Marriott would not suffer prejudice if Ramsey Solutions is permitted to amend its affirmative defenses. Regarding good cause, Ramsey Solutions maintains that the parties have a "legitimate dispute about applicable law" and that it is only because Marriott's position is contrary to that of Ramsey Solutions that it has, "in an abundance of caution," sought leave to amend. (Doc. No. 62, at 3; *see id.* ("[U]nder Rule 16(b)(4), Ramsey Solutions has established good cause for amending its affirmative defenses as it only recently learned the information necessitating the amendment when Marriott served its discovery objections to the Second Set of Discovery.").) Regarding waiver, it argues that the failure to raise an affirmative defense does not, under federal law, always result in a waiver of that defense. (Doc. No. 62, at 4.) And, even if it might theoretically have waived the defense, it continues to assert that it is nonetheless "within this Court's discretion to invalidate a liquidated damages provision regardless of whether a defense was asserted." (*Id.* (citation omitted).)

## IV. ANALYSIS

### A. Waiver

In reality, the dispute here is about waiver: whether Ramsey Solutions has waived its objections to the enforceability of the liquidated damages provisions and its "frustration of purpose" defense by failing either to assert appropriate defenses in its original Answer and Affirmative Defenses or to move to amend its pleading prior to the expiration of the deadline for

doing so, irrespective of whether the court finds that it has failed to establish good cause for amending its pleading. Even if the court were inclined to formalistically apply the law to conclude that Ramsey Solutions has not offered sufficiently "good cause" to amend the scheduling order and therefore is not entitled to amend its Answer and Affirmative Defenses, such a holding would not answer the question of whether Ramsey Solutions has actually waived the defenses it seeks to bring. That is the issue that most engages the parties and regarding which they seek resolution. The parties, in other words, have invited the court to address what essentially amounts to a dispositive motion disguised as a Motion to Amend, but prior to the conclusion of discovery and in the absence of even minimally adequate briefing.

To avoid building suspense, the court will cut to the chase: Ramsey Solutions has not waived its ability to raise these defenses. The court will now endeavor to explain how it arrived at that conclusion.

First, it is clear that, in this diversity action, state law governs which defenses must be pleaded affirmatively to avoid waiver. *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 680 (6th Cir. 2018); *see also Roskam Baking Co. v. Lanham Mach. Co.*, 288 F.3d 895, 901 (6th Cir. 2002) ("[I]n a diversity case[,] [d]etermining whether a contention is an affirmative defense for Rule 8(c) purposes is a matter of state law." (citation and internal quotation marks omitted)). The defendant maintains, and the plaintiff does not dispute, that Tennessee choice-of-law rules apply and that, under Tennessee choice-of-law rules, the substantive laws of the states in which the three Gaylord Agreements were executed and in which they were intended to be performed govern the construction of the agreements individually. Thus, the Palms Agreement is governed by Florida law; the Texan Agreement is governed by Texas law; and the Rockies Agreement is governed by Colorado law.

Under the laws of all three of these states, the defense of the unenforceability of a contract provision generally, and of a liquidated damages provisions specifically, is an affirmative defense that must be pleaded or otherwise preserved to avoid waiver of the defense. *See, e.g.*, *Paul Gottlieb & Co. v. Alps S. Corp.*, 985 So. 2d 1, 5 (Fla. Dist. Ct. App. 2007) ("[A]ffirmative defenses must be pleaded either in the answer or as separate affirmative defenses and, if not pleaded, the issue is deemed waived."); *J.M. Beeson Co. v. Sartori*, 553 So. 2d 180, 181 (Fla. Dist. Ct. App. 1989) ("[W]here liquidated damages are attacked, it is the burden of the defendant to raise the excessiveness of the damages as an affirmative defense."); *Godoy v. Wells Fargo Bank, N.A.*, 542 S.W.3d 50, 54 (Tex. Ct. App. 2017) ("An allegation that a provision in a contract is void, unenforceable, or unconscionable is a matter in the nature of avoidance and must be affirmatively pleaded. If a party fails to plead the affirmative defense, it is waived."); *Phillips v. Phillips*, 820 S.W.2d 785, 790 (Tex. 1991) (holding that the defense that a liquidated damages provision is an unenforceable penalty generally will be waived if not affirmatively pleaded); *Garden Ridge, L.P. v. Advance Int'l, Inc.*, 403 S.W.3d 432, 437–38 (Tex. Ct. App. 2013) ("The party asserting that a liquidated-damages clause is a penalty provision bears the burden of pleading and proof." (citing *Phillips*, 820 S.W.2d at 789; Tex. R. Civ. P. 94)); *Town of Carbondale v. GSS Props., LLC*, 169 P.3d 675, 681 (Colo. 2007) ("[A]ffirmative defenses must be timely pleaded, and failure to do so results in waiver."); *Bartch v. Barch*, No. 18-CV-3016-MSK-NYW, 2020 WL 7055442, at *5 (D. Colo. Nov. 30, 2020) ("Illegality of a contract or its unenforceability due to public policy is generally treated as an affirmative defense, such that the party asserting unenforceability bears the burden of proof." (citations omitted; applying Colorado law)).

