# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

THE LAMPO GROUP, LLC d/b/a
RAMSEY SOLUTIONS, a Tennessee Limited
Liability Company,

        Plaintiff,

v.

MARRIOTT HOTEL SERVICES, INC.,
A Delaware Corporation,

        Defendant.

Case No. 3:20-cv-00641
Judge Aleta A. Trauger

MARRIOTT HOTEL SERVICES, INC.,
A Delaware Corporation,

        Counter-Plaintiff,

v.

THE LAMPO GROUP, LLC d/b/a
RAMSEY SOLUTIONS, a Tennessee Limited
Liability Company,

        Counter-Defendant.

---

## PLAINTIFF/COUNTER-DEFENDANT THE LAMPO GROUP, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT/COUNTER-PLAINTIFF MARRIOTT HOTEL SERVICES, INC. ON ITS COUNTERCLAIMS
### *(LIQUIDATED DAMAGES)*

Plaintiff/Counter-Defendant The Lampo Group, LLC d/b/a Ramsey Solutions ("Ramsey Solutions") respectfully moves for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and the Local Rule 56.01 of the Local Rules for the Middle District of Tennessee, on the aspects of Counts I, II and III of the Counterclaims plead by Defendant/Counter-

Plaintiff Marriott Hotel Services, Inc. ("Defendant" or "Marriott") that seek liquidated damages because, as a matter of law, those provisions serve as a penalty and are therefore unenforceable.[1] In support of its Motion, Ramsey Solutions states:

## I. INTRODUCTION

Ramsey Solutions is entitled to summary judgment on each of the counterclaims brought by Defendant seeking liquidated damages in the three claims for breach of contract—one relating to the Palms Agreement, one relating to the Texan Agreement and the other relating to the Rockies Agreement. *See* Counterclaim [Dkt. 21]. As outlined below, each of the three liquidated damages provisions are illegal penalties and, therefore, unenforceable as a matter of law. If these provisions were upheld, Defendant would receive a windfall given that the purported "liquidated" damages are predicated solely on *gross* revenues with no reduction for any expenses, either fixed or variable. Defendant is a publicly traded company that has ready access to its profit margins; as such, it can

---

[1] Ramsey Solutions anticipates filing a separate dispositive motion after the close of discovery on Defendant's alternative damage theory of *actual* damages. Although Marriott plead entitlement to actual damages in the alternative it in its Counterclaim filed on August 28, 2020 [Dkt. 21] (Counterclaim, ¶¶27, 60 and 92), it: (1) failed to identify or provide any evidence of actual damages in its Rule 26 Disclosures; (2) objected and refused to produce any evidence to support any actual damages in response to timely served discovery; (3) failed to introduce an expert establishing any actual damages at the time expert reports were due in June of 2021; and (4) objected to each of the 30(b)(6) topics on actual damages that Ramsey Solutions served. Notably, Defendant indisputably has the burden of proof on its actual damages as plead but failed to provide any evidential support for the same despite repeated efforts on the part of Ramsey Solutions to obtain the same. This Court overruled Defendant's objections in early November.

Defendant plead actual damages in its Counterclaim and therefore has and had the burden of proof on the same. As such, it was incumbent on Defendant to timely produce this information to establish its alternative damages theory. However, this same information was likewise necessary to prove its liquidated damages claim. In each jurisdiction, to establish a liquidated damages claim, Defendant must prove that the amount is both reasonable and not otherwise ascertainable. Thus, Defendant was required to produce the information more than a year ago, but instead objected at every turn. *See, e.g., MCA Television Ltd. v. Pub. Int. Corp.*, 171 F.3d 1265, 1276 (11th Cir. 1999; *see also Keck v. Meek*, No. E201701465COAR3CV, 2018 WL 3199220, at *15 (Tenn. Ct. App. June 28, 2018).

hardly argue that the *actual* amount of any claimed damages is not ascertainable. Given that it's actual damages can be readily calculated, Defendant could have easily crafted a provision that was valid and enforceable or otherwise simply sought actual damages. Defendant chose not to do that, instead being heavy handed in seeking a huge windfall. As shown below, the liquidated damages provisions are facially invalid and unenforceable, warranting that summary judgment be granted in favor of Ramsey Solutions on each of the three claims for liquidated damages.[2]

## II.     STANDARD OF REVIEW

### A.     <u>General Summary Judgment Standard</u>

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment may be rendered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

---

[2] Attached as Exhibit "1" is the Declaration of Jennifer G. Altman, which attaches the documents referenced in the Motion. Attached to the Altman Declaration are the following documents: Exhibit "A" is a copy of Marriott's Initial Rule 26 Disclosures; Composite Exhibit "B" is a copy of its Responses and Objections to Ramsey Solutions' Second Request for Production of Documents and Second Set of Interrogatories, both served in July of 2021; Composite Exhibit "C" is a copy of John Josefsberg's June 28, 2021 and October 12, 2021, letters to the undersigned counsel objecting and refusing to provide information relating to Marriott's actual damages; Exhibit "D" is a copy of the Palms Agreement and Amendment thereto; Exhibit "E" is a copy of the Texans Agreement; and Exhibit "F" is a copy of the Rockies Agreement. For convenience, Ramsey Solutions will simply reference the exhibits to the Altman Declaration in this Motion.
As Exhibits "A" through "C" to the Altman Declaration confirm, despite pleading actual damages in the alternative, Defendant has been steadfast in its refusal to produce any documents or information relating to the same. Indeed, this same position was expressed during the discovery conference held on November 2, 2021, in connection with the 30(b)(6) topics.