In sum, Ramsey Solutions' protestations to the contrary notwithstanding, under the law of every state relevant to this dispute, the unenforceability or illegality of a contractual liquidated

damages clause is an affirmative defense that must be affirmatively pleaded and proved by the party asserting it, and, under state law, a failure to do so will generally result in waiver of the defense. The only exception to this general rule is where the penalizing nature of the liquidated damages provision is facially obvious from the language of the provision itself, without need for any further factual development.[6] *See Phillips*, 820 S.W.2d at 789–90 (reaffirming that the defense that a liquidated damages provision is an unenforceable penalty will be waived unless affirmatively pleaded, *except* in the rare case where the illegality of the provision is "apparent on the face" of the complaint and "established as a matter of law"); *Rohauer v. Little*, 736 P.2d 403, 410 (Colo. 1987) ("Unless the contract *on its face* establishes that the stipulated liquidated damages are so disproportionate to any possible loss as to constitute a penalty, the party challenging the liquidated damages provision bears the burden of proving that fact." (emphasis added)).[7]

However, federal law, rather than state law, governs whether a defense has been waived in a diversity action brought in federal court. *Brent*, 901 F.3d at 680 (6th Cir. 2018). Federal Rule of Civil Procedure 8(c) generally requires defendants to "affirmatively state any avoidance or affirmative defense" in their first response to a pleading. The failure to do so may result in waiver of the defense. *Brent*, 901 F.3d at 680 (citing *Horton v. Potter*, 369 F.3d 906, 911 (6th Cir. 2004);

[6] For instance, in *Phillips*, the liquidated damages clause provided for liquidated damages in the amount of ten times the actual damages found by a jury. *Phillips*, 820 S.W.2d at 787–88. On its face, therefore, the clause did not meet either of the legal requirements for enforceable liquidated damages: that the harm caused by the breach be "incapable or difficult of estimation" and that the liquidated amount constitute a "reasonable forecast of just compensation," *id.* at 788, since the clause required computation of actual damages in order to compute the liquidated damages, and the liquidated damages multiplied actual damages by ten.

[7] Thus, the plaintiff's presumption that the court must *always* determine as a matter of law whether a liquidated damages provision is an unenforceable penalty is not correct. Moreover, the court declines to address *sua sponte* whether the liquidated damages provisions in the Gaylord Agreements are illegal on their face, so as to fall within the exception recognized by *Phillips* and *Rohauer*.

*Kennedy v. City of Cleveland*, 797 F.2d 297, 300 (6th Cir. 1986) ("Since immunity must be affirmatively pleaded, it follows that failure to do so can work a waiver of the defense.")).

But this failure does not *always* result in waiver. *See id.* (citing *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993), *as amended on denial of reh'g* (Aug. 31, 1993)). Because the "purpose of Rule 8(c) is to give the opposing party notice of the affirmative defense and a chance to rebut it," the operative question is whether that party "receives notice of an affirmative defense by some means other than pleadings" and, therefore, is not prejudiced by the defendant's failure to comply with Rule 8(c). *Id.* (quoting *Moore, Owen*, 992 F.2d at 1445). In *Brent*, the court found that, although the defendant had not raised its statutory immunity as a defense to the plaintiff's state law claims in its answer to the initial complaint, it responded to the amended complaint by filing a motion to dismiss, raising absolute immunity as the grounds for dismissal of the state law claims and, therefore, that the plaintiffs were not prejudiced by the defendant's failure to raise the defense sooner. The court found no waiver under the circumstances, distinguishing the case from those in which a defendant raises an immunity defense for the first time "days before the trial was scheduled to commence" or "after the close of discovery, when a plaintiff's opportunity to gather relevant evidence in rebuttal would be harmed." *Id.* at 680 (quoting *Yates v. City of Cleveland*, 941 F.2d 444, 449 (6th Cir. 1991); citing *Henricks v. Pickaway Corr. Inst.*, 782 F.3d 744, 751 (6th Cir. 2015)).