3

If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex,* 477 U.S. at 322–23. "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable" by a preponderance of the evidence. *Anderson*, 477 U.S. at 252; *see also Matsushita Electric,* 475 U.S. at 586. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson,* 477 U.S. at 252). Here, Defendant must show that the issue presented herein "may reasonably be resolved in favor of either party." *Id.* A review of the provisions at issue confirms that the Motion should be granted.

## B.    Standard Applicable to Liquidated Damages

Courts have held that whether a liquidated damage clause is a valid and enforceable one for stipulated damages, or is invalid as a penalty, is a question of law for the court. *See, Comar Marine, Corp. v. Raider Marine Logistics, L.L.C.*, 792 F.3d 564 (5th Cir. 2015); *Boone Coleman Constr., Inc. v. Piketon*, 145 Ohio St. 3d 450 (2016); *Rumsey v. Gillis*, 765 S.E.2d 665 (2014); *Slinski v. Bank of America, N.A.*, 981 F. Supp. 2d 19 (D.D.C. 2013) (applying District of Columbia

law), based on the facts of the case. *Southern Elec. Corp. v. Utilities Bd. of City of Foley, Ala*., 643 F. Supp. 2d 1302 (S.D. Ala. 2009) (applying Alabama law).[3] As outlined below, there are no genuine issues of material fact as it pertains to the language of the liquidated damages provisions and, accordingly, Ramsey Solutions is entitled to partial summary judgment in its favor on Counts I, II and III of the Counterclaim.

## III.    RELEVANT CONTRACTUAL PROVISIONS

Each of the relevant agreements have liquidated damages provisions (referred to as "Cancellation" provisions).  By the language, however, each, in fact, serves as a penalty because they do not relate in any way to Defendant's actual damages; rather, applying these provisions, it will always be better for Defendant to recover if the opposing party breaches by termination because it will recover its gross revenue without reducing any of the expenses that would have been incurred had it performed.  Simply stated, the provisions are not based on net profits, but gross revenues.  As such, they are by definition unenforceable penalties.  The relevant provisions are below.  *See* Exs. D (Palms Agreement and Amendment), E (Texas Agreement) and F (Rockies Agreement).

---

[3] Some courts have found that although it is a question of law for the court, it may also require the resolution of questions of fact.  *See, e.g., JR Real Estate Development, LLC v. Cheeley Investment, L.P.*, 709 S.E. 2d 577 (2011); *Magill v. Watson,* 409 S.W. 3d 673 (Tex. App. Houston 1st Dist. 2013).  That is not the case where, as here, the provisions are facially invalid.

5

A.    **Palms Agreement**[4]

The Palms Agreement was executed in September of 2017 and amended March 27, 2020.

The Agreement has two provisions relating to cancellation, only one of which Marriott has sued

upon.[5] That provision states:

## CANCELLATION POLICY

Group agrees that it bears responsibility for payment for the Room Block and the F&B Guarantee.  Group also agrees that the Hotel will suffer actual harm that will be difficult to determine if the Group cancels this Agreement after the date hereof for the reasons other than those specified in this Agreement.  **The Group will pay as liquidated damages to the Hotel, depending upon the timing of such cancellation, the following amounts, as a reasonable estimate of harm to Hotel for the cancellation:**

Time Period of Cancellation   Amount of Liquidate Damages Due

| | |
|---|---|
| **0-180 days prior to Arrival** | **100% of total room revenue plus 75% of F&B Guarantee** |
| 181-365 days prior to Arrival | 75% of total room revenue* plus 50% of F&B Guarantee |
| 366-551 days prior to Arrival | 40% of total room revenue |
| 552 or more days prior to Arrival | 10% of total room revenue |

---

[4] The Palms Agreement, the Texan Agreement and the Rockies Agreement each have a prevailing party attorneys' fees provision.  Ex. D (Palms Agmt., p. 13-14); Ex. E (Texan Agmt., 12);  Ex. F (Rockies Agmt., p. 11).

[5] The second provision states:

### CANCELLATION IN EVENT OF CHANGE IN MEETING SITE

Notwithstanding any other provision of this Agreement, the Group agrees that it has no right to cancel this Agreement for the purpose of changing its meeting site to another city or location, and in such event, regardless of the date of cancellation of the Agreement, the Group will owe **liquidated damages equal to 100% of total room revenues plus applicable tax,** to be received by the Hotel from your event for guest rooms comprising the Room Book.

*Id*.  The difference between the two provisions is that the above cancellation policy excludes the requirement that Ramey Solutions pay 75% of the "F&B."  That amount is $525,000 of the total damages claimed by Marriott according to Exhibits D and E of its Counterclaim.

6

> **The term "total room revenue" means the dollar amount equal to the Room Block multiplied by the Group's average room rate, exclusive of resort fee.**
>
> Such amount (the "Cancellation Charge") will be due and payable due within 30 days of the date of cancellation, and accrue interest at the rate of 1.5 percent per month (or, if less, the maximum amount permitted by law). If required by the applicable jurisdiction, the Group will pay sales and/or other applicable taxes with respect to the Cancellation Charge outlined above.