The Sixth Circuit, in fact, appears to construe the matter of notice liberally to permit defendants to raise defenses that were not formally preserved in their pleadings. *See, e.g.*, *Rogers v. Internal Revenue Serv.*, 822 F.3d 854, 856–57 (6th Cir. 2016) (holding that the district court did not abuse its discretion in finding that the defense of "release" had not been waived and that, while the defendant "could have been more diligent in raising its defense," raising the affirmative defense

for the first time in a summary judgment motion did not result in prejudice, as the plaintiff had ample opportunity to respond); *Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997) ("While we agree that Sushka should have been more diligent in raising these defenses, we do not believe that the district court abused its discretion by permitting them to be raised in the second motion for summary judgment. Sushka's failure to raise either affirmative defense did not result in surprise or unfair prejudice to Smith, especially since the district court extended the trial date in order to give Smith the opportunity to fully respond to and brief the issues."); *Moore, Owen*, 992 F.2d at 1445 (concluding that counterclaimants "were aware, or at least should have been aware," that the opposing party "intended to rely on a fraud defense" where he "raised the issue of fraud in his response to the[ir] motion for summary judgment and in his affidavit in opposition to the[ir] motion," and they did not claim to have been prejudiced by the failure to plead the defense);

In this case, it should have been clear to Ramsey Solutions both from the face of the Counterclaim and the Gaylord Agreements themselves that the enforceability of the liquidated damages provisions would give rise to disputed questions of fact as well as a legal dispute as to their enforceability. Although Ramsey Solutions did not expressly contest the enforceability of those clauses, it did signal its understanding that Marriott would be required to prove its actual damages when it served two sets of discovery requesting detailed information about Marriott's actual damages. In light of the fact that, as the party opposing the enforceability of liquidated damages, Ramsey Solutions apparently has the burden of proving what the actual damages are and that the liquidated damages are disproportionate to actual damages, Ramsey Solutions' discovery requests arguably put Marriott on notice that Ramsey Solutions intended to dispute the enforcement of the liquidated damages provisions.

In addition, by seeking to amend its pleading to raise the defenses of unenforceability and illegality, Ramsey Solutions has inarguably put Marriott on notice of its intent to rely on these defenses. Given that the parties have stipulated to the extension of virtually every other scheduling deadline in this case, and the trial date has been postponed until approximately a year after Ramsey Solutions first filed its Motion to Amend, it was not patently unreasonable for Ramsey Solutions to expect that Marriott would be amenable to its proposed amendment. Moreover, given that the discovery and dispositive motion deadlines are still months in the future and the trial date postponed until August 2022, Marriott cannot realistically claim to be prejudiced by Ramsey Solutions' belatedly raising these defenses, nor does the court believe that allowing the amendment will jeopardize the current trial setting. That Marriott may be required to make some effort to compute its actual damages and potentially to retain a damages expert does not constitute "prejudice" of the type envisaged by the rules. These activities fall within the anticipated scope of litigation generally.

Regarding Ramsey Solutions' "frustration of purpose" defense, articulated as its Twentieth Affirmative Defense in its Proposed Amended Answer and Affirmative Defenses, it is even more clear that Marriott has been on notice of this "defense" since the inception of the lawsuit. In its Amended Complaint, Ramsey Solutions alleged the same facts as those set forth under the proposed Twentieth Affirmative Defense, and it proffered these facts essentially for the purpose of showing that its performance under the Palms Agreement was excused. Marriott cannot legitimately claim to be surprised either by the factual allegations or the defense, nor is it prejudiced by Ramsey Solutions' belatedly raising the defense now.

In sum, Marriott's effort to establish that these defenses have been waived is unavailing.

**B. Rule 16(b)(4)**

Marriott's objections to the Motion to Amend are effectively rendered moot by the court's conclusion that the proposed defenses have not been waived, irrespective of whether Ramsey Solutions is permitted to actually amend its affirmative defenses. The court nonetheless acknowledges some tension between the liberal standard that applies to the waiver question and the Sixth Circuit's more rigid interpretation of the "good cause" standard set forth in Rule 16(b)(4) for motions to amend pleadings that are filed after the expiration of scheduling deadlines for amending pleadings.

Marriott is correct that "[a] misconception of the law" does not typically constitute "good cause" for belatedly seeking to amend a pleading. *See Shane v. Bunzl Distrib. USA, Inc.*, 275 F. App'x 535, 538 (6th Cir. 2008) (quoting *Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 971 (6th Cir. 1973)). At the same time, "[t]he primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (citation omitted). Although Ramsey Solutions' counsel misunderstood the law and placed their client's interests at risk by failing to raise appropriate affirmative defenses at the appropriate time, they moved with relative diligence to amend their client's affirmative defenses after being unambiguously confronted with Marriott's position on damages. The court does not find the delay occasioned by serving the second set of discovery, specifically focused on damages, to be significant in the greater scope of events in this case.