Ex. D (Palms Agmt. p. 13) (emphasis supplied).[6] According to its Rule 26 Disclosures [Ex. A, p.14] and Counterclaim (Count I) [Dkt. 21], Marriott seeks damages, claiming that the "cancellation by Ramsey Solutions of the Palms Event occurred between '0-180 days prior to arrival'" (Counterclaim, ¶¶24-28), entitling Marriott to keep the $1,212,950.45 deposit made by Ramsey Solutions and seeks an additional $658,599.55 in damages pursuant to the above provision.

The Amendment to the Palms Agreement, executed on April 2, 2020 as a result of COVID-19, codified the parties' agreement to a substantial reduction in the amount of room nights required and the Food & Beverage ("F&B") Minimum. To illustrate, the Palms Agreement had a F&B minimum of $700,000+, whereas the Amendment merely had a "minimum not to exceed $400,000." Ex. D (Amendment), p. 2. Similarly, the original room block was 4,855, but the revised was 4,210. *Id*., p.1. The Amendment also makes clear that the "Hotel is waiving the attrition for the July 10-

---

[6] There are other provisions in the Palms Agreement (Ex. D) that reference liquidated damages. *See, e.g*., Palms Agreement, Food and Beverage Pricing: Food and Beverage Guarantee (p.11) (claims the right to liquidated damages); Attrition provision (p. 12) (refers to right to liquidated damages) and Cancellation in Event of Change in Meeting Site (p.13) (references entitlement to liquidated damages). Other than parroting the buzz words that its damages are difficult to calculate, there is no evidence that the amount of damages is not ascertainable. The opposite is true as Marriott could have easily divined the amount of its expenses and no doubt has its profits margins ready at the hand. Defendant is a highly sophisticated publicly-traded company with reporting obligations making this information readily accessible. Indeed, the agreements expressly allow the hotels to "[r]elease rooms for general sale following the Cutoff Date" without reducing or affecting the amounts owed by Ramsey Solutions as damages, further confirming that the provision is penalty. Palms Agreement, p. 4; Texans Agreement, p. 4.

7

16, 2020, conference" (*Id.*, p.2), but then has a Cancellation Policy that notwithstanding the modifications, bases the liquidated damages on the amounts in the original Palms Agreement. *Id.*, p. 12.

## B.     Texan Agreement and Rockies Agreement

The Texan Agreement and Rockies Agreements have the identical "Cancellation Policy" and "Cancellation in the Event of Change in Meeting Site" language as the Palms Agreement. Ex. E (Texas Agreement), p.11; Ex. F (Rockies Agreement), p. 10.  These agreements also contain a provision referred to as the "Performance Clause", which states:

> It is understood that the booking of Gaylord Texan for Ramsey Solutions EntreLeadership Summit May 2021 is part of the following multiple bookings with Gaylord Hotels (each, a "Prior Event"): Ramsey Solutions EntreLeadership Summit May 2020 at Gaylord Palms and Ramsey Solutions EntreLeadership Summit May 2022 at Gaylord Rockies.  Ramsey Solutions will have the right to cancel this Agreement without liability in the event of the following:  (i) if, within thirty (30) days following the last day of the Prior Event, Ramsey Solutions gives written notice to Gaylord Hotels detailing material service or performance issues by Gaylord Hotels at the Prior Event; and (ii) the Hotel does not propose and implement a plan addressing the issues raised in Ramsey Solution notice.

Ex. E (Texan Agreement, p.10); Ex. F (Rockies Agreement, p. 10).[7]

In Count II of the Counterclaim, Marriott seeks "75% of the total room revenue plus 50% of F&B Guarantee" for a cancellation occurring between "181-365 days prior to arrival" of the Texan Agreement.  Counterclaim, ¶¶49-52.  Marriott seeks $1,383,507.80 as damages for the termination of the Texan Agreement although the Performance Clause was invoked.  *Id.* at ¶67. In Count III of the Counterclaim, Marriott seeks $562,357.60 under the Cancellation Policy, claiming 40% of room revenues are owed because Ramsey Solutions cancelled between 366-729 days prior to arrival.  *Id.*, ¶¶88-90 and 99.  As with the Palms Agreement, however, neither of these

---

[7] In the Rockies Agreement, it refers to the Texan Agreement rather than the Rockies Agreement.

liquidated damages provisions factors in the expenses that would have been incurred by Defendant to provide the services, nor is the "liquidated" amount tethered to Marriott's lost profits or actual damages, which is the appropriate mechanism if such a provision were to be enforceable.

Indeed, because these two agreements were cancelled a year and two years in advance of the slated dates, respectively, there is no consideration for any mitigation either.[8]  Thus, if Defendant in both instances booked all of the rooms and replaced the entire food and beverage amounts with other customers, it would literally recover twice: once from Ramsey Solutions and the other from its re-booking of the rooms and food and beverage services to other customers. Regardless, as noted above, as written, Marriott will always be better off terminating (or constructively terminating by their conduct) because it never actually incurs or reduces for any of the expenses.  As a result, Defendant receives a windfall, *to wit*:  the revenues without any offset for expenses and no set-off for any mitigation efforts.