Moreover, as this court has recognized on another occasion, the operative question is not whether Ramsey Solutions has "good cause" to explain its failure to raise the appropriate affirmative defenses more promptly, but whether good cause exists to amend the scheduling order. *See Palmeri v. Goodwill Indus. of Middle Tenn.*, No. 3:17-cv-00901, 2018 WL 4030571, at *6

(M.D. Tenn. Aug. 23, 2018) (Trauger, J.) ("The good cause required here, however, is not good cause for Goodwill's having omitted an important defense from its initial pleading, but good cause for the court's departing from its Scheduling Order to allow an amendment." (citing Fed R. Civ. P. 16(b)(4))). The court finds that the extension of the other scheduling deadlines, the repeated postponement of the trial date at both parties' request, and Ramsey Solutions' relative diligence in seeking to amend—once counsel became aware of the pleading deficiencies—together provide good cause for authorizing amendment of the scheduling order for the purpose of allowing Ramsey Solutions to amend its affirmative defenses. To find otherwise would potentially work substantial injustice upon Ramsey Solutions at a relatively early stage in the proceedings, while permitting the amendment does not prejudice Marriott other than by requiring it to litigate the merits of its claims. *See id.* at *7 ("[I]nsofar as the court has some discretion under the Federal Rules of Civil Procedure with regard to whether to depart from its own deadlines, the court can consider whether it should apply the Rules in a way that would serve little purpose other than rewarding one litigant for allowing the other's error to go uncorrected." (citing *Leary*, 349 F.3d at 908)).

**C. Rule 15(a)—Futility of Amendment**

The other Rule 15 factors pertaining to whether to permit amendment once Rule 16(b) is shown to be satisfied also weigh in favor of permitting Ramsey Solutions to amend its affirmative defenses. There is no showing of bad faith or repeated failure to cure deficiencies by previous amendments. And, although Marriott argues that the proposed "frustration of purpose" amendment (proposed Twentieth Amended Defense) would be futile, the court is not entirely persuaded.

Florida courts define the doctrine of "frustration of purpose" as "excus[ing] performance by a party where the value of performance regarding the subject of an agreement has been frustrated or destroyed." *Hopfenspirger v. West*, 949 So. 2d 1050, 1053–54 (Fla. Dist. Ct. App. 2006) (citing Williston on Contracts, § 77.52 (2006)). "The doctrine of commercial frustration is

limited to cases where performance is possible but an alleged frustration, *which was not foreseeable*, totally or nearly totally destroyed the purpose of the agreement." *Valencia Ctr., Inc. v. Publix Super Markets, Inc.*, 464 So. 2d 1267, 1269 (Fla. Dist. Ct. App. 1985) (emphasis added); *see also* 11 Fla. Jur. 2d Contracts § 262 ("[F]rustration of purpose arises when one of the parties finds that the purposes for which he or she bargained, and which purposes were known to the other party, have been frustrated because of the failure of consideration or impossibility of performance by the other party."). The defense is "usually not available 'if the relevant business risk was foreseeable at the inception of the agreement and could have been the subject of an express contractual agreement.'" *In re Cinemex USA Real Estate Holdings, Inc.*, 627 B.R. 693, 697–98 (Bankr. S.D. Fla. 2021) (quoting *Home Design Ctr.–Joint Venture v. Cty. Appliances of Naples, Inc.*, 563 So. 2d 767, 769 (Fla. Dist. Ct. App. 1990)). "As a general rule, a contract is not invalid, nor is the obligor discharged from its binding effect, because the contract turns out to be difficult or burdensome to perform." *Id.* at 697–98 (quoting *Home Design Ctr.*, 563 So. 2d at 769–70).