## IV.    ARGUMENT

Interpreting a liquidated damages provision is no different from the interpretation of any other contractual provision.  "When a contract is not ambiguous, its interpretation is a question of

---

[8] *See Graphic Assocs., Inc. v. Riviana Rest. Corp.*, 461 So. 2d 1011, 1014 (Fla. 4th DCA 1984) ("The doctrine of avoidable consequences, commonly referred to as a duty to mitigate damages, prevents a party from recovering those damages inflicted by a wrongdoer which the injured party 'could have avoided without undue risk, burden, or humiliation.'" (quoting Restatement (Second) of Contracts § 350(1) (1979)); *Sys. Components Corp. v. Florida Dept. of Transp.*, 14 So. 3d 967, 982 (Fla. 2009) (doctrine of avoidable consequences "commonly applies in contract and tort actions."); *JCB, Inc. v. Horsburgh & Scott Co.*, 597 S.W. 3d 481, 486-87, n.3 (Tex. 2019) (doctrine of mitigation of damages "prevents a party from recovering for damages resulting from a breach of contract that could be avoided by reasonable efforts on the part of the plaintiff." (quoting *Great Am. Ins. Co. v. N. Austin Mun. Util. Dist.*, 908 S.W. 2d 415, 426 (Tex. 1995)); *Fair v. Red Lion Inn*, 943 P.2d 431, 437 (Colo. 1997) ("It is well established by our precedent that an injured party claiming breach of contract 'has the duty to take such steps as are reasonable under the circumstances in order to mitigate or minimize the damages sustained.'" (quoting *Ballow v. PHICO Ins. Co.*, 878 P.2d 672, 680 (Colo. 1994) (citations omitted)).

law that is appropriate for summary judgment." *HealthPRO Heritage, LLC v. Health Servs. Manchester, LLC*, No. 19-cv-143, 2019 WL 8137135, at *2 (E.D. Tenn. Dec. 13, 2019) (quoting *Battery Alliance Inc. v. T & L Sales Inc.*, No. W2015-00201-COA-R3-CV, 2015 WL 6873202, at *5 (Tenn. Ct. App. Nov. 9, 2015)); *Bourland, Heflin, Alvarez, Minor & Matthews, PLC v. Heaton*, 393 S.W. 3d 671, 674 (Tenn. Ct. App. 2012) ("Questions of contract interpretation are generally considered to be questions of law, and thus are especially well-suited for resolution by summary judgment.") (quoting *Ross Prods. Div. Abbott Labs. v. State*, No. M2006-01113-COA-R3-CV, 2007 WL 4322016, at *2 (Tenn. Ct. App. Dec. 5, 2007)); *see also Farmers—Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975).[9]  Here, neither party has asserted that the relevant provisions in any of the three agreements are ambiguous and, accordingly, it is within this Court's province to review them as a matter of law.

A.     <u>**Florida and Tennessee Law are in Harmony:  Liquidated Damages Provision That is Merely a Penalty for Breach Will Not be Enforced**</u>.

Courts cannot enforce contracts that are illegal or contrary to public policy. *E.g., Kaiser Steel Corp. v. Mullins*, 455 U.S. 72(1982) (the Supreme Court held that a federal court has the "duty to determine whether a contract violates federal law before enforcing it. 'The power of the federal courts to enforce the terms of private agreements is at all times exercised subject to the restrictions and limitations of public policy of the United States as manifested in ... federal statutes.... Where the enforcement of private agreements would be violative of that policy, it is the obligation of the courts to refrain from such exertions of judicial power.'"); *see also Hurd v. Hodge*,

---

[9] Florida law is the same as Tennessee.  Contract interpretation is a matter of law for the court, and begins with the plain meaning of words used, and words are "to be given natural, ordinary meaning." *See Ferox, LLC v. Conseal Int'l, Inc.*, 175 F. Supp. 3d 1363, 1371 (S.D. Fla. 2016). Where an agreement is unambiguous, it should be interpreted applying its plain meaning and give effect to the entire contract.  *Wash. Nat'l Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013); *see also CBS Inc. v. Prime Time 24 Joint Venture*, 245 F.3d 1217, 1223 (11th Cir. 2001).

10

334 U.S. 24 (1948);[10] *Riverside Park Realty Co. v. Fed. Deposit Ins. Corp.*, 465 F. Supp. 305, 311 (M.D. Tenn. 1978) ("courts will not lend their aid for the enforcement of a contract which is in violation of the law of the land"); *Gonzalez v. Trujillo*, 179 So. 2d 896, 897 (Fla. 3rd DCA 1965) ("The principle that courts will not enforce illegal contracts is well established").[11]  Both Florida and Tennessee law are in alignment on this point.

The Florida Supreme Court has "established the test as to when a liquidated damages provision will be upheld and not stricken as a penalty clause.  First, the damages consequent upon a breach must not be readily ascertainable.  Second, the sum stipulated to be forfeited must not be so grossly disproportionate to any damages that might reasonably be expected to follow from a

_____

[10] There is likewise ample authority that provides that whether a liquidated damage clause is enforceable or an improper penalty is a question of law. *See, Comar Marine, Corp. v. Raider Marine Logistics, L.L.C.,* 792 F.3d 564 (5th Cir. 2015); *Boone Coleman Constr., Inc. v. Piketon*, 50 N.E.3d 502 (2016); *Rumsey v. Gillis,* 765 S.E.2d 665 (2014), cert. denied, (Mar. 30, 2015); *see also Slinski v. Bank of America, N.A.*, 981 F. Supp. 2d 19 (D.D.C. 2013) (applying District of Columbia law), based on the facts of the case. *Southern Elec. Corp. v. Utilities Bd. of City of Foley*, Ala., 643 F. Supp. 2d 1302 (S.D. Ala. 2009) (applying Alabama law).  Further, in *Cain v. Burns*, 131 Cal. App. 2d 439, 442 (1955), the court opined:

> So far as applicable to the circumstances of this case, the authorities seem clear that although generally illegality of a contract is a defense which must be pleaded, that rule is qualified as follows: (1) ***where the illegality appears on the face of the contract***, or (2) where the evidence which proves the contract discloses the contract's illegality.

(emphasis supplied).  Here, it is evident on the face of the various agreements that the liquidated damages provisions are unenforceable because they provide for the total contract value without any reduction for expenses.  The "liquidated" amounts have no relationship to the actual damages resulting in an improper windfall to Marriott and are decidedly a penalty.

[11] *See also  Nyhus v. Travel Management Corp*., 466 F.2d 440, 447 (D.C.Cir.1972); *California Pacific Bank v. Small Business Admin*., 557 F.2d 218, 223 (9th Cir. 1977); *see also Lewis & Queen v. N. M. Ball Sons*, 8 Cal. 2d 141 (1957); 17B C.J.S. Contracts § 911 ("Illegality is an affirmative defense but is not waived by a failure to plead it if the contract violates public policy or the illegality is apparent on the face of the complaint or contract.").  !

11

breach as to show that the parties could have intended only to induce full performance, rather than to liquidate their damages." The Florida Supreme Court has developed a two-part test to determine when liquidated damages can be enforced. *Lefemine v. Baron,* 573 So. 2d 326 (Fla. 1991). *First,* the injured party seeking to enforce the liquidated damages provision, instead of actual damages, must demonstrate that the damages were not "readily ascertainable" at the time the contract was formed. *Second,* the liquidated damages cannot be excessive or unreasonable. *Hutchison v. Tompkins*, 259 So. 2d 129, 130 (Fla. 1972).

"The prime factor in determining whether such sum is a penalty or a forfeiture is whether the sum named is just compensation for damages resulting from the breach." *North Beach Investments, Inc. v. Sheikewitz*, 63 So. 2d 498, 499 (Fla. 1954); *see also Hyman v. Cohen*, 73 So. 2d 393 (Fla. 1954); *Cortes v. Adair*, 494 So. 2d 523 (Fla. 3d DCA 1986); *Pappas v. Deringer,* 145 So. 3d 770 (Fla. 3d DCA 1962). Even where a liquidated damages provision is otherwise enforceable, equity will relieve a party against its enforcement when the liquidated amount is unconscionable in light of the circumstances existing at the time of the breach. *Hutchinson v. Tompkins*, 259 So. 2d 129, 132 (Fla. 1972); *Coleman v. B.R. Chamberlain & Sons, Inc.*, 766 So. 2d 427, 429 (Fla. 5th DCA 2000); *Perez v. Aerospace Acad., Inc.*, 546 So. 2d 1139, 1141 (Fla. 3d DCA 1989). The Florida Supreme Court in *Lefemine*, looking at *Cortes* and *Pappas*, reasoned that where the contract at issue provides the nonbreaching party the option to choose between the liquidated damages provision and actual damages there is "an intent to penalize the defaulting buyer and negates the intent to liquidate damages in the event of a breach." *Lefemine*, 573 So. 2d at 329.

12

### a. *The Liquidated Damages Provisions Are Facially Invalid.*

### i. Florida Law: The Provisions are Unenforceable Penalties.

When there is no reasonable relationship to the amount of actual damages, the liquidated damages clause will be construed as a penalty and will not be enforced. *Hutchison*, 259 So. 2d at 130; *see also Goldblatt v. Motion, Inc*., 77 So. 3d 798, 801 (Fla. 3d DCA 2011) (finding liquidated damages provision unenforceable where the non-breaching party was to receive $250,000 regardless of actual harm, as it resembled a penalty or deterrent, which "is never allowed"); *Lefemine,* 573 So. 2d at 326 (a provision that is so disproportionate to damages reasonably expected to flow from the breach that they are intended to induce performance as opposed to liquidate damages are unenforceable).[12]

Cases interpreting reasonableness have found that, by example, liquidated damages in the amount of between 10% and 22% of the purchase price of a property may be deemed proportional.[13] Applying the same logic here, there is no evidence that the amounts sought in the

---

[12] In *Crosby Forrest Products, Inc. v. Byers*, 623 So. 2d 565, 567 (Fla. 5th DCA 1993), the court defined a penalty as:

> A penalty is a sum named, which is disproportionate to the damages which could have been anticipated from breach of the contract, and which is agreed upon in order to enforce performance of the main purpose of the contract by the compulsion of this very disproportion. It is held *in terrorem* over the promisor to deter him from breaking his promise. 5 Williston on Contracts § 776, at 668. If damages are readily ascertainable on the date of the contract, a stipulated damages clause is a penalty and unenforceable. *Hutchison v. Tompkins*, 259 So. 2d 129 (Fla. 1972).

[13] The provisions at issue here can be juxtaposed with legitimate provisions that have some relationship to the actual harm. *See, e.g., Kirkland v. Ocean Key Associates, Ltd.,* No. 07-10030-CIV, 2007 WL 3343083 at *2 (S.D. Fla. Nov. 8, 2007) (10% held reasonable); *Hot Developers, Inc. v. Willow Lake Estates, Inc*., 950 So. 2d 537, 541-42 (Fla. 4th DCA 2007) (9.65% upheld as liquidated damages and discussing ranges from 4.85% to 22% held to be reasonable); *Bloom v. Chandler,* 530 So. 2d 341 (Fla. 4th DCA 1988) (upholding a liquidated damages clause under which the sellers retained a $49,500 deposit as liquidated damages on a contract for $225,000 or

13

liquidated damages provisions have any relationship to actual loss or damages nor could they when on their face these provisions have reduction for any of the expenses that would have been incurred had Marriott performed under the agreements much less any amounts recovered through mitigation efforts. Here, as is plain from the language of the agreements, Marriott is seeking its *gross* amount of the Total Room Revenue and for Food & Beverages, which are commensurate not with profits, but the aggregate revenue amounts. By definition, these amounts are disproportionate to any actual damages Defendant could arguably have sustained.

More specifically, Marriott's liquidated damages provisions fail to subtract variable expenses from its gross revenues. Damages must be based on lost profits, not 100% of *gross revenues*. If it had performed, Defendant would have incurred both fixed and variable expenses including electricity, housekeeping wages, soaps and shampoos, laundry, and employee costs, among others. The formulas in the agreements here likewise do not give credit for rooms re-sold or food and beverage that was never purchased. Thus, the claimed liquidated damages associated with food and beverage are likewise illegal or otherwise unenforceable because they fail to account for food or staffing costs. While Marriott could have crafted a Cancellation Policy based on profits rather than revenues, it chose not to do that and instead create a provision that is clearly a penalty. *Berlona S.p.A. v. Della Casa, LLC*, 972 So. 2d 1007, 1010 (Fla. 4th DCA 2008) ("The language of an agreement is to be construed most strongly against its drafter."); *Smith v. Davis*, 453 S.W. 2d 340, 344 (rule that ambiguous contract should be construed against the party that drafted the

---

22% of the purchase price); *Hooper v. Breneman*, 417 So.2d 315, 318 (Fla. 5th DCA 1982) (upholding a liquidated damages provision calling for forfeiture of 13.3% of the purchase price); *Ivanov v. Sobel,* 654 So. 2d 991 (Fla. 3d DCA 1995) (10% held not to be grossly disproportionate); *Johnson v. Wortzel*, 517 So.2d 42 (Fla. 3d DCA 1987) (18.2% was not sufficient enough to shock the conscience of the court). The provisions here allow Marriott to recover 100% of its **revenues** on the rooms and 75% of its **revenues** on its food and beverage service, but fails to reduce the costs for providing those services.

14

contract should be resorted to when other rules of construction fail); *Johnson Nathan Strohe, P.C. v. MEP Eng'g, Inc.*, No. 20CA0950, 2021 WL 4314216, at *7, n.4 (Colo. App. Sept. 23, 2021) (citing *Christmas v. Cooley*, 158 Colo. 297, 302 (Colo. 1965)) ("In case of doubt, a contract is construed most strongly against the drafter.").

At bottom, enforcing a liquidated damages provision that seeks "revenues" without any deduction for fixed or variable costs on hotel rooms that were unused and food and beverage that was not consumed is the quintessential "penalty" and cannot be enforced. That is, actual damages are the amounts Defendant would have received assuming it fully performed, to wit: Defendant's actual damages are its net profits, not gross revenues, and potentially any out-of-pocket costs. In short, this is not a situation that supports imposition of a liquidated damages provision because Marriott would be receiving a significant windfall. In sum, Marriott's claimed damages fail both prongs of the test.

### ii. *Texas Law is the same as Florida and, thus, the Cancellation Provision is unenforceable.* [14]

Although all the agreements were executed at the same time and none in Texas, to the extent that Texas law applies because the Texan Agreement was to be performed in Texas, the result is the same. In Texas, a liquidated damages provision is an unenforceable penalty if, as in Florida, the harm caused by the breach is capable of estimation *and* the amount does not have any

---

[14] For example, Marriott seeks more than $1.3 million in damages for the Texan Agreement (for an event in May of 2021) when it admittedly received notice of the termination at the latest on July 22, 2020. *See* Counterclaim, ¶¶52 and 62. To illustrate, a portion of the liquidated damages was for 50% of F&B, when obviously no food or beverage costs were incurred, nor did the hotel incur any staffing or other charges. *See Id.*, ¶50. Likewise, the balance relates to 75% of the costs of "total room revenue" without any relationship at all to whether those rooms were used by other customers or rooms or any reduction for the expenses associated with the same (either fixed or variable). *Id.* To illustrate, there are variable costs such as housekeeping, and fixed costs such as the pro rata amount for the rooms and costs related to the furnishings and case goods. The same is true of the Rockies Agreement, as it likewise has no connection to the actual losses suffered.

15

relationship to the actual amounts suffered as loss, meaning they are not reasonable. This two-part

test is known as the "*Stewart* test." *Stewart v. Basey*, 245 S.W.2d 484 (Tex. 1952); *see also Atrium*

*Medical Center LP v. Houston Red C LLC*, 595 S.W.3d 188, 192 2020 WL 596873, at *2-3 (Tex.

Feb. 7, 2020); FPL Energy, LLC v. TXU Portfolio Mgmt. Co, 426 S.W.3d 59, 69 (Tex. 2014);

*Garden Ridge, L.P. v. Advance International, Inc*., 403 S.W.3d 432 (Tex. Ct. App. 2013) (relying

on the UCC Section 2.718(a) on liquidated damages). Although Texas recognizes the parties'

power to contract, it balances the use of liquidated damages provisions against the long-established

rule that a party should be awarded her **actual** damages.

In the case of the Texan Agreement, as with the Palms Agreement, there is no reduction

for any of the expenses it would take to perform under the agreement even if it could be argued

that the provision considers that some portion of the rooms would be re-sold as well as the food

and beverages services. While Ramsey Solutions does not concede that is the case, for purposes

of this motion, it does.

### iii. *The Cancellation Provision in the Rockies Agreement likewise serves as a penalty as Colorado law is the same as Florida.*

Similarly, Colorado law requires three elements be met if a liquidated damages provision

is to be enforced: (1) "the parties intended to liquidate damages"; (2) "the amount of liquidated

damages, when viewed as of the time the contract was made, was a reasonable estimate of the

presumed actual damages that the breach would cause"; and (3) "when viewed again as of the date

of the contract, it was difficult to ascertain the amount of actual damages that would result from a

breach." *Klinger v. Adams Cnty. Sch. Dist. No. 50*, 130 P.3d 1027, 1034 (Colo. 2006); *see also*

*Ravenstar, LLC v. One Ski Hill Place, LLC*, 401 P. 552, 555 (Colo. 2017). In the case of the

Rockies Agreement, to be performed in 2023, it could hardly be argued that Defendant would

suffer any damages at all, much less the claimed amount. Defendant has and had two years to re-

sell the rooms and obtain other groups to utilize the food and beverage amounts. But even ignoring this, as with the Palms and Texan Agreements, the provision seeks the gross room rates times the number of rooms, and the gross amounts for food and beverage with no reduction for any of the expenses. In the case of each of the three provisions, the profit margin on both is publicly-available (and even if it was not, the amounts could be estimated). Accordingly, the provision serves as a penalty and is unenforceable.

### iv. *Even if Tennessee law were to be applied, the provisions operate as a penalty and are unenforceable.*

In Tennessee, as in Florida, a term fixing an unreasonably large amount in liquidated damages is not just compensation, and operates as a penalty and is thus unenforceable. Here, the "Cancellation Policy" expressly states that it is a "liquidated damages" provision, but the provision is totally unmoored to any actual damages suffered by Marriott or that could be suffered. It cannot reasonably be disputed that each of the liquidated damages provisions are penalties and are unenforceable. To the extent it was entitled to any damages at all—and Ramsey Solutions submits that is not the case as more fully alleged in its pleading—Marriott was required to prove actual damages, which it plead in the alternative.

Under Tennessee law:

"[A] liquidated damages clause is unenforceable where its sole purpose is to secure performance of a contract and deter a breach. In such a case, it will be treated as a penalty, and only actual damages proven can be recovered.

* * *

When evaluating whether a liquidated damages provision in a contract is an unenforceable "penalty," the court must look at the whole contract, its subject matter, the ease or difficulty in measuring the breach in damages, and the magnitude of the stipulated sum not only as compared with the value of the subject of the contract but also in proportion to the probable consequences of the breach.

* * *

17

> Parties to a contract may effectively provide in advance the damages that are to be payable in the event of breach as long as the provision does not disregard the principle of compensation. The policy of just compensation acts to invalidate agreements that fix damages in advance of breach when such agreements are punitive in nature. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty.

> \* \* \*

> …The fundamental purpose of liquidated damages is to provide a means of compensation in the event of a breach where damages would be indeterminable or otherwise difficult to prove. *V.L. Nicholson*, 595 S.W.2d at 484; 22 AM. JUR. 2D Damages § 683 (1988); Restatement (Second) of Contracts § 356 cmt. (1979)… However, if the stipulated amount is unreasonable in relation to those potential or estimated damages, then it will be treated as a penalty.

22 AM. JUR. 2D Damages § 686 (1988); Restatement (Second) of Contracts § 356 (1979); *Guiliano v. Cleo, Inc*., 995 S.W.2d 88, 98 (Tenn. 1999).[15]  Had Marriott wanted to craft an enforceable liquidated damages provision, it clearly could have.  Defendant is well aware of its fixed and variable expenses as well as its profit margins but chose to draft overreaching provisions that result in substantial windfalls if they are enforced.  It has likewise chosen to rely on these facially invalid provisions rather than submit evidence of its actual damages.  This was a strategic

---

[15] The *Guiliano* Court analyzed it as follows:

> We, therefore, adopt a prospective approach for addressing the recovery of liquidated damages. Under this approach, courts must focus on the intentions of the parties based upon the language in the contract and the circumstances that existed at the time of contract formation. Those circumstances include: whether the liquidated sum was a reasonable estimate of potential damages and whether actual damages were indeterminable or difficult to measure at the time the parties entered into the contract. *See V.L. Nicholson,* 595 S.W.2d at 484. If the provision satisfies those factors and reflects the parties' intentions to compensate in the event of a breach, then the provision will be upheld as a reasonable agreement for liquidated damages. However, if the provision and circumstances indicate that the parties intended merely to penalize for a breach of contract, then the provision is unenforceable as against public policy.

*Id*. at 100–01.

18

decision made by Defendant, but it is now stuck with the consequences of doing so. As discussed below, Ramsey Solutions has repeatedly attempted to discover evidence of Marriott's actual damages, but Defendant has refused to provide this information.

**b. *Although Marriott's Damages Are Reasonably Ascertainable, Because the Provision Is Undeniably a Penalty, This Is Irrelevant.***

If the actual damages are reasonably ascertainable, the liquidated damages provision will not be enforced. Here, because the liquidated damages provision is facially invalid, the Court does not even get to this point. Even if it did, however, there is no dispute that Marriott's "damages" are reasonably ascertainable. This is true for at least two reasons: (1) Defendant has plead such damages in the alternative and, thus, would have to be able to prove as much; and (2) it is a publicly-traded company that has reporting obligations to the SEC, which includes its profit margins and other detailed financial information.

Florida has a simple method for determining contract damages in circumstances like this. Specifically, lost profits are determined by subtracting the costs of performance, including fixed and variable costs, from the contract price. *Physicians Reference Lab., Inc. v. Daniel Seckinger, M.D. & Assocs., P.A.*, 501 So. 2d 107, 109 (Fla. 3d DCA 1987); *Indian River Colony Club, Inc. v. Schopke Constr. & Eng'g, Inc.*, 592 So. 2d 1185, 1187 (Fla. 5th DCA 1992) (explaining that, in proving lost profits, the non-breaching party must calculate the total costs and expenses necessary to perform the contract, including supervisory services attributable to performing the contract and overhead expenses, and then deduct that sum from the balance owing on the contract price). Here, applying the test established by the Florida Supreme Court, the three liquidated damages provisions are invalid because Marriott's damages are easily ascertainable. For example, Marriott

could have looked at its lost profits from the room revenue lost and any out-of-pocket losses.[16] Marriott, a publicly traded company, clearly knows its profit margin or rooms and/or food and beverage as well as its fixed and variable expenses but has intentionally predicated its liquidated damages provisions on the entirety of its revenues with no reductions for associated expenses. In short, these amounts are all ascertainable. This same analysis applies in each of the other jurisdictions, meaning that where, as here, Defendant's actual profit margins and re-selling history are readily available, it had the ability to establish a liquidated damages provision that properly mirrored in large part its actual damages. This is all that it is entitled to, no more, no less. Defendant instead chose to frame the provisions at issue to provide a windfall that rewards for non-performance. But under applicable law it could not do so.

## V.     CONCLUSION

Based on the foregoing, Ramsey Solutions respectfully requests that this Court enter summary judgment against Marriott on each of its counterclaims seeking liquidated damages under the three Gaylord agreements as those provisions are illegal or otherwise unenforceable as a matter of law. By definition, provisions that seek the recovery of gross revenues, without any reduction for fixed or variable expenses or that otherwise fail to mirror the net profits, equate to an illegal penalty. This is facially obvious from the provisions themselves and, accordingly, the Motion should be granted.

---

[16] It can hardly be argued here that actual damages are unascertainable, as Marriott, as an alternative theory, sought its actual damages, but as discussed below, it has failed to produce any evidence to substantiate those "actual damages."

Respectfully submitted,

By:     /s/  Jennifer G. Altman
        Jennifer Altman, Esq.
        (admitted *pro hac*)
        Markenzy Lapointe, Esq.
        (admitted *pro hac*)
        **PILLSBURY WINTHROP SHAW PITTMAN LLP**
        600 Brickell Avenue, Suite 3100
        Miami, FL 33131
        jennifer.altman@pillsburylaw.com
        markenzy.lapointe@pillsburylaw.com

        -and-

        Ashley E. Cowgill, Esq.
        PILLSBURY WINTHROP SHAW PITTMAN LLP
        500 Capitol Mall, Suite 1800
        Sacramento, CA 95814
        ashley.cowgill@pillsburylaw.com

        ***Counsel for The Lampo Group, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on the **1st day of December, 2021**, a true and correct copy of the foregoing was served by CM/ECF notifications to the following parties registered to receive notices in this case:

        Steven M. Rudner, appearing *pro hac vice*
        John C. Josefsberg, appearing *pro hac vice*
        **RUDNER LAW OFFICES**
        12740 Hillcrest Road, Suite 240
        Dallas, TX 75230
        Telephone: (214) 373-1900
        Facsimile: (214) 360-7845
        Rudner@HotelLawyers.com
        josefsberg@HotelLawyers.com

        -and-

21

Stephen J. Zralek, No. 18971
**BONE MCALLESTER NORTON PLLC**
511 Union St., Ste. 1000
Nashville, TN 37219
Telephone: (615) 238-6305
Facsimile: (615) 687-2763
szralek@bonelaw.com

*Counsel for Marriott Hotel Services, Inc.*
*and Marriott International, Inc.*

/s/ Jennifer G. Altman

22