Thus, for example, in a recent case arising within the context of the COVID-19 pandemic, a business that operated movie theaters sought to set aside or suspend payments on unexpired leases for the premises on which it operated its movie theaters, arguing both impossibility of performance and frustration of purpose arising from orders issued by the Governor of Florida closing movie theaters altogether for a period of several months due to the COVID-19 pandemic and subsequently allowing them to reopen, but only at fifty-percent capacity. *In re Cinemex*, 627 B.R. at 696. The movie theater business argued that its performance under the leases was impossible both because the theaters were closed and because, also due to the pandemic, no new movie titles were being released. The movie theater business also sought to have its rent payments

excused or reduced for the period of time during which theaters were allowed to reopen at fifty-percent capacity. *Id.*

The court acknowledged that Florida law recognizes both impossibility of performance and frustration of purpose and that these are different doctrines. Impossibility covers situations in which the purposes for which the contract was made have become, "on one side, impossible to perform." *Id.* at 697 (citations omitted). The landlord did not dispute that it was impossible for the theater business to operate the movie theater while the shutdown was in place; the question was whether the government-ordered shutdown was foreseeable and, thus, which party bore the burden of assuming the risk of a shutdown. The court ultimately found that, although the pandemic, *per se*, was not foreseeable, the lease itself contemplated that the parties "might not be able to perform their obligations under the [lease] due to acts of God or governmental action." *Id.* at 699. The lease expressly excused performance by the theater business "while the theater was shut down by government order," as a result of which the court found it unnecessary to apply the doctrine of impossibility of performance, at least as it pertained to the period of time during which theaters were shut down entirely. *Id.*

After the closure order was modified to allow movie theaters to open at half-capacity, however, the court found that it was not impossible for the theater business to operate its movie theaters, nor was the purpose of the leases frustrated by the capacity limitation. *Id.* The theater business argued that the costs of reopening made reopening impracticable, given the reduced number of movies available, reduced capacity, and the need for more cleaning and social distancing, as well as the risk of employees becoming infected. *Id.* The court rejected that argument, too, noting that, while frustration of purpose may be premised upon "impracticability of performance," "courts are reluctant to excuse performance that is not impossible but merely

inconvenient, profitless, or expensive to the lessor." *Id.* (quoting *Valencia Ctr., Inc. v. Publix Super Markets, Inc.*, 464 So. 2d 1267, 1269 (Fla. Dist. Ct. App. 1985)). It concluded that full rent was due for the timeframe during which movie theaters were permitted to open at fifty-percent capacity, regardless of whether the theater business had chosen not to reopen immediately:

> There is no question that the COVID-19 pandemic was completely unforeseeable (although a slow down in audience attendance or a dearth of new releases is not), and certainly not the fault of either contract party. But, once the [theaters were] allowed to reopen, it was possible for [the theater business] to reopen; [it] chose not to do so for what appears . . . to be primarily economic concerns. Therefore [the theater business's] performance under the [lease] from [date on which reopening was permitted] on is not excused under the doctrine of frustration of purpose.

*Id.* at 700.

As applied in this case, Marriott appears to be arguing only that the frustration of purpose defense would not apply, because, at the time the parties renegotiated the Palms Agreement, the COVID-19 pandemic was already well under way and, therefore, no longer unforeseeable. Ramsey Solutions' proposed "frustration" defense, however, does not reference the pandemic *per se* but Marriott's *response* to it by imposing "restrictions and limitations on [Ramsey Solutions'] event" that were allegedly not required by federal, state, or local laws or ordinances—including the closure of on-site restaurants, spa facilities, room service, and valet service and the limiting of access to the gym and pool, and its threat of potentially implementing additional restrictions or cancelling the Palms event altogether as late as during the event itself. (*See* Doc. No. 54-1, at 30; *see also* Am. Compl., Doc. No. 10 ¶¶ 41–43.) The foreseeability of Marriott's response, at this juncture, is a disputed question of fact.

On the other hand, it is also fairly clear that what Ramsey Solutions is referring to as "frustration of purpose" does not easily fit within the courts' description of that defense. The event center's guest amenities may not have been what Ramsey Solutions anticipated they would be when the parties contracted to hold the event at the Gaylord Palms, but Ramsey Solutions does not

allege facts suggesting holding the event would actually have been impossible, or even impracticable. It would have been more plausible, perhaps, for Marriott to claim impossibility or impracticability based on the imposition of local or state mandates pertaining to mask mandates and social distancing.

In any event, regardless of whether the defense is properly labeled, the facts alleged in support of the defense are addressed to the question of which party breached the Palms Agreement first and whether any breach is excused by the circumstances. These questions are at the core of the parties' dispute regarding that Agreement. Accordingly, the court cannot conclude at this juncture—particularly based on the minimal briefing thus far provided—that the defense as actually articulated in Ramsey Solutions' proposed Twentieth Affirmative Defense is completely futile.

## V.    CONCLUSION

For the reasons set forth herein, the court will grant Ramsey Solutions' Motion to Amend its Affirmative Defenses (Doc. No. 54), despite expiration of the deadline for amending pleadings, and deny Marriott's implied motion to strike the proposed Affirmative Defenses as waived or futile. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge