# EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| THE LAMPO GROUP, LLC d/b/a RAMSEY SOLUTIONS, a Tennessee Limited Liability Company, )<br>)<br>)<br>) | |
| Plaintiff, ) | Case No. 3:20-cv-00641 |
| ) | Judge Aleta A. Trauger |
| v. ) | |
| MARRIOTT HOTEL SERVICES, INC., A Delaware Corporation, )<br>)<br>) | |
| Defendant. ) | |

| |
|---|
| MARRIOTT HOTEL SERVICES, INC., A Delaware Corporation, )<br>)<br>) |
| Counter-Plaintiff, ) |
| ) |
| v. ) |
| THE LAMPO GROUP, LLC d/b/a RAMSEY SOLUTIONS, a Tennessee Limited Liability Company, )<br>)<br>)<br>) |
| Counter-Defendant. ) |
| / |

## DECLARATION OF JENNIFER G. ALTMAN

I, Jennifer G. Altman, declare under penalty of perjury under the laws of the United States, 28 U.S.C. §1746, that the following is true and correct:

1.      My name is Jennifer G. Altman, I am over the age of 18 and am a partner in the law firm of Pillsbury Winthrop Shaw Pittman, LLP ("PWSP"). My principal office is located at 600 Brickell Avenue, Suite 3100, Miami, FL 33131.

2.      PWSP represents Plaintiff The Lampo Group LLC d/b/a Ramsey Solutions ("Ramsey Solutions") in the above-styled action.

3.      Attached hereto as Exhibit A is a true and correct copy of Defendant/Counter-Plaintiff Marriott Hotel Services, Inc.'s ("Marriott") Initial Rule 26 Disclosures in the above-styled action.

4.      Attached hereto as Composite Exhibit B are true and correct copies of Marriott's Responses and Objections to Ramsey Solutions' Second Request for Production of Documents and Second Set of Interrogatories in the above-styled action.

5.      Attached hereto as Composite Exhibit C are true and correct copies of letters from John Josefsberg to the undersigned, dated June 28, 2021 and October 12, 2021, objecting and refusing to provide information relating to Marriott's actual damages.

6.      Attached hereto as Exhibit D are true and correct copies of the agreement entered into between Ramsey Solutions and Marriott in September 2017 and the subsequent amendment thereto, referred to collectively as the "Palms Agreement."

7.      Attached hereto as Exhibit E are true and correct copies of the agreement entered into between Ramsey Solutions and Marriott in the Fall of 2017 referred to as the "Texan Agreement."

8.      Attached hereto as Exhibit F are true and correct copies of the agreement entered into between Ramsey Solutions and Marriott in the Fall of 2017 referred to as the "Rockies Agreement."

**December 1, 2021**

_____
Jennifer G. Altman

# EXHIBIT "A"

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| THE LAMPO GROUP, LLC d/b/a<br>RAMSEY SOLUTIONS,<br>a Tennessee Limited Liability Company,<br><br>    Plaintiff,<br><br>v.<br><br>MARRIOTT HOTEL SERVICES, INC.,<br>a Delaware Corporation; and<br>MARRIOTT INTERNATIONAL, INC.,<br>a Delaware Corporation,<br><br>    Defendants.<br>_____<br>MARRIOTT HOTEL SERVICES, INC.,<br>a Delaware Corporation,<br><br>    Counter-Plaintiff,<br><br>v.<br><br>THE LAMPO GROUP, LLC d/b/a<br>RAMSEY SOLUTIONS,<br>a Tennessee Limited Liability Company,<br><br>    Counter-Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:20-cv-00641<br>Judge Aleta A. Trauger<br><br>JURY DEMAND |

## DEFENDANT/COUNTER-PLAINTIFF MARRIOTT HOTEL SERVICES, INC.'S FRCP 26(A)(1)(A) INITIAL DISCLOSURES

Defendant/Counter-Plaintiff Marriott Hotel Services, Inc. ("Marriott") makes the following initial disclosures pursuant to FEDERAL RULE OF CIVIL PROCEDURE 26(a)(1):

## RESERVATIONS

1.    These disclosures are based upon information reasonably available to Marriott as of this date, and which Marriott reasonably believes it may use in support of its claims and defenses. Continuing investigation and discovery may alter these disclosures. Accordingly,

Marriott reserves the right to supplement these disclosures if additional information becomes available.

2.      By making these disclosures, Marriott does not represent that any particular document exits within its possession, custody or control.

3.      These disclosures are made without waiver of, or prejudice to, any rights or objections Marriott may have.

4.      Marriott expressly reserves the right to identify and call as witnesses, additional persons other than those listed below, if, during the course of discovery and investigation, Marriott learns that additional persons have knowledge of relevant matters.

5.      These disclosures are made subject to and without limiting any of the foregoing reservations. Marriott makes these disclosures in the belief that an appropriate confidentiality order and rational production limitations can and will be agreed upon by counsel at an appropriate time, should they become necessary.

## RULE 26 DISCLOSURES

1.      **Rule 26(a)(1)(A)(i).**  The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.

The individuals likely to have discoverable information to support Marriott's claims and defenses have not yet been fully identified. Information concerning any responsive individuals not identified below and not otherwise provided in response to other requests for discovery will be provided as soon as practicable through supplementation of these disclosures as additional information becomes available or known. Notwithstanding the foregoing, the following individuals are likely to have discoverable information that Marriott may use to support its claims or defenses.

Marriott believes the following individuals have discoverable information about the subject matter of this litigation and may provide testimony that Marriott may use for support in this case:

DEFENDANT/COUNTER-PLAINTIFF MARRIOTT           Page 2 of 24
HOTEL SERVICES, INC.'S RULE 26(a)(1)(A) INITIAL DISCLOSURES
Case No. 3:20-cv-00641; *The Lampo Group v. Marriott Hotel Services, Inc.*

Case 3:20-cv-00641   Document 76-1   Filed 12/01/21   Page 6 of 190 PageID #: 1319

| Names | Contact Information | Subjects of Information |
|---|---|---|
| Corporate Representative and/or a records custodian of Marriott Hotel Services, Inc. *Defendant/Counter-Plaintiff* | c/o Steven M. Rudner<br>John C. Josefsberg<br>Rudner Law Offices<br>12740 Hillcrest Road<br>Suite 240<br>Dallas, Texas 75230<br>Telephone: (214) 373-1900<br>Facsimile: (214) 360-7845<br><br>-and-<br>Stephen J. Zralek<br>Bone McAllester Norton PLLC<br>511 Union St., Suite 1600<br>Nashville, TN 372169<br>Telephone: (615) 780-6305<br>Facsimile: (615) 687-2763<br><br>(Collectively, hereinafter referred to as "Counsel for Marriott") | Knowledge of facts relating to the negotiation, execution, and performance of the subject contracts entered into between The Lampo Group, LLC d/b/a Ramsey Solutions ("Ramsey") Gaylord Palms Resort & Convention Center ("Gaylord Palms"), Gaylord Texan Resort & Conference Center ("Gaylord Texan"), and the Gaylord Rockies Resort & Convention Center ("Gaylord Rockies"), respectively, and related documents, as manager of the Gaylord Palms, Gaylord Texan, and Gaylord Rockies. The contracts between Gaylord Palms, as amended, Gaylord Texan and Gaylord Rockies, and Ramsey are hereinafter referred to as the "Palms Agreement," "Texan Agreement," and "Rockies Agreement," respectively, as well as knowledge of the terms of the subject contracts and cancellation of the contracted events Ramsey was obligated to hold at the Gaylord Palms, Gaylord Texan and Gaylord Rockies. |

DEFENDANT/COUNTER-PLAINTIFF MARRIOTT                                      Page 3 of 24
HOTEL SERVICES, INC.'S RULE 26(a)(1)(A) INITIAL DISCLOSURES
Case No. 3:20-cv-00641; *The Lampo Group v. Marriott Hotel Services, Inc.*

Case 3:20-cv-00641   Document 76-1   Filed 12/01/21   Page 7 of 190 PageID #: 1320

| | | |
|---|---|---|
| Ross Barker, CMP<br>*Director of Event Management,*<br>*Gaylord Palms* | c/o Counsel for Marriott | Knowledge of facts relating to the terms of the Palms Agreement, the event subject to the Palms Agreement (hereinafter referred to as the "Palms Event"), including planning for the event, cancellation, and enforcement of company policies and governmental regulations affecting the Palms Event, including COVID-19. |
| Lori Story<br>*Senior Group Sales Executive,*<br>*Southeast Territory,*<br>*Gaylord Hotels* | c/o Counsel for Marriott | Knowledge of the facts relating to pre-contract communications, negotiations, formation, and execution of the Palms Agreement, Texan Agreement and Rockies Agreement, including the terms in each, the Palms Event, and events subject to the Texan Agreement and Rockies Agreement (hereinafter referred to as the "Texan Event" and "Rockies Event," respectively), including planning for the events, and cancellations of each. |
| Robyn Locker<br>*Director of Group Services,*<br>*Gaylord Palms* | c/o Counsel for Marriott | Knowledge of facts relating to the Palms Event, including reservations, planning, group housing, and cancellation. |
| Kathleen Muzeni<br>*Assistant Director of Event*<br>*Planning,*<br>*Gaylord Palms* | c/o Counsel for Marriott | Knowledge of facts relating to the Palms Event, including reservations, planning, group housing, and |

DEFENDANT/COUNTER-PLAINTIFF MARRIOTT                                    Page 4 of 24
HOTEL SERVICES, INC.'S RULE 26(a)(1)(A) INITIAL DISCLOSURES
Case No. 3:20-cv-00641; *The Lampo Group v. Marriott Hotel Services, Inc.*

Case 3:20-cv-00641   Document 76-1   Filed 12/01/21   Page 8 of 190 PageID #: 1321

| | | cancellation. |
|---|---|---|
| Britney Chandler<br>*Senior Sales Executive,*<br>*Gaylord Palms* | c/o Counsel for Marriott | Signatory to the amendment to the Palms Agreement and has knowledge of facts relating to the terms of the Palms Agreement, Palms Event, including planning for the event, and cancellation. |
| Ken Oehlers<br>*Director of Group Sales,*<br>*Gaylord Palms* | c/o Counsel for Marriott | Knowledge of facts relating to the terms of the Palms Agreement, Palms Event, including planning for the event, and cancellation. |
| Maureen Wilde<br>*Senior Account Executive,*<br>*U.S. Account Sales,*<br>*Marriott International, Inc.* | c/o Counsel for Marriott | Knowledge of the facts relating to pre-contract communications, negotiations, formation, and execution of the Palms Agreement, Texan Agreement and Rockies Agreement, including the terms in each, and the Palms Event, Texan Event, and Rockies Event, including planning for the events, and cancellations of each. |
| Julie Shreffler<br>*Senior Event Manager,*<br>*Gaylord Palms* | c/o Counsel for Marriott | Knowledge of facts relating to the Palms Event, planning, and cancellation. |
| Georgette Kassar<br>*Senior Assistant Director of*<br>*Finance and Accounting,*<br>*Gaylord Palms* | c/o Counsel for Marriott | Knowledge of facts relating to computation and invoicing of liquidated damages sought by |

DEFENDANT/COUNTER-PLAINTIFF MARRIOTT     Page 5 of 24
HOTEL SERVICES, INC.'S RULE 26(a)(1)(A) INITIAL DISCLOSURES
Case No. 3:20-cv-00641; *The Lampo Group v. Marriott Hotel Services, Inc.*

Case 3:20-cv-00641    Document 76-1    Filed 12/01/21    Page 9 of 190 PageID #: 1322

| | | Marriott in connection with the cancellation by Ramsey of the Palms Event, including the invoicing and finances. |
|---|---|---|
| Zeshan Husain<br>*Director of Group Strategy, Gaylord Palms* | c/o Counsel for Marriott | Knowledge of facts relating to the Palms Event, planning, and cancellation. |
| Tatum Delia<br>*Former Senior Sales Executive, Gaylord Palms* | Unknown. | Signatory to the Palms Agreement and has knowledge of facts relating to pre-contract communications, negotiations, formation, and execution of the Palms Agreement, the terms therein, and the Palms Event, including planning for the event. |
| Johann Krieger<br>*General Manager, Gaylord Palms* | c/o Counsel for Marriott | Knowledge of facts relating to the Palms Event, including planning for the event, cancellation, and enforcement of Gaylord policies and governmental regulations affecting the Palms Event, including COVID-19. |
| Amy Pineau<br>*Gaylord Palms* | c/o Counsel for Marriott | Knowledge of the facts relating to the Palms Event, including planning for the event. |
| Monica Schyck<br>*Director of Sales & Marketing, Gaylord Palms* | c/o Counsel for Marriott | Knowledge of facts relating to the Palms Event, including planning for the event, and cancellation. |

DEFENDANT/COUNTER-PLAINTIFF MARRIOTT                                    Page 6 of 24
HOTEL SERVICES, INC.'S RULE 26(a)(1)(A) INITIAL DISCLOSURES
Case No. 3:20-cv-00641; *The Lampo Group v. Marriott Hotel Services, Inc.*

Case 3:20-cv-00641   Document 76-1   Filed 12/01/21   Page 10 of 190 PageID #: 1323

| Julie Schwab<br>*Group Housing Supervisor,*<br>*Gaylord Palms* | c/o Counsel for Marriott | Knowledge of facts relating to the Palms Event, including reservations, planning, group housing, and the cancellation. |
|---|---|---|
| John Wasky<br>*Sr. Director of Finance &*<br>*Accounting*<br>*Gaylord Palms* | c/o Counsel for Marriott | Knowledge of facts relating to computation and invoicing of liquidated damages sought by Marriott in connection with the cancellation by Ramsey of the Palms Event, including the invoicing and finances. |
| Aaron Busby<br>*Director of Finance,*<br>*Gaylord Texan* | c/o Counsel for Marriott | Knowledge of facts relating to computation and invoicing of liquidated damages sought by Marriott in connection with the cancellation by Ramsey of the Texan Event, including the invoicing and finances. |
| Wendy Ezernack<br>*Sr. Sales Executive*<br>*Gaylord Texan* | c/o Counsel for Marriott | Signatory to the Texan Agreement and has knowledge of facts relating to pre-contract communications, negotiations, formation, and execution of the Texan Agreement, the terms therein, and the Texan Event, including planning for the event, and cancellation. |
| Rocky Raquepo<br>*Sr. Assistant Director of*<br>*Finance and Accounting,*<br>*Gaylord Texan* | c/o Counsel for Marriott | Knowledge of facts relating to computation and invoicing of liquidated damages sought by Marriott in connection by |

DEFENDANT/COUNTER-PLAINTIFF MARRIOTT
HOTEL SERVICES, INC.'S RULE 26(a)(1)(A) INITIAL DISCLOSURES
Case No. 3:20-cv-00641; *The Lampo Group v. Marriott Hotel Services, Inc.*

Page 7 of 24

| | | Ramsey of the Texan Event, including the invoicing and finances. |
|---|---|---|
| Michael Kofsky<br>*Director of Sales & Marketing, Gaylord Rockies* | c/o Counsel for Marriott | Knowledge of facts relating to the Rockies Event, including planning for the event, and cancellation. |
| Bill Hurst<br>*Senior Sales Executive, Gaylord Rockies* | c/o Counsel for Marriott | Signatory to the Rockies Agreement and has knowledge of facts relating to pre-contract communications, negotiations, formation, and execution of the Rockies Agreement, the terms therein, and the Rockies Event, including planning for the event, and cancellation. |
| Jeff Lindebald<br>*Director of Group Sales, Gaylord Rockies* | c/o Counsel for Marriott | Knowledge of the facts relating to the Rockies Event, including planning for the event, invoicing, and cancellation. |
| Alex Vassilaros<br>*Sr. Director of Finance and Accounting, Gaylord Rockies* | c/o Counsel for Marriott | Knowledge of facts relating to computation and invoicing of liquidated damages sought by Marriott in connection with the cancellation by Ramsey of the Rockies Event, including the invoicing and finances. |
| Thomas Egan<br>*Director of Sales & Marketing, Gaylord Texan* | c/o Counsel for Marriott | Knowledge of facts relating to the Texan Event, including planning for the event, and cancellation. |

DEFENDANT/COUNTER-PLAINTIFF MARRIOTT                                    Page 8 of 24
HOTEL SERVICES, INC.'S RULE 26(a)(1)(A) INITIAL DISCLOSURES
Case No. 3:20-cv-00641; *The Lampo Group v. Marriott Hotel Services, Inc.*

Case 3:20-cv-00641   Document 76-1   Filed 12/01/21   Page 12 of 190 PageID #: 1325

| | | |
|---|---|---|
| Mike Stengel<br>*Senior Vice President*<br>*Gaylord & Marriott*<br>*Convention & Resort Network* | c/o Counsel for Marriott | Knowledge of facts relating to the operations of the Gaylord properties, including enforcement of Gaylord policies and governmental regulations, including COVID-19, and its effect on the Palms Event, a telephone conversation(s) in or around June 2020 with representatives from Ramsey, and cancellation. |
| Mike Wainwright<br>*VP-Sales, Gaylord Hotels*<br>*VP- Sales Strategy, Convention*<br>*Resort Network* | c/o Counsel for Marriott | Knowledge of the facts relating to a telephone conversation(s) in or around June 2020 with representatives from Ramsey relating to the Palms Event and cancellation. |
| One or more Corporate Representative(s) of Marriott<br>*Defendant/Counter-Plaintiff* | c/o Counsel for Marriott | Knowledge and information about Marriott's calculation and amount of liquidated damages due under the Palms Agreement, Texan, Agreement, and Rockies Agreement. |
| Corporate Representative and/or a records custodian of The Lampo Group, LLC d/b/a Ramsey Solutions<br>*Plaintiff/Counter-Defendant* | c/o Jennifer Altman<br>Markenzy Lapointe<br>Pillsbury Winthrop Shaw Pittman LLP<br>600 Brickell Avenue<br>Suite 3100<br>Miami, FL 33131<br>Telephone: (786) 913-4880<br><br>-and-<br><br>Ashley E. Cowgill<br>Pillsbury Winthrop Shaw Pittman LLP | Knowledge of facts relating to the Palms Agreement, Texan, Agreement, Rockies Agreement, Palms Event, Texan Event, and Rockies Event, the cancellations thereof, and all facts allegedly supporting Ramsey's claims in this lawsuit. |

DEFENDANT/COUNTER-PLAINTIFF MARRIOTT                                                                 Page 9 of 24
HOTEL SERVICES, INC.'S RULE 26(a)(1)(A) INITIAL DISCLOSURES
Case No. 3:20-cv-00641; *The Lampo Group v. Marriott Hotel Services, Inc.*

Case 3:20-cv-00641   Document 76-1   Filed 12/01/21   Page 13 of 190 PageID #: 1326

| | 500 Capitol Mall, Suite 1800<br>Sacramento, CA 95814<br>Telephone: (916) 329-4721<br><br>(Collectively, hereinafter referred to as "Counsel for Ramsey") | |
|---|---|---|
| Joe Leavitt<br>*Director of Event Production*<br>*Ramsey Solutions* | c/o Counsel for Ramsey | Signatory to the Palms Agreement, Texan, Agreement, and Rockies Agreement, and has knowledge of facts relating to pre-contract communications, negotiations, formation, and execution of each, the terms therein, and the Palms Event, Texan Event, and Rockies Event, including planning and cancellations, and Gaylord policies and governmental regulations affecting the Palms Event, including COVID-19. |
| Blake Thornell<br>*Senior Event Producer*<br>*Ramsey Solutions* | c/o Counsel for Ramsey | Knowledge of facts relating to the Palms Event and the cancellation. |
| Dave Ramsey<br>*Ramsey Solutions* | c/o Counsel for Ramsey | Knowledge of facts relating to the Palms Agreement and Palms Event, Texan Agreement and Texan Event, and Rockies Agreement and Rockies Event, including planning, cancellations and Gaylord policies and governmental regulations affecting the Palms Event, including COVID-19. |

DEFENDANT/COUNTER-PLAINTIFF MARRIOTT                                      Page 10 of 24
HOTEL SERVICES, INC.'S RULE 26(a)(1)(A) INITIAL DISCLOSURES
Case No. 3:20-cv-00641; *The Lampo Group v. Marriott Hotel Services, Inc.*

Case 3:20-cv-00641   Document 76-1   Filed 12/01/21   Page 14 of 190 PageID #: 1327

| | | |
|---|---|---|
| VeShannah Lovelace<br>*Event Producer*<br>*Ramsey Solutions* | c/o Counsel for Ramsey | Knowledge of facts relating to the Palms Event. |
| Leigh Orendorf<br>*Ramsey Solutions* | c/o Counsel for Ramsey | Knowledge of facts relating to the Palms Event. |
| Katie Kinderknecht<br>*Senior Event Producer*<br>*Ramsey Event Productions* | c/o Counsel for Ramsey | Knowledge of facts relating to the Palms Event and the cancellation. |
| Kristin Cummings<br>*Senior Director of Operations and Events*<br>*EntreLeadership* | c/o Counsel for Ramsey | Knowledge of facts relating to the Palms Event. |
| Tammy Kornberg<br>*EntreLeadership Advisor* | c/o Counsel for Ramsey | Knowledge of facts relating to the Palms Event. |
| Scott Moore<br>*Go Live Productions, LLC* | Go Live Productions, LLC<br>304 Hill Ave, Suite A<br>Nashville, TN 37210<br>Telephone: (615) 662-5203 | Knowledge of facts relating to the Palms Event and layouts. |
| Steve Caroselli<br>*CEO & Founder*<br>*Orion Entrance Control, Inc.* | Orion Entrance Control, Inc.<br>76A Lexington Drive<br>Laconia, NH 03246<br>Telephone: (603) 527-4187 ext. 303 | Knowledge of facts relating to the Palms Event and proposed temperature scanners for the Palms Event. |
| Any person or entity identified by Ramsey or identified in discovery, including depositions and documents produced. | | |
| All individuals or entities identified by Ramsey in its initial disclosures, subsequent disclosures, or any discovery response in this matter, or in any deposition testimony, or in any document produced in | | |

DEFENDANT/COUNTER-PLAINTIFF MARRIOTT                                        Page 11 of 24
HOTEL SERVICES, INC.'S RULE 26(a)(1)(A) INITIAL DISCLOSURES
Case No. 3:20-cv-00641; *The Lampo Group v. Marriott Hotel Services, Inc.*

Case 3:20-cv-00641   Document 76-1   Filed 12/01/21   Page 15 of 190 PageID #: 1328

| connection with this matter | | |
| --- | --- | --- |
| | | |

Marriott reserves the right to call as a witness any person or expert designated by another party in any given case. Marriott reserves the right to seek recovery of fees, costs and/or expenses in this action, which will be applied for at the appropriate time during the litigation.

2.    **Rule 26(a)(1)(A)(ii).**  A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment.

Marriott's description, by category, of documents, information and/or tangible things it may use to support its prosecution and defenses in this matter include Marriott's business records relating to sales, contracts, event planning, and cancellations for the Gaylord Palms, Gaylord Rockies, and Gaylord Texan events that are subject to this lawsuit, including but not limited to:

(1)    All documents exhibited to or specifically referenced in the pleadings, including the Complaint (Docket No. 1), Amended Complaint (Docket No. 10), Answer, Affirmative Defenses and Counterclaim (Docket No. 21) and Answer and Affirmative Defenses to Counterclaim (Docket No. 27);

(2)    All non-privileged documents and communications, including communications between the parties, evidencing or discussing any contracts or agreements between the parties, including all addenda to same, related to the contracted events Ramsey was obligated to hold at the Gaylord Palms, Gaylord Texan and Gaylord Rockies, as referenced in the pleadings;

(3)    All relevant, nonprivileged documents and communications between the parties or between the parties and any third parties related to the contracted events Ramsey was obligated to hold at the Gaylord Palms, Gaylord Texan and Gaylord Rockies, as referenced in the pleadings.

(4)    All non-privileged external and internal written and electronic communications, documents and information,  including emails,  text messages and hand-written notes, by and by between the parties to this lawsuit, relating to the negotiation, execution, planning, and performance and cancellation of the of the subject contracts regarding the contracted events scheduled to be held at the Gaylord Palms, Gaylord Texan, and Gaylord Rockies, subject to this lawsuit;

(5)    Invoices and spreadsheets relating to the cancellation of the Gaylord Palms event, Gaylord Texan event, and Gaylord Rockies event, including the calculation of such liquidated damages, subject to this lawsuit;

DEFENDANT/COUNTER-PLAINTIFF MARRIOTT                                    Page 12 of 24
HOTEL SERVICES, INC.'S RULE 26(a)(1)(A) INITIAL DISCLOSURES
Case No. 3:20-cv-00641; *The Lampo Group v. Marriott Hotel Services, Inc.*

Case 3:20-cv-00641   Document 76-1   Filed 12/01/21   Page 16 of 190 PageID #: 1329

(6)    Menus, event orders, room layouts, and other documents and spreadsheets relating to the planning and performance of the Gaylord Palms event, subject to this lawsuit; and

(7)    Local governmental rules, regulations, ordinance(s), orders, executive orders, and mandates, and the like, over the period March through July 2020, concerning operations of the Gaylord Palms.

(8)    Transcripts of any depositions taken in connection with this action;

(9)    Documents previously disclosed, or to be disclosed in the future, by Marriott or by any other party in this case;

(10)    Reports prepared by any expert in this matter;

(11)    Any articles, books, treatises, documents, or other documents relied upon by any expert in this case;

(12)    Any records, charts, documents, photographs, and/or demonstrative exhibits prepared by any expert retained in this matter;

(13)    Any relevant business and/or other records of Marriott related to the underlying claims in this matter;

(14)    All initial and subsequent disclosures pursuant to FRCP 26;

(15)    All answers to interrogatories, requests for admission, requests for production, and any other discovery requests of Plaintiff, or Defendants, and those of designated non-parties filed in this case or any other case; and

(16)    All pleadings in this matter.

(17)    The Hotel has not completed its investigation and discovery is in its infancy. The Hotel reserves the right to supplement as necessary.

    3.    **Rule 26(a)(1)(A)(iii).**  A computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under <u>Rule 34</u> the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

    Defendant/Counter-Plaintiff Marriott seeks liquidated damages totaling **<u>$2,806,894.30,</u>** as a result of Ramsey's material breaches contract:

## A.  <u>Liquidated Damages Under the Gaylord Palms Contract</u>

DEFENDANT/COUNTER-PLAINTIFF MARRIOTT           Page 13 of 24
HOTEL SERVICES, INC.'S RULE 26(a)(1)(A) INITIAL DISCLOSURES
Case No. 3:20-cv-00641; *The Lampo Group v. Marriott Hotel Services, Inc.*

Case 3:20-cv-00641  Document 76-1   Filed 12/01/21   Page 17 of 190 PageID #: 1330

1.     **Damages Sought:**

Marriott seeks liquidated damages pursuant to the September 29, 2017 written agreement, and April 2, 2020 amendment, between Marriott and Ramsey for the Gaylord Palms event subject to this lawsuit, in the principal amount of $658,599.55, or in such other amount as proven at trial and, in the alternative, for lost profits in an amount to be proved at trial, plus pre-judgment interest at the contract rate of 1.5 percent per month (or, if less, the maximum amount permitted by law) on the Palms Original Invoice amount of $423,844.55, from July 6, 2020 through August 25, 2020; plus pre-and post-judgment interest at the contract rate of 1.5 percent per month (or, if less, the maximum amount permitted by law), on the Palms Revised Invoice in the amount of $658,599.55, from August 26, 2020, until the debt is paid in full; plus reasonable attorneys' fees and costs in accordance with the Palms Contract and applicable law.

2.     **Calculation of Liquidated Damages:**

a.      Pursuant to the Palms Agreement, Ramsey was obligated to utilize 4,855 sleeping room nights at the Gaylord Palms at rates ranging from $229.00 per room, per night, for single/double/triple/quad occupancy rooms, plus applicable state and local taxes, to $2,700.00 per room, per night, for Presidential Suits, plus applicable state and local taxes. A true and correct copy of the Palms Agreement is attached as Exhibit A to Marriott's Answer and Counterclaim.

DEFENDANT/COUNTER-PLAINTIFF MARRIOTT                                          Page 14 of 24
HOTEL SERVICES, INC.'S RULE 26(a)(1)(A) INITIAL DISCLOSURES
Case No. 3:20-cv-00641; *The Lampo Group v. Marriott Hotel Services, Inc.*

Case 3:20-cv-00641   Document 76-1   Filed 12/01/21   Page 18 of 190 PageID #: 1331

b.    In addition, the Palms Agreement requires Ramsey to spend not less than $700,000.00 in banquet food and beverage, plus applicable services charges and taxes.

c.    The parties executed an amendment to the Palms Agreement on or about April 2, 2020 (the "Palms Amendment"), pursuant to which, among other things, the contracted sleeping room block was lowered from 4855 sleeping rooms to 4210 sleeping rooms, and food and beverage commitment was reduced from $700,000.00 to $400,000.00, and the dates of the Palms Event was changed from May 15-21, 2020 to July 10-16, 2020. A true and correct copy of the Palms Amendment is attached as Exhibit B to Marriott's Answer and Counterclaim.

d.    Paragraph 3 of the Palms Amendment, however, specifically provides that "should group cancel the July 10-15 2020 conference, the calculation will be based on the original contracted room block and F&B minimum."

e.    The Agreement and Amendment are, from time to time, hereinafter collectively referred to as the "Palms Contract."

f.    The Palms Agreement contains (at page 13) a "Cancellation Policy" clause (the "Palms Cancellation Provision"), which governs the amount of liquidated damages Ramsey agreed to pay if it were to cancel its contracted Palms Event.

g.    The Palms Cancellation Provision (at page 13 of the Palms Agreement) provides that Ramsey would owe "100% of total room revenue plus 75% of

DEFENDANT/COUNTER-PLAINTIFF MARRIOTT                                    Page 15 of 24
HOTEL SERVICES, INC.'S RULE 26(a)(1)(A) INITIAL DISCLOSURES
Case No. 3:20-cv-00641; *The Lampo Group v. Marriott Hotel Services, Inc.*

Case 3:20-cv-00641   Document 76-1   Filed 12/01/21   Page 19 of 190 PageID #: 1332

F&B Guarantee," for a cancellation occurring between "0 –180 days prior to arrival."

h.    Pursuant to the Palms Agreement (at page 13), "total room revenue" is defined as "the dollar amount equal to the Room Block multiplied by the Group's average room rate, exclusive of Resort Fees."

i.    The Palms Agreement (at p. 8) contains a deposit provision, which requires Ramsey to make the following deposit: Seventy-five percent (75%) of the anticipated Group expenditures to be master billed, including all food and beverage charges, is due thirty (30) days prior to arrival."

j.    Ramsey paid to Marriott deposits totaling $1,212,950.45.

k.    By letter dated July 3, 2020, Ramsey canceled the Palms Event. A true and correct copy of the July 3, 2020 letter is attached as Exhibit C to Marriott's Answer and Counterclaim.

l.    Ramsey's reasons for canceling the Palms Event are not covered under any provision of the Palms Contract.

m.    Accordingly, the cancellation by Ramsey was without legal justification or excuse and therefore constitutes a material breach of contract.

n.    The cancellation by Ramsey of the Palms Event occurred between "0 –180 days prior to arrival."

o.    Accordingly, pursuant to the Cancellation Policy provision, Ramsey owes "100% of total room revenue plus 75% of F&B Guarantee," which is $1,871,550.00, for the cancellation, computed as follows:

Room Revenue:

DEFENDANT/COUNTER-PLAINTIFF MARRIOTT                                          Page 16 of 24
HOTEL SERVICES, INC.'S RULE 26(a)(1)(A) INITIAL DISCLOSURES
Case No. 3:20-cv-00641; *The Lampo Group v. Marriott Hotel Services, Inc.*

Case 3:20-cv-00641   Document 76-1   Filed 12/01/21   Page 20 of 190 PageID #: 1333

| | 7/10/2020 | Total | Rate | Room Revenue |
|---|---|---|---|---|
| Room Type | | | | |
| Run of House | 3524 | 3524 | 229 | 806,996.00 |
| Executive Suite | 125 | 125 | 625 | 78,125.00 |
| Deluxe Suite | 125 | 125 | 850 | 106,250.00 |
| Presidential Suite | 30 | 30 | 2700 | 81,000.00 |
| Emerald Bay | 670 | 670 | 279 | 186,930.00 |
| Staff | 381 | 381 | 229 | 87,249.00 |
| **Total** | **4855** | **4,855.0** | | 1,346,550.00 |

Minimum Food and Beverage x 75% ($700,000 x 75%)　　　　$525,000.00

　　　　Total　　　　　　　　　　　　　　　　　　　　$1,871,550.00

p.　　　After applying the $1,212,950.45 advanced deposits, Ramsey owes **$658,599.55** in liquidated damages for canceling the Palms Event.

q.　　　A copy of the invoice for the cancellation fee is attached as Exhibit E to Marriott's Answer and Counterclaim.

## B. Liquidated Damages Under the Gaylord Texan Contract

### 1.　Damages Sought:

Marriott seeks liquidated damages pursuant to the December 29, 2017 written agreement, as subsequently amended, between Marriott and Ramsey for the Gaylord Texan event subject to this lawsuit, in the principal amount of $1,491,661.55 or, in the alternative, for lost profits in an amount to be proved at trial, plus pre-judgment interest at the contract rate of 1.5 percent per month (or, if less, the maximum amount permitted by law) on the Texan Original Invoice amount of $1,383,507.80, from July 23, 2020 through August 25, 2020; plus pre-and post-judgment interest at the contract rate of Interest at the rate of 1.5 percent per month (or, if less, the maximum amount permitted by law), on the Texan Revised Invoice in the amount of $1,491,661.55, from August 26, 2020, until the debt is paid in

DEFENDANT/COUNTER-PLAINTIFF MARRIOTT　　　　　　　　　　　　Page 17 of 24
HOTEL SERVICES, INC.'S RULE 26(a)(1)(A) INITIAL DISCLOSURES
Case No. 3:20-cv-00641; *The Lampo Group v. Marriott Hotel Services, Inc.*

Case 3:20-cv-00641　Document 76-1　Filed 12/01/21　Page 21 of 190 PageID #: 1334

full; plus reasonable attorneys' fees and costs in accordance with the Texan Contract and applicable law.

2. **Calculation of Liquidated Damages:**

    a.    Pursuant to the Texan Contract, Ramsey was obligated to utilize 5756 sleeping room nights at the Gaylord Texan at rates ranging from $143.40 per room, per night, for staff rooms, plus applicable state and local taxes, to $2,500.00 per room, per night, for Presidential Suits, plus applicable state and local taxes. A copy of the Texan Contract is attached as Exhibit F to Marriott's Answer and Counterclaim.

    b.    In addition, the Texan Contract requires Ramsey to spend not less than $700,000.00 in banquet food and beverage, plus applicable services charges and taxes.

    c.    The Texan Contract contains (at page 11) a "Cancellation Policy" clause (the "Texan Cancellation Provision"), which governs the amount of liquidated damages Ramsey agreed to pay if it were to cancel its contracted Texan Event.

    d.    The Texan Cancellation Provision (at page 11 of the Texan Contract) provides that Ramsey would owe "75% of total room revenue plus 50% of F&B Guarantee," for a cancellation occurring between "181 –365 days prior to arrival."

    e.    Pursuant to the Texan Contract (at page 11), "total room revenue" is defined as "the dollar amount equal to the Room Block multiplied by the Group's average room rate, exclusive of Resort Fees."

DEFENDANT/COUNTER-PLAINTIFF MARRIOTT    Page 18 of 24
HOTEL SERVICES, INC.'S RULE 26(a)(1)(A) INITIAL DISCLOSURES
Case No. 3:20-cv-00641; *The Lampo Group v. Marriott Hotel Services, Inc.*

Case 3:20-cv-00641   Document 76-1   Filed 12/01/21   Page 22 of 190 PageID #: 1335

f. By email dated July 22, 2020, Ramsey canceled the Texan Event. A true and correct copy of the July 22, 2020 email is attached hereto as Exhibit G and incorporated herein by reference.

g. Ramsey's reasons for canceling the Texan Contract are not covered under any provision of the Texan Contract.

h. Accordingly, the cancellation by Ramsey was without legal justification or excuse and therefore constitutes a material breach of contract.

i. As noted above, as part of the Texan Contract, the parties agreed that damages caused by a cancellation of the Texan Event by Ramsey would be liquidated and governed by a "Cancellation Policy" provision.

j. The cancellation of the Texan Event by Ramsey Solution was between 181-365 days prior to arrival.

k. Pursuant to the Cancellation Policy provision, Ramsey owes "75% of total room revenue plus 50% of F&B Guarantee," which is $1,491,661.55, for the cancellation, computed as follows:

| Room Type | Total Rooms | Rates | Total Rm Rev |
| --- | --- | --- | --- |
| Exec Suite | 125 | $239.00 | $29,875.00 |
| Deluxe Suite | 125 | $850.00 | $106,250.00 |
| Pres | 30 | $2,500.00 | $75,000.00 |
| Lonestar | 670 | $279.00 | $186,930.00 |
| Staff | 381 | $143.40 | $54,635.40 |
| Attendee | 3955 | $239.00 | $945,245.00 |
| Platinum | 300 | $239.00 | $71,700.00 |

DEFENDANT/COUNTER-PLAINTIFF MARRIOTT                                    Page 19 of 24
HOTEL SERVICES, INC.'S RULE 26(a)(1)(A) INITIAL DISCLOSURES
Case No. 3:20-cv-00641; *The Lampo Group v. Marriott Hotel Services, Inc.*

Case 3:20-cv-00641   Document 76-1   Filed 12/01/21   Page 23 of 190 PageID #: 1336

| | | | |
|---|---|---|---|
| Protected | 220 | $239.00 | $52,580.00 |
| Total | 5806 | | $1,522,215.40 |
| 75% | | | $1,141,661.55 |

Plus Minimum Food and Beverage

Minimum x 50% ($700,000 x 75%)                    $350,000.00

       Total Liquidated Damages                    **$1,491,661.55**

l.     A copy of the invoice for the cancellation fee is attached as Exhibit E to Marriott's Answer and Counterclaim.

## C.  Liquidated Damages Under the Gaylord Texan Contract

### 1.    Damages Sought:

Marriott seeks liquidated damages pursuant to the December 23, 2017 written agreement between Marriott and Ramsey for the Gaylord Rockies event subject to this lawsuit, in the principal amount of $656,633.20 or, in the alternative, for lost profits in an amount to be proved at trial, plus pre-judgment interest at the contract rate 1.5 percent per month (or, if less, the maximum amount permitted by law) on the Rockies Original Invoice amount of $562,357.60, from July 23, 2020 through August 25, 2020; plus pre-and post-judgment interest at the contract rate of 1.5 percent per month (or, if less, the maximum amount permitted by law), on the Rockies Revised Invoice amount of $656,633.20, from August 26, 2020, until the debt is paid in full; plus reasonable attorneys' fees and costs in accordance with the Rockies Contract and applicable law.

### 2.    Calculation of Liquidated Damages:

a.     Pursuant to the Rockies Contract, Ramsey was obligated to utilize 5,131 sleeping room nights at the Gaylord Rockies at rates ranging from $164.40

DEFENDANT/COUNTER-PLAINTIFF MARRIOTT                Page 20 of 24
HOTEL SERVICES, INC.'S RULE 26(a)(1)(A) INITIAL DISCLOSURES
Case No. 3:20-cv-00641; *The Lampo Group v. Marriott Hotel Services, Inc.*

Case 3:20-cv-00641   Document 76-1   Filed 12/01/21   Page 24 of 190 PageID #: 1337

per room, per night, for staff rooms, plus applicable state and local taxes, to $2,700.00 per room, per night, for Presidential Suits, plus applicable state and local taxes. A true and correct copy of the Rockies Contract is attached as Exhibit I to Marriott's Answer and Counterclaim.

b.    In addition, the Rockies Contract requires Ramsey to spend not less than $700,000.00 in banquet food and beverage, plus applicable services charges and taxes.

c.    The Rockies Contract contains (at page 10) a "Cancellation Policy" clause (the "Rockies Cancellation Provision"), which governs the amount of liquidated damages Ramsey agreed to pay if it were to cancel its contracted Rockies Event.

d.    The Rockies Cancellation Provision (at page 11 of the Rockies Contract) provides that Ramsey would owe "40% of total room revenue" for a cancellation occurring between "366-729 days prior to arrival."

e.    Pursuant to the Rockies Contract (at page 10), "total room revenue" is defined as "the dollar amount equal to the Room Block multiplied by the Group's average room rate, exclusive of Resort Fees."

f.    By email dated July 22, 2020, Ramsey canceled the Rockies Event. A true and correct copy of the July 22, 2020 email is attached hereto as Exhibit G and incorporated herein by reference.

g.    Ramsey's reasons for canceling the Rockies Contract are not covered under any provision of the Rockies Contract.

DEFENDANT/COUNTER-PLAINTIFF MARRIOTT                                      Page 21 of 24
HOTEL SERVICES, INC.'S RULE 26(a)(1)(A) INITIAL DISCLOSURES
Case No. 3:20-cv-00641; *The Lampo Group v. Marriott Hotel Services, Inc.*

Case 3:20-cv-00641   Document 76-1   Filed 12/01/21   Page 25 of 190 PageID #: 1338

h. Accordingly, the cancellation by Ramsey was without legal justification or excuse and therefore constitutes a material breach of contract.

i. As noted above, as part of the Rockies Contract, the parties agreed that damages caused by cancellation of the Rockies Event by Ramsey would be liquidated and governed by a "Cancellation Policy" provision.

j. The cancellation by Ramsey Solution occurred between 366-729 days prior to arrival.

k. Pursuant to the Cancellation Policy provision, "40% of total room revenue" is $656,633.20, computed as follows:

| | Rate | Rooms | Revenue | Ave Rate | Cancelation Fee |
|---|---|---|---|---|---|
| Presidential | $ 2,700 | 30 | $ 81,000.00 | | |
| Deluxe | $ 850 | 125 | $ 106,250.00 | | |
| Executive | $ 625 | 125 | $ 78,125.00 | | |
| Staff | $ 164 | 335 | $ 55,074.00 | | |
| Mountain View | $ 399 | 670 | $ 267,330.00 | | |
| ROH | $ 274 | 3846 | $ 1,053,804.00 | | |
| | | | | | |
| | | 5131 | $ 1,641,583.00 | $ 319.93 | $ 656,633.20 |
| | | | | | |
| 40% | | | $ 656,633.20 | | |

l. Ramsey did not make any advance deposits towards the Rockies Event. Accordingly, liquidated damages for canceling the Rockies Event are $656,633.20.

m. A copy of the invoice for the cancellation fee is attached as Exhibit E to Marriott's Answer and Counterclaim

4. **Rule 26(a)(1)(A)(iv).** For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Not applicable. Marriott's investigation is ongoing, however, and any required disclosures

DEFENDANT/COUNTER-PLAINTIFF MARRIOTT                                    Page 22 of 24
HOTEL SERVICES, INC.'S RULE 26(a)(1)(A) INITIAL DISCLOSURES
Case No. 3:20-cv-00641; *The Lampo Group v. Marriott Hotel Services, Inc.*

Case 3:20-cv-00641   Document 76-1   Filed 12/01/21   Page 26 of 190 PageID #: 1339

under this category will be disclosed pursuant to Rule 26(e).


Dated:  November 11, 2020

Respectfully submitted,

*/s/ John C. Josefsberg*
Steven M. Rudner, admitted *pro hac vice*
John C. Josefsberg, admitted *pro hac vice*
RUDNER LAW OFFICES
12740 Hillcrest Road, Suite 240
Dallas, TX 75230
Telephone: (214) 373-1900
Facsimile: (214) 360-7845
*Rudner@HotelLawyers.com*
*Josefsberg@HotelLawyers.com*

and

Stephen J. Zralek
BONE MCALLESTER NORTON PLLC
511 Union St., Suite 1600
Nashville, TN 372169
Telephone: (615) 780-6305
Facsimile: (615) 687-2763
*szralek@bonelaw.com*

DEFENDANT/COUNTER-PLAINTIFF MARRIOTT                                        Page 23 of 24
HOTEL SERVICES, INC.'S RULE 26(a)(1)(A) INITIAL DISCLOSURES
Case No. 3:20-cv-00641; *The Lampo Group v. Marriott Hotel Services, Inc.*

Case 3:20-cv-00641   Document 76-1   Filed 12/01/21   Page 27 of 190 PageID #: 1340

## CERTIFICATE OF SERVICE

I certify that I served a copy of this document via email on November 11, 2020 on the following:

Jennifer Altman, Esq.
Markenzy Lapointe, Esq.
Pillsbury Winthrop Shaw Pittman LLP
600 Brickell Avenue, Suite 3100
Miami, FL 33131
*Jermifer.altman@pillsburylaw.com*
*Markenzy.lapointe@pillsburylaw.com*

Ashley E. Cowgill, Esq.
Pillsbury Winthrop Shaw Pittman LLP
500 Capitol Mall, Suite 1800
Sacramento, CA 95814
*ashley.cowgill@pillsburylaw.com*

*Counsel for Plaintiff/Counter-Defendant*

/s/ John C. Josefsberg
JOHN C. JOSEFSBERG

DEFENDANT/COUNTER-PLAINTIFF MARRIOTT                                          Page 24 of 24
HOTEL SERVICES, INC.'S RULE 26(a)(1)(A) INITIAL DISCLOSURES
Case No. 3:20-cv-00641; *The Lampo Group v. Marriott Hotel Services, Inc.*

Case 3:20-cv-00641   Document 76-1   Filed 12/01/21   Page 28 of 190 PageID #: 1341

# COMPOSITE

# Exhibit "B"

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

THE LAMPO GROUP, LLC d/b/a )
RAMSEY SOLUTIONS, )
              )
         Plaintiff, )
              )
v. )       **Case No. 3:20-cv-00641**
              )       **Hon. Aleta A. Trauger**
MARRIOTT HOTEL SERVICES, INC., )
              )       **JURY DEMAND**
         Defendant. )
_____)
MARRIOTT HOTEL SERVICES, INC., )
              )
         Counter-Plaintiff, )
              )
v. )
              )
THE LAMPO GROUP, LLC d/b/a )
RAMSEY SOLUTIONS, )
              )
         Counter-Defendant. )

## MARRIOTT'S RESPONSES AND OBJECTIONS TO RAMSEY'S SECOND SET OF INTERROGATORIES

Defendant / Counter-Plaintiff Marriott Hotel Services, Inc. ("Marriott") serves its responses and objections pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, to the Second Set of Interrogatories of Plaintiff / Counter-Defendant The Lampo Group, LLC d/b/a Ramsey Solution ("Ramsey").

1

## PRELIMINARY STATEMENT

1.      Marriott's investigation and development of all facts and circumstances relating to this action is ongoing. These responses and objections are made without prejudice to, and are not a waiver of, Marriott's right to rely on other facts or documents at trial.

2.      By making the accompanying responses and objections to Ramsey's interrogatories, Marriott does not waive, and hereby expressly reserves, its right to assert any and all objections as to the admissibility of such responses into evidence in this action, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy, materiality, and privilege. Further, Marriott makes the responses and objections herein without in any way implying that it considers the interrogatory, and responses to the interrogatory, to be relevant or material to the subject matter of this action.

3.      In a response to an interrogatory stating an objection and/or indicating that no response shall be given, such response and objection shall not be deemed or construed that Marriott performed any of the acts described in the interrogatory, or definitions and/or instructions applicable to the interrogatory, or that Marriott acquiesces in the characterization of the conduct or activities contained in the interrogatory, or definitions and/or instructions applicable to the interrogatory.

5.      Marriott expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

## GENERAL OBJECTIONS

1.      Marriott objects to each instruction, definition and interrogatory to the extent that it purports to impose any requirement or discovery obligation greater than or

2

different from those under the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court.

2.      Marriott objects to each interrogatory that is overly broad, unduly burdensome, or not reasonably calculated to lead to the discovery of admissible evidence.

3.      Marriott objects to each interrogatory to the extent that it calls for production of a privilege log for internal documents of Plaintiff. A request for such a log is unreasonable and unduly burdensome in light of the work product doctrine and other privileges protecting such internal documents from discovery.

4.      Marriott objects to each instruction, definition, and interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege. Should any such disclosure by Marriott, it is inadvertent and shall not constitute a waiver of any privilege.

5.      Marriott objects to each instruction, definition and interrogatory as overbroad and unduly burdensome to the extent it seeks information that is readily or more accessible to Ramsey from its own files, from documents or information in its possession, or from documents or information that Ramsey previously produced to Marriott. Responding to such interrogatory would be oppressive, unduly burdensome, and unnecessarily expensive, and the burden of responding to such requests is

substantially the same or less for Marriott as for Ramsey.

6.      Marriott objects to each interrogatory to the extent that it is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

7.      To the extent any of Ramsey's interrogatories seek answers that include expert material, Marriott objects to any such requests as premature and expressly reserves the right to supplement, clarify, revise, or correct any or all responses to such requests, and to assert additional objections or privileges, in one or more subsequent supplemental response(s) in accordance with the time period for exchanging expert reports set by the Court.

8.      Marriott incorporates by reference every general objection set forth above into each specific response set forth below. A specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response does not waive any general objection to that request. Moreover, Marriott does not waive its right to amend its responses.

9.      Marriott objects to each interrogatory to the extent that it overbroad and unduly burdensome and oppressive such that the burden and expense of the proposed discovery outweighs its likely benefits.

4

10.     Marriott objects to each interrogatory to the extent that it seeks information or documents regarding "each," "all," "every" and "any" on the grounds that it is overbroad and unduly burdensome.  Marriott has used reasonable efforts to provide responses based upon, among other things, examination of documents and files that may reasonably be expected to contain responsive information.

11.     Marriott objects to each interrogatory to the extent that it is ambiguous and too vague to adequately apprise Plaintiff of the information sought or to permit Plaintiff to furnish such information with reasonable effort.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.     Marriott objects to the Definitions and Instructions to the extent that they are broader than or otherwise not provided under the Federal Rules of Civil Procedure including the definition of "Document" as outlined in the Request. Further, to the extent that any Electronically Stored Information ("ESI") is sought in this Request or any other, it must be the result of a negotiated or court ordered ESI protocol identifying the specific nature and scope of such discovery including custodians and search terms.

2.     Further, Marriott reserves its right to supplement, amend, clarify, modify, revise, or correct any or all of its responses or objections to the Request at any time and to rely on other facts or information that may be discovered in the future in the course of this litigation. These responses and the information provided are made only for the purposes of discovery in this action, and nothing contained in its responses are an admission by Marriott of the relevance or admissibility of any information for any purpose whatsoever including admission into evidence in the above-styled action.

3. Marriott reserves all objections as to competency, relevance, materiality, privilege, or admissibility related to the use of the information provided herewith as evidence for any purpose whatsoever in this action or any other action.

4. Generally speaking, a party is not entitled to demand a recitation of "all facts" bearing on a particular proposition. As one observant jurist noted in the context of contention interrogatories: "Simply relating that "all facts" are required about a general contention is a lazy way of propounding an interrogatory which inevitably leads to a lazy response and then disputes." *Samaan v. Sauer*, No. CIV S-07-0960 JAM GGH, 2008 U.S. Dist. LEXIS 119994, at *12-13 (E.D. Cal. July 16, 2008) (Hollows, J.). As outlined below, the phrasing of the single request is so overbroad and ambiguous as to fall into this same category.

5. Consistent with that principle, Marriott expressly reserve its right to rely upon additional facts or evidence throughout this proceeding including in dispositive motions or at trial, and nothing contained herein shall be construed as a waiver of Marriott right to present such additional facts or evidence in support of their arguments in this action.

## MARRIOTT'S DEFINITIONS USED IN ITS RESPONSES AND OBJECTIONS TO SECOND SET OF INTERROGATORIES

1. As used herein, the term "Marriott" means Defendant / Counter-Plaintiff Marriott Hotel Services, Inc., and each of its subsidiaries, affiliates, parents, predecessors, successors, divisions, departments, or operating units, including without limitation any representative of the Gaylord Hotels brand, and includes without limitation their current or former officers, directors, shareholders, employees, principals, agents, trustees, representatives, consultants, managers, attorneys, advisors, accountants, bookkeepers, and all Persons or

6

entities acting or purporting to act on their behalf, including without limitation Mike Wainwright, Mike Stengel, John Adams and David Marriott.

2. As used herein, the term "Ramsey" means Plaintiff/Counter-Defendant, The Lampo Group, LLC d/b/a Ramsey Solutions, and each of its subsidiaries, affiliates, parents, predecessors, successors, divisions, departments, or operating units, and includes without limitation their current or former officers, directors, shareholders, employees, principals, agents, trustees, representatives, consultants, managers, attorneys, advisors, accountants, bookkeepers, and all Persons or entities acting or purporting to act on their behalf.

3. As used herein, the term "Litigation" means this litigation, captioned The Lampo Group d/b/a Ramsey Solutions v. Marriott Hotel Services, Civil Action No.3:20-cv-00641, in the United States District Court for the Middle District of Tennessee.

4. As used herein, "Gaylord Palms" means Gaylord Palms Resort & Convention Center, located in Kissimmee Florida, and managed by Marriott.

5. As used herein, "Gaylord Texan" means Gaylord Texan Resort & Convention Center, located in Grapevine, Texas, and managed by Marriott.

6. As used herein, "Gaylord Rockies" means Gaylord Palms Resort & Convention Center, located in Aurora, Colorado, and managed by Marriott.

7. As used herein, the term "Palms Agreement" refers to that written "Agreement" attached to the Marriott's Counterclaim as Exhibit "A," pursuant to which Ramsey Solutions was scheduled to hold a contracted event at the Gaylord Palms from May 15-21, 2020.

8. As used herein, the term "Palms Amendment" refers to that written "Amendment" to the Palms Agreement, attached to the Marriott's Counterclaim as Exhibit

"B," pursuant to which the dates for Palms Event were changed from May 15-21, 2020 to July 10-16, 2020.

9.     As used herein, the term "Palms Contract" refers collectively to the Palms Agreement and Palms Amendment.

10.    As used herein, the term "EntreSummit" refers to Ramsey annual event EntreSummit" as set forth in Paragraph 6 of the FAC.

11.    As used herein, the term "Palms Event" refers to the contracted EntreSummit event Ramsey Solutions was scheduled to hold at the Gaylord Palms over the dates July 10-16, 2020, as set forth as Exhibit "B" to Marriott's Counterclaim.

12.    As used herein, the term "EntreSummit 2020" refers to the EntreSummit event that was held at Ramsey Solutions' headquarters in Franklin, Tennessee, in July 2020.

13.    As used herein, the term "Texan Contract" refers to that written "Agreement" attached to the Marriott's Counterclaim as Exhibit "F," pursuant to which Ramsey Solutions was scheduled to hold its EntreSummit at the Gaylord Texan over the dates May 14-20, 2021.

14.    As used herein, the term "Texan Event" refers to the EntreSummit event Ramsey Solutions was scheduled to hold at the Gaylord Texan over the dates May 14-20, 2021, as set forth as Exhibit "F" to Marriott's Counterclaim.

15.    As used herein, the term "Rockies Contract" refers to that written "Group Sales Agreement" attached to Marriott's Counterclaim as Exhibit "I," pursuant to which Ramsey Solutions was scheduled to hold its EntreSummit at the Gaylord Rockies over the dates May 20-26, 2022.

16.    As used herein, the term "Gaylord Agreements" means, collectively, the Palms Contract, Texan Contract and Rockies Contract.

8

17.      As used herein, the term "Rockies Event" refers to the contracted EntreSummit event Ramsey Solutions was scheduled to hold at the Gaylord Rockies over the dates May 20 - 26, 2022, as set forth as Exhibit "I" to Marriott's Counterclaim.

18.      As used herein, the "FAC" refers to the "First Amended Complaint for Damages" filed by Ramsey Solutions on or about July 30, 2020.

19.      As set forth herein, "Marriott's Counterclaim" refers to Defendant's Answer and Counterclaim to Plaintiff's First Amended Complaint, filed on or about August 28, 2020.

20.      As used herein, "Answer to Counterclaim" refers to the Answer and Affirmative Defenses to Counterclaim filed by Ramsey Solutions on or about September 18, 2020.

## RESPONSES AND OBJECTIONS TO SECOND SET OF INTERROGATORIES

Interrogatory No. 18: Please state with particularity all amounts expended for food and beverage purchased for the Palms Event as of the termination date by Ramsey Solutions on July 2, 2020 by providing: (1) the amount that You paid; (2) who the amount was paid to; (3) the specific items paid for; and (4) whether those items of food and/or beverage were used for other guests or uses at the Gaylord Palms and, if so, identify any actual losses that You incurred in connection with the food and beverage items.

Response:

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.  Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the

9

burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege. Marriott also requests to this request on the grounds that it contains multiple sub-parts.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. *See* Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

Interrogatory Number 18 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the interrogatory is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this Interrogatory.

Interrogatory No. 19: Please state with particularity whether any of the sleeping rooms allocated for the Palms Event were occupied during the period over which the Palms Event was to take place by providing: (1) the number of sleeping room nights occupied; (2) the rate for each room occupied during the period of the Palms Event [as defined in the Amended Complaint], plus applicable state and local taxes; and (3) any additional revenues that You received from guests that occupied any of the rooms allocated to the Palms Event including food and beverage amounts.

Response:

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege. Marriott also requests to this request on the grounds that it contains multiple sub-parts.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses

11

in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. *See* Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

Interrogatory Number 19 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the interrogatory is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this Interrogatory.

Interrogatory No. 20: Please state with particularity all out of pocket costs that You incurred in connection with the Palms Event including, without limitation, all employees that were paid to work at the Palms Event and any amounts that You paid to any third-party vendor for the Palms Event that were not returned.

Response:

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege. Marriott also requests to this request on the grounds that it contains multiple sub-parts.

Marriott objects to this request on the grounds that the terms "out of pocket costs" and "third-party vendor" are too ambiguous and too vague to adequately apprise Marriott of the information sought or to permit Marriott to furnish such information with reasonable effort.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. *See* Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

13

Interrogatory Number 20 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the interrogatory is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this Interrogatory.

Interrogatory No. 21: Please state with particularity each element of Actual Damage that You sustained as a result of Ramsey Solutions' termination of the Palms Event.

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In

14

responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. *See* Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

Interrogatory Number 21 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the interrogatory is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this Interrogatory.

Interrogatory No. 22: Please state with particularity whether any of the sleeping rooms allocated for the Texans Event were sold during the period over which the Texans Event was to take place by providing: (1) the number of sleeping room nights occupied; (2) the rate for each room occupied during the period of the Texans Event [as defined in the Amended Complaint], plus applicable state and local taxes; and (3) any additional revenues that You received from guests that occupied any of the rooms allocated to the Texans Event including food and beverage amounts.

Response:

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege. Marriott also requests to this request on the grounds that it contains multiple sub-parts.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. *See* Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

16

Interrogatory Number 22 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the interrogatory is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this Interrogatory.

Interrogatory No. 23: Please state with particularity all out of pocket costs that You incurred in connection with the Texans Event including, without limitation, all employees that You paid to work at the Texans Event and any amounts that You paid to any third-party vendor for the Texans Event.

Response:

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege. Marriott also requests to this request on the grounds that it contains multiple sub-parts.

17

Marriott objects to this request on the grounds that the terms "out of pocket costs" and "third-party vendor" are too ambiguous and too vague to adequately apprise Marriott of the information sought or to permit Marriott to furnish such information with reasonable effort.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. *See* Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

Interrogatory Number 23 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the interrogatory is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this Interrogatory.

Interrogatory No. 24: Please state with particularity each element of Actual Damage that You sustained as a result of Ramsey Solutions' termination of the Texans Event including any variable costs incurred.

Response:

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

19

The deadline to file a motion to amend the pleadings passed on December 15, 2020. *See* Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

Interrogatory Number 24 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the interrogatory is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this Interrogatory.

Interrogatory No. 25: Please identify Your average gross incremental profit margin on the total rooms allocated to Ramsey Solutions for the EntreSummit Events at the (1) Gaylord Palms; (2) the Gaylord Texan and (3) the Gaylord Rockies.

Response:

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the

20

extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege. Marriott also requests to this request on the grounds that it contains multiple sub-parts.

Marriott objects to this request on the grounds that the term "average gross incremental profit margin" is too ambiguous and too vague to adequately apprise Marriott of the information sought or to permit Marriott to furnish such information with reasonable effort.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. *See* Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

Interrogatory Number 25 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the interrogatory is not relevant to the subject matter of the lawsuit and is not reasonably

calculated to lead to the discovery of admissible evidence.  For the foregoing reasons, Marriott

will not respond to the substance of this Interrogatory.

Respectfully submitted,

/s/ John C. Josefsberg
Steven M. Rudner, admitted *pro hac vice*
John C. Josefsberg, admitted *pro hac vice*
RUDNER LAW OFFICES
12740 Hillcrest Road, Suite 240
Dallas, TX  75230
Telephone:   (214) 373-1900
Facsimile:  (214) 360-7845
Rudner@HotelLawyers.com
josefsberg@HotelLawyers.com

and

Stephen J. Zralek, No. 18971
BONE McALLESTER NORTON PLLC
511 Union St., Ste. 1600
Nashville, TN 37219
Telephone:  (615) 780-7975
Facsimile:  (615) 780-7976
szralek@bonelaw.com

*Counsel for Marriott Hotel Services, Inc.*
*and Marriott International, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on, this 6th day of August 2021, I served this document via email (by agreement of counsel) on:

Ashley E. Cowgill, Esq.
ashley.cowgill@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
500 Capitol Mall, Suite 1800
Sacramento, CA 95814

Jennifer Altman, Esq.
jennifer.altman@pillsburylaw.com
Markenzy Lapointe, Esq.
markenzy.lapointe@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
600 Brickell Avenue, Suite 3100
Miami, FL 33131

/s/ John C. Josefsberg

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| THE LAMPO GROUP, LLC d/b/a RAMSEY SOLUTIONS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 3:20-cv-00641 Hon. Aleta A. Trauger |
| MARRIOTT HOTEL SERVICES, INC., | ) ) | JURY DEMAND |
| Defendant. | ) ) | |
| MARRIOTT HOTEL SERVICES, INC., | ) ) | |
| Counter-Plaintiff, | ) ) | |
| v. | ) ) | |
| THE LAMPO GROUP, LLC d/b/a RAMSEY SOLUTIONS, | ) ) ) | |
| Counter-Defendant. | ) | |

## MARRIOTT'S RESPONSES AND OBJECTIONS TO RAMSEY'S SECOND REQUEST FOR PRODUCTION

Defendant / Counter-Plaintiff Marriott Hotel Services, Inc. ("Marriott") serves its responses and objections pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, to the Second Request for Production of Plaintiff / Counter-Defendant The Lampo Group, LLC d/b/a Ramsey Solution ("Ramsey").

## PRELIMINARY STATEMENT

1.     Marriott's investigation and development of all facts and circumstances relating to this action is ongoing. These responses and objections are made without prejudice to, and are not a waiver of, Marriott's right to rely on other facts or documents at trial.

1

2.      By making the accompanying responses and objections to Ramsey's requests for documents, Marriott does not waive, and hereby expressly reserves, its right to assert any and all objections as to the admissibility of such responses into evidence in this action, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy, materiality, and privilege. Further, Marriott makes the responses and objections herein without in any way implying that it considers the requests, and responses to the requests, to be relevant or material to the subject matter of this action.

3.      Marriott will produce responsive documents only to the extent that such documents are in the "Possession, Custody, or Control" of Marriott.  For purposes of these responses, the term "Possession, Custody or Control" does not include documents that may have been destroyed due to and consistent with Marriott's document retention policy, which has been configured to automatically purge all messages located in Outlook inboxes, drafts, sent items, deleted, notes and junk older than one year.

Marriott's Possession, Custody, or Control does not include any constructive possession that may be conferred by Marriott's right or power to compel the production of documents or information from third parties or to request their production.

4.      In a response to a document request stating that objections and/or indicating that documents will be produced shall not be deemed or construed that there are, in fact, responsive documents, that Marriott performed any of the acts described in the document request or definitions and/or instructions applicable to the document request, or that Marriott acquiesces in the characterization of the conduct or activities contained in the document request or definitions and/or instructions applicable to the document request.

2

5.      Marriott expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

<u>GENERAL OBJECTIONS</u>

1.      Marriott objects to each instruction, definition and document request to the extent that it purports to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court.

2.      Marriott objects to each document request that is overly broad, unduly burdensome, or not reasonably calculated to lead to the discovery of admissible evidence.

4.      Marriott objects to each instruction, definition, and document request to the extent that it seeks documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege. Should any such disclosure by Marriott, it is inadvertent and shall not constitute a waiver of any privilege.

5.      Marriott objects to each instruction, definition and document request as overbroad and unduly burdensome to the extent it seeks documents or information that are readily or more accessible to Ramsey from its own files, from documents or information in its possession, or from documents or information that Ramsey previously produced to Marriott. Responding to such requests would be oppressive, unduly burdensome, and unnecessarily expensive, and the burden of responding to such requests is substantially the same or less for Marriott as for Ramsey.

6.      Marriott objects to each document request to the extent that it is not proportional

to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

7.     To the extent any of Ramsey's document requests seek documents or answers that include expert material, Marriott objects to any such requests as premature and expressly reserves the right to supplement, clarify, revise, or correct any or all responses to such requests, and to assert additional objections or privileges, in one or more subsequent supplemental response(s) in accordance with the time period for exchanging expert reports set by the Court.

8.     Marriott incorporates by reference every general objection set forth above into each specific response set forth below. A specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response does not waive any general objection to that request. Moreover, Marriott does not waive its right to amend its responses.

9.     Marriott objects to each document request to the extent that it overbroad and unduly burdensome and oppressive such that the burden and expense of the proposed discovery outweighs its likely benefits.

10.     Marriott objects to each document request to the extent that it seeks information or documents regarding "each," "all," "every" and "any" on the grounds that it is overbroad and unduly burdensome.  Marriott has used reasonable efforts to provide responses based upon, among other things, examination of documents and files that may reasonably be expected to contain responsive information.

4

11.     Marriott objects to each document request to the extent that it is ambiguous and too vague to adequately apprise Plaintiff of the information sought or to permit Plaintiff to furnish such information with reasonable effort.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.     Marriott objects to the Definitions and Instructions to the extent that they are broader than or otherwise not provided under the Federal Rules of Civil Procedure including the definition of "Document" as outlined in the Request. Further, to the extent that any Electronically Stored Information ("ESI") is sought in this Request or any other, it must be the result of a negotiated or court ordered ESI protocol identifying the specific nature and scope of such discovery including custodians and search terms.

2.     Further, Marriott reserves its right to supplement, amend, clarify, modify, revise, or correct any or all of its responses or objections to the Request at any time and to rely on other facts or information that may be discovered in the future in the course of this litigation. These responses and the information provided are made only for the purposes of discovery in this action, and nothing contained in its responses are an admission by Marriott of the relevance or admissibility of any information for any purpose whatsoever including admission into evidence in the above-styled action.

3.     Marriott reserves all objections as to competency, relevance, materiality, privilege, or admissibility related to the use of the information provided herewith as evidence for any purpose whatsoever in this action or any other action.

4.     Generally speaking, a party is not entitled to demand a recitation of "all facts" bearing on a particular proposition. As one observant jurist noted in the context of contention interrogatories: "Simply relating that "all facts" are required about a general contention is a lazy

5

way of propounding an interrogatory which inevitably leads to a lazy response and then disputes." Samaan v. Sauer, No. CIV S-07-0960 JAM GGH, 2008 U.S. Dist. LEXIS 119994, at *12-13 (E.D. Cal. July 16, 2008) (Hollows, J.). As outlined below, the phrasing of the single request is so overbroad and ambiguous as to fall into this same category.

5.     Consistent with that principle, Marriott expressly reserve its right to rely upon additional facts or evidence throughout this proceeding including in dispositive motions or at trial, and nothing contained herein shall be construed as a waiver of Marriott right to present such additional facts or evidence in support of their arguments in this action.

<u>MARRIOTT'S DEFINITIONS USED IN ITS RESPONSES<br>AND OBJECTIONS TO SECOND  REQUEST TO PRODUCE</u>

1.     As used herein, the term "Marriott" means Defendant / Counter-Plaintiff Marriott Hotel Services, Inc., and each of its subsidiaries, affiliates, parents, predecessors, successors, divisions, departments, or operating units, including without limitation any representative of the Gaylord Hotels brand, and includes without limitation their current or former officers, directors, shareholders, employees, principals, agents, trustees, representatives, consultants, managers, attorneys, advisors, accountants, bookkeepers, and all Persons or entities acting or purporting to act on their behalf, including without limitation Mike Wainwright, Mike Stengel, John Adams and David Marriott.

2.     As used herein, the term "Ramsey" means Plaintiff/Counter-Defendant, The Lampo Group, LLC d/b/a Ramsey Solutions, and each of its subsidiaries, affiliates, parents, predecessors, successors, divisions, departments, or operating units, and includes without limitation their current or former officers, directors, shareholders, employees, principals,

agents, trustees, representatives, consultants, managers, attorneys, advisors, accountants, bookkeepers, and all Persons or entities acting or purporting to act on their behalf.

3. As used herein, the term "Litigation" means this litigation, captioned The Lampo Group d/b/a Ramsey Solutions v. Marriott Hotel Services, Civil Action No.3:20-cv-00641, in the United States District Court for the Middle District of Tennessee.

4. As used herein, "Gaylord Palms" means Gaylord Palms Resort & Convention Center, located in Kissimmee Florida, and managed by Marriott.

5. As used herein, "Gaylord Texan" means Gaylord Texan Resort & Convention Center, located in Grapevine, Texas, and managed by Marriott.

6. As used herein, "Gaylord Rockies" means Gaylord Palms Resort & Convention Center, located in Aurora, Colorado, and managed by Marriott.

7. As used herein, the term "Palms Agreement" refers to that written "Agreement" attached to the Marriott's Counterclaim as Exhibit "A," pursuant to which Ramsey Solutions was scheduled to hold a contracted event at the Gaylord Palms from May 15-21, 2020.

8. As used herein, the term "Palms Amendment" refers to that written "Amendment" to the Palms Agreement, attached to the Marriott's Counterclaim as Exhibit "B," pursuant to which the dates for Palms Event were changed from May 15-21, 2020 to July 10-16, 2020.

9. As used herein, the term "Palms Contract" refers collectively to the Palms Agreement and Palms Amendment.

10. As used herein, the term "EntreSummit" refers to Ramsey annual event EntreSummit" as set forth in Paragraph 6 of the FAC.

11.     As used herein, the term "Palms Event" refers to the contracted EntreSummit event Ramsey Solutions was scheduled to hold at the Gaylord Palms over the dates July 10-16, 2020, as set forth as Exhibit "B" to Marriott's Counterclaim.

12.     As used herein, the term "EntreSummit 2020" refers to the EntreSummit event that was held at Ramsey Solutions' headquarters in Franklin, Tennessee, in July 2020.

13.     As used herein, the term "Texan Contract" refers to that written "Agreement" attached to the Marriott's Counterclaim as Exhibit "F," pursuant to which Ramsey Solutions was scheduled to hold its EntreSummit at the Gaylord Texan over the dates May 14-20, 2021.

14.     As used herein, the term "Texan Event" refers to the EntreSummit event Ramsey Solutions was scheduled to hold at the Gaylord Texan over the dates May 14-20, 2021, as set forth as Exhibit "F" to Marriott's Counterclaim.

15.     As used herein, the term "Rockies Contract" refers to that written "Group Sales Agreement" attached to Marriott's Counterclaim as Exhibit "I," pursuant to which Ramsey Solutions was scheduled to hold its EntreSummit at the Gaylord Rockies over the dates May 20-26, 2022.

16.     As used herein, the term "Gaylord Agreements" means, collectively, the Palms Contract, Texan Contract and Rockies Contract.

17.     As used herein, the term "Rockies Event" refers to the contracted EntreSummit event Ramsey Solutions was scheduled to hold at the Gaylord Rockies over the dates May 20 - 26, 2022, as set forth as Exhibit "I" to Marriott's Counterclaim.

18.     As used herein, the "FAC" refers to the "First Amended Complaint for Damages" filed by Ramsey Solutions on or about July 30, 2020.

8

19.     As set forth herein, "Marriott's Counterclaim" refers to Defendant's Answer and Counterclaim to Plaintiff's First Amended Complaint, filed on or about August 28, 2020.

20.     As used herein, "Answer to Counterclaim" refers to the Answer and Affirmative Defenses to Counterclaim filed by Ramsey Solutions on or about September 18, 2020.

<u>RESPONSES AND OBJECTIONS TO SECOND REQUEST TO PRODUCE</u>

Request No. 1:   All Documents evidencing the occupancy of the Gaylord Palms between July 8, 2020 and July 14, 2020 including documents evidencing the number of rooms in the hotel by room type, the number of rooms in the hotel sold during that period, the type of room and the room rate for each room and the total room nights used during that period.

Response:

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.  Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege.

Marriott objects to this request on the grounds that the term "room type" is too ambiguous and too vague to adequately apprise Marriott of the information sought or to permit Marriott to

9

furnish such information with reasonable effort. It is unclear whether the request is referring to guest rooms, or another type of "room."

Marriott objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. The Palms Event was scheduled to occur July 10-15, 2020. July 8 and 9, 2020, has no conceivable relevance to the subject matter of the litigation and is not reasonably calculated to lead to the discovery of admissible evidence

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. See Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

Request Number 1 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the request is not relevant to the subject matter of the lawsuit and is not reasonably calculated to

10

lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this request.

Request No. 2: All Documents evidencing the cost of any food and beverage You purchased exclusively for the EntreSummit2020 as of July 2, 2020.

Response:

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. It may be extremely burdensome to determine, if it is even possible, what food items were purchased "exclusively" for the event.

Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In

11

responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. See Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

Request Number 2 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the request is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this request.

Request No. 3:  All Documents evidencing the cost of any food and beverage You purchased for the EntreSummit2020 event that was not used by the Gaylord Palms.

Response:

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the

12

importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege.

Marriott objects to this request on the grounds that the term "not used" is too ambiguous and too vague to adequately apprise Marriott of the information sought or to permit Marriott to furnish such information with reasonable effort.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. See Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

Request Number 3 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the request is not relevant to the subject matter of the lawsuit and is not reasonably calculated to

13

lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this request.

Request No. 4: All Documents evidencing any employees or independent contractors that You hired exclusively for the EntreSummit2020 Event including documents showing the amounts that You paid such employees or independent contractors, and any refunds and/or credits extended.

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

Marriott objects to this request on the grounds that the term "independent contractors" is too ambiguous and too vague to adequately apprise Marriott of the information sought or to permit Marriott to furnish such information with reasonable effort.

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses

14

in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. See Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

Request Number 4 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the request is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this request.

Request No. 5: All Documents evidencing all out of pockets costs that You incurred for the EntreSummit2020 event that You were not able to re-sell, obtain a refund or otherwise utilize at the Gaylord Palms and/or with other guests.

Response:

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

15

Marriott objects to this request on the grounds that the term "out of pocket costs" is too ambiguous and too vague to adequately apprise Marriott of the information sought or to permit Marriott to furnish such information with reasonable effort.

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. See Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

16

Request Number 5 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the request is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this request.

Request No. 6: All Documents evidencing any actual damages that You suffered by Ramsey Solutions termination of the EntreSummit2020 event at the Gaylord Palms.

Response:

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its

17

Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. See Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

Request Number 6 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the request is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this request.

Request No. 7: All Documents evidencing any actual damages that You suffered by Ramsey Solutions termination of the EntreSummit2020 event at the Gaylord Texan.

Response:

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in

controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege.

Marriott further objects to this request on the grounds that "EntreSummit2020" was not held at the Gaylord Texan in 2021. For purposes of this response, Marriott assumes Ramsey made a drafting error and intended "EntreSummit2021."

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. See Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

Request Number 7 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses,

the request is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this request.

Request No. 8: All Documents evidencing any actual damages that You suffered by Ramsey Solutions termination of the EntreSummit2020 event at the Gaylord Rockies.

Response: Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege.

Marriott further objects to this request on the grounds that "EntreSummit2020" was not held at the Gaylord Rockies in 2022. For purposes of this response, Marriott assumes Ramsey made a drafting error and intended "EntreSummit2022."

Marriott further objects to this request on the grounds that the dates of EntreSummit2022 have not passed. Accordingly, it is premature for Marriott to determine actual damages until the event dates pass.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. See Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

Request Number 8 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the request is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this request.

Request No. 9: All Documents evidencing Your response to Interrogatory Number 18.

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

21

Marriott fully incorporates its responses and objections to Interrogatory Number 18 as if fully set forth herein.

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. See Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

22

Request Number 9 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the request is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this request.

Request No. 10: All Documents evidencing Your response to Interrogatory Number 19.

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

Marriott fully incorporates its responses and objections to Interrogatory Number 19 as if fully set forth herein.

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its

Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. See Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

Request Number 10 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the request is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this request.

Request No. 11: All Documents evidencing Your response to Interrogatory Number 20.

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

Marriott fully incorporates its responses and objections to Interrogatory Number 20 as if fully set forth herein.

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in

24

controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. See Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

Request Number 11 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the request is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this request.

Request No. 12: All Documents evidencing Your response to Interrogatory Number 21.

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

Marriott fully incorporates its responses and objections to Interrogatory Number 21 as if fully set forth herein.

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. See Initial Case Management Order Section "G." This deadline has not been modified by

26

subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

Request Number 12 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the request is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this request.

Request No. 13: All Documents evidencing Your response to Interrogatory Number 22.

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

Marriott fully incorporates its responses and objections to Interrogatory Number 22 as if fully set forth herein.

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. See Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

Request Number 13 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the request is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this request.

Request No. 14: All Documents evidencing Your response to Interrogatory Number 23.

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

28

Marriott fully incorporates its responses and objections to Interrogatory Number 23 as if fully set forth herein.

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. See Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

29

Request Number 14 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the request is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this request.

Request No. 15: All Documents evidencing Your response to Interrogatory Number 24.

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

Marriott fully incorporates its responses and objections to Interrogatory Number 24 as if fully set forth herein.

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its

30

Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. See Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

Request Number 15 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the request is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this request.

Request No. 16: All Documents evidencing Your response to Interrogatory Number 25.

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

Marriott fully incorporates its responses and objections to Interrogatory Number 25 as if fully set forth herein.

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in

31

controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. See Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

Request Number 16 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the request is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this request.

32

Request No. 17:  All Documents evidencing all out of pockets costs that You incurred for the EntreSummit2021 event that You were not able to re-sell, obtain a refund or otherwise utilize at the Gaylord Texans and/or with other guests.

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

Marriott objects to this request on the grounds that the term "out of pocket costs" is too ambiguous and too vague to adequately apprise Marriott of the information sought or to permit Marriott to furnish such information with reasonable effort.

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence.  In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable.  Fed. R. Civ. P. 8(c)(1) ("In

responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. See Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

Request Number 17 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the request is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this request.

Request No. 18: All Documents evidencing Your average gross profit margin, incremental profit margin and net profit margin per room night, and type, for all rooms at the Gaylord Palms in July of 2020.

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

Marriott objects to this request on the grounds that the terms "average gross profit margin," "incremental profit margin" and "net profit margin" are too ambiguous and too vague to adequately apprise Marriott of the information sought or to permit Marriott to furnish such information with reasonable effort.

34

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. See Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

Request Number 18 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the request is not relevant to the subject matter of the lawsuit and is not reasonably calculated to

lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this request.

Request No. 19: All Documents evidencing Your average gross profit margin, incremental profit margin and net profit margin per room night by room type, and type, for all rooms at the Gaylord Texans in May of 2021.

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

Marriott objects to this request on the grounds that the terms "average gross profit margin," "incremental profit margin" and "net profit margin" are too ambiguous and too vague to adequately apprise Marriott of the information sought or to permit Marriott to furnish such information with reasonable effort.

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses

36

in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. See Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

Request Number 19 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the request is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this request.

Request No. 20: All Documents evidencing any vendors that you retained for the EntreSummit 2020 who You paid any non-reimbursed amounts.

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the

importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. See Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

Request Number 20 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the request is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this request.

Request No. 21: All Documents evidencing any vendors that you retained for the EntreSummit 2021 who You paid any non-reimbursed amounts.

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. See Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage

39

clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

Request Number 21 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the request is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this request.

Request No. 22: All Documents evidencing any vendors that you retained for the EntreSummit 2022 who You paid any non-reimbursed amounts.

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege.

Marriott further objects to this request on the grounds that the dates of EntreSummit2022 have not passed. Accordingly, it is premature for Marriott to determine actual damages until the event dates pass.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. See Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

Request Number 22 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the request is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this request.

Request No. 23: All Documents evidencing efforts that You made to sell the rooms earmarked for the EntreSummit 2020 event.

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

41

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege.

Marriott objects to this request on the grounds that the term "earmarked" is too ambiguous and too vague to adequately apprise Marriott of the information sought or to permit Marriott to furnish such information with reasonable effort.

Marriott further objects to this request on the grounds that it is virtually impossible to identify all of the attempts it took to resell contracted rooms set aside for Ramsey's use. A full and complete response would require Marriott to identify and produce virtually every written and oral communication, and every act, regardless of by whom it was performed, relating to every effort to sell every room in the Gaylord Palms' available room inventory.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. See Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

Request Number 23 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the request is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this request.

Request No. 24: All Documents evidencing efforts that You made to sell the rooms earmarked for the EntreSummit 2021 event.

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege.

43

Marriott objects to this request on the grounds that the term "earmarked" is too ambiguous and too vague to adequately apprise Marriott of the information sought or to permit Marriott to furnish such information with reasonable effort.

Marriott further objects to this request on the grounds that it is virtually impossible to identify all of the attempts it took to resell contracted rooms set aside for Ramsey's use. A full and complete response would require Marriott to identify and produce virtually every written and oral communication, and every act, regardless of by whom it was performed, relating to every effort to sell every room in the Gaylord Texan's available room inventory.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. See Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

Request Number 24 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses,

the request is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this request.

Request No. 25: All Documents evidencing efforts that You made to sell the rooms earmarked for the EntreSummit 2022 event.

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege.

Marriott objects to this request on the grounds that the term "earmarked" is too ambiguous and too vague to adequately apprise Marriott of the information sought or to permit Marriott to furnish such information with reasonable effort.

Marriott further objects to this request on the grounds that it is virtually impossible to identify all of the attempts it took to resell contracted rooms set aside for Ramsey's use. A full and complete response would require Marriott to identify and produce virtually every written

and oral communication, and every act, regardless of by whom it was performed, relating to every effort to sell every room in the Gaylord Texan's available room inventory.

Marriott further objects to this request on the grounds that the dates of EntreSummit 2022 have not passed. Accordingly, it is premature for Marriott to determine actual damages until the event dates pass.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. See Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

Request Number 25 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the request is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this request.

46

Request No. 26: All Documents evidencing any funds or deposits paid that You paid to any third-party vendor relating to the Palms Event.

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege.

Marriott objects to this request on the grounds that the term "third-party vendor" is too ambiguous and too vague to adequately apprise Marriott of the information sought or to permit Marriott to furnish such information with reasonable effort.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

47

The deadline to file a motion to amend the pleadings passed on December 15, 2020. See Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

Request Number 26 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the request is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this request.

Request No. 27: All Documents evidencing whether any third-party services that You contracted for relating to the Palms Event were otherwise used and, if so, any compensation or reimbursement You received.

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the

48

extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege.

Marriott objects to this request on the grounds that the words "any compensation or reimbursement You received" are too ambiguous and too vague to adequately apprise Marriott of the information sought or to permit Marriott to furnish such information with reasonable effort.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. See Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

Request Number 27 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the request is not relevant to the subject matter of the lawsuit and is not reasonably calculated to

49

lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this request.

Request No. 28: All Documents evidencing the number of rooms booked at Your facility on July 3, 2020 excluding any rooms booked for the EntreSummit 2020 event.

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege.

Marriott objects to this request on the grounds that the term "Your facility" is too ambiguous and too vague to adequately apprise Marriott of the information sought or to permit Marriott to furnish such information with reasonable effort.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. The number of rooms booked at the Gaylord Palms on July 3 2020, excluding any rooms booked for the EntreSummit 2020 event, has no conceivable relevance to the subject

matter of the litigation and is not reasonably calculated to lead to the discovery of admissible evidence.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. See Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

Request Number 28 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the request is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this request.

Request No. 29: All Documents evidencing the number of rooms booked at Your facility on July 3, 2020 for the EntreSummit 2020 event.

Marriott objects to this request in its entirety.

51

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege.

Marriott objects to this request on the grounds that the term "Your facility" is too ambiguous and too vague to adequately apprise Marriott of the information sought or to permit Marriott to furnish such information with reasonable effort.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. See Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage

52

clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

Request Number 29 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the request is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this request.

Request No. 30: All documents evidencing Your average gross profit margin, incremental profit margin and net profit margin monthly, yearly, quarterly for the Gaylord Palms in 2019, 2020 and 2021.

Marriott objects to this request in its entirety.

Marriott fully incorporates and reasserts its General Objections and Objections To Definitions And Instructions from above.

Marriott objects to this request on the grounds that the terms "average gross profit margin," "incremental profit margin" and "net profit margin" are too ambiguous and too vague to adequately apprise Marriott of the information sought or to permit Marriott to furnish such information with reasonable effort.

Marriott further objects on the grounds that the request is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Marriott further objects to this request to the

53

extent that it calls for the disclosure of information and/or communications subject to the attorney-client and /or work product privilege.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. Financial information for the Gaylord Palms, for periods after the Palms Event was to have taken place, has no conceivable relevance to the subject matter of the litigation and is not reasonably calculated to lead to the discovery of admissible evidence.

Marriott further objects to this request on the grounds that it is not relevant to the subject matter of the lawsuit and is not reasonably calculated to lead to the discovery of admissible evidence. In order to preserve any challenge to the enforceability of liquidated damage clauses in the Gaylord Agreements, Ramsey was required to assert, as an affirmative defense in its Answer to Counterclaim, that liquidated damages are unenforceable. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading a party must affirmatively state any avoidance or affirmative defense"). Ramsey failed to do so.

The deadline to file a motion to amend the pleadings passed on December 15, 2020. See Initial Case Management Order Section "G." This deadline has not been modified by subsequent court order. Because Ramsey failed to raise an affirmative defense that the liquidated damage clauses contained in the Gaylord Agreements are unenforceable, the affirmative defense has been waived and the amount of actual damages suffered by Marriott is irrelevant.

Request Number 30 is directed at, and only at, actual damages. Because Marriott is not required to offer any evidence of actual loss in order to enforce the liquidated damage clauses, the request is not relevant to the subject matter of the lawsuit and is not reasonably calculated to

lead to the discovery of admissible evidence. For the foregoing reasons, Marriott will not respond to the substance of this request.

DATED THIS 10th day of August, 2021.

RUDNER LAW OFFICES

/s/ John C. Josefsberg
Steven M. Rudner, admitted pro hac vice
John C. Josefsberg, admitted pro hac vice
12740 Hillcrest Road, Suite 240
Dallas, TX 75230
Telephone: (214) 373-1900
Facsimile: (214) 360-7845
Rudner@HotelLawyers.com
josefsberg@HotelLawyers.com

and

Stephen J. Zralek, No. 18971
BONE McALLESTER NORTON PLLC
511 Union St., Ste. 1600
Nashville, TN 37219
Telephone: (615) 780-7975
Facsimile: (615) 780-7976
szralek@bonelaw.com

Counsel for Marriott Hotel Services, Inc.
and Marriott International, Inc.

## CERTIFICATE OF SERVICE

I certify that on, this 10th day of August 2021, I served this document via email (by agreement of counsel) on:

Ashley E. Cowgill, Esq.
ashley.cowgill@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
500 Capitol Mall, Suite 1800
Sacramento, CA 95814

Jennifer Altman, Esq.
jennifer.altman@pillsburylaw.com
Markenzy Lapointe, Esq.
markenzy.lapointe@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
600 Brickell Avenue, Suite 3100
Miami, FL 33131

/s/ John C. Josefsberg

# COMPOSITE

# Exhibit "C"



John C. Josefsberg
Partner

June 28, 2021

*Via email to jennifer.altman@pillsburylaw.com*
Ms. Jennifer Altman, Esq.
Pillsbury Winthrop Shaw Pittman LLP
600 Brickell Avenue, Suite 3100
Miami, FL 33131

    Re:    The Lampo Group d/b/a Ramsey Solutions v. Marriott Hotel Services, Inc.

Dear Jennifer:

    We are in receipt of your letter dated June 22, 2021, regarding alleged deficiencies in Marriott's responses to Ramsey's First Request for Production ("Requests"). We will address those alleged deficiencies in turn.

    1.    Document Retention Policy

    With regard to Marriott's document retention policy, Marriott is unaware of any specific documents that were automatically deleted. Marriott does not keep a record of the documents that are automatically purged pursuant to its document retention policy.

    Marriott did not begin the process of collecting responsive documents until after Marriott was served with Ramsey's complaint. No documents from 2020 would have been automatically purged pursuant to Marriott's document retention policy, which has been configured to automatically purge all files older than one year. Marriott has inquired of the individuals identified in its Rule 26 Disclosures to determine whether they had retained relevant information notwithstanding the document retention policy, whether in hard copy or electronic format.

    2.    ESI Protocol

    Your letter erroneously claims that Marriott never agreed to an ESI protocol. The last email on this topic was my April 22, 2021 email to you, with the draft ESI Protocol agreement, reminding you that "the ball is in your court on this one." The ESI protocol agreement reflected the local rules regarding search terms and document custodians. Ramsey's discovery included lengthy instructions concerning how Ramsey wanted ESI to be produced. Marriott did not object to the instructions, and produced the documents in the requested format. The same protocol was followed by Ramsey. In short, ESI protocol is a non-issue.

With regard to Request 7, since the relevant time frame extends beyond Marriott's 12-month document retention period (by several years), it is possible that otherwise responsive documents may have been automatically purged.   As noted above, Marriott does not keep a record of such documents.   To the extent that non-privileged responsive documents were maintained by document custodians, they have been requested from the custodians and are part of the documents produced by Marriott.

With regard to language in the discovery responses that Marriott was not producing "those that necessitate an ESI or Confidentiality Agreement/Protective Order," please be reminded that this is the exact language that Ramsey first used in responding to Marriott's first requests for production of documents.   Marriott has, in fact, produced documents in the ESI format requested by Ramsey.   No documents have been withheld on the basis that an ESI agreement has not been reached.

      3.    <u>Document Request Number 1</u>

Request Number 1 requires Marriott to "Produce all Documents or tangible things described in Marriott's initial disclosures under Fed. R. Civ. P. 26(a)(1)(A).   Notwithstanding Marriott's objections, Marriott has produced all responsive, non-privilege documents.

Regarding Marriott's objection, please be reminded that it is the exact objection Ramsey interposed in response to an identical request in Marriott's first request for production of documents.   Moreover, unlike Ramsey, Marriott has provided its privilege log.   If any documents were withheld on the grounds of privilege, Marriott has included such documents on its privilege log.

      4.    <u>Document Subject to the Collateral Source Rule (Requests 2-6)</u>

Requests 2 - 6 seek information that is not discoverable because the subject payments (if any) are considered collateral sources.   Although Ramsey claims the rule is limited to tort cases or where there is a right of subrogation or reimbursement, Ramsey has offered no legal support for this proposition.   Marriott has cited Florida precedent demonstrating that the rule applies equally to causes of action in contract, as well as actions in tort.   *See* cases cited in response to document request number 2.   If Ramsey has legal authority demonstrating that the cited case are not controlling precedent, please provide such legal authority.

      5.    <u>Damage Documents (Request 8)</u>

Request Number 8 requires Marriott to "Produce all documents supporting any claim for damages claimed in connection with Your Counterclaim."   Marriott's claim is for liquidated

**RUDNER LAW OFFICES**

damages.   The enforceability of a liquidated damage clause is an affirmative defense, which must be asserted in the answer or the defense is waived.

Ramsey did not assert an affirmative defense challenging liquidated damages sought by Marriott in its counterclaim.   Having failed to do so, Marriott is only required to establish that the contract contains a liquidated damage clause and that liquidated damages have been properly computed. Marriott has produced all such documents.

      6.   <u>Requests 9 and 10</u>

Request Number 9 is highly objectionable for the reasons stated in the response.   In any event, Marriott has responded by indicating that there are no circumstances existing in July of 2020 that would "impair or damage [Ramsey Solutions] brand or good will by hosting an event." Because there are no such circumstances, either:   (1) no documents that evidence such circumstances exist; or (2) all documents in the case demonstrate that no such circumstances exist.

Request Number 10 falls into the same category.   Marriott has responded by asserting that "[B]ecause nothing happened that made it "illegal or impossible" to provide or use the Hotel facilities, there are no documents that 'fall within the Force Majeure provision that provides for termination in the event that circumstances are beyond [Ramsey Solutions] reasonable control.'" Because there are no such circumstances, either:   (1) no documents that evidence such circumstances exist; or (2) all documents in the case demonstrate that no such circumstances exist.

Marriott has properly responded to Requests 9 and 10.

      7.   <u>Requests 11, 12, 13, 16, 17, 18, 19, 21, 22 and 23</u>

As indicated in Marriott's objections, these requests are overbroad and unduly burdensome, call for legal conclusions, calls for the production of documents subject to the attorney-client privilege, and contain terms that are vague, ambiguous and undefined.   I propose that we attempt to narrow the requests, clear up ambiguities, and otherwise address objections during our meet and confer.

With regard to Request 13, Marriott erroneously objected to the request in its entirety. Marriott believes it has produced all responsive documents within its possession and control. We will supplement our response with regard to Request 13.

**RUDNER LAW OFFICES**

With regard to Request 22, we believe the request is objectionable under firmly established legal precedent. Please confirm that you intended to include Request 22 with the other requests.

8. <u>Requests 14 and 15</u>

We believe all responsive, non-objectionable documents have been produced. We are reviewing the list of document custodians and comparing with the production set. We will supplement if we discover additional documents.

9. <u>Request 20</u>

We believe all communications with third parties, exclusive of Marriott's attorneys, have been produced. We are reviewing the file to confirm. We will supplement if we discover additional documents.

Sincerely,

John C. Josefsberg



RUDNER LAW OFFICES

John C. Josefsberg
Partner

October 12, 2021

*Via First Class U.S. Mail and
email to jennifer.altman@pillsburylaw.com*
Ms. Jennifer Altman, Esq.
Pillsbury Winthrop Shaw Pittman LLP
600 Brickell Avenue, Suite 3100
Miami, FL 33131

Re:     The Lampo Group d/b/a Ramsey Solutions v. Marriott Hotel Services, Inc.

Dear Jennifer:

This letter will serve as Marriott's attempt to meet and confer regarding its objections to the "Schedule of Topics" ("Topic" or "Topics") set forth in Ramsey's Notice of Rule 30(b)(6) to Marriott. We set forth below the following Topics followed by Marriott's responses and objections.

## TOPICS

1. Marriott's experience as the venue for live events or groups bookings for Ramsey Solutions prior to the scheduled Palms Event including its understanding of the nature of the events that Ramsey Solutions holds, Ramsey Solutions clientele, the requirements in terms of how the events are hosted, the purpose of the events and the amenities required.

Response: Marriott objects to this Topic on the basis that it is not relevant to the subject matter of the litigation and not reasonably calculated to lead to the discovery of admissible evidence.

Ramsey's claims are based on terminating the Gaylord Agreements under the following contract clauses: (1) Force majeure / Illegality; (2) "For Cause Termination Provision"; (3) "Performance Clause"; and (4) Additional Impossibility. In addition, Ramsey's Amended Complaint includes a count for breach of contract based on Marriott's alleged failure to return approximately $1.2 million in deposits Ramsey paid to Marriott under the Palms Agreement.

Marriott's counterclaim contains a single count to recover liquidated damages arising out of Ramsey's termination of the Gaylord Agreements.

In its answer and affirmative defenses, Ramsey has asserted the following affirmative defenses: (1) prior material breach; (2) anticipatory breach; (3) failure to fulfil conditions precedent; (4) Ramsey acted within the terms of the Gaylord Agreements; (5) unilateral alterations of the Palms Agreement; (6) Marriott's modifications "voided" the Palms Agreement;

RUDNER LAW OFFICES

Ms. Jennifer Altman
October 12, 2021

Page 2

(7) Marriott materially altered the Palms Agreement and thus anticipatorily breached the agreement; (8) Marriott materially changed the terms of the Palms Agreement and thus rendered the agreement invalid; (9) Marriott cannot enforce the Gaylord agreements as a result of implied waiver and estoppel; (10); sudden emergency doctrine; (11) force majeure and impossibility of performance; (12); Ramsey's performance was waived due to Marriott's material changes to the Palms Agreement; (13) illegality; (14) Ramsey's right to terminate the Gaylord Agreements under the For Cause Termination Provision of the Gaylord Agreements; (15) Unclean hands; (16) failure of consideration; and (17) failure to state a claim.

Topic One is objectionable in its entirety because it is completely irrelevant to any of the (above described) claims and defenses asserted by the parties and is not reasonably calculated to the discovery of admissible evidence.

Marriott further objects because the phrase "Marriott's experience as the venue for live events" is vague, ambiguous and undefined.

Marriott further objects because the phrase "groups bookings for Ramsey Solutions prior to the scheduled Palms Event" is vague, ambiguous and undefined. The request does not define what it a "group booking" is or identifying which, if any, "group bookings" that Ramsey Solutions is referring to.

Marriott further objects that the term "understanding of the nature of . . . Ramsey Solutions clientele" is vague, ambiguous and undefined.

Marriott further objects that the phrase "understanding of the requirements in terms of how the events are hosted" is vague, ambiguous and undefined."

Marriott further objects that the phrase "understanding of the . . . purpose of the events . . is vague, ambiguous and undefined."

Marriott further objects that the phrase "understanding of the . . . purpose of the events . . is vague, ambiguous and undefined."

Marriott further objects on the grounds that term "the amenities required" is vague, ambiguous and undefined.

Marriott further objects to the extent that the Topic seeks information protected by the attorney-client and/ or work-product privilege.



RUDNER LAW OFFICES

Ms. Jennifer Altman
October 12, 2021

Without waiving the foregoing objections, Marriott will produce a corporate representative to provide non-privileged testimony regarding this Topic.

2.    The substance of the communication that occurred during the telephone conference between Michael Stengel, Michael Wainwright and others on behalf of the Marriott/Gaylord Palms, on the one hand, and Dave Ramsey and others from Ramsey Solutions, on the other, during a July 2, 2020 telephone conference regarding the Palms Event.

Response:  Marriott will produce a corporate representative to testify about non-privileged communications regarding this Topic.

3.    The number of groups that Gaylord Palms had booked for July of 2020 other than the Palms Event as of January 1, 2020.

Response:  Marriott objects to this Topic on the basis that it is not relevant to the subject matter of the litigation and not reasonably calculated to lead to the discovery of admissible evidence.

Ramsey's claims are based on terminating the Gaylord Agreements under the following contract clauses: (1) Force majeure / Illegality; (2) "For Cause Termination Provision"; (3) "Performance Clause"; and (4) Additional Impossibility. In addition, Ramsey's Amended Complaint includes a count for breach of contract based on Marriott's alleged failure to return approximately $1.2 million in deposits Ramsey paid to Marriott under the Palms Agreement.

Marriott's counterclaim contains a single count to recover liquidated damages arising out of Ramsey's termination of the Gaylord Agreements.

In its answer and affirmative defenses, Ramsey has asserted the following affirmative defenses: (1) prior material breach; (2) anticipatory breach; (3) failure to fulfil conditions precedent; (4) Ramsey acted within the terms of the Gaylord Agreements; (5) unilateral alterations of the Palms Agreement; (6) Marriott's modifications "voided" the Palms Agreement; (7) Marriott materially altered the Palms Agreement and thus anticipatorily breached the agreement; (8) Marriott materially changed the terms of the Palms Agreement and thus rendered the agreement invalid; (9) Marriott cannot enforce the Gaylord agreements as a result of implied waiver and estoppel; (10); sudden emergency doctrine; (11) force majeure and impossibility of performance; (12); Ramsey's performance was waived due to Marriott's material changes to the Palms Agreement; (13) illegality; (14) Ramsey's right to terminate the Gaylord Agreements under the For Cause Termination Provision of the Gaylord Agreements; (15) Unclean hands; (16) failure of consideration; and (17) failure to state a claim.

RUDNER LAW OFFICES

Ms. Jennifer Altman
October 12, 2021

Page 4

Marriott further objects to the extent that the Topic seeks information protected by the attorney-client and/ or work-product privilege.

Without waiving any such objections, Marriott will produce a corporate representative to provide non-privileged testimony regarding this topic.

4.  The number of groups that that were booked as of January 1, 2020 that held their events in July of 2020 at the Gaylord Palms.

Response: Marriott objects to this Topic on the basis that it is not relevant to the subject matter of the litigation and not reasonably calculated to lead to the discovery of admissible evidence.

Ramsey's claims are based on terminating the Gaylord Agreements under the following contract clauses: (1) Force majeure / Illegality; (2) "For Cause Termination Provision"; (3) "Performance Clause"; and (4) Additional Impossibility. In addition, Ramsey's Amended Complaint includes a count for breach of contract based on Marriott's alleged failure to return approximately $1.2 million in deposits Ramsey paid to Marriott under the Palms Agreement.

Marriott's counterclaim contains a single count to recover liquidated damages arising out of Ramsey's termination of the Gaylord Agreements.

In its answer and affirmative defenses, Ramsey has asserted the following affirmative defenses: (1) prior material breach; (2) anticipatory breach; (3) failure to fulfil conditions precedent; (4) Ramsey acted within the terms of the Gaylord Agreements; (5) unilateral alterations of the Palms Agreement; (6) Marriott's modifications "voided" the Palms Agreement; (7) Marriott materially altered the Palms Agreement and thus anticipatorily breached the agreement; (8) Marriott materially changed the terms of the Palms Agreement and thus rendered the agreement invalid; (9) Marriott cannot enforce the Gaylord agreements as a result of implied waiver and estoppel; (10); sudden emergency doctrine; (11) force majeure and impossibility of performance; (12); Ramsey's performance was waived due to Marriott's material changes to the Palms Agreement; (13) illegality; (14) Ramsey's right to terminate the Gaylord Agreements under the For Cause Termination Provision of the Gaylord Agreements; (15) Unclean hands; (16) failure of consideration; and (17) failure to state a claim.

Without waiving any such objections, Marriott will produce a corporate representative to provide non-privileged testimony regarding this topic.

RUDNER LAW OFFICES

Ms. Jennifer Altman
October 12, 2021

Page 5

5.   The reason(s) that Gaylord Palms changed its policy from posting signage about mask wearing and handing out masks to guests to enforcing the policy by requiring guests to leave the premises if he/she/they were not wearing a mask.

   Response:  Marriott objects to this Topic on the basis that it is not relevant to the subject matter of the litigation and not reasonably calculated to lead to the discovery of admissible evidence.

   Ramsey's claims are based on terminating the Gaylord Agreements under the following contract clauses: (1) Force majeure / Illegality; (2) "For Cause Termination Provision"; (3) "Performance Clause"; and (4) Additional Impossibility. In addition, Ramsey's Amended Complaint includes a count for breach of contract based on Marriott's alleged failure to return approximately $1.2 million in deposits Ramsey paid to Marriott under the Palms Agreement.

   Marriott's counterclaim contains a single count to recover liquidated damages arising out of Ramsey's termination of the Gaylord Agreements.

   In its answer and affirmative defenses, Ramsey has asserted the following affirmative defenses: (1) prior material breach; (2) anticipatory breach; (3) failure to fulfil conditions precedent; (4) Ramsey acted within the terms of the Gaylord Agreements; (5) unilateral alterations of the Palms Agreement; (6) Marriott's modifications "voided" the Palms Agreement; (7) Marriott materially altered the Palms Agreement and thus anticipatorily breached the agreement; (8) Marriott materially changed the terms of the Palms Agreement and thus rendered the agreement invalid; (9) Marriott cannot enforce the Gaylord agreements as a result of implied waiver and estoppel; (10); sudden emergency doctrine; (11) force majeure and impossibility of performance; (12); Ramsey's performance was waived due to Marriott's material changes to the Palms Agreement; (13) illegality; (14) Ramsey's right to terminate the Gaylord Agreements under the For Cause Termination Provision of the Gaylord Agreements; (15) Unclean hands; (16) failure of consideration; and (17) failure to state a claim.

   Marriott's policy regarding enforcement of governmental mask mandates has nothing to do with any of the claims and defenses asserted by the parties.

   Marriott further objects to the extent that the Topic seeks information protected by the attorney-client and/ or work-product privilege.

   For the foregoing reasons, **Marriott will not produce a corporate representative to testify about this Topic.**

RUDNER $\mathcal{P}$ LAW OFFICES

Ms. Jennifer Altman
October 12, 2021

Page 6

6.    The individuals involved in the decision to change the policy communicated by Gaylord Palms to Ramsey Solutions that it would post signage about mask wearing and handing out masks to a policy that guests would be required to leave the premises if he/she/they were not wearing a mask.

Response:  Marriott objects to this Topic on the basis that it is not relevant to the subject matter of the litigation and not reasonably calculated to lead to the discovery of admissible evidence.

Ramsey's claims are based on terminating the Gaylord Agreements under the following contract clauses:  (1) Force majeure / Illegality; (2) "For Cause Termination Provision"; (3) "Performance Clause"; and (4) Additional Impossibility. In addition, Ramsey's Amended Complaint includes a count for breach of contract based on Marriott's alleged failure to return approximately $1.2 million in deposits Ramsey paid to Marriott under the Palms Agreement.

Marriott's counterclaim contains a single count to recover liquidated damages arising out of Ramsey's termination of the Gaylord Agreements.

In its answer and affirmative defenses, Ramsey has asserted the following affirmative defenses:  (1) prior material breach; (2) anticipatory breach; (3) failure to fulfil conditions precedent; (4) Ramsey acted within the terms of the Gaylord Agreements; (5) unilateral alterations of the Palms Agreement; (6) Marriott's modifications "voided" the Palms Agreement; (7) Marriott materially altered the Palms Agreement and thus anticipatorily breached the agreement; (8) Marriott materially changed the terms of the Palms Agreement and thus rendered the agreement invalid; (9) Marriott cannot enforce the Gaylord agreements as a result of implied waiver and estoppel; (10); sudden emergency doctrine; (11) force majeure and impossibility of performance; (12); Ramsey's performance was waived due to Marriott's material changes to the Palms Agreement; (13) illegality; (14) Ramsey's right to terminate the Gaylord Agreements under the For Cause Termination Provision of the Gaylord Agreements; (15) Unclean hands; (16) failure of consideration; and (17) failure to state a claim.

Marriott's policy regarding enforcement of governmental mask mandates has nothing to do with any of the claims and defenses asserted by the parties.

Marriott further objects to the extent that the Topic seeks information protected by the attorney-client and/ or work-product privilege.

For the foregoing reasons, **Marriott will not produce a corporate representative to testify about this Topic.**

RUDNER LAW OFFICES

Ms. Jennifer Altman
October 12, 2021

7.    Any provisions in the Palms Agreement that you believe allowed Gaylord Palms to require attendees of the proposed Palms Event to wear masks.

Response: Marriott objects to this Topic on the basis that it is not relevant to the subject matter of the litigation and not reasonably calculated to lead to the discovery of admissible evidence.

Ramsey's claims are based on terminating the Gaylord Agreements under the following contract clauses: (1) Force majeure / Illegality; (2) "For Cause Termination Provision"; (3) "Performance Clause"; and (4) Additional Impossibility. In addition, Ramsey's Amended Complaint includes a count for breach of contract based on Marriott's alleged failure to return approximately $1.2 million in deposits Ramsey paid to Marriott under the Palms Agreement.

Marriott's counterclaim contains a single count to recover liquidated damages arising out of Ramsey's termination of the Gaylord Agreements.

In its answer and affirmative defenses, Ramsey has asserted the following affirmative defenses: (1) prior material breach; (2) anticipatory breach; (3) failure to fulfil conditions precedent; (4) Ramsey acted within the terms of the Gaylord Agreements; (5) unilateral alterations of the Palms Agreement; (6) Marriott's modifications "voided" the Palms Agreement; (7) Marriott materially altered the Palms Agreement and thus anticipatorily breached the agreement; (8) Marriott materially changed the terms of the Palms Agreement and thus rendered the agreement invalid; (9) Marriott cannot enforce the Gaylord agreements as a result of implied waiver and estoppel; (10); sudden emergency doctrine; (11) force majeure and impossibility of performance; (12); Ramsey's performance was waived due to Marriott's material changes to the Palms Agreement; (13) illegality; (14) Ramsey's right to terminate the Gaylord Agreements under the For Cause Termination Provision of the Gaylord Agreements; (15) Unclean hands; (16) failure of consideration; and (17) failure to state a claim.

Marriott's policy regarding enforcement of governmental mask mandates has nothing to do with any of the claims and defenses asserted by the parties.

Marriott further objects to this premise of the Topic on the grounds that it is legally and factually incorrect. Marriott did not "require attendees of the proposed Palms Event to wear masks" as part of an express term regarding masks in the Palms Agreement." Instead, Marriott and Ramsey were required pursuant to the Contract to comply with all health and safety rules and regulations, including all State, County and Local COVID-19 Executive Orders, mandates, rules, regulations and the like.

RUDNER LAW OFFICES

Ms. Jennifer Altman
October 12, 2021

Page 8

Marriott further objects on the grounds that the information sought in the notice is, "in effect, seeking legal conclusions that should not form the basis for 30(b)(6) deposition Topics," which are better suited to contention interrogatories where the Topic requires the responding party to provide its legal analysis on complex issues.

Marriott further objects to the extent that the Topic seeks information protected by the attorney-client and/ or work-product privilege.

Without waiving such objections, Marriott will produce a corporate representative who will offer non-privileged testimony that the "Compliance with Laws" section of the contract obligated Ramsey to comply with all health and safety rules and regulations, including all State, County and Local COVID-19 Executive Orders, mandates, rules, regulations and the like, with regard to masks.

8.     Any provisions in the Palms Agreement that you believe allowed Gaylord Palms position to unilaterally limit the amenities at the facility.

Response:  Marriott objects to this Topic on the basis that it is not relevant to the subject matter of the litigation and not reasonably calculated to lead to the discovery of admissible evidence.

Ramsey's claims are based on terminating the Gaylord Agreements under the following contract clauses: (1) Force majeure / Illegality; (2) "For Cause Termination Provision"; (3) "Performance Clause"; and (4) Additional Impossibility. In addition, Ramsey's Amended Complaint includes a count for breach of contract based on Marriott's alleged failure to return approximately $1.2 million in deposits Ramsey paid to Marriott under the Palms Agreement.

Marriott's counterclaim contains a single count to recover liquidated damages arising out of Ramsey's termination of the Gaylord Agreements.

In its answer and affirmative defenses, Ramsey has asserted the following affirmative defenses: (1) prior material breach; (2) anticipatory breach; (3) failure to fulfil conditions precedent; (4) Ramsey acted within the terms of the Gaylord Agreements; (5) unilateral alterations of the Palms Agreement; (6) Marriott's modifications "voided" the Palms Agreement; (7) Marriott materially altered the Palms Agreement and thus anticipatorily breached the agreement; (8) Marriott materially changed the terms of the Palms Agreement and thus rendered the agreement invalid; (9) Marriott cannot enforce the Gaylord agreements as a result of implied waiver and estoppel; (10); sudden emergency doctrine; (11) force majeure and impossibility of performance; (12); Ramsey's performance was waived due to Marriott's material changes to the Palms Agreement; (13) illegality; (14) Ramsey's right to terminate the Gaylord Agreements

RUDNER LAW OFFICES

Ms. Jennifer Altman
October 12, 2021

Page 9

under the For Cause Termination Provision of the Gaylord Agreements; (15) Unclean hands; (16) failure of consideration; and (17) failure to state a claim.

Marriott further objects to this premise of the Topic on the grounds that it is legally and factually incorrect. Marriott did not "unilaterally limit the amenities at the facilities." Instead, both parties were required to comply with all health and safety rules and regulations, including all State, County and Local COVID-19 Executive Orders, mandates, rules, regulations and the like regarding the services and amenities identified in this topic.

Marriott further objects on the grounds that the information sought in the notice is, "in effect, seeking legal conclusions that should not form the basis for 30(b)(6) deposition Topics," which are better suited to contention interrogatories where the Topic requires the responding party to provide its legal analysis on complex issues.

Marriott further objects on the grounds that the phrase "limit the amenities at the facility" is vague, ambiguous and undefined.

Marriott further objects to the extent that the Topic seeks information protected by the attorney-client and/ or work-product privilege.

Without waiving such objections, Marriott will produce a corporate representative who will provide non-privileged testimony that the "Compliance with Laws" section of the contract obligated Ramsey and Marriott to comply with all health and safety rules and regulations, including all State, County and Local COVID-19 Executive Orders, mandates, rules, regulations and the like, regarding services and amenities identified in this topic.

9.      Any provisions in the Palms Agreement that you believe allowed Gaylord Palms to unilaterally change the guest experience of attendees of the proposed Palms Event by limiting access to amenities including, without limitation, limiting capacity at on-site restaurants, pool facilities and other guest services, removing the agreed upon buffet food service that was part of the Palms Agreement, cancelling valet service and in-room food delivery service and other such restrictions.

Response: Marriott objects to this Topic on the basis that it is not relevant to the subject matter of the litigation and not reasonably calculated to lead to the discovery of admissible evidence.

Ramsey's claims are based on terminating the Gaylord Agreements under the following contract clauses: (1) Force majeure / Illegality; (2) "For Cause Termination Provision"; (3) "Performance Clause"; and (4) Additional Impossibility. In addition, Ramsey's Amended



RUDNER LAW OFFICES

Ms. Jennifer Altman
October 12, 2021

Page 10

Complaint includes a count for breach of contract based on Marriott's alleged failure to return approximately $1.2 million in deposits Ramsey paid to Marriott under the Palms Agreement.

Marriott's counterclaim contains a single count to recover liquidated damages arising out of Ramsey's termination of the Gaylord Agreements.

In its answer and affirmative defenses, Ramsey has asserted the following affirmative defenses: (1) prior material breach; (2) anticipatory breach; (3) failure to fulfil conditions precedent; (4) Ramsey acted within the terms of the Gaylord Agreements; (5) unilateral alterations of the Palms Agreement; (6) Marriott's modifications "voided" the Palms Agreement; (7) Marriott materially altered the Palms Agreement and thus anticipatorily breached the agreement; (8) Marriott materially changed the terms of the Palms Agreement and thus rendered the agreement invalid; (9) Marriott cannot enforce the Gaylord agreements as a result of implied waiver and estoppel; (10); sudden emergency doctrine; (11) force majeure and impossibility of performance; (12); Ramsey's performance was waived due to Marriott's material changes to the Palms Agreement; (13) illegality; (14) Ramsey's right to terminate the Gaylord Agreements under the For Cause Termination Provision of the Gaylord Agreements; (15) Unclean hands; (16) failure of consideration; and (17) failure to state a claim.

Marriott further objects on the grounds that the Topic is argumentative and mischaracterizes the impact of State, County and Local COVID-19 Executive Orders, mandates, rules, regulations and the like on what Ramsey refers to as "Amenities," such as "limiting capacity at on-site restaurants, pool facilities and other guest services, removing the agreed upon buffet food service that was part of the Palms Agreement, cancelling valet service and in-room food delivery service and other such restrictions."

Marriott further objects on the grounds that the information sought in the notice is, "in effect, seeking legal conclusions that should not form the basis for 30(b)(6) deposition Topics," which are better suited to contention interrogatories where the Topic requires the responding party to provide its legal analysis on complex issues.

Marriott further objects to this premise of the Topic on the grounds that it is legally and factually incorrect. Marriott did not "unilaterally change the guest experience of attendees of the proposed Palms Event by limiting access to amenities including, without limitation, limiting capacity at on-site restaurants, pool facilities and other guest services, removing the agreed upon buffet food service that was part of the Palms Agreement, cancelling valet service and in-room food delivery service and other such restrictions." Instead, both parties were required to comply with all health and safety rules and regulations, including all State, County and Local COVID-19 Executive Orders, mandates, rules, regulations and the like.



RUDNER LAW OFFICES

Ms. Jennifer Altman
October 12, 2021

Page 11

Marriott further objects on the grounds that the phrases "guest experience of attendees of the proposed Palms Event," "including, without limitation" and "other such restrictions" is vague, ambiguous and undefined.

Marriott further objects to the extent that the Topic seeks information protected by the attorney-client and/ or work-product privilege.

Without waiving such objections, Marriott will produce a corporate representative who will provide non-privileged testimony that the "Compliance with Laws" section of the contract obligated Ramsey to comply with all health and safety rules and regulations, including all State, County and Local COVID-19 Executive Orders, mandates, rules, regulations and the like, including the services and amenities identified in this topic.

10. The research and analysis that Gaylord Palms and Marriott performed before it instituted restrictions and limitations at the Gaylord Palms during July 2020 including without limitation, limiting capacity at on-site restaurants, pool facilities and other guest services, removing the agreed upon buffet food service that was part of the Palms Agreement, cancelling valet service and in-room food delivery service and other such restrictions.

Response: Marriott objects to this Topic on the basis that it is not relevant to the subject matter of the litigation and not reasonably calculated to lead to the discovery of admissible evidence. Any "research and analysis" Marriott performed has no conceivable relevance to any issue in the case and is not reasonably calculated to lead to the discovery of admissible evidence.

Marriott further objects on the grounds that the information sought in the notice is, "in effect, seeking legal conclusions that should not form the basis for 30(b)(6) deposition Topics," which are better suited to contention interrogatories where the Topic requires the responding party to provide its legal analysis on complex issues.

Marriott further objects to this Topic on the grounds that phrase "the research and analysis that Gaylord Palms and Marriott performed" is vague and ambiguous.

Marriott further objects to this premise of the Topic on the grounds that it is legally and factually incorrect. Marriott did not institute "restrictions and limitations at the Gaylord Palms during July 2020 including without limitation, limiting capacity at on-site restaurants, pool facilities and other guest services, removing the agreed upon buffet food service that was part of the Palms Agreement, cancelling valet service and in-room food delivery service and other such restrictions." Instead, both parties were required to comply with all health and safety rules and regulations, including all State, County and Local COVID-19 Executive Orders, mandates, rules, regulations and the like.


RUDNER LAW OFFICES

Marriott further objects to the extent that the Topic seeks information protected by the attorney-client and/ or work-product privilege.

Without waiving any such objections, Marriott will produce a corporate representative who will provide non-privileged testimony that any "restrictions and limitations at the Gaylord Palms during July 2020 including without limitation, limiting capacity at on-site restaurants, pool facilities and other guest services, removing the agreed upon buffet food service that was part of the Palms Agreement, cancelling valet service and in-room food delivery service and other such restrictions" was due to Marriott's legal obligation to comply with all health and safety rules and regulations, including all State, County and Local COVID-19 Executive Orders, mandates, rules, regulations and the like. Marriott's representative will not testify about any "research and analysis" that it conducted on this Topic.

11.     Communications between Gaylord Palms and Ramsey Solutions between March of 2020 and July of 2020 regarding the Palms Event including the changes and modifications being requested by Gaylord Palms for the event to proceed.

Response: Marriott objects that the discovery sought is unreasonably cumulative and duplicative, can be obtained from some other source that is more convenient, less burdensome, or less expensive. For Marriott to educate one of its employees about all communications between it and Ramsey regarding the Palms Event would require Marriott to spend numerous hours and dollars, and would be an undue burden to require Marriott to educate its employees in the "extreme detail" for the noticed deposition as to this Topic. It will be exceptionally difficult overly burdensome and expensive to prepare a witness to testify adequately regarding the identified Topics.

Marriott further objects on the grounds that the information sought in the notice is, "in effect, seeking legal conclusions that should not form the basis for 30(b)(6) deposition Topics," which are better suited to contention interrogatories where the Topic requires the responding party to provide its legal analysis on complex issues.

Marriott further objects to this premise of the Topic on the grounds that it is legally and factually incorrect. Marriott did not make any "changes and modifications" to the Palms Events. Instead, both parties were required to comply with all health and safety rules and regulations, including all State, County and Local COVID-19 Executive Orders, mandates, rules, regulations and the like.

Marriott further objects on the grounds that the phrase "the changes and modifications being requested by Gaylord Palms for the event to proceed" is vague, ambiguous and undefined.


RUDNER LAW OFFICES

Ms. Jennifer Altman
October 12, 2021

Page 13

Marriott further objects to the extent that the Topic seeks information protected by the attorney-client and/ or work-product privilege.

Without waiving any such objections, Marriott will produce a corporate representative who will provide non-privileged testimony about this Topic, subject to the objections listed above.

12. The negotiation of the Gaylord Palms Agreement.

Response: Marriott objects to this Topic on the basis that it is not relevant to the subject matter of the litigation and not reasonably calculated to lead to the discovery of admissible evidence. Ramsey has repeatedly taken the position in its discovery responses that "there is no allegation that the agreements are ambiguous and, thus, any documents relating to the negotiations of the same are irrelevant and purely designed to create work for Ramsey Solutions." [See Ramsey's Response First Set Of Written Interrogatories And Second Request For Production Of Documents, RFP No. 2, 4, and 10]

For the foregoing reasons, **Marriott will not produce a corporate representative to testify about this Topic.**

13. The negotiation of the Amendment to the Gaylord Palms Agreement.

Response: Marriott objects to this Topic on the basis that it is not relevant to the subject matter of the litigation and not reasonably calculated to lead to the discovery of admissible evidence. Ramsey has repeatedly taken the position in its discovery responses that "there is no allegation that the agreements are ambiguous and, thus, any documents relating to the negotiations of the same are irrelevant and purely designed to create work for Ramsey Solutions." [See Ramsey's Response First Set Of Written Interrogatories And Second Request For Production Of Documents, RFP No. 2, 4, and 10]

For the foregoing reasons, **Marriott will not produce a corporate representative to testify about this Topic.**

14. The negotiation of the Gaylord Texans Agreement.

Response: Marriott objects to this Topic on the basis that it is not relevant to the subject matter of the litigation and not reasonably calculated to lead to the discovery of admissible evidence. Ramsey has repeatedly taken the position in its discovery responses that "there is no allegation that the agreements are ambiguous and, thus, any documents relating to the



RUDNER LAW OFFICES

Ms. Jennifer Altman
October 12, 2021

Page 14

negotiations of the same are irrelevant and purely designed to create work for Ramsey
Solutions." [See Ramsey's Response First Set Of Written Interrogatories And Second Request
For Production Of Documents, RFP No. 2, 4, and 10]

For the foregoing reasons, **Marriott will not produce a corporate representative to
testify about this Topic.**

15.     The negotiation of the Gaylord Rockies Agreement.

Response: Marriott objects to this Topic on the basis that it is not relevant to the subject
matter of the litigation and not reasonably calculated to lead to the discovery of admissible
evidence. Ramsey has repeatedly taken the position in its discovery responses that "there is no
allegation that the agreements are ambiguous and, thus, any documents relating to the
negotiations of the same are irrelevant and purely designed to create work for Ramsey
Solutions." [See Ramsey's Response First Set Of Written Interrogatories And Second Request
For Production Of Documents, RFP No. 2, 4, and 10]

For the foregoing reasons, **Marriott will not produce a corporate representative to
testify about this Topic.**

16.     The cost of any food and beverage purchased exclusively for the Palms Event as
of July 2, 2020.

Response: Marriott objects to this Topic on the basis that it is not relevant to the subject
matter of the litigation and not reasonably calculated to lead to the discovery of admissible
evidence. This Topic is relevant – if at all – to the calculation and amount of Marriott's actual
damages in connection with its claim for actual damages in the alternative. This Topic has been
raised in Ramsey's Motion to Amend. Because the Court has not ruled on the motion, **Marriott
will not produce a corporate representative to testify about this Topic.**

17.     The cost of any food and beverage purchased for the Palms Event that was not
used at the Gaylord Palms for other guests.

Response: Marriott objects to this Topic on the basis that it is not relevant to the subject
matter of the litigation and not reasonably calculated to lead to the discovery of admissible
evidence. This Topic is relevant – if at all – to the calculation and amount of Marriott's actual
damages in connection with its claim for actual damages in the alternative. This Topic has been
raised in Ramsey's Motion to Amend. Because the Court has not ruled on the motion, **Marriott
will not produce a corporate representative to testify about this Topic.**

RUDNER LAW OFFICES

Ms. Jennifer Altman
October 12, 2021

Page 15

18.    The cost of any employees or independent contractors hired exclusively for the Palms Event where there was no refund, use of such employees or independent for another events or services, credit or set-off.

Response:  Marriott objects to this Topic on the basis that it is not relevant to the subject matter of the litigation and not reasonably calculated to lead to the discovery of admissible evidence. Marriott further objects on the basis that the terms "independent contractors," "refund" and "set-off" are vague, ambiguous and undefined. This Topic is relevant – if at all – to the calculation and amount of Marriott's actual damages in connection with its claim for actual damages in the alternative. This Topic has been raised in Ramsey's Motion to Amend. Because the Court has not ruled on the motion, **Marriott will not produce a corporate representative to testify about this Topic.**

19.    Any out of pockets costs incurred for the Palms Event that were not refunded or otherwise utilized at the Gaylord Palms and/or with other guests at the facility.

Response:  Marriott objects to this Topic on the basis that it is not relevant to the subject matter of the litigation and not reasonably calculated to lead to the discovery of admissible evidence. Marriott further objects on the grounds that the term "out of pocket costs" is vague, ambiguous and undefined. This Topic is relevant – if at all – to the calculation and amount of Marriott's actual damages in connection with its claim for actual damages in the alternative. This Topic has been raised in Ramsey's Motion to Amend. Because the Court has not ruled on the motion, **Marriott will not produce a corporate representative to testify about this Topic.**

20.    Any actual damages that Gaylord Palms suffered by Ramsey Solutions termination of the Palms Event.

Response:  Marriott objects to this Topic on the basis that it is not relevant to the subject matter of the litigation and not reasonably calculated to lead to the discovery of admissible evidence. This Topic is relevant – if at all – to the calculation and amount of Marriott's actual damages in connection with its claim for actual damages in the alternative. This Topic has been raised in Ramsey's Motion to Amend. Because the Court has not ruled on the motion, **Marriott will not produce a corporate representative to testify about this Topic.**

21.    Any actual damages that the Gaylord Texan suffered by Ramsey Solutions termination of its agreement for the event to be held at the Gaylord Texan scheduled for May of 2021.

Response:  Marriott objects to this Topic on the basis that it is not relevant to the subject matter of the litigation and not reasonably calculated to lead to the discovery of admissible evidence. This Topic is relevant – if at all – to the calculation and amount of Marriott's actual


RUDNER LAW OFFICES

Ms. Jennifer Altman
October 12, 2021

Page 16

damages in connection with its claim for actual damages in the alternative. This Topic has been raised in Ramsey's Motion to Amend. Because the Court has not ruled on the motion, **Marriott will not produce a corporate representative to testify about this Topic.**

22.     Any actual damages that the Gaylord Rockies suffered by Ramsey Solutions termination of its agreement for the event to be held at the Gaylord Rockies scheduled for May of 2022.

Response: Marriott objects to this Topic on the basis that it is not relevant to the subject matter of the litigation and not reasonably calculated to lead to the discovery of admissible evidence. This Topic is relevant – if at all – to the calculation and amount of Marriott's actual damages in connection with its claim for actual damages in the alternative. This Topic has been raised in Ramsey's Motion to Amend. It is premature to require Marriott to quantify its claim for actual damages in the alternative. Because the Court has not ruled on the motion, **Marriott will not produce a corporate representative to testify about this Topic.**

Marriott further objects on the grounds that the event dates for the Rockies Event have not passed. It is therefore impossible for Marriott to quantify its actual damages in the alternative. For this additional reason, **Marriott will not produce a corporate representative to testify about this Topic.**

23.     Gaylord Palms' average gross profit margin, incremental profit margin and net profit margin per room night by room type, for all rooms at the Gaylord Palms in July of 2020.

Response: Marriott objects to this Topic on the basis that it is not relevant to the subject matter of the litigation and not reasonably calculated to lead to the discovery of admissible evidence. Marriott further objects on the grounds that the terms "average gross profit margin, incremental profit margin and net profit margin per room night by room type, for all rooms at the Gaylord Palms in July of 2020" are vague, ambiguous and undefined. This Topic is relevant – if at all – to the calculation and amount of Marriott's actual damages in connection with its claim for actual damages in the alternative. This Topic has been raised in Ramsey's Motion to Amend. Because the Court has not ruled on the motion, **Marriott will not produce a corporate representative to testify about this Topic.**

24.     Gaylord Texan's average gross profit margin, incremental profit margin and net profit margin per room night by room type, for all rooms at the Gaylord Texans in May of 2021.

Response: Marriott objects to this Topic on the basis that it is not relevant to the subject matter of the litigation and not reasonably calculated to lead to the discovery of admissible

RUDNER LAW OFFICES

evidence. Marriott further objects on the grounds that the terms "average gross profit margin, incremental profit margin and net profit margin per room night by room type, for all rooms at the Gaylord Texan in May of 2021" are vague, ambiguous and undefined. This Topic is relevant – if at all – to the calculation and amount of Marriott's actual damages in connection with its claim for actual damages in the alternative. This Topic has been raised in Ramsey's Motion to Amend. Because the Court has not ruled on the motion, **Marriott will not produce a corporate representative to testify about this Topic.**

25. The efforts that were made to sell the rooms earmarked for the Palms Event.

Response: Marriott objects to this Topic on the basis that it is not relevant to the subject matter of the litigation and not reasonably calculated to lead to the discovery of admissible evidence. This Topic is relevant – if at all – to the calculation and amount of Marriott's actual damages in connection with its claim for actual damages in the alternative. This Topic has been raised in Ramsey's Motion to Amend. Because the Court has not ruled on the motion, **Marriott will not produce a corporate representative to testify about this Topic.**

Marriott further objects because the term "earmarked" is vague, ambiguous and undefined. For this additional reason, **Marriott will not produce a corporate representative to testify about this Topic.**

26. The efforts that the Gaylord Texan made to sell the rooms earmarked for the EntreSummit event.

Response: Marriott objects to this Topic on the basis that it is not relevant to the subject matter of the litigation and not reasonably calculated to lead to the discovery of admissible evidence. This Topic is relevant – if at all – to the calculation and amount of Marriott's actual damages in connection with its claim for actual damages in the alternative. This Topic has been raised in Ramsey's Motion to Amend. Because the Court has not ruled on the motion, **Marriott will not produce a corporate representative to testify about this Topic.**

Marriott further objects because the term "earmarked" is vague, undefined and ambiguous. For this additional reason, **Marriott will not produce a corporate representative to testify about this Topic.**

27. The efforts that the Gaylord Rockies made to sell the rooms earmarked for the EntreSummit 2022 event.

Response: Marriott objects to this Topic on the basis that it is not relevant to the subject matter of the litigation and not reasonably calculated to lead to the discovery of admissible


RUDNER LAW OFFICES

Ms. Jennifer Altman
October 12, 2021

Page 18

evidence. This Topic is relevant – if at all – to the calculation and amount of Marriott's actual damages in connection with its claim for actual damages in the alternative. This Topic has been raised in Ramsey's Motion to Amend. Because the Court has not ruled on the motion, **Marriott will not produce a corporate representative to testify about this Topic.**

Marriott further objects because the event dates for the Gaylord Rockies event scheduled for May 2022 have not passed. Accordingly, it is premature for Marriott to testify about its alleged damages. Marriott further objects because the term "earmarked" is vague, undefined and ambiguous. For these additional reasons, **Marriott will not produce a corporate representative to testify about this Topic.**

Sincerely,

John C. Josefsberg

# EXHIBIT D



**GAYLORD PALMS™**

RESORT & CONVENTION CENTER

*Florida*

### AGREEMENT BETWEEN
### Ramsey Solutions
### and
### Gaylord Palms Resort & Convention Center

## DESCRIPTION OF GROUP AND EVENT

The following represents an agreement between Gaylord Palms Resort & Convention Center, 6000 West Osceola Parkway, Kissimmee, FL, 34746, (407) 586-0000 and Ramsey Solutions.

ORGANIZATION:      Ramsey Solutions
CONTACT:

| | |
|---|---|
| Name: | Joe Leavitt |
| Job Title: | Director of Event Production |
| Street Address: | 1749 Mallory Lane |
| City, State, Postal Code: | Brentwood, TN |
| Country: | USA |
| Phone Number: | (877) 410-3283 x5503 |
| E-mail Address: | joel@daveramsey.com |

NAME OF EVENT:          Ramsey Solutions EntreLeadership Summit May2020
REFERENCE #:            M-9SERWB8
OFFICIAL PROGRAM DATES:   May 15- 21, 2020

## GUEST SLEEPING ROOM BLOCK
The following guest sleeping rooms have been reserved for the Group on the dates set forth below (the "Room Block") for the Ramsey Solutions EntreLeadership Summit - 2020 (the "Event"):

| Room Type | Fri 5/15/20 | Sat 5/16/20 | Sun 5/17/20 | Mon 5/18/20 | Tues 5/19/20 | Wed 5/20/20 | Total |
|---|---|---|---|---|---|---|---|
| Run of House | - | 38 | 1,054 | 1,054 | 1,054 | 324 | 3,524 |
| Executive Suite | - | 5 | 30 | 30 | 30 | 30 | 125 |
| Deluxe Suite | - | 5 | 30 | 30 | 30 | 30 | 125 |
| Presidential Suite | - | 6 | 6 | 6 | 6 | 6 | 30 |
| Emerald Bay | - | 20 | 200 | 200 | 200 | 50 | 670 |
| Staff | 20 | 41 | 80 | 80 | 80 | 80 | 381 |
| Total | 20 | 115 | 1,400 | 1,400 | 1,400 | 520 | 4,855 |

We will reserve the room block noted above until **Friday, September 29, 2017.** Due to the very high demand we anticipate over these dates, the Hotel reserves the right to release your first option if we have not received the signed copies of the Agreement verifying confirmation by this time. In the event we have a definite request for these dates prior to your option date, we will contact you for a decision. You will have one (1) business day to either return the signed contract, or release the option.

6000 W. Osceola Parkway • Kissimmee, Florida, 34746 • Telephone (407) 586-0000 • Fax (407) 586-0399

## GROUP ROOM RATES
The confirmed net, non-commissionable per night room rate for the **2020** Event will be:

| | |
|---|---|
| Single/double/triple/quad occupancy rooms: | $229.00 |
| Emerald Bay: | $279.00 |
| Executive Suites: | $625.00 |
| Deluxe Suites: | $850.00 |
| Presidential Suites: | $2700.00 |

Applicable taxes will be added to room rates (currently 7.5% room tax and 6% occupancy tax).

Subject to availability, Group rates will apply three (3) days prior to, and three (3) days following, the dates of the Event. Children twelve (12) years and under are free when occupying the same room as their parents.

## RESORT FEE
The prevailing daily resort fee, currently $22.00 plus applicable tax, will be **added** to the guest room rate. This fee will cover several in-room amenities which will include:

- High-speed Internet access in guestrooms
- Two bottled waters replenished daily in your guest room
- 24-hour access to Relâche Fitness Center
- Scheduled shuttle service to Walt Disney World® Theme Parks & Disney Springs®
- Local, toll-free and domestic long-distance telephone calls
- $10 credit towards dry cleaning services
- Private training session (15 min.) at Relâche Fitness Center (*Limited sessions available Tue - Sat from 5 a.m. - 12 p.m. Appointments required, please visit the fitness center to sign up*)
- One bucket of range balls at nearby Celebration Golf Club.

Please note that the parking fee is currently $22.00 for self-parking and $33.00 for valet parking plus applicable tax, currently 7.5%.

## REWARDS PROGRAM - REWARDING EVENTS
Approximately (10) business days after the conclusion of the Event (provided that the Event is not cancelled and Ramsey Solutions has otherwise complied with the material terms and conditions of this Agreement), the Hotel will either award Points or submit an award for airline miles to the Member(s) identified below:

Rewarding Events does not apply to Events booked by or on behalf of any governmental entity, including any federal, state or local agency or any other governmental body, and hotels may not award Points or airline miles to a government employee (or an intermediary booking on behalf of a governmental entity) in connection with the Rewarding Events program or otherwise in connection with planning, scheduling or contracting for an Event.

CHECK ONE OPTION BELOW:

☐ **Award Points** to the Contact (as identified on page 1 of this Agreement or the Authorized Signer of this Agreement)
Member Name _____
Rewards Program Member Number _____

☐ **Award Airline Miles** to the Contact (as identified on page 1 of this Agreement or the Authorized Signer of this Agreement)
Member Name _____

Rewards Program Member Number _____
Airline frequent flier account number _____
Name of airline _____

☐ **Decline to Award Points or Airline Miles.** The Contact and the Authorized Signer of this Agreement elect not to receive (and hereby waive the right to receive) an award of Points or airline miles in connection with the Event.

The number of Points or airline miles to be awarded shall be determined pursuant to the Rewards Program Terms and Conditions, as in effect at the time of award. The Rewards Program Terms and Conditions are available on-line at marriottrewards.com, and may be changed at the sole discretion of the Rewards Program at any time and without notice.

The individual(s) identified above to receive either Points or airline miles may not be changed without such individual(s)' prior written consent. By inserting the airline mileage account information, the recipient elects to receive airline miles rather than Points. All Rewards Program Terms and Conditions apply.

## RESERVATIONS PROCEDURE
Please indicate which of the following procedures will be used by your group:

____X__ Individual Reservations for the Event will be made by individual attendees directly with Marriott reservations at (407) 586-2000.

_____X__ Rooming List for staff.

At the Group's request, Hotel's transient in-house guest list will be compared with the Group's registration list. Any guest room occupied by an individual on Group's registration list, but not coded to Group within Hotel's system, will be credited to Group's final pickup.

If names are found on the Group's registration list and on the Hotel's transient in-house list that are not coded to the group, they shall be credited to the Group hotel pickup (regardless of room rate). This credit may increase the Group pickup as well as possibly increasing the complimentary credits earned.

Hotel will provide Group a weekly guestroom pick-up report starting 45 days prior to the established cut-off date.

## GROUPMAX SYSTEM/PASSKEY - HOUSING OPTION
Gaylord Palms Resort & Convention Center currently offers you the services of GroupMax/Passkey – an online group reservation management solution that allows meeting planners a 24-hour real-time visibility into room pickup, registration activity, and more. We can also create a custom web page for your group that allows attendees to book rooms, request special services and make last-minute changes, all maintained in a centralized database accessible only to the hotel and the meeting planner.

Passkey is currently available on a complimentary basis. Ask your Sales or Event Manager at Gaylord Palms Resort & Convention Center for more information on this exciting technology.

## GUARANTEED RESERVATIONS
All reservations must be accompanied by a first night room deposit or be guaranteed by Ramsey Solutions. Hotel will not hold any reservations unless secured by one of the above methods. Credit cards will be charged prior to arrival.

If rooms are not guaranteed to the Group's master account, a deposit equal to one night's stay is required to hold each individual's reservation. Should a guest cancel a reservation, the deposit will be

refunded if notice is received at least three (3) working days prior to arrival, and a cancellation number is obtained.

## NO ROOM TRANSFER BY GUEST
Ramsey Solutions agrees that neither Ramsey Solutions nor attendees of the Event nor any intermediary shall be permitted to assign any rights or obligations under this Group Sales Agreement, or to resell or otherwise transfer to persons not associated with Ramsey Solutions reservations for guestrooms, meeting rooms or any other facilities made pursuant to this Group Sales Agreement.

## CUTOFF DATE
Reservations by attendees must be received on or before, **Saturday, April 25, 2020** (the "Cutoff Date"). At the Cutoff Date, Hotel will review the reservation pickup for the Event, release the unreserved rooms for general sale, and determine whether it can accept reservations based on a space- and rate-available basis at the Ramsey Solutions group rate after this date.

Release of rooms for general sale following the Cutoff Date does not affect Ramsey Solutions' obligation, as discussed elsewhere in this Agreement, to utilize guest rooms.

## CHECK-OUT TIME
Check-in time is 4:00 p.m. local time. Check-out time is 11:00 a.m. local time. Anyone checking out after 11:00 a.m. local time may incur late charges. Special arrangements can be made for late check-outs based on availability, and/or luggage can be stored for individuals with later departures.

## COMPLIMENTARY POLICY
We are pleased to extend to your group one complimentary single room (1) per every 45 rooms utilized at the group rate during your meeting. Any rooms with rates discounted below the group rate will not be calculated in the complimentary allotment. This number is determined by the actual rooms occupied by your group on a cumulative basis divided by 45.

The following suites have a value of more than one unit:

| | |
|---|---|
| Presidential Suite | - 6 room nights |
| Deluxe Suite | - 4 room nights |
| Executive Suite | - 3 room nights |

## SPECIAL INCENTIVES
Provided that the Group utilizes 80% of the Room Block, we are pleased to provide, as special added incentives, the following:

- One (1) Complimentary GRAND Presidential Suite will be reserved for Dave Ramsey over the meeting dates
- Five (5) Presidential Suite upgrades at Negotiated group rate (noted in room block grid)
- Thirty (30) Deluxe Suites upgrades will be offered at group rate for VIPs/Speakers (noted in room block grid)
- Thirty (30) Executive Suites upgrades will be offered at group rate for VIPs/Speakers (noted in room block grid)
- Twenty (20) Celebrity Services Status (some will be modified)
- 200 Emerald Bay Rooms per night at $279.00 (noted in room block grid)
- Complimentary valet for up to 20 staff members
- Complimentary VIP round trip airport transfers for up to 10 speakers/VIPs
- Complimentary AM/PM Office breaks for up to 20 staff members
- $5,000.00 flat fee for power requirements (NOT including service charge or labor)
- Wi-Fi Package $65,000.00 (Plus Tax & Service Charge):
  - 200 Mbps Dedicated Bandwidth, to be allocated across up to 3 VLANs / SSIDs
  - Up to 30 Static IP Addresses
  - Up to 20 Wired Drops

- Access to in house lighting in General Session complimentary (Value $780.00++ per day)
- Forty Percent (40%) discount on Staff Block (noted in room block grid)
- Ten Percent (10%) Discount off current year banquet menu pricing (does not apply to custom menus, minimum must be met after discount is applied)
- Pre-Planning Visits – up to 20 room nights (additional at Staff Rate) based on availability. To include office, valet parking, airport transfers and Food & Beverage needs
- Audio-Visual Discount – PSAV): Hotel will offer a 40 % discount off prevailing published pricing guidelines for PSAV in-house inventory of equipment (excludes labor, rigging, truss, Event Technology Support (service charges), consumables, sales tax and shipping/delivery charges) if PSAV is selected as the sole provider for all AV Equipment & Services. If PSAV is not selected as the sole provider then all AV Equipment will be charged at a sliding scale. If total spend of audiovisual equipment and labor before discount and tax is:
  $0 to $40,000 then a 10% discount will be applied to audiovisual equipment
  $40,001 to $75,000 then a 15% discount will be applied to audiovisual equipment
  $75,001 + then a 20% discount will be applied to audiovisual equipment. This discounting does not apply to consumables, labor, rigging, truss and Event Technology Support Fee (service charge).
- Credit to Master for 25% the value of Rigging motors and truss (excluding tax and service charge) Custom Rigging Package to be provided. PSAV is the exclusive provider of all rigging equipment, rigging & truss labor and truss equipment. Rigging equipment includes but is not limited to motors, points, cabling and truss.
- Complimentary corkage fee on Entre branded water bottles on main arrival registration day at Registration Desk location.
- $2.00++ corkage fee on Entre Branded Water Bottles on beverage stations during sessions, Am/Pm breaks and meal functions.
- Complimentary storage of up to seven pallets no more than five days prior to event
- Complimentary access to one in room channel
- Two Platinum Marriott Rewards Membership Status Upgrades
- Double Program Points
- Three (3) -Three nights stays to be used at our discretion (could be used as marketing incentives, contesting, etc.). To include:
  o Complimentary Deluxe Suite for three (3) nights
  o Celebrity Status
  o Complimentary Round trip airport transfer
  o Complimentary Welcome Amenity
  o Two (2) Rounds of Golf
  o One (1) Relache Spa treatment each for two (2) people - per gift certificate- total of two(2) treatments per certificate
  o Dinner for two (2) at Old Hickory Steakhouse
- Complimentary marketing Fees up to $50,000.00 (not including production or labor)

**TWO YEAR MULTI-YEAR CONCESSION PACKAGE**
(ADD ON Gaylord Rockies or Gaylord Texan by December 22, 2017)
- ALL Single Year Concessions
- 15% Discount (instead of 10% in single year) on current year banquet menu (minimum must be met after discount is applied, discount not available on custom menus)
- 250,000 Marriott Rewards at contract signing PER HOTEL
- $25,000.00 Master Account credit toward (1) Catered Function

**THREE YEAR MULTI-YEAR CONCESSION PACKAGE**
(ADD ON Gaylord Rockies or Gaylord Texan by December 22, 2017)

- All Single and Two Year Concessions
- ALL MARKETING FEES WAIVED

In the event of reductions in the room night commitment of more than 20% the hotel may adjust any concessions previously offered in this agreement, including concessions offered on a complimentary basis, and may also adjust the functions space in direct proportion to the reduction in the room night commitment.

## DEPOSITS
Seventy-five percent (75%) of the anticipated Group expenditures to be master billed, including all food and beverage charges, is due thirty (30) days prior to arrival. Until this pre-payment is made, the Hotel reserves the right to withhold any or all the services hereunder agreed to.

## MASTER ACCOUNT
Hotel must be notified in writing at least 10 days prior to arrival of the authorized signatories and the charges that are to be posted to the Master Account. Any cancellation or attrition fees will be billed to the Master Account.

## METHOD OF PAYMENT
The method of payment of the Master Account will be established upon approval of Ramsey Solutions' credit. If credit is approved, the outstanding balance of Ramsey Solutions Master Account (less any advance deposits and exclusive of disputed charges) will be due and payable upon receipt of invoice.

Ramsey Solutions will raise any disputed charge(s) within 10 days after receipt of the invoice. The Hotel will work with Ramsey Solutions in resolving any such disputed charges, the payment of which will be due upon receipt of invoice after resolution of the dispute. If payment of any invoice is not received within thirty (30) days of the date on which it was due, Hotel will impose a finance charge at the rate of the lesser of 1-1/2% per month (18% annual rate) or the maximum allowed by law on the unpaid balance commencing on the invoice date.

Ramsey Solutions has indicated that it has elected to use the following form of payment:

[ ] Cash, money order, or other guaranteed form of payment
[ ] Credit card (We accept all major credit cards)
[ ] Company check or Electronic Funds Transfer
[ X] Direct Bill

Ramsey Solutions may not change this form of payment.

In the event that credit is not approved, Ramsey Solutions agrees to pay an advance deposit in an amount to be determined by the Hotel in its reasonable discretion, with the full amount due prior to the start of the group's event.

Please indicate which of the following will be billed to your master account

Room and tax (Entire group)_____
Rooms and tax (VIPS and staff) __X_____
Authorized Food and Beverage _X_____
Incidental Charges __X staff only___
Standard Gratuities ___X____

## PROGRAM

We have reserved space for your meeting and social functions based on our understanding of your needs at this time, as set forth in the attached Program Schedule attached hereto and incorporated herein. Your execution of the Agreement will serve as your approval of the attached program schedule.

Provided that you utilize at least 80% of the Room Block, such meeting space will be provided complimentary.

We reserve the right to adjust the assignment of the Group's meeting and function space to a size appropriate for the number of expected attendees at each function.

Group will work with hotel at One (1) year before the groups arrival date to identify any potential unused space over event dates.

Sixty (60) days before the Group's arrival date, your Convention Services team must receive the Group's final agenda. At that time, all space unused by your group will be released back into the hotel's inventory. Any space additional and/or changes to the agenda within 60 days will continue to be based on availability, and may incur additional room rental.

| Date | Day | Day # | Start Time | End Time | Function Space | Post As/Signage | Function Type | Set Up Style | Expec ted | Backup Space |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | **Friday** | | | | | |
| 5/15/2020 | Fri | 1 | 6:00 PM | 11:45 PM | Osceola CD/Stage | General Session | Set Up | | 1 | |
| | | | | | **Saturday** | | | | | |
| 5/16/2020 | Sat | 2 | 6:00 AM | 11:45 PM | Osceola Ballroom | General Session | Set Up | | 1 | |
| 5/16/2020 | Sat | 2 | 6:00 AM | 11:45 PM | Vero | Office | Office | Office | 1 | |
| 5/16/2020 | Sat | 2 | 7:00 PM | 11:45 PM | Sarasota 1 | Breakout 9 | Breakout | Schoolroom | 20 | |
| 5/16/2020 | Sat | 2 | 7:00 PM | 11:45 PM | Sarasota 2 | Breakout 10 | Breakout | Schoolroom | 20 | |
| 5/16/2020 | Sat | 2 | 7:00 PM | 11:45 PM | Sarasota 3 | Breakout 11 | Breakout | Schoolroom | 20 | |
| 5/16/2020 | Sat | 2 | 7:00 PM | 11:45 PM | Gainesville 2 | Breakout 6 | Breakout | Conference | 20 | |
| 5/16/2020 | Sat | 2 | 7:00 PM | 11:45 PM | Destin 1 | Breakout 7 | Breakout | Conference | 20 | |
| 5/16/2020 | Sat | 2 | 7:00 PM | 11:45 PM | Destin 2 | Breakout 8 | Breakout | Conference | 20 | |
| 5/16/2020 | Sat | 2 | 7:00 PM | 11:45 PM | Gainesville 1 | Breakout 5 | Breakout | Conference | 20 | |
| 5/16/2020 | Sat | 2 | 8:00 PM | 11:45 PM | Sun A | Hold 1 | Holding Room | | 1 | |
| 5/16/2020 | Sat | 2 | 8:00 PM | 11:45 PM | Sun 1-6 | Breakout 4 | Breakout | Lounge | 200 | |
| 5/16/2020 | Sat | 2 | 8:00 PM | 11:45 PM | Sun C | Breakout 2 | Breakout | Theatre | 300 | |
| 5/16/2020 | Sat | 2 | 8:00 PM | 11:45 PM | Sun D | Breakout 3 | Breakout | Theatre | 300 | |
| 5/16/2020 | Sat | 2 | 8:00 PM | 11:45 PM | Sun B | Breakout 1 | Breakout | Theatre | 500 | |
| 5/16/2020 | Sat | 2 | 8:00 PM | 11:45 PM | City Hall Lobby | Registration | Registration | | 1 | |
| | | | | | **Sunday** | | | | | |
| 5/17/2020 | Sun | 3 | 1:00 AM | 11:45 PM | Sun A | Hold 1 | Holding Room | | 1 | |
| 5/17/2020 | Sun | 3 | 1:00 AM | 11:45 PM | Osceola Ballroom | General Session | General Session | Schoolroom | 2,000 | |
| 5/17/2020 | Sun | 3 | 1:00 AM | 11:45 PM | Sun B | Breakout 1 | Breakout | Theatre | 500 | |
| 5/17/2020 | Sun | 3 | 1:00 AM | 11:45 PM | Sun C | Breakout 2 | Breakout | Theatre | 300 | |
| 5/17/2020 | Sun | 3 | 1:00 AM | 11:45 PM | Sun D | Breakout 3 | Breakout | Theatre | 300 | |
| 5/17/2020 | Sun | 3 | 1:00 AM | 11:45 PM | Sun 1-6 | Breakout 4 | Breakout | Lounge | 200 | |
| 5/17/2020 | Sun | 3 | 1:00 AM | 11:45 PM | Gainesville 1 | Breakout 5 | Breakout | Conference | 20 | |

| 5/17/2020 | Sun | 3 | 1:00 AM | 11:45 PM | Gainesville 2 | Breakout 6 | Breakout | Conference | 20 | |
| 5/17/2020 | Sun | 3 | 1:00 AM | 11:45 PM | Destin 1 | Breakout 7 | Breakout | Conference | 20 | |
| 5/17/2020 | Sun | 3 | 1:00 AM | 11:45 PM | Destin 2 | Breakout 8 | Breakout | Conference | 20 | |
| 5/17/2020 | Sun | 3 | 1:00 AM | 11:45 PM | Sarasota 1 | Breakout 9 | Breakout | Schoolroom | 20 | |
| 5/17/2020 | Sun | 3 | 1:00 AM | 11:45 PM | Sarasota 2 | Breakout 10 | Breakout | Schoolroom | 20 | |
| 5/17/2020 | Sun | 3 | 1:00 AM | 11:45 PM | Sarasota 3 | Breakout 11 | Breakout | Schoolroom | 20 | |
| 5/17/2020 | Sun | 3 | 1:00 AM | 11:45 PM | Vero | Office | Office | Office | 1 | |
| 5/17/2020 | Sun | 3 | 1:00 AM | 11:45 PM | City Hall Lobby | Registration | Registration | | 1 | |
| 5/17/2020 | Sun | 3 | 6:00 AM | 11:45 PM | Captiva | Hold 2 | Holding Room | | 1 | |
| 5/17/2020 | Sun | 3 | 6:00 AM | 11:45 PM | Daytona | Hold 3 | Holding Room | | 1 | |
| 5/17/2020 | Sun | 3 | 6:00 AM | 11:45 PM | Miami | Hold 4 | Holding Room | | 1 | |
| 5/17/2020 | Sun | 3 | 6:00 AM | 11:45 PM | Sanibel | Hold 5 | Holding Room | | 1 | |
| 8/17/2020 | Sun | 3 | 6:00 AM | 11:45 PM | Tallahassee | Hold 6 | Holding Room | | 1 | |
| 5/17/2020 | Sun | 3 | 6:00 AM | 11:45 PM | Flagler | Hold 7 | Holding Room | | 1 | |
| 5/17/2020 | Sun | 3 | 6:00 AM | 11:45 PM | Exhibit Hall A-F | Hold for growth | Exhibits | | 1 | |
| 5/17/2020 | Sun | 3 | 6:00 AM | 11:45 PM | Tampa 1 | Breakout 12 | Breakout | Schoolroom | 20 | |
| 5/17/2020 | Sun | 3 | 6:00 AM | 11:45 PM | Tampa 2 | Breakout 13 | Breakout | Schoolroom | 20 | |
| 5/17/2020 | Sun | 3 | 6:00 AM | 11:45 PM | Tampa 3 | Breakout 14 | Breakout | Schoolroom | 20 | |
| 5/17/2020 | Sun | 3 | 6:00 AM | 11:45 PM | Naples | Speaker Room | Speaker Room | Lounge | 20 | |
| 5/17/2020 | Sun | 3 | 1:00 PM | 11:45 PM | St. George #102 | Team Meeting 1 | Holding Room | | 1 | |
| 5/17/2020 | Sun | 3 | 1:00 PM | 11:45 PM | St. George #104 | Team Meeting 2 | Holding Room | | 1 | |
| 5/17/2020 | Sun | 3 | 1:00 PM | 11:45 PM | St. George #106 | Team Meeting 3 | Holding Room | | 1 | |
| 5/17/2020 | Sun | 3 | 1:00 PM | 11:45 PM | St. George #108 | Team Meeting 4 | Holding Room | | 1 | |
| 5/17/2020 | Sun | 3 | 1:00 PM | 11:45 PM | St. George #114 | Team Meeting 5 | Holding Room | | 1 | |
| 5/17/2020 | Sun | 3 | 1:00 PM | 11:45 PM | St. George #112 | Team Meeting 6 | Holding Room | | 1 | |
| 5/17/2020 | Sun | 3 | 1:00 PM | 11:45 PM | Orange Blossom Ballroom | Team Meeting 7 | Holding Room | | 1 | |
| 5/17/2020 | Sun | 3 | 4:00 PM | 10:00 PM | Coquina Lawn and Fire Pits | Dessert Reception | Reception | Cocktail Rounds | 1 | Exhibit Hall A |

| | | | | | Monday | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 5/18/2020 | Mon | 4 | 1:00 AM | 11:45 PM | Orange Blossom Ballroom | Team Meeting 7 | Holding Room | | 1 | |
| 5/18/2020 | Mon | 4 | 1:00 AM | 11:45 PM | Flagler | Hold 7 | Holding Room | | 1 | |
| 5/18/2020 | Mon | 4 | 1:00 AM | 11:45 PM | St. George #112 | Team Meeting 6 | Holding Room | | 1 | |
| 5/18/2020 | Mon | 4 | 1:00 AM | 11:45 PM | St. George #114 | Team Meeting 5 | Holding Room | | 1 | |
| 5/18/2020 | Mon | 4 | 1:00 AM | 11:45 PM | St. George #108 | Team Meeting 4 | Holding Room | | 1 | |
| 5/18/2020 | Mon | 4 | 1:00 AM | 11:45 PM | St. George #106 | Team Meeting 3 | Holding Room | | 1 | |
| 5/18/2020 | Mon | 4 | 1:00 AM | 11:45 PM | St. George #104 | Team Meeting 2 | Holding Room | | 1 | |
| 5/18/2020 | Mon | 4 | 1:00 AM | 11:45 PM | St. George #102 | Team Meeting 1 | Holding Room | | 1 | |
| 5/18/2020 | Mon | 4 | 1:00 AM | 11:45 PM | Tallahassee | Hold 6 | Holding Room | | 1 | |
| 5/18/2020 | Mon | 4 | 1:00 AM | 11:45 PM | Miami | Hold 4 | Holding Room | | 1 | |

| 5/18/2020 | Mon | 4 | 1:00 AM | 11:45 PM | Sanibel | Hold 5 | Holding Room | | 1 | |
| 5/18/2020 | Mon | 4 | 1:00 AM | 11:45 PM | Sun A | Hold 1 | Holding Room | | 1 | |
| 5/18/2020 | Mon | 4 | 1:00 AM | 11:45 PM | Osceola Ballroom | General Session | General Session | Schoolroom | 2,000 | |
| 5/18/2020 | Mon | 4 | 1:00 AM | 11:45 PM | Sun B | Breakout 1 | Breakout | Theatre | 500 | |
| 5/18/2020 | Mon | 4 | 1:00 AM | 11:45 PM | Sun D | Breakout 3 | Breakout | Theatre | 300 | |
| 5/18/2020 | Mon | 4 | 1:00 AM | 11:45 PM | Sun C | Breakout 2 | Breakout | Theatre | 300 | |
| 5/18/2020 | Mon | 4 | 1:00 AM | 11:45 PM | Sun 1-8 | Breakout 4 | Breakout | Lounge | 200 | |
| 5/18/2020 | Mon | 4 | 1:00 AM | 11:45 PM | Gainesville 2 | Breakout 6 | Breakout | Conference | 20 | |
| 5/18/2020 | Mon | 4 | 1:00 AM | 11:45 PM | Tampa 2 | Breakout 13 | Breakout | Schoolroom | 20 | |
| 5/18/2020 | Mon | 4 | 1:00 AM | 11:45 PM | Tampa 3 | Breakout 14 | Breakout | Schoolroom | 20 | |
| 5/18/2020 | Mon | 4 | 1:00 AM | 11:45 PM | Destin 1 | Breakout 7 | Breakout | Conference | 20 | |
| 5/18/2020 | Mon | 4 | 1:00 AM | 11:45 PM | Sarasota 2 | Breakout 10 | Breakout | Schoolroom | 20 | |
| 5/18/2020 | Mon | 4 | 1:00 AM | 11:45 PM | Sarasota 3 | Breakout 11 | Breakout | Schoolroom | 20 | |
| 5/18/2020 | Mon | 4 | 1:00 AM | 11:45 PM | Destin 2 | Breakout 8 | Breakout | Conference | 20 | |
| 5/18/2020 | Mon | 4 | 1:00 AM | 11:45 PM | Gainesville 1 | Breakout 5 | Breakout | Conference | 20 | |
| 5/18/2020 | Mon | 4 | 1:00 AM | 11:45 PM | Tampa 1 | Breakout 12 | Breakout | Schoolroom | 20 | |
| 5/18/2020 | Mon | 4 | 1:00 AM | 11:45 PM | Sarasota 1 | Breakout 9 | Breakout | Schoolroom | 20 | |
| 5/18/2020 | Mon | 4 | 1:00 AM | 11:45 PM | Vero | Office | Office | Office | 1 | |
| 5/18/2020 | Mon | 4 | 1:00 AM | 11:45 PM | Naples | Speaker Room | Speaker Room | Lounge | 20 | |
| 5/18/2020 | Mon | 4 | 1:00 AM | 11:45 PM | Captiva | Hold 2 | Holding Room | | 1 | |
| 5/18/2020 | Mon | 4 | 1:00 AM | 11:45 PM | Daytona | Hold 3 | Holding Room | | 1 | |
| 5/18/2020 | Mon | 4 | 1:00 AM | 11:45 PM | City Hall Lobby | Registration | Registration | | 1 | |
| 5/18/2020 | Mon | 4 | 1:00 AM | 11:45 PM | Exhibit Hall A-F | Hold for growth | Exhibits | | 1 | |
| 5/18/2020 | Mon | 4 | 10:00 AM | 10:30 AM | Osceola Lobby | AM Break | Coffee Break | Roll-in | 1 | |
| 5/18/2020 | Mon | 4 | 11:00 AM | 12:00 PM | Osceola Ballroom | Lunch | Lunch | Schoolroom | 2,000 | |
| 5/18/2020 | Mon | 4 | 2:30 PM | 3:00 PM | Osceola Lobby | PM Break | Coffee Break | Roll-in | 1 | |
| **Tuesday** | | | | | | | | | | |
| 5/19/2020 | Tue | 5 | 1:00 AM | 6:00 PM | Orange Blossom Ballroom | Team Meeting 7 | Holding Room | | 1 | |
| 5/19/2020 | Tue | 5 | 1:00 AM | 6:00 PM | St. George #102 | Team Meeting 1 | Holding Room | | 1 | |
| 5/19/2020 | Tue | 5 | 1:00 AM | 6:00 PM | St. George #104 | Team Meeting 2 | Holding Room | | 1 | |
| 5/19/2020 | Tue | 5 | 1:00 AM | 6:00 PM | St. George #106 | Team Meeting 3 | Holding Room | | 1 | |
| 5/19/2020 | Tue | 5 | 1:00 AM | 6:00 PM | St. George #108 | Team Meeting 4 | Holding Room | | 1 | |
| 5/19/2020 | Tue | 5 | 1:00 AM | 6:00 PM | St. George #114 | Team Meeting 5 | Holding Room | | 1 | |
| 5/19/2020 | Tue | 5 | 1:00 AM | 6:00 PM | St. George #112 | Team Meeting 6 | Holding Room | | 1 | |
| 5/19/2020 | Tue | 5 | 1:00 AM | 11:45 PM | Flagler | Hold 7 | Holding Room | | 1 | |
| 5/19/2020 | Tue | 5 | 1:00 AM | 11:45 PM | Sanibel | Hold 5 | Holding Room | | 1 | |
| 5/19/2020 | Tue | 5 | 1:00 AM | 11:45 PM | Tallahassee | Hold 8 | Holding Room | | 1 | |
| 5/19/2020 | Tue | 5 | 1:00 AM | 11:45 PM | Miami | Hold 4 | Holding Room | | 1 | |
| 5/19/2020 | Tue | 5 | 1:00 AM | 11:45 PM | Sun A | Hold 1 | Holding Room | | 1 | |

| 5/19/2020 | Tue | 5 | 1:00 AM | 11:45 PM | Osceola Ballroom | General Session | General Session | Schoolroom | 2,000 | |
| 5/19/2020 | Tue | 5 | 1:00 AM | 11:45 PM | Sun B | Breakout 1 | Breakout | Theatre | 500 | |
| 5/19/2020 | Tue | 5 | 1:00 AM | 11:45 PM | Sun D | Breakout 3 | Breakout | Theatre | 300 | |
| 5/19/2020 | Tue | 5 | 1:00 AM | 11:45 PM | Sun C | Breakout 2 | Breakout | Theatre | 300 | |
| 5/19/2020 | Tue | 5 | 1:00 AM | 11:45 PM | Sun 1-6 | Breakout 4 | Breakout | Lounge | 200 | |
| 5/19/2020 | Tue | 5 | 1:00 AM | 11:45 PM | Gainesville 2 | Breakout 6 | Breakout | Conference | 20 | |
| 5/19/2020 | Tue | 5 | 1:00 AM | 11:45 PM | Tampa 2 | Breakout 13 | Breakout | Schoolroom | 20 | |
| 5/19/2020 | Tue | 5 | 1:00 AM | 11:45 PM | Tampa 3 | Breakout 14 | Breakout | Schoolroom | 20 | |
| 5/19/2020 | Tue | 5 | 1:00 AM | 11:45 PM | Destin 1 | Breakout 7 | Breakout | Conference | 20 | |
| 5/19/2020 | Tue | 5 | 1:00 AM | 11:45 PM | Sarasota 2 | Breakout 10 | Breakout | Schoolroom | 20 | |
| 5/19/2020 | Tue | 5 | 1:00 AM | 11:45 PM | Sarasota 3 | Breakout 11 | Breakout | Schoolroom | 20 | |
| 5/19/2020 | Tue | 5 | 1:00 AM | 11:45 PM | Destin 2 | Breakout 8 | Breakout | Conference | 20 | |
| 5/19/2020 | Tue | 5 | 1:00 AM | 11:46 PM | Gainesville 1 | Breakout 5 | Breakout | Conference | 20 | |
| 5/19/2020 | Tue | 5 | 1:00 AM | 11:45 PM | Tampa 1 | Breakout 12 | Breakout | Schoolroom | 20 | |
| 5/19/2020 | Tue | 5 | 1:00 AM | 11:45 PM | Sarasota 1 | Breakout 9 | Breakout | Schoolroom | 20 | |
| 5/19/2020 | Tue | 5 | 1:00 AM | 11:45 PM | Vero | Office | Office | Office | 1 | |
| 5/19/2020 | Tue | 5 | 1:00 AM | 11:46 PM | Naples | Speaker Room | Speaker Room | Lounge | 20 | |
| 5/19/2020 | Tue | 5 | 1:00 AM | 11:45 PM | Captiva | Hold 2 | Holding Room | | 1 | |
| 5/19/2020 | Tue | 5 | 1:00 AM | 11:45 PM | Daytona | Hold 3 | Holding Room | | 1 | |
| 5/19/2020 | Tue | 5 | 1:00 AM | 11:45 PM | City Hall Lobby | Registration | Registration | | 1 | |
| 5/19/2020 | Tue | 5 | 1:00 AM | 11:45 PM | Exhibit Hall A-F | Hold for growth | Exhibits | | 1 | |
| 5/19/2020 | Tue | 5 | 10:00 AM | 10:30 AM | Osceola Lobby | AM Break | Coffee Break | Roll-in | 1 | |
| 5/19/2020 | Tue | 5 | 11:00 AM | 12:00 PM | Osceola Ballroom | Lunch | Lunch | Schoolroom | 2,000 | |
| 5/19/2020 | Tue | 5 | 2:30 PM | 3:00 PM | Osceola Lobby | PM Break | Coffee Break | Roll-in | 1 | |
| 5/19/2020 | Tue | 5 | 4:00 PM | 10:00 PM | Emerald Bay Plaza | VIP Reception | Reception | | 400 | |
| | | | | | **Wednesday** | | | | | |
| 5/20/2020 | Wed | 6 | 1:00 AM | 3:00 PM | Exhibit Hall A-F | Hold for growth | Exhibits | | 1 | |
| 5/20/2020 | Wed | 6 | 1:00 AM | 5:00 PM | Sun B | Breakout 1 | Breakout | Theatre | 500 | |
| 5/20/2020 | Wed | 6 | 1:00 AM | 5:00 PM | Sun D | Breakout 3 | Breakout | Theatre | 300 | |
| 5/20/2020 | Wed | 6 | 1:00 AM | 5:00 PM | Sun C | Breakout 2 | Breakout | Theatre | 300 | |
| 5/20/2020 | Wed | 6 | 1:00 AM | 5:00 PM | Sun 1-6 | Breakout 4 | Breakout | Lounge | 200 | |
| 5/20/2020 | Wed | 6 | 1:00 AM | 5:00 PM | Gainesville 2 | Breakout 6 | Breakout | Conference | 20 | |
| 5/20/2020 | Wed | 6 | 1:00 AM | 5:00 PM | Tampa 2 | Breakout 13 | Breakout | Schoolroom | 20 | |
| 5/20/2020 | Wed | 6 | 1:00 AM | 5:00 PM | Tampa 3 | Breakout 14 | Breakout | Schoolroom | 20 | |
| 5/20/2020 | Wed | 6 | 1:00 AM | 5:00 PM | Destin 1 | Breakout 7 | Breakout | Conference | 20 | |
| 5/20/2020 | Wed | 6 | 1:00 AM | 5:00 PM | Sarasota 2 | Breakout 10 | Breakout | Schoolroom | 20 | |
| 5/20/2020 | Wed | 6 | 1:00 AM | 5:00 PM | Sarasota 3 | Breakout 11 | Breakout | Schoolroom | 20 | |
| 5/20/2020 | Wed | 6 | 1:00 AM | 5:00 PM | Destin 2 | Breakout 8 | Breakout | Conference | 20 | |
| 5/20/2020 | Wed | 6 | 1:00 AM | 5:00 PM | Gainesville 1 | Breakout 5 | Breakout | Conference | 20 | |
| 5/20/2020 | Wed | 6 | 1:00 AM | 5:00 PM | Tampa 1 | Breakout 12 | Breakout | Schoolroom | 20 | |
| 5/20/2020 | Wed | 6 | 1:00 AM | 5:00 PM | Sarasota 1 | Breakout 9 | Breakout | Schoolroom | 20 | |

| 5/20/2020 | Wed | 6 | 1:00 AM | 5:00 PM | Naples | Speaker Room | Speaker Room | Lounge | 20 | |
| 5/20/2020 | Wed | 6 | 1:00 AM | 5:00 PM | City Hall Lobby | Registration | Registration | | 1 | |
| 5/20/2020 | Wed | 6 | 1:00 AM | 11:45 PM | Osceola Ballroom | General Session | General Session | Schoolroom | 2,000 | |
| 5/20/2020 | Wed | 6 | 1:00 AM | 11:45 PM | Vero | Office | Office | Office | 1 | |
| 5/20/2020 | Wed | 6 | 10:00 AM | 10:30 AM | Osceola Lobby | AM Break | Coffee Break | Roll-in | 1 | |
| 5/20/2020 | Wed | 6 | 11:00 AM | 12:00 PM | Osceola Ballroom | Lunch | Lunch | Schoolroom | 2,000 | |
| 5/20/2020 | Wed | 6 | 2:30 PM | 3:00 PM | Osceola Lobby | PM Break | Coffee Break | Roll-in | 1 | |
| | | | | | Friday | | | | | |
| 5/21/2020 | Thu | 7 | 1:00 AM | 12:00 PM | Vero | Office | Office | Office | 1 | |

## FOOD AND BEVERAGE PRICING; FOOD AND BEVERAGE GUARANTEE

Food and Beverage pricing for the Event will be based on prevailing market conditions at the time of the Event. Current 2017 minimum banquet prices, excluding tax and a service charge, are as follows:

| Breakfast | Price range: | | Dinner | Price range: |
|---|---|---|---|---|
| Continental | $37 - $41 | | Plated | $88 - $109 |
| Plated | $36 - $49 | | Buffet | $93 - $124 |
| Buffet | $43 - $62 | | | |
| | | | | |
| Lunch | | | Reception: | |
| Plated | $42 - $59 | | Full Bar: | |
| Buffet | $57 - $62 | | One Hour | $25 - $38 |
| Box | $44 | | Two Hours | $33 - $37 |
| | | | Three Hours | $42 - $47 |
| | | | | |
| | | | Food: | |
| | | | Light Hors d'oeuvre | $31 - $39 |
| | | | Heavy Hors d'oeuvre | |
| | | | & Stations | $80 - $106 |

Applicable taxes and a service charge will be added to all food and beverage pricing. Service Charges for discounted menus will be based on retail pricing. All food and beverages served at functions associated with the Event must be provided, prepared, and served by Hotel and must be consumed on Hotel premises.

The Hotel is relying on, and the Group agrees to provide, a minimum of **$700,000** (the "F&B Guarantee") plus applicable taxes and service charges. Group agrees that the food and beverage functions listed on the schedule of events are a major component of this Agreement and that the Hotel will suffer damages that will be difficult or impossible to calculate if the Event is held and the Group's actual food and beverage spend falls below the F&B Guarantee. In such event, the Group will pay the Hotel liquidated damages in an amount equal to the difference between (i) the F&B Guarantee *and* (ii) the actual total food and beverage revenue generated by the functions listed in the Event's program schedule. Group agrees that such damages are a reasonable estimate of the Hotel's actual damages and not a penalty. These liquidated damages are due within 30 days of the date such damages are incurred, and accrue interest at the rate of 1.5 percent per month (or, if less, the maximum amount permitted by law).
Gaylord Palms is pleased to recommend:

*FREEMAN* is the world's leading provider of integrated services for face-to-face marketing. As a strategic based event partner, FREEMAN is the one source for all your exposition and convention service needs. They are conveniently located on property to assist you and your exhibitors. FREEMAN specializes in logistical solutions including exhibit booth programs, corporate events, custom carpet, furniture rental, floor plan design, digital graphic & design production, rental displays, group registration areas, staging/plush draping and material handling services. FREEMAN can also provide strategic solutions by developing social media integration, virtual extension components and ROI measurement to insure your organization achieves its immediate goals and continues its growth into the future. For more information visit the FREEMAN website at www.freemanco.com. Contact: Beth Coffey at 407-313-5850 or 407-586-2209.

For over 50 years *PSAV Presentation Services* has specialized in the planning, production, and execution of complex presentations and events all over the world. They are one of the world's leading providers of event technology and integrated services for corporate events, conventions, exhibitions and awards shows. PSAV Presentation Services is honored to serve as the preferred in-house staging, production and audio visual services contractor and exclusive rigging services provider for Gaylord Hotels. With multiple offices and dedicated technical support on property, PSAV is positioned to properly assist you and your guests. PSAV Presentation Services is dedicated to providing a remarkable experience for event managers, exhibitors and attendees alike. For more information, please contact our in-house office at 407-586-2251.

*Hello Florida!* is a full service destination management company focused on the success of our clients. Our services include transportation, hospitality staff, customized themed events, décor and entertainment, tours and activities, teambuilding events, and access to Florida's premier venues. Our integrity, enthusiasm and commitment to excellence make us the leader in the industry today, and tomorrow. Please call Stephanie Hotchkiss at 407-586-2352 or shotchkiss@hello-florida.com for more information.

*Relâche*, our on-site resort spa, was designed with groups in mind. This 25,000-square-foot European-inspired spa features 25 massage, body and skin care treatment suites; a full-service salon; and a complete fitness center. Feel free to contact our Spa Sales Manager at (407) 586-4772, for more information about the range of services offered, including fitness breaks during your meetings.

## AFFILIATE GROUPS
So that we may accommodate any groups that are meeting in conjunction with your convention, please indicate which of the following procedures will be used by your group:

Approximate number of affiliate groups anticipated: _____

_____ Approval must go through headquarters for function space.
_____ Notify headquarters of affiliate group, but prior approval of space is not required.
_____ Headquarters does not require any knowledge of any affiliate group.

Charges for function space required for affiliate groups will be negotiated at such time as space is requested.

## ATTRITION
Hotel is relying upon Group's use of the Room Night Commitment. Group agrees that a loss will be incurred by Hotel if Group's actual usage is less than 80% of the Room Night Commitment.

If Group's actual usage is less than 80% of the Room Night Commitment, Group agrees to pay, as liquidated damages and not as a penalty, the difference between 80% of the Room Night Commitment and Group's actual usage, multiplied by the average group room rate, plus applicable taxes.

## CANCELLATION POLICY

Group agrees that it bears responsibility for payment for the Room Block and the F&B Guarantee. Group also agrees that the Hotel will suffer actual harm that will be difficult to determine if the Group cancels this Agreement after the date hereof for reasons other than those specified in this Agreement. The Group will pay as liquidated damages to the Hotel, depending upon the timing of such cancellation, the following amounts, as a reasonable estimate of harm to Hotel for the cancellation:

| Time Period of Cancellation | Amount of Liquidated Damages Due |
|---|---|
| 0- 180 days prior to arrival | 100% of total room revenue plus 75% of F&B Guarantee |
| 181 -365 days prior to arrival | 75% of total room revenue* plus 50% of F&B Guarantee |
| 366-551 days prior to arrival | 40% of total room revenue |
| 552 or more days prior to arrival | 10% of total room revenue* |

'The term "total room revenue" means the dollar amount equal to the Room Block multiplied by the Group's average room rate, exclusive of resort fee.

Such amount (the "Cancellation Charge") will be due and payable due within 30 days of the date of cancellation, and accrue interest at the rate of 1.5 percent per month (or, if less, the maximum amount permitted by law). If required by the applicable jurisdiction, the Group will pay sales and/or other applicable taxes with respect to the Cancellation Charge outlined above.

## CANCELLATION IN EVENT OF CHANGE IN MEETING SITE

Notwithstanding any other provision of this Agreement, the Group agrees that it has no right to cancel this Agreement for the purpose of changing its meeting site to another city or location, and in such event, regardless of the date of cancellation of the Agreement, the Group will owe liquidated damages equal to 100% of total room revenues plus applicable tax, to be received by the Hotel from your event for guest rooms comprising the Room Block.

## FOR CAUSE TERMINATION

Should it be impossible for the group to perform its obligations under the Agreement as a result of Dave Ramsey's unforeseen death or disability, the Hotel shall refund all deposits and/or prepayments made by the Group within thirty (30) days of receipt of the notice of termination. Group must notify Hotel within Ten (10) days of such occurrence.

Notwithstanding any provision to the contrary herein, Group may at any time terminate this Agreement without penalty in the event Hotel, its parent, subsidiary or affiliated businesses, principals or executives become engaged in, accused of or subject to any public scandal, political controversy, crime, fraud or other event that in Group's sole judgment will impair or damage its brand or good will by hosting an event at Hotel. In such event, Group shall provide prompt notice and the Hotel shall refund all deposits and/or prepayments made by the Group within thirty (30) days of receipt of the notice of termination.

## PERFORMANCE LICENSES

Ramsey Solutions will be solely responsible for obtaining any necessary licenses or permission to perform, broadcast, transmit, or display any copyrighted works (including without limitation, music, audio, or video recordings, art, etc.) that Ramsey Solutions may use or request to be used at the Hotel.

## FORCE MAJEURE

Either party may be excused from performance without liability if circumstances beyond its reasonable control, such as acts of God, war, acts of domestic terrorism, strikes or similar circumstances, make it illegal or impossible to provide or use the Hotel facilities. The ability to terminate pursuant to this clause is conditioned upon delivery written notice to the other party setting forth the basis for such termination within ten (10) days after learning of such basis.

## LITIGATION EXPENSES

The parties agree that, in the event litigation relating to this Agreement is filed by either party, the non-prevailing party in such litigation will pay the prevailing party's costs resulting from the litigation, including reasonable attorneys' fees.

## LIQUOR LICENSE

Ramsey Solutions understands that Hotel's liquor license requires that beverages only be dispensed by Hotel employees or bartenders. Alcoholic beverage service may be denied to those guests who appear to be intoxicated or are under age.

## COMMUNICATIONS BETWEEN THE PARTIES

Notices sent between the parties may be sent via regular mail, with the effective date as of the date of mailing, or by Federal Express or other overnight delivery service, with the effective date the date of receipt, or by facsimile, with the effective date as of the date shown on the confirmation of receipt. Copies or facsimiles shall be considered as valid as original documents.

## RENOVATION/REMODELING

As of the date of the signing of this Contract, Hotel has no plans for renovation or remodeling of any facilities over the program dates, which will be utilized by Group pursuant to this contract, other than ordinary maintenance. In the event that after this contract is signed, Hotel confirms any plans to remodel or renovate its facilities over the Event dates, Hotel agrees to inform your group in writing of the following:

- Planned scope of project;
- Schedule for commencement and completion;
- Anticipated impact project will have on areas to be utilized by your group;
- Hotel's plan for minimizing impact of project on Group.

Hotel promises that any such construction or remodeling will not interfere with Group's use of the Hotel. The parties agree to negotiate in good faith to resolve any concerns raised as a result of renovations or remodeling and to enter into such amendments of this Contract as may be necessary to reasonably accommodate both parties' interests.

## DISHONORED RESERVATIONS

If the Hotel is unable to provide a room to a Group attendee holding an accepted or confirmed reservation, Hotel may provide alternative accommodations to such attendee (an "Affected Attendee") without such action constituting a breach of this Agreement, provided the terms and conditions of this paragraph are followed. In such an event, the Hotel will provide, at its cost, the substitute hotel accommodations to the Affected Attendee and transportation to and from the substitute hotel for each day that Hotel cannot provide a room. Upon return to the Hotel, the Hotel will provide a note of apology, and every attempt will be made to place the guest in an upgraded room.

## SEVERABILITY

If for any reason a court of competent jurisdiction finds any provision of this Agreement or portion thereof to be unenforceable, that provision shall be enforced to the maximum extent permissible so as to affect the intent of the parties, and the remainder of the Agreement shall continue in full force and effect.

## AMERICANS WITH DISABILITIES ACT (ADA) COMPLIANCE

Each party agrees to use good faith efforts to ensure that it complies with its obligations under the Americans with Disabilities Act and the Act's accompanying regulation and guidelines (collectively the "ADA"). Each party further agrees to indemnify and hold the other party harmless from and against any and all claims and expenses, including attorney's fees and litigation expenses, that may be incurred by or asserted against the other party or its officers, directors, agents, and employees on the basis of the indemnifying party's non-compliance with any of the provisions of the ADA. Ramsey Solutions agrees to provide Hotel with reasonable advance notice about the special needs of any attendees of which Ramsey Solutions is aware.

This Agreement is subject to all applicable federal, state, and local laws, including health and safety

codes, alcoholic beverage control laws, disability laws, federal anti-terrorism laws and regulations, and the like. Hotel and Ramsey Solutions agree to cooperate with each other to ensure compliance with such laws.

## EXECUTION; ASSIGNMENT; AMENDMENTS

By execution of this Agreement, the parties specifically acknowledge and agree that this Agreement sets forth the entire understanding between the parties with respect to the subject matter hereof, shall act as the binding obligation of the parties, and the individual party signing this Agreement on behalf of a party has the requisite power and authority to bind such party. No modification, amendment of, or supplement to this Agreement shall be valid or effective unless the same is in writing and signed by both parties. The Hotel may require ancillary terms under this Agreement, such as its Policies and Procedures and Banquet Event Orders, and such terms, to the extent not inconsistent with the provisions of this Agreement, shall be binding upon the Group.

## INDEMNIFICATION

Each party to this Agreement shall, to the extent not covered by the indemnified party's insurance, indemnify, defend, and hold harmless the other party and its officers, directors, agents, employees, and owners from and against any and all demands, claims, damages to persons or property, losses, and liabilities, including reasonable attorneys' fees (collectively, "Claims"), arising solely out of or solely caused by the indemnifying party's negligence or willful misconduct in connection with the provision and use of Hotel as contemplated by this Agreement. This paragraph shall not waive any statutory limitations of liability available to either party, including innkeepers' limitation of liability laws, nor shall it waive any defenses either party may have with respect to any Claim.

## COMPLIANCE WITH LAW

This Agreement is subject to all applicable federal, state, and local laws, including health and safety codes, alcoholic beverage control laws, disability laws, federal anti-terrorism laws and regulations, and the like. Hotel and Ramsey Solutions agree to cooperate with each other to ensure compliance with such laws.

## CHANGES, ADDITIONS, STIPULATIONS, OR LINING OUT

Any changes, additions, stipulations or deletions including corrective lining out by either Hotel or Ramsey Solutions will not be considered agreed to or binding on the other unless such modifications have been initialed or otherwise approved in writing by the other.

ACCEPTANCE

When presented by the Hotel to Ramsey Solutions, this document is an invitation by the Hotel to Ramsey Solutions to make an offer. Upon signature by Ramsey Solutions, this document will be an offer by Ramsey Solutions. Only upon signature of this document by all parties will this document constitute a binding agreement. Unless the Hotel otherwise notifies Ramsey Solutions at any time prior to Ramsey Solutions execution of this document, the outlined format and dates will be held by the Hotel for Ramsey Solutions on a first-option basis until **Friday, September 29, 2017.** If Ramsey Solutions cannot make a commitment prior to that date, this invitation to offer will revert to a second-option basis or, at the Hotel's option, the arrangements will be released, in which case neither party will have any further obligations.

Upon signature by both parties, Ramsey Solutions and the Hotel shall have agreed to and executed this Agreement by their authorized representatives as of the dates indicated below.

SIGNATURES

Approved and authorized by Ramsey Solutions.

Name: (Print)    Joe Leavitt _____

Title: (Print)    _Director Of Event Prodcutions Ramsey Solutions_____

Signature:       _____ Campo Group / Ramsey Solutions Inc.

Date: 9/29/2017   _____

Approved and authorized by Hotel:

Name: (Print)    Tatum Delia

Title: (Print)    Senior Sales Executive

Signature:       _____

Date:            _____



GAYLORD PALMS™
RESORT & CONVENTION CENTER
*Florida*

**AMENDMENT TO AGREEMENT
BETWEEN
RAMSEY SOLUTIONS
AND
GAYLORD PALMS RESORT**

**THIS AMENDMENT** (this "Amendment"), made and entered into as of March 27, 2020 (the "Effective Date"), is by and between Gaylord Palms Resort & Convention Center ("Hotel") and Ramsey Solutions ("Group").

**WHEREAS**, Hotel and Group are currently parties to an agreement, dated September 29, 2017 (the "Agreement") with respect to the meeting to be held at the Hotel on May 15 – 21, 2020 (the "Event"); and

**WHEREAS**, the parties desire to amend the Agreement as set forth herein.

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1. **Revised Room Block for the Event.** The Hotel will modify the room block reserved by Group for the Event, as set forth under the heading "GUEST SLEEPING ROOM BLOCK" in the Agreement, as follows:

**Original Contracted Room Block (May 15-21, 2020):**

| Room Type | Fri 5/15/20 | Sat 5/16/20 | Sun 5/17/20 | Mon 5/18/20 | Tues 5/19/20 | Wed 5/20/20 | Total |
|---|---|---|---|---|---|---|---|
| Run of House | - | 38 | 1,054 | 1,054 | 1,054 | 324 | 3,524 |
| Executive Suite | - | 5 | 30 | 30 | 30 | 30 | 125 |
| Deluxe Suite | - | 5 | 30 | 30 | 30 | 30 | 125 |
| Presidential Suite | - | 6 | 6 | 6 | 6 | 6 | 30 |
| Emerald Bay | - | 20 | 200 | 200 | 200 | 50 | 670 |
| Staff | 20 | 41 | 80 | 80 | 80 | 80 | 381 |
| Total | 20 | 115 | 1,400 | 1,400 | 1,400 | 520 | 4,855 |

**Revised Room Block (July 10-16, 2020)**

| Room Type | Fri 07/10/20 | Sat 07/11/20 | Sun 7/12/20 | Mon 7/13/20 | Tues 7/14/20 | Wed 7/15/20 | Total |
|---|---|---|---|---|---|---|---|
| Run of House | - | 38 | 839 | 839 | 839 | 324 | 2,879 |
| Executive Suite | - | 5 | 30 | 30 | 30 | 30 | 125 |
| Deluxe Suite | - | 5 | 30 | 30 | 30 | 30 | 125 |
| Presidential Suite | - | 6 | 6 | 6 | 6 | 6 | 30 |
| Emerald Bay | - | 20 | 200 | 200 | 200 | 50 | 670 |
| Staff | 20 | 41 | 80 | 80 | 80 | 80 | 381 |
| Total | 20 | 115 | 1,185 | 1,185 | 1,185 | 520 | 4,210 |

**Marriott Confidential and Proprietary Information**

The contents of this material are confidential and proprietary to Marriott International, Inc. and are not to be reproduced, disclosed, distributed or used without the expressed permission of an authorized representative of Marriott. Any other use is expressly prohibited.



**GAYLORD PALMS**
RESORT & CONVENTION CENTER
*Florida*

    2.   <u>Other Revisions to Agreement</u>. The Agreement is further modified as follows:

<u>Original Quote</u>
M-9SERWB8

<u>New Quote</u>
M-KXE7Z2X

<u>Original Cutoff Date</u>
Saturday, April 25, 2020

<u>Revised Cutoff Date</u>
Saturday June 20, 2020

<u>Original Food & Beverage Minimum</u>
$700,000++

<u>Revised Food & Beverage Minimum</u>
Hotel is relying on and the Group agrees to provide a minimum of $100.00 per actualized room night per peak night (July 12, 13, and 14) with a minimum not to exceed $400,000

<u>Deposit Clause</u>
Hotel will use one hundred percent (100%) of the deposit collected from the May 2020 event for the advance deposit for the July 10-16, 2020 conference.    The deposit will apply to the master bill of July 10-16, 2020 conference.

<u>Revised Attrition Clause</u>
Hotel is relying upon Group's use of the Room Night Commitment.  Hotel is waiving attrition for the July 10-16, 2020 conference.

### Original Function Space – May 11- 16, 2020

| Date | Day | Start | End | Function | Setup | # Ppl | Function Space |
|------|-----|-------|-----|----------|-------|-------|----------------|
| | | | | **Friday** | | | |
| 5/15/2020 | Fri | 6:00 PM | 11:45 PM | General Session | | 1 | Osceola CD/Stage |
| | | | | **Saturday** | | | |
| 5/16/2020 | Sat | 6:00 AM | 11:45 PM | General Session | | 1 | Osceola Ballroom |
| 5/16/2020 | Sat | 6:00 AM | 11:45 PM | Office | Office | 1 | Vero |
| 5/16/2020 | Sat | 7:00 PM | 11:45 PM | Breakout 9 | Schoolroom | 20 | Sarasota 1 |
| 5/16/2020 | Sat | 7:00 PM | 11:45 PM | Breakout 10 | Schoolroom | 20 | Sarasota 2 |
| 5/16/2020 | Sat | 7:00 PM | 11:45 PM | Breakout 11 | Schoolroom | 20 | Sarasota 3 |
| 5/16/2020 | Sat | 7:00 PM | 11:45 PM | Breakout 6 | Conference | 20 | Gainesville 2 |
| 5/16/2020 | Sat | 7:00 PM | 11:45 PM | Breakout 7 | Conference | 20 | Destin 1 |
| 5/16/2020 | Sat | 7:00 PM | 11:45 PM | Breakout 8 | Conference | 20 | Destin 2 |
| 5/16/2020 | Sat | 7:00 PM | 11:45 PM | Breakout 5 | Conference | 20 | Gainesville 1 |

### Marriott Confidential and Proprietary Information

The contents of this material are confidential and proprietary to Marriott International, Inc. and are not to be reproduced, disclosed, distributed or used without the expressed permission of an authorized representative of Marriott. Any other use is expressly prohibited.



GAYLORD PALMS™

RESORT & CONVENTION CENTER

*Florida*

| Date | Day | Start | End | Function | Setup | # Ppl | Function Space |
|------|-----|-------|-----|----------|-------|-------|----------------|
| 5/16/2020 | Sat | 8:00 PM | 11:45 PM | Hold 1 | | 1 | Sun A |
| 5/16/2020 | Sat | 8:00 PM | 11:45 PM | Breakout 4 | Lounge | 200 | Sun 1-6 |
| 5/16/2020 | Sat | 8:00 PM | 11:45 PM | Breakout 2 | Theatre | 300 | Sun C |
| 5/16/2020 | Sat | 8:00 PM | 11:45 PM | Breakout 3 | Theatre | 300 | Sun D |
| 5/16/2020 | Sat | 8:00 PM | 11:45 PM | Breakout 1 | Theatre | 500 | Sun B |
| 5/16/2020 | Sat | 8:00 PM | 11:45 PM | Registration | | 1 | City Hall Lobby |
| **Sunday** | | | | | | | |
| 5/17/2020 | Sun | 1:00 AM | 11:45 PM | Hold 1 | | 1 | Sun A |
| 5/17/2020 | Sun | 1:00 AM | 11:45 PM | General Session | Schoolroom | 2,000 | Osceola Ballroom |
| 5/17/2020 | Sun | 1:00 AM | 11:45 PM | Breakout 1 | Theatre | 500 | Sun B |
| 5/17/2020 | Sun | 1:00 AM | 11:45 PM | Breakout 2 | Theatre | 300 | Sun C |
| 5/17/2020 | Sun | 1:00 AM | 11:45 PM | Breakout 3 | Theatre | 300 | Sun D |
| 5/17/2020 | Sun | 1:00 AM | 11:45 PM | Breakout 4 | Lounge | 200 | Sun 1-6 |
| 5/17/2020 | Sun | 1:00 AM | 11:45 PM | Breakout 5 | Conference | 20 | Gainesville 1 |
| 5/17/2020 | Sun | 1:00 AM | 11:45 PM | Breakout 6 | Conference | 20 | Gainesville 2 |
| 5/17/2020 | Sun | 1:00 AM | 11:45 PM | Breakout 7 | Conference | 20 | Destin 1 |
| 5/17/2020 | Sun | 1:00 AM | 11:45 PM | Breakout 8 | Conference | 20 | Destin 2 |
| 5/17/2020 | Sun | 1:00 AM | 11:45 PM | Breakout 9 | Schoolroom | 20 | Sarasota 1 |
| 5/17/2020 | Sun | 1:00 AM | 11:45 PM | Breakout 10 | Schoolroom | 20 | Sarasota 2 |
| 5/17/2020 | Sun | 1:00 AM | 11:45 PM | Breakout 11 | Schoolroom | 20 | Sarasota 3 |
| 5/17/2020 | Sun | 1:00 AM | 11:45 PM | Office | Office | 1 | Vero |
| 5/17/2020 | Sun | 1:00 AM | 11:45 PM | Registration | | 1 | City Hall Lobby |
| 5/17/2020 | Sun | 6:00 AM | 11:45 PM | Hold 2 | | 1 | Captiva |
| 5/17/2020 | Sun | 6:00 AM | 11:45 PM | Hold 3 | | 1 | Daytona |
| 5/17/2020 | Sun | 6:00 AM | 11:45 PM | Hold 4 | | 1 | Miami |
| 5/17/2020 | Sun | 6:00 AM | 11:45 PM | Hold 5 | | 1 | Sanibel |
| 5/17/2020 | Sun | 6:00 AM | 11:45 PM | Hold 6 | | 1 | Tallahassee |
| 5/17/2020 | Sun | 6:00 AM | 11:45 PM | Hold 7 | | 1 | Flagler |
| 5/17/2020 | Sun | 6:00 AM | 11:45 PM | Hold for growth | | 1 | Exhibit Hall A-F |
| 5/17/2020 | Sun | 6:00 AM | 11:45 PM | Breakout 12 | Schoolroom | 20 | Tampa 1 |
| 5/17/2020 | Sun | 6:00 AM | 11:45 PM | Breakout 13 | Schoolroom | 20 | Tampa 2 |
| 5/17/2020 | Sun | 6:00 AM | 11:45 PM | Breakout 14 | Schoolroom | 20 | Tampa 3 |
| 5/17/2020 | Sun | 6:00 AM | 11:45 PM | Speaker Room | Lounge | 20 | Naples |
| 5/17/2020 | Sun | 1:00 PM | 11:45 PM | Team Meeting 1 | | 1 | St. George #102 |
| 5/17/2020 | Sun | 1:00 PM | 11:45 PM | Team Meeting 2 | | 1 | St. George #104 |
| 5/17/2020 | Sun | 1:00 PM | 11:45 PM | Team Meeting 3 | | 1 | St. George #106 |

**Marriott Confidential and Proprietary Information**

The contents of this material are confidential and proprietary to Marriott International, Inc. and are not to be reproduced, disclosed, distributed or used without the expressed permission of an authorized representative of Marriott. Any other use is expressly prohibited.



GAYLORD PALMS™

RESORT & CONVENTION CENTER
*Florida*

| Date | Day | Start | End | Function | Setup | # Ppl | Function Space |
|------|-----|-------|-----|----------|-------|-------|----------------|
| 5/17/2020 | Sun | 1:00 PM | 11:45 PM | Team Meeting 4 | | 1 | St. George #108 |
| 5/17/2020 | Sun | 1:00 PM | 11:45 PM | Team Meeting 5 | | 1 | St. George #114 |
| 5/17/2020 | Sun | 1:00 PM | 11:45 PM | Team Meeting 6 | | 1 | St. George #112 |
| 5/17/2020 | Sun | 1:00 PM | 11:45 PM | Team Meeting 7 | | 1 | Orange Blossom Ballroom |
| 5/17/2020 | Sun | 4:00 PM | 10:00 PM | Dessert Reception | Cocktail Rounds | 1 | Coquina Lawn and Fire Pits (Back-up Exhibit Hall A) |
| **Monday** | | | | | | | |
| 5/18/2020 | Mon | 1:00 AM | 11:45 PM | Team Meeting 7 | | 1 | Orange Blossom Ballroom |
| 5/18/2020 | Mon | 1:00 AM | 11:45 PM | Hold 7 | | 1 | Flagler |
| 5/18/2020 | Mon | 1:00 AM | 11:45 PM | Team Meeting 6 | | 1 | St. George #112 |
| 5/18/2020 | Mon | 1:00 AM | 11:45 PM | Team Meeting 5 | | 1 | St. George #114 |
| 5/18/2020 | Mon | 1:00 AM | 11:45 PM | Team Meeting 4 | | 1 | St. George #108 |
| 5/18/2020 | Mon | 1:00 AM | 11:45 PM | Team Meeting 3 | | 1 | St. George #106 |
| 5/18/2020 | Mon | 1:00 AM | 11:45 PM | Team Meeting 2 | | 1 | St. George #104 |
| 5/18/2020 | Mon | 1:00 AM | 11:45 PM | Team Meeting 1 | | 1 | St. George #102 |
| 5/18/2020 | Mon | 1:00 AM | 11:45 PM | Hold 6 | | 1 | Tallahassee |
| 5/18/2020 | Mon | 1:00 AM | 11:45 PM | Hold 4 | | 1 | Miami |
| 5/18/2020 | Mon | 1:00 AM | 11:45 PM | Hold 5 | | 1 | Sanibel |
| 5/18/2020 | Mon | 1:00 AM | 11:45 PM | Hold 1 | | 1 | Sun A |
| 5/18/2020 | Mon | 1:00 AM | 11:45 PM | General Session | Schoolroom | 2,000 | Osceola Ballroom |
| 5/18/2020 | Mon | 1:00 AM | 11:45 PM | Breakout 1 | Theatre | 500 | Sun B |
| 5/18/2020 | Mon | 1:00 AM | 11:45 PM | Breakout 3 | Theatre | 300 | Sun D |
| 5/18/2020 | Mon | 1:00 AM | 11:45 PM | Breakout 2 | Theatre | 300 | Sun C |
| 5/18/2020 | Mon | 1:00 AM | 11:45 PM | Breakout 4 | Lounge | 200 | Sun 1-6 |
| 5/18/2020 | Mon | 1:00 AM | 11:45 PM | Breakout 6 | Conference | 20 | Gainesville 2 |
| 5/18/2020 | Mon | 1:00 AM | 11:45 PM | Breakout 13 | Schoolroom | 20 | Tampa 2 |
| 5/18/2020 | Mon | 1:00 AM | 11:45 PM | Breakout 14 | Schoolroom | 20 | Tampa 3 |
| 5/18/2020 | Mon | 1:00 AM | 11:45 PM | Breakout 7 | Conference | 20 | Destin 1 |
| 5/18/2020 | Mon | 1:00 AM | 11:45 PM | Breakout 10 | Schoolroom | 20 | Sarasota 2 |
| 5/18/2020 | Mon | 1:00 AM | 11:45 PM | Breakout 11 | Schoolroom | 20 | Sarasota 3 |
| 5/18/2020 | Mon | 1:00 AM | 11:45 PM | Breakout 8 | Conference | 20 | Destin 2 |
| 5/18/2020 | Mon | 1:00 AM | 11:45 PM | Breakout 5 | Conference | 20 | Gainesville 1 |
| 5/18/2020 | Mon | 1:00 AM | 11:45 PM | Breakout 12 | Schoolroom | 20 | Tampa 1 |
| 5/18/2020 | Mon | 1:00 AM | 11:45 PM | Breakout 9 | Schoolroom | 20 | Sarasota 1 |

Marriott Confidential and Proprietary Information

The contents of this material are confidential and proprietary to Marriott International, Inc. and are not to be reproduced, disclosed, distributed or used without the expressed permission of an authorized representative of Marriott. Any other use is expressly prohibited.



**GAYLORD PALMS™**
RESORT & CONVENTION CENTER
*Florida*

| Date | Day | Start | End | Function | Setup | # Ppl | Function Space |
|------|-----|-------|-----|----------|-------|-------|----------------|
| 5/18/2020 | Mon | 1:00 AM | 11:45 PM | Office | Office | 1 | Vero |
| 5/18/2020 | Mon | 1:00 AM | 11:45 PM | Speaker Room | Lounge | 20 | Naples |
| 5/18/2020 | Mon | 1:00 AM | 11:45 PM | Hold 2 | | 1 | Captiva |
| 5/18/2020 | Mon | 1:00 AM | 11:45 PM | Hold 3 | | 1 | Daytona |
| 5/18/2020 | Mon | 1:00 AM | 11:45 PM | Registration | | 1 | City Hall Lobby |
| 5/18/2020 | Mon | 1:00 AM | 11:45 PM | Hold for growth | | 1 | Exhibit Hall A-F |
| 5/18/2020 | Mon | 10:00 AM | 10:30 AM | AM Break | Roll-in | 1 | Osceola Lobby |
| 5/18/2020 | Mon | 11:00 AM | 12:00 PM | Lunch | Schoolroom | 2,000 | Osceola Ballroom |
| 5/18/2020 | Mon | 2:30 PM | 3:00 PM | PM Break | Roll-in | 1 | Osceola Lobby |
| **Tuesday** | | | | | | | |
| 5/19/2020 | Tue | 1:00 AM | 6:00 PM | Team Meeting 7 | | 1 | Orange Blossom Ballroom |
| 5/19/2020 | Tue | 1:00 AM | 6:00 PM | Team Meeting 1 | | 1 | St. George #102 |
| 5/19/2020 | Tue | 1:00 AM | 6:00 PM | Team Meeting 2 | | 1 | St. George #104 |
| 5/19/2020 | Tue | 1:00 AM | 6:00 PM | Team Meeting 3 | | 1 | St. George #106 |
| 5/19/2020 | Tue | 1:00 AM | 6:00 PM | Team Meeting 4 | | 1 | St. George #108 |
| 5/19/2020 | Tue | 1:00 AM | 6:00 PM | Team Meeting 5 | | 1 | St. George #114 |
| 5/19/2020 | Tue | 1:00 AM | 6:00 PM | Team Meeting 6 | | 1 | St. George #112 |
| 5/19/2020 | Tue | 1:00 AM | 11:45 PM | Hold 7 | | 1 | Flagler |
| 5/19/2020 | Tue | 1:00 AM | 11:45 PM | Hold 5 | | 1 | Sanibel |
| 5/19/2020 | Tue | 1:00 AM | 11:45 PM | Hold 6 | | 1 | Tallahassee |
| 5/19/2020 | Tue | 1:00 AM | 11:45 PM | Hold 4 | | 1 | Miami |
| 5/19/2020 | Tue | 1:00 AM | 11:45 PM | Hold 1 | | 1 | Sun A |
| 5/19/2020 | Tue | 1:00 AM | 11:45 PM | General Session | Schoolroom | 2,000 | Osceola Ballroom |
| 5/19/2020 | Tue | 1:00 AM | 11:45 PM | Breakout 1 | Theatre | 500 | Sun B |
| 5/19/2020 | Tue | 1:00 AM | 11:45 PM | Breakout 3 | Theatre | 300 | Sun D |
| 5/19/2020 | Tue | 1:00 AM | 11:45 PM | Breakout 2 | Theatre | 300 | Sun C |
| 5/19/2020 | Tue | 1:00 AM | 11:45 PM | Breakout 4 | Lounge | 200 | Sun 1-6 |
| 5/19/2020 | Tue | 1:00 AM | 11:45 PM | Breakout 6 | Conference | 20 | Gainesville 2 |
| 5/19/2020 | Tue | 1:00 AM | 11:45 PM | Breakout 13 | Schoolroom | 20 | Tampa 2 |
| 5/19/2020 | Tue | 1:00 AM | 11:45 PM | Breakout 14 | Schoolroom | 20 | Tampa 3 |
| 5/19/2020 | Tue | 1:00 AM | 11:45 PM | Breakout 7 | Conference | 20 | Destin 1 |
| 5/19/2020 | Tue | 1:00 AM | 11:45 PM | Breakout 10 | Schoolroom | 20 | Sarasota 2 |
| 5/19/2020 | Tue | 1:00 AM | 11:45 PM | Breakout 11 | Schoolroom | 20 | Sarasota 3 |
| 5/19/2020 | Tue | 1:00 AM | 11:45 PM | Breakout 8 | Conference | 20 | Destin 2 |

**Marriott Confidential and Proprietary Information**

The contents of this material are confidential and proprietary to Marriott International, Inc. and are not to be reproduced, disclosed, distributed or used without the expressed permission of an authorized representative of Marriott. Any other use is expressly prohibited.



**GAYLORD PALMS**

RESORT & CONVENTION CENTER

*Florida*

| Date | Day | Start | End | Function | Setup | # Ppl | Function Space |
|------|-----|-------|-----|----------|-------|-------|----------------|
| 5/19/2020 | Tue | 1:00 AM | 11:45 PM | Breakout 5 | Conference | 20 | Gainesville 1 |
| 5/19/2020 | Tue | 1:00 AM | 11:45 PM | Breakout 12 | Schoolroom | 20 | Tampa 1 |
| 5/19/2020 | Tue | 1:00 AM | 11:45 PM | Breakout 9 | Schoolroom | 20 | Sarasota 1 |
| 5/19/2020 | Tue | 1:00 AM | 11:45 PM | Office | Office | 1 | Vero |
| 5/19/2020 | Tue | 1:00 AM | 11:45 PM | Speaker Room | Lounge | 20 | Naples |
| 5/19/2020 | Tue | 1:00 AM | 11:45 PM | Hold 2 | | 1 | Captiva |
| 5/19/2020 | Tue | 1:00 AM | 11:45 PM | Hold 3 | | 1 | Daytona |
| 5/19/2020 | Tue | 1:00 AM | 11:45 PM | Registration | | 1 | City Hall Lobby |
| 5/19/2020 | Tue | 1:00 AM | 11:45 PM | Hold for growth | | 1 | Exhibit Hall A-F |
| 5/19/2020 | Tue | 10:00 AM | 10:30 AM | AM Break | Roll-in | 1 | Osceola Lobby |
| 5/19/2020 | Tue | 11:00 AM | 12:00 PM | Lunch | Schoolroom | 2,000 | Osceola Ballroom |
| 5/19/2020 | Tue | 2:30 PM | 3:00 PM | PM Break | Roll-in | 1 | Osceola Lobby |
| 5/19/2020 | Tue | 4:00 PM | 10:00 PM | VIP Reception | | 400 | Emerald Bay Plaza |
| **Wednesday** | | | | | | | |
| 5/20/2020 | Wed | 1:00 AM | 3:00 PM | Hold for growth | | 1 | Exhibit Hall A-F |
| 5/20/2020 | Wed | 1:00 AM | 5:00 PM | Breakout 1 | Theatre | 500 | Sun B |
| 5/20/2020 | Wed | 1:00 AM | 5:00 PM | Breakout 3 | Theatre | 300 | Sun D |
| 5/20/2020 | Wed | 1:00 AM | 5:00 PM | Breakout 2 | Theatre | 300 | Sun C |
| 5/20/2020 | Wed | 1:00 AM | 5:00 PM | Breakout 4 | Lounge | 200 | Sun 1-6 |
| 5/20/2020 | Wed | 1:00 AM | 5:00 PM | Breakout 6 | Conference | 20 | Gainesville 2 |
| 5/20/2020 | Wed | 1:00 AM | 5:00 PM | Breakout 13 | Schoolroom | 20 | Tampa 2 |
| 5/20/2020 | Wed | 1:00 AM | 5:00 PM | Breakout 14 | Schoolroom | 20 | Tampa 3 |
| 5/20/2020 | Wed | 1:00 AM | 5:00 PM | Breakout 7 | Conference | 20 | Destin 1 |
| 5/20/2020 | Wed | 1:00 AM | 5:00 PM | Breakout 10 | Schoolroom | 20 | Sarasota 2 |
| 5/20/2020 | Wed | 1:00 AM | 5:00 PM | Breakout 11 | Schoolroom | 20 | Sarasota 3 |
| 5/20/2020 | Wed | 1:00 AM | 5:00 PM | Breakout 8 | Conference | 20 | Destin 2 |
| 5/20/2020 | Wed | 1:00 AM | 5:00 PM | Breakout 5 | Conference | 20 | Gainesville 1 |
| 5/20/2020 | Wed | 1:00 AM | 5:00 PM | Breakout 12 | Schoolroom | 20 | Tampa 1 |
| 5/20/2020 | Wed | 1:00 AM | 5:00 PM | Breakout 9 | Schoolroom | 20 | Sarasota 1 |
| 5/20/2020 | Wed | 1:00 AM | 5:00 PM | Speaker Room | Lounge | 20 | Naples |
| 5/20/2020 | Wed | 1:00 AM | 5:00 PM | Registration | | 1 | City Hall Lobby |
| 5/20/2020 | Wed | 1:00 AM | 11:45 PM | General Session | Schoolroom | 2,000 | Osceola Ballroom |
| 5/20/2020 | Wed | 1:00 AM | 11:45 PM | Office | Office | 1 | Vero |
| 5/20/2020 | Wed | 10:00 AM | 10:30 AM | AM Break | Roll-in | 1 | Osceola Lobby |

**Marriott Confidential and Proprietary Information**

The contents of this material are confidential and proprietary to Marriott International, Inc. and are not to be reproduced, disclosed, distributed or used without the expressed permission of an authorized representative of Marriott. Any other use is expressly prohibited.



| Date | Day | Start | End | Function | Setup | # Ppl | Function Space |
|---|---|---|---|---|---|---|---|
| 5/20/2020 | Wed | 11:00 AM | 12:00 PM | Lunch | Schoolroom | 2,000 | Osceola Ballroom |
| 5/20/2020 | Wed | 2:30 PM | 3:00 PM | PM Break | Roll-in | 1 | Osceola Lobby |
| **Thursday** | | | | | | | |
| 5/21/2020 | Thu | 1:00 AM | 12:00 PM | Office | Office | 1 | Vero |

### Revised Function Space – July 17-22, 2020

| Date | Day | Start | End | Function | Setup | # Ppl | Function Space |
|---|---|---|---|---|---|---|---|
| **Friday** | | | | | | | |
| 7/10/2020 | Fri | 6:00 PM | 11:45 PM | General Session | | 1 | Osceola CD/Stage |
| **Saturday** | | | | | | | |
| 7/11/2020 | Sat | 1:00 AM | 11:45 PM | General Session | | 1 | Osceola CD/Stage |
| 7/11/2020 | Sat | 6:00 AM | 11:45 PM | Office | Office | 1 | Vero |
| 7/11/2020 | Sat | 11:00 AM | 11:45 PM | General Session | | 1 | Osceola AB1-6 |
| 7/11/2020 | Sat | 7:00 PM | 11:45 PM | Breakout 7 | Conference | 20 | Destin 1 |
| 7/11/2020 | Sat | 7:00 PM | 11:45 PM | Hold 6 | | 1 | Tallahassee |
| 7/11/2020 | Sat | 7:00 PM | 11:45 PM | Breakout 8 | Conference | 20 | Destin 2 |
| 7/11/2020 | Sat | 7:00 PM | 11:45 PM | Breakout 9 | Schoolroom | 20 | Sarasota 1 |
| 7/11/2020 | Sat | 7:00 PM | 11:45 PM | Breakout 10 | Schoolroom | 20 | Sarasota 2 |
| 7/11/2020 | Sat | 7:00 PM | 11:45 PM | Breakout 11 | Schoolroom | 20 | Sarasota 3 |
| 7/11/2020 | Sat | 7:00 PM | 11:45 PM | Breakout 5 | Conference | 20 | Gainesville 1 |
| 7/11/2020 | Sat | 7:00 PM | 11:45 PM | Breakout 6 | Conference | 20 | Gainesville 2 |
| 7/11/2020 | Sat | 8:00 PM | 11:45 PM | Breakout 3 | Theatre | 300 | Sun D |
| 7/11/2020 | Sat | 8:00 PM | 11:45 PM | Breakout 4 | Lounge | 200 | Sun 1-6 |
| 7/11/2020 | Sat | 8:00 PM | 11:45 PM | Breakout 1 | Theatre | 500 | Sun B |
| 7/11/2020 | Sat | 8:00 PM | 11:45 PM | Breakout 2 | Theatre | 300 | Sun C |
| 7/11/2020 | Sat | 8:00 PM | 11:45 PM | Hold 1 | | 1 | Sun A |
| **Sunday** | | | | | | | |
| 7/12/2020 | Sun | 1:00 AM | 11:45 PM | Breakout 1 | Theatre | 500 | Sun B |
| 7/12/2020 | Sun | 1:00 AM | 11:45 PM | Breakout 2 | Theatre | 300 | Sun C |
| 7/12/2020 | Sun | 1:00 AM | 11:45 PM | Breakout 3 | Theatre | 300 | Sun D |
| 7/12/2020 | Sun | 1:00 AM | 11:45 PM | Breakout 4 | Lounge | 200 | Sun 1-6 |
| 7/12/2020 | Sun | 1:00 AM | 11:45 PM | Breakout 5 | Conference | 20 | Gainesville 1 |
| 7/12/2020 | Sun | 1:00 AM | 11:45 PM | Breakout 6 | Conference | 20 | Gainesville 2 |
| 7/12/2020 | Sun | 1:00 AM | 11:45 PM | Breakout 7 | Conference | 20 | Destin 1 |
| 7/12/2020 | Sun | 1:00 AM | 11:45 PM | Breakout 8 | Conference | 20 | Destin 2 |
| 7/12/2020 | Sun | 1:00 AM | 11:45 PM | Breakout 9 | Schoolroom | 20 | Sarasota 1 |
| 7/12/2020 | Sun | 1:00 AM | 11:45 PM | General Session | Schoolroom | 3,500 | Osceola Ballroom/Stage |

**Marriott Confidential and Proprietary Information**

The contents of this material are confidential and proprietary to Marriott International, Inc. and are not to be reproduced, disclosed, distributed or used without the expressed permission of an authorized representative of Marriott. Any other use is expressly prohibited.



GAYLORD PALMS™

RESORT & CONVENTION CENTER

*Florida*

| Date | Day | Start | End | Function | Setup | # Ppl | Function Space |
|------|-----|-------|-----|----------|-------|-------|----------------|
| 7/12/2020 | Sun | 1:00 AM | 11:45 PM | Breakout 10 | Schoolroom | 20 | Sarasota 2 |
| 7/12/2020 | Sun | 1:00 AM | 11:45 PM | Breakout 11 | Schoolroom | 20 | Sarasota 3 |
| 7/12/2020 | Sun | 1:00 AM | 11:45 PM | Office | Office | 1 | Vero |
| 7/12/2020 | Sun | 1:00 AM | 11:45 PM | Hold 1 | | 1 | Sun A |
| 7/12/2020 | Sun | 1:00 AM | 11:45 PM | Hold 6 | | 1 | Tallahassee |
| 7/12/2020 | Sun | 6:00 AM | 11:45 PM | Breakout 12 | Schoolroom | 20 | Tampa 1 |
| 7/12/2020 | Sun | 6:00 AM | 11:45 PM | Breakout 13 | Schoolroom | 20 | Tampa 2 |
| 7/12/2020 | Sun | 6:00 AM | 11:45 PM | Breakout 14 | Schoolroom | 20 | Tampa 3 |
| 7/12/2020 | Sun | 6:00 AM | 11:45 PM | Speaker Room | Lounge | 20 | Naples |
| 7/12/2020 | Sun | 6:00 AM | 11:45 PM | Hold 2 | | 1 | Captiva |
| 7/12/2020 | Sun | 6:00 AM | 11:45 PM | Hold 3 | | 1 | Daytona |
| 7/12/2020 | Sun | 6:00 AM | 11:45 PM | Hold 4 | | 1 | Miami |
| 7/12/2020 | Sun | 6:00 AM | 11:45 PM | Hold 5 | | 1 | Sanibel |
| 7/12/2020 | Sun | 6:00 AM | 11:45 PM | Hold 7 | | 1 | Flagler |
| 7/12/2020 | Sun | 6:00 AM | 11:45 PM | Hold for growth | | 1 | Exhibit Hall A |
| 7/12/2020 | Sun | 1:00 PM | 5:00 PM | Registration Break | Roll-in | 2,000 | Coquina Lawn |
| 7/12/2020 | Sun | 1:00 PM | 11:45 PM | Team Meeting 1 | | 1 | St. George #102 |
| 7/12/2020 | Sun | 1:00 PM | 11:45 PM | Team Meeting 2 | | 1 | St. George #104 |
| 7/12/2020 | Sun | 1:00 PM | 11:45 PM | Team Meeting 3 | | 1 | St. George #106 |
| 7/12/2020 | Sun | 1:00 PM | 11:45 PM | Team Meeting 4 | | 1 | St. George #108 |
| 7/12/2020 | Sun | 1:00 PM | 11:45 PM | Team Meeting 5 | | 1 | St. George #114 |
| 7/12/2020 | Sun | 1:00 PM | 11:45 PM | Team Meeting 6 | | 1 | St. George #112 |
| 7/12/2020 | Sun | 1:00 PM | 11:45 PM | Holding Room | | 1 | Emerald 1 |
| 7/12/2020 | Sun | 1:00 PM | 11:45 PM | Holding Room | | 1 | Palm Beach Room |
| 7/12/2020 | Sun | 1:00 PM | 11:45 PM | Holding Room | | 1 | Emerald 2 |
| 7/12/2020 | Sun | 1:00 PM | 11:45 PM | Holding Room | | 1 | Emerald 3 |
| 7/12/2020 | Sun | 1:00 PM | 11:45 PM | Holding Room | | 1 | Emerald 4 |
| 7/12/2020 | Sun | 1:00 PM | 11:45 PM | Holding Room | | 1 | Emerald 5 |
| 7/12/2020 | Sun | 1:00 PM | 11:45 PM | Holding Room | | 1 | Emerald 7 |
| 7/12/2020 | Sun | 1:00 PM | 11:45 PM | Holding Room | | 1 | Emerald 8 |
| 7/12/2020 | Sun | 1:00 PM | 11:45 PM | Holding Room | | 1 | Emerald 6 |
| 7/12/2020 | Sun | 1:00 PM | 11:45 PM | Holding Room | | 1 | Sanchez Boardroom |
| 7/12/2020 | Sun | 1:00 PM | 11:45 PM | Holding Room | | 1 | Emerald Patio |
| 7/12/2020 | Sun | 1:00 PM | 11:45 PM | Holding Room | | 1 | Hemingway Boardroom |
| 7/12/2020 | Sun | 7:00 PM | 11:45 PM | Team Meeting 7 | | 1 | Orange Blossom Ballroom |
| | | | | **Monday** | | | |
| 7/13/2020 | Mon | 1:00 AM | 10:00 AM | Hold 2 | | 1 | Captiva |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Holding Room | | 1 | Palm Beach Room |

**Marriott Confidential and Proprietary Information**
The contents of this material are confidential and proprietary to Marriott International, Inc. and are not to be reproduced, disclosed, distributed or used without the expressed permission of an authorized representative of Marriott. Any other use is expressly prohibited.



**GAYLORD PALMS**
RESORT & CONVENTION CENTER
*Florida*

| Date | Day | Start | End | Function | Setup | # Ppl | Function Space |
|------|-----|-------|-----|----------|-------|-------|----------------|
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Holding Room | | 1 | Emerald 6 |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Holding Room | | 1 | Emerald 7 |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Holding Room | | 1 | Emerald 8 |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Holding Room | | 1 | Castillo Fort |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Holding Room | | 1 | Hemingway Boardroom |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Holding Room | | 1 | Sanchez Boardroom |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Holding Room | | 1 | Emerald Patio |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Breakout 13 | Schoolroom | 20 | Tampa 2 |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Breakout 14 | Schoolroom | 20 | Tampa 3 |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Breakout 7 | Conference | 20 | Destin 1 |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Breakout 10 | Schoolroom | 20 | Sarasota 2 |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Breakout 11 | Schoolroom | 20 | Sarasota 3 |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Breakout 8 | Conference | 20 | Destin 2 |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Breakout 5 | Conference | 20 | Gainesville 1 |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Breakout 12 | Schoolroom | 20 | Tampa 1 |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Breakout 9 | Schoolroom | 20 | Sarasota 1 |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Hold 1 | | 1 | Sun A |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Hold 3 | | 1 | Daytona |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Hold 4 | | 1 | Miami |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Hold 5 | | 1 | Sanibel |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Hold 6 | | 1 | Tallahassee |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Hold 7 | | 1 | Flagler |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Hold for growth | | 1 | Exhibit Hall A |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Team Meeting 6 | | 1 | St. George #112 |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Team Meeting 7 | | 1 | Orange Blossom Ballroom |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Holding Room | | 1 | Emerald Bay Plaza |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Team Meeting 1 | | 1 | St. George #102 |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Holding Room | | 1 | Emerald 1 |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Team Meeting 2 | | 1 | St. George #104 |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Team Meeting 3 | | 1 | St. George #106 |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Team Meeting 4 | | 1 | St. George #108 |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Team Meeting 5 | | 1 | St. George #114 |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Holding Room | | 1 | Emerald 2 |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Holding Room | | 1 | Emerald 3 |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Holding Room | | 1 | Emerald 4 |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Office | Office | 1 | Vero |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Speaker Room | Lounge | 20 | Naples |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Holding Room | | 1 | Emerald 5 |

**Marriott Confidential and Proprietary Information**

The contents of this material are confidential and proprietary to Marriott International, Inc. and are not to be reproduced, disclosed, distributed or used without the expressed permission of an authorized representative of Marriott. Any other use is expressly prohibited.



| Date | Day | Start | End | Function | Setup | # Ppl | Function Space |
|---|---|---|---|---|---|---|---|
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Breakout 2 | Theatre | 300 | Sun C |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Breakout 3 | Theatre | 300 | Sun D |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | General Session | Schoolroom | 3,500 | Osceola Ballroom/Stage |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Breakout 1 | Theatre | 500 | Sun B |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Breakout 4 | Lounge | 200 | Sun 1-6 |
| 7/13/2020 | Mon | 1:00 AM | 11:45 PM | Breakout 6 | Conference | 20 | Gainesville 2 |
| 7/13/2020 | Mon | 8:00 AM | 5:00 PM | Registration Break | Roll-in | 2,000 | Coquina Lawn |
| 7/13/2020 | Mon | 11:00 AM | 12:00 PM | Lunch | Schoolroom | 3,650 | Osceola Ballroom/Stage |
| 7/13/2020 | Mon | 4:00 PM | 11:59 PM | Reception | | 400 | South Beach Pool |
| 7/13/2020 | Mon | 6:00 PM | 9:00 PM | Private ELP/SV Reception Restaurant Dinner | | 80 | Old Hickory - Mango Grove Cabin & Patio |
| | | | | **Tuesday** | | | |
| 7/14/2020 | Tue | 1:00 AM | 6:00 PM | Hold 3 | | 1 | Daytona |
| 7/14/2020 | Tue | 1:00 AM | 6:00 PM | Team Meeting 1 | | 1 | St. George #102 |
| 7/14/2020 | Tue | 1:00 AM | 6:00 PM | Holding Room | | 1 | Palm Beach Room |
| 7/14/2020 | Tue | 1:00 AM | 6:00 PM | Holding Room | | 1 | Castillo Fort |
| 7/14/2020 | Tue | 1:00 AM | 6:00 PM | Team Meeting 6 | | 1 | St. George #112 |
| 7/14/2020 | Tue | 1:00 AM | 6:00 PM | Team Meeting 5 | | 1 | St. George #114 |
| 7/14/2020 | Tue | 1:00 AM | 6:00 PM | Team Meeting 4 | | 1 | St. George #108 |
| 7/14/2020 | Tue | 1:00 AM | 6:00 PM | Team Meeting 3 | | 1 | St. George #106 |
| 7/14/2020 | Tue | 1:00 AM | 6:00 PM | Team Meeting 2 | | 1 | St. George #104 |
| 7/14/2020 | Tue | 1:00 AM | 6:00 PM | Holding Room | | 1 | Hemingway Boardroom |
| 7/14/2020 | Tue | 1:00 AM | 6:00 PM | Holding Room | | 1 | Sanchez Boardroom |
| 7/14/2020 | Tue | 1:00 AM | 10:00 PM | Team Meeting 7 | | 1 | Orange Blossom Ballroom |
| 7/14/2020 | Tue | 1:00 AM | 11:45 PM | Holding Room | | 1 | Emerald 4 |
| 7/14/2020 | Tue | 1:00 AM | 11:45 PM | Holding Room | | 1 | Emerald 5 |
| 7/14/2020 | Tue | 1:00 AM | 11:45 PM | Holding Room | | 1 | Emerald 6 |
| 7/14/2020 | Tue | 1:00 AM | 11:45 PM | Holding Room | | 1 | Emerald 7 |
| 7/14/2020 | Tue | 1:00 AM | 11:45 PM | Holding Room | | 1 | Emerald 8 |
| 7/14/2020 | Tue | 1:00 AM | 11:45 PM | Holding Room | | 1 | Emerald Patio |
| 7/14/2020 | Tue | 1:00 AM | 11:45 PM | Hold 4 | | 1 | Miami |
| 7/14/2020 | Tue | 1:00 AM | 11:45 PM | Hold 5 | | 1 | Sanibel |
| 7/14/2020 | Tue | 1:00 AM | 11:45 PM | Hold 7 | | 1 | Flagler |
| 7/14/2020 | Tue | 1:00 AM | 11:45 PM | Hold for growth | | 1 | Exhibit Hall A |
| 7/14/2020 | Tue | 1:00 AM | 11:45 PM | Holding Room | | 1 | Emerald Bay Plaza |
| 7/14/2020 | Tue | 1:00 AM | 11:45 PM | Holding Room | | 1 | Emerald 1 |

**Marriott Confidential and Proprietary Information**

The contents of this material are confidential and proprietary to Marriott International, Inc. and are not to be reproduced, disclosed, distributed or used without the expressed permission of an authorized representative of Marriott. Any other use is expressly prohibited.



GAYLORD PALMS
RESORT & CONVENTION CENTER
*Florida*

| Date | Day | Start | End | Function | Setup | # Ppl | Function Space |
|------|-----|-------|-----|----------|-------|-------|----------------|
| 7/14/2020 | Tue | 1:00 AM | 11:45 PM | Breakout 5 | Conference | 20 | Gainesville 1 |
| 7/14/2020 | Tue | 1:00 AM | 11:45 PM | Breakout 12 | Schoolroom | 20 | Tampa 1 |
| 7/14/2020 | Tue | 1:00 AM | 11:45 PM | Breakout 9 | Schoolroom | 20 | Sarasota 1 |
| 7/14/2020 | Tue | 1:00 AM | 11:45 PM | Breakout 1 | Theatre | 500 | Sun B |
| 7/14/2020 | Tue | 1:00 AM | 11:45 PM | Breakout 3 | Theatre | 300 | Sun D |
| 7/14/2020 | Tue | 1:00 AM | 11:45 PM | Breakout 2 | Theatre | 300 | Sun C |
| 7/14/2020 | Tue | 1:00 AM | 11:45 PM | Breakout 4 | Lounge | 200 | Sun 1-6 |
| 7/14/2020 | Tue | 1:00 AM | 11:45 PM | Breakout 6 | Conference | 20 | Gainesville 2 |
| 7/14/2020 | Tue | 1:00 AM | 11:45 PM | Breakout 13 | Schoolroom | 20 | Tampa 2 |
| 7/14/2020 | Tue | 1:00 AM | 11:45 PM | Breakout 14 | Schoolroom | 20 | Tampa 3 |
| 7/14/2020 | Tue | 1:00 AM | 11:45 PM | Breakout 7 | Conference | 20 | Destin 1 |
| 7/14/2020 | Tue | 1:00 AM | 11:45 PM | Breakout 10 | Schoolroom | 20 | Sarasota 2 |
| 7/14/2020 | Tue | 1:00 AM | 11:45 PM | General Session | Schoolroom | 3,500 | Osceola Ballroom/Stage |
| 7/14/2020 | Tue | 1:00 AM | 11:45 PM | Breakout 11 | Schoolroom | 20 | Sarasota 3 |
| 7/14/2020 | Tue | 1:00 AM | 11:45 PM | Breakout 8 | Conference | 20 | Destin 2 |
| 7/14/2020 | Tue | 1:00 AM | 11:45 PM | Office | Office | 1 | Vero |
| 7/14/2020 | Tue | 1:00 AM | 11:45 PM | Speaker Room | Lounge | 20 | Naples |
| 7/14/2020 | Tue | 1:00 AM | 11:45 PM | Hold 6 | | 1 | Tallahassee |
| 7/14/2020 | Tue | 1:00 AM | 11:45 PM | Hold 1 | | 1 | Sun A |
| 7/14/2020 | Tue | 1:00 AM | 11:45 PM | Holding Room | | 1 | Emerald 2 |
| 7/14/2020 | Tue | 1:00 AM | 11:45 PM | Holding Room | | 1 | Emerald 3 |
| 7/14/2020 | Tue | 9:00 AM | 11:45 PM | Registration Break | Roll-in | 2,000 | Coquina Lawn |
| 7/14/2020 | Tue | 11:00 AM | 12:00 PM | Lunch | Schoolroom | 3,650 | Osceola Ballroom/Stage |
| | | | | **Wednesday** | | | |
| 7/15/2020 | Wed | 1:00 AM | 3:00 PM | Hold for growth | | 1 | Exhibit Hall A |
| 7/15/2020 | Wed | 1:00 AM | 5:00 PM | Hold 7 | | 1 | Flagler |
| 7/15/2020 | Wed | 1:00 AM | 6:00 PM | Holding Room | | 1 | Emerald 5 |
| 7/15/2020 | Wed | 1:00 AM | 6:00 PM | Holding Room | | 1 | Emerald 6 |
| 7/15/2020 | Wed | 1:00 AM | 6:00 PM | Holding Room | | 1 | Emerald 7 |
| 7/15/2020 | Wed | 1:00 AM | 6:00 PM | Holding Room | | 1 | Emerald 8 |
| 7/15/2020 | Wed | 1:00 AM | 6:00 PM | Breakout 7 | Conference | 20 | Destin 1 |
| 7/15/2020 | Wed | 1:00 AM | 6:00 PM | Breakout 10 | Schoolroom | 20 | Sarasota 2 |
| 7/15/2020 | Wed | 1:00 AM | 6:00 PM | Breakout 11 | Schoolroom | 20 | Sarasota 3 |
| 7/15/2020 | Wed | 1:00 AM | 6:00 PM | Holding Room | | 1 | Emerald 3 |
| 7/15/2020 | Wed | 1:00 AM | 6:00 PM | Breakout 8 | Conference | 20 | Destin 2 |
| 7/15/2020 | Wed | 1:00 AM | 6:00 PM | Breakout 9 | Schoolroom | 20 | Sarasota 1 |
| 7/15/2020 | Wed | 1:00 AM | 6:00 PM | Speaker Room | Lounge | 20 | Naples |
| 7/15/2020 | Wed | 1:00 AM | 6:00 PM | Holding Room | | 1 | Emerald Bay Plaza |

### Marriott Confidential and Proprietary Information

The contents of this material are confidential and proprietary to Marriott International, Inc. and are not to be reproduced, disclosed, distributed or used without the expressed permission of an authorized representative of Marriott. Any other use is expressly prohibited.





GAYLORD PALMS™
RESORT & CONVENTION CENTER
*Florida*

| Date | Day | Start | End | Function | Setup | # Ppl | Function Space |
|------|-----|-------|-----|----------|-------|-------|----------------|
| 7/15/2020 | Wed | 1:00 AM | 6:00 PM | Holding Room | | 1 | Emerald 1 |
| 7/15/2020 | Wed | 1:00 AM | 6:00 PM | Holding Room | | 1 | Emerald 2 |
| 7/15/2020 | Wed | 1:00 AM | 6:00 PM | Holding Room | | 1 | Emerald 4 |
| 7/15/2020 | Wed | 1:00 AM | 6:00 PM | Holding Room | | 1 | Emerald Patio |
| 7/15/2020 | Wed | 1:00 AM | 11:45 PM | Hold 1 | | 1 | Sun A |
| 7/15/2020 | Wed | 1:00 AM | 11:45 PM | Breakout 13 | Schoolroom | 20 | Tampa 2 |
| 7/15/2020 | Wed | 1:00 AM | 11:45 PM | Breakout 14 | Schoolroom | 20 | Tampa 3 |
| 7/15/2020 | Wed | 1:00 AM | 11:45 PM | Breakout 12 | Schoolroom | 20 | Tampa 1 |
| 7/15/2020 | Wed | 1:00 AM | 11:45 PM | Office | Office | 1 | Vero |
| 7/15/2020 | Wed | 1:00 AM | 11:45 PM | Hold 6 | | 1 | Tallahassee |
| 7/15/2020 | Wed | 1:00 AM | 11:45 PM | General Session | Schoolroom | 3,500 | Osceola Ballroom/Stage |
| 7/15/2020 | Wed | 1:00 AM | 11:45 PM | Hold 5 | | 1 | Sanibel |
| 7/15/2020 | Wed | 1:00 AM | 11:45 PM | Breakout 1 | Theatre | 500 | Sun B |
| 7/15/2020 | Wed | 9:00 AM | 5:00 PM | Registration Break | Roll-in | 2,000 | Coquina Lawn |
| 7/15/2020 | Wed | 11:00 AM | 12:00 PM | Lunch | Schoolroom | 3,650 | Osceola Ballroom/Stage |
| **Thursday** | | | | | | | |
| 7/16/2020 | Thu | 1:00 AM | 12:00 PM | Office | Office | 1 | Vero |

3. **Cancellation Policy**: should group cancel the July 10-15, 2020 conference, the calculation will be based upon the original contracted room block and F&B minimum.

4. **Additional Impossibility Language:**
Should the federal agency responsible for public health, emergency preparedness and infectious disease control and prevention in the country where the hotel is located (i.e., the Centers for Disease Control and Prevention in the U.S. or the Public Health Agency of Canada) issue a travel advisory, notice, or warning at any time within the 30 day period prior to the first arrival date of the Event that specifically advises travelers to avoid all non-essential travel to the specific city in which the Hotel is located, and should Group have suspended all of its business operations in the city where the Hotel is located or, if Group has no business operations in the city where the Hotel is located, has otherwise recommended that its attendees not travel to the city for any non-essential reason, then Group may contact the Hotel in order for the parties to engage in discussions regarding the scope of the advisory, notice, or warning. The parties agree to negotiate in good faith to resolve any concerns raised as a result of the advisory, notice, or warning and to enter into such amendments of this Agreement as may be necessary to reasonably accommodate both parties' interests (such as an adjustment to the performance (attrition) clauses of this Agreement or the addition of a re-book clause to the Agreement).

## Marriott Confidential and Proprietary Information

The contents of this material are confidential and proprietary to Marriott International, Inc. and are not to be reproduced, disclosed, distributed or used without the expressed permission of an authorized representative of Marriott. Any other use is expressly prohibited.



**GAYLORD PALMS**

RESORT & CONVENTION CENTER

*Florida*

5.  **Other Terms.** The terms and provisions set forth in this Amendment shall modify and supersede all inconsistent terms and provisions set forth in the Agreement, and, except as expressly modified and superseded by this Amendment, the terms and provisions of the Agreement are ratified and confirmed and shall continue in full force and effect. The parties hereto agree that the Agreement, as amended hereby, shall continue to be legal, valid, binding and enforceable in accordance with its terms. This Amendment may be executed simultaneously in one or more counterparts and/or by facsimile.

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be entered into as of the date first set out above by themselves or their duly authorized representatives. To signify your approval, please sign a copy of this letter and return by **April 3, 2020** to bchandler@gaylordhotels.com.

**RAMSEY SOLUTIONS**

Name (Print): Joe Leavilt

Title: Dir Event Productions

Signature: _____

Date: 4/2/2020

**GAYLORD PALMS RESORT**

Name (Print): Britney Chandler

Title: Senior Sales Executive

Signature: *Britney Chandler*

Date: 4/2/2020

**Marriott Confidential and Proprietary Information**

The contents of this material are confidential and proprietary to Marriott International, Inc. and are not to be reproduced, disclosed, distributed or used without the expressed permission of an authorized representative of Marriott. Any other use is expressly prohibited.

# EXHIBIT E



GAYLORD
TEXAN®

**AGREEMENT BETWEEN**
**Ramsey Solutions**
**and**
**Gaylord Texan Resort & Convention Center**

GROUP SALES AGREEMENT

## DESCRIPTION OF GROUP AND EVENT

The following represents an agreement between Gaylord Texan Resort & Convention Center, 1501 Gaylord Trail, Grapevine, TX, 76051, (817) 778-1000 and Ramsey Solutions.

ORGANIZATION:     **Ramsey Solutions**
CONTACT:

| | |
|---|---|
| Name: | Joe Leavitt |
| Job Title: | Director of Event Production |
| Street Address: | 1749 Mallory Lane |
| City, State, Postal Code: | Brentwood, TN |
| Country: | USA |
| Phone Number: | (877) 410-3283  x5503 |
| E-mail Address: | joel@daveramsey.com |

NAME OF EVENT:          **Ramsey Solutions EntreLeadership Summit May 2021**
REFERENCE #:             M-A3D9XGL
OFFICIAL PROGRAM DATES:  Friday, May 14, 2021 – Thursday, May 20, 2021
ANTICIPATED ATTENDANCE:  2,000

## GUEST SLEEPING ROOM BLOCK

The following guest sleeping rooms have been reserved for the Group on the dates set forth below (the "Room Block") for the Ramsey Solutions EntreLeadership Summit - 2021 (the "Event"):

| Room Type | Fri 5/14/21 | Sat 5/15/21 | Sun 5/16/21 | Mon 5/17/21 | Tues 5/18/21 | Wed 5/19/21 | Total |
|---|---|---|---|---|---|---|---|
| Run of House | - | 53 | 1,129 | 1,129 | 1,129 | 360 | 3,800 |
| Executive Suite | - | 5 | 30 | 30 | 30 | 30 | 125 |
| Deluxe Suite | - | 5 | 30 | 30 | 30 | 30 | 125 |
| Presidential Suite | - | 6 | 6 | 6 | 6 | 6 | 30 |
| Lone Star Tower | - | 20 | 200 | 200 | 200 | 50 | 670 |
| Staff | 20 | 41 | 80 | 80 | 80 | 80 | 381 |
| Total | 20 | 130 | 1,475 | 1,475 | 1,475 | 556 | 5,131 |

We will reserve the room block noted above until **Friday, December 22, 2017.** Due to the very high demand we anticipate over these dates, the Hotel reserves the right to release your first option if we have not received the signed copies of the Agreement verifying confirmation by this time. In the event we have a definite request for these dates prior to your option date, we will contact you for a decision. You will have one (1) business day to either return the signed contract, or release the option.

1501 Gaylord Trail – Grapevine, TX, 76051 – Telephone (817) 778-1000

GROUP ROOM RATES
The confirmed net, non-commissionable per night room rate for the 2021 Event will be:

| | |
|---|---|
| Single/double/triple/quad occupancy rooms: | $239.00 |
| Staff: | $143.40 |
| Lone Star Tower: | $279.00 |
| Executive Suites: | $625.00 |
| Deluxe Suites: | $850.00 |
| Presidential Suites: | $2500.00 |

Applicable taxes will be added to room rates (currently 13% occupancy tax).

Subject to availability, Group rates will apply three (3) days prior to, and three (3) days following, the dates of the Event. Children twelve (12) years and under are free when occupying the same room as their parents.

RESORT FEE
The prevailing daily resort fee, currently $20.00 plus applicable tax, will be added to the guest room rate. This fee will cover several in-room amenities which will include:

- Wired and wireless high-speed internet access
- Fitness Center, and resort pools access
- Two bottles of water a day
- Discounted individual transportation service, City of Grapevine Shuttle
- Complimentary access to Glass Cactus Nightclub for two, open Fri- Sat only, ages 21 and up
- Local (817) phone calls
- Domestic long distance phone calls
- Complimentary access to Paradise Springs for four guests with standard room, and 6 guests with a suite. Open seasonally only from Memorial Day to Labor Day

The above resort fee is subject to applicable tax which is currently thirteen percent (13%) and is subject to change without notice.

Please note that the parking fee is currently $22.00 for self-parking and $31.00 for valet parking plus applicable tax, currently 8.25%.

REWARDS PROGRAM - REWARDING EVENTS
Approximately (10) business days after the conclusion of the Event (provided that the Event is not cancelled and Ramsey Solutions has otherwise complied with the material terms and conditions of this Agreement), the Hotel will either award Points or submit an award for airline miles to the Member(s) identified below:

Rewarding Events does not apply to Events booked by or on behalf of any governmental entity, including any federal, state or local agency or any other governmental body, and hotels may not award Points or airline miles to a government employee (or an intermediary booking on behalf of a governmental entity) in connection with planning, scheduling or contracting for an Event.

CHECK ONE OPTION BELOW:

☐ Award Points to the Contact (as identified on page 1 of this Agreement or the Authorized Signer of this Agreement)
Member Name _____
Rewards Program Member Number _____

☐ Award Airline Miles to the Contact (as identified on page 1 of this Agreement or the Authorized Signer of this Agreement)
Member Name _____

Rewards Program Member Number _____
Airline frequent flier account number _____
Name of airline _____

☐ **Decline to Award Points or Airline Miles.** The Contact and the Authorized Signer of this Agreement elect not to receive (and hereby waive the right to receive) an award of Points or airline miles in connection with the Event.

The number of Points or airline miles to be awarded shall be determined pursuant to the Rewards Program Terms and Conditions, as in effect at the time of award. The Rewards Program Terms and Conditions are available on-line at marriottrewards.com, and may be changed at the sole discretion of the Rewards Program at any time and without notice.

The individual(s) identified above to receive either Points or airline miles may not be changed without such individual(s)' prior written consent. By inserting the airline mileage account information, the recipient elects to receive airline miles rather than Points. All Rewards Program Terms and Conditions apply.

## RESERVATIONS PROCEDURE
Please indicate which of the following procedures will be used by your group:

____X____ Individual Reservations for the Event will be made by individual attendees directly with Marriott reservations at (817) 778-2000.

____X____ Rooming List. STAFF & VIP

At the Group's request, Hotel's transient in-house guest list will be compared with the Group's registration list. Any guest room occupied by an individual on Group's registration list, but not coded to Group within Hotel's system, will be credited to Group's final pickup.

If names are found on the Group's registration list and on the Hotel's transient in-house list that are not coded to the group, they shall be credited to the Group hotel pickup (regardless of room rate). This credit may increase the Group pickup as well as possibly increasing the complimentary credits earned.

Hotel will provide Group a weekly guestroom pick-up report starting 45 days prior to the established cut-off date.

## GROUPMAX SYSTEM/PASSKEY - HOUSING OPTION
Gaylord Texan Resort & Convention Center currently offers you the services of GroupMax/Passkey – an online group reservation management solution that allows meeting planners a 24-hour real-time visibility into room pickup, registration activity, and more. We can also create a custom web page for your group that allows attendees to book rooms, request special services and make last-minute changes, all maintained in a centralized database accessible only to the hotel and the meeting planner.

Passkey is currently available on a complimentary basis. Ask your Sales or Event Manager at Gaylord Texan Resort & Convention Center for more information on this exciting technology.

## GUARANTEED RESERVATIONS
All reservations must be accompanied by a first night room deposit or be guaranteed by Ramsey Solutions. Hotel will not hold any reservations unless secured by one of the above methods. Credit cards will be charged prior to arrival.

If rooms are not guaranteed to the Group's master account, a deposit equal to one night's stay is required to hold each individual's reservation. Should a guest cancel a reservation, the deposit will be refunded if notice is received at least three (3) working days prior to arrival, and a cancellation number is obtained.

## NO ROOM TRANSFER BY GUEST

RS0000305

Ramsey Solutions agrees that neither Ramsey Solutions nor attendees of the Event nor any intermediary shall be permitted to assign any rights or obligations under this Group Sales Agreement, or to resell or otherwise transfer to persons not associated with Ramsey Solutions reservations for guestrooms, meeting rooms or any other facilities made pursuant to this Group Sales Agreement.

## CUTOFF DATE

Reservations by attendees must be received on or before, **Friday, April 23, 2021** (the "Cutoff Date"). At the Cutoff Date, Hotel will review the reservation pickup for the Event, release the unreserved rooms for general sale, and determine whether it can accept reservations based on a space- and rate-available basis at the Ramsey Solutions group rate after this date.

Release of rooms for general sale following the Cutoff Date does not affect Ramsey Solutions' obligation, as discussed elsewhere in this Agreement, to utilize guest rooms.

## CHECK-OUT TIME

Check-in time is 4:00 p.m. local time. Check-out time is 11:00 a.m. local time. Anyone checking out after 11:00 a.m. local time may incur late charges. Special arrangements can be made for late check-outs based on availability, and/or luggage can be stored for individuals with later departures.

## COMPLIMENTARY POLICY

We are pleased to extend to your group one complimentary single room (1) per every 45 rooms utilized at the group rate during your meeting. Any rooms with rates discounted below the group rate will not be calculated in the complimentary allotment. This number is determined by the actual rooms occupied by your group on a cumulative basis divided by 45.

The following suites have a value of more than one unit:

| | |
|---|---|
| Presidential Suite | - 6 room nights |
| Deluxe Suite | - 4 room nights |
| Executive Suite | - 3 room nights |

## SPECIAL INCENTIVES

Provided that the Group utilizes 80% of the Room Block, we are pleased to provide, as special added incentives, the following:

- One (1) Complimentary GRAND Presidential Suite will be reserved for Dave Ramsey over the meeting dates
- Five (5) Presidential Suite upgrades at Negotiated group rate (noted in room block grid)
- Thirty (30) Deluxe Suites upgrades will be offered at group rate for VIPs/Speakers (noted in room block grid)
- Thirty (30) Executive Suites upgrades will be offered at group rate for VIPs/Speakers (noted in room block grid)
- Twenty (20) Celebrity Services Status, for designated recipients (some will be modified)
- 200 Lone Star Tower Rooms per night at $279.00 (noted in room block grid)
- Up to 80 Staff Rooms at a discounted rate of $143.40 (40% off group rate), as outlined in the room block grid
- Complimentary valet for up to 20 staff members
- Complimentary VIP round trip airport transfers from DFW International or Dallas Love Field for up to 10 speakers/VIPs
- Complimentary AM/PM Office breaks for up to 20 staff members
- $5,000.00 flat fee for power requirements (NOT including service charge or labor)
- Wi-Fi Package $65,000.00 (Plus Tax & Service Charge):
  - 200 Mbps Dedicated Bandwidth, to be allocated across up to 3 VLANs / SSIDs
  - Up to 30 Static IP Addresses
  - Up to 20 Wired Drops

- Access to in house lighting in General Session complimentary (Value $780.00++ per day)
- Ten Percent (10%) Discount off current year banquet menu pricing (does not apply to custom menus, minimum must be met after discount is applied)
- Pre-Planning Visits – up to 20 room nights (additional at Staff Rate) based on availability. To include office, valet parking, airport transfers and Food & Beverage needs
- Audio-Visual Discount – PSAV): Hotel will offer a 40 % discount off prevailing published pricing guidelines for PSAV in-house inventory of equipment (excludes labor, rigging, truss, Event Technology Support (service charges), consumables, sales tax and shipping/delivery charges) if PSAV is selected as the sole provider for all AV Equipment & Services. If PSAV is not selected as the sole provider then all AV Equipment will be charged at a sliding scale. If total spend of audiovisual equipment and labor before discount and tax is:
    o $0 to $40,000 then a 10% discount will be applied to audiovisual equipment
    o $40,001 to $75,000 then a 15% discount will be applied to audiovisual equipment
    o $75,001 + then a 20% discount will be applied to audiovisual equipment. This discounting does not apply to consumables, labor, rigging, truss and Event Technology Support Fee (service charge).
- Credit to Master for 25% the value of Rigging motors and truss (excluding tax and service charge) Custom Rigging Package to be provided. PSAV is the exclusive provider of all rigging equipment, rigging & truss labor and truss equipment. Rigging equipment includes but is not limited to motors, points, cabling and truss.
- Complimentary corkage fee on Entre branded water bottles on main arrival registration day at Registration Desk location.
- $2.00++ corkage fee on Entre Branded Water Bottles on beverage stations during sessions, Am/Pm breaks and meal functions.
- Complimentary storage of up to seven pallets no more than five days prior to event
- Complimentary access to one in room channel
- Complimentary marketing Fees up to $50,000.00 (not including production or labor)
- Three (3) -Three nights stays to be used at our discretion (could be used as marketing incentives, contesting, etc.). To include:
    o Complimentary Deluxe Suite for three (3) nights
    o Celebrity Status
    o Complimentary Round trip airport transfer
    o Complimentary Welcome Amenity
    o Two (2) Rounds of Golf
    o One (1) Relache Spa treatment each for two (2) people - per gift certificate- total of two(2) treatments per certificate
    o Dinner for two (2) at Old Hickory Steakhouse

TWO YEAR MULTI-YEAR CONCESSION PACKAGE
(ADD ON Gaylord Rockies or Gaylord Texan by December 22, 2017)
- ALL Single Year Concessions
- 15% Discount (instead of 10% in single year) on current year banquet menu (minimum must be met after discount is applied, discount not available on custom menus)
- $25,000.00 Master Account credit toward (1) Catered Function

THREE YEAR MULTI-YEAR CONCESSION PACKAGE
(ADD ON Gaylord Rockies or Gaylord Texan by December 22, 2017)
- All Single and Two Year Concessions
- ALL MARKETING FEES WAIVED

In the event of reductions in the room night commitment of more than 20% the hotel may adjust any concessions previously offered in this agreement, including concessions offered on a complimentary basis, and may also adjust the functions space in direct proportion to the reduction in the room night commitment.

### DEPOSITS

Seventy-five percent (75%) of the anticipated Group expenditures to be master billed, including all food and beverage charges, is due thirty (30) days prior to arrival. Until this pre-payment is made, the Hotel reserves the right to withhold any or all the services hereunder agreed to.

### MASTER ACCOUNT

Hotel must be notified in writing at least 10 days prior to arrival of the authorized signatories and the charges that are to be posted to the Master Account. Any cancellation or attrition fees will be billed to the Master Account.

### METHOD OF PAYMENT

The method of payment of the Master Account will be established upon approval of Ramsey Solutions' credit. If credit is approved, the outstanding balance of Ramsey Solutions Master Account (less any advance deposits and exclusive of disputed charges) will be due and payable upon receipt of invoice.

Ramsey Solutions will raise any disputed charge(s) within 10 days after receipt of the invoice. The Hotel will work with Ramsey Solutions in resolving any such disputed charges, the payment of which will be due upon receipt of invoice after resolution of the dispute. If payment of any invoice is not received within thirty (30) days of the date on which it was due, Hotel will impose a finance charge at the rate of the lesser of 1-1/2% per month (18% annual rate) or the maximum allowed by law on the unpaid balance commencing on the invoice date.

Ramsey Solutions has indicated that it has elected to use the following form of payment:

[ ] Cash, money order, or other guaranteed form of payment
[ ] Credit card (We accept all major credit cards)
[ ] Company check or Electronic Funds Transfer
[X] Direct Bill

Ramsey Solutions may not change this form of payment.

In the event that credit is not approved, Ramsey Solutions agrees to pay an advance deposit in an amount to be determined by the Hotel in its reasonable discretion, with the full amount due prior to the start of the group's event.

Please indicate which of the following will be billed to your master account

Room and tax (Entire group) _____
Rooms and tax (VIPS and staff) __X__
Authorized Food and Beverage __X__
Incidental Charges VIP /STAFF __X__
Standard Gratuities __X__

### PROGRAM

We have reserved space for your meeting and social functions based on our understanding of your needs at this time, as set forth in the attached Program Schedule attached hereto and incorporated herein. Your execution of the Agreement will serve as your approval of the attached program schedule.

Provided that you utilize at least 80% of the Room Block, such meeting space will be provided complimentary.

We reserve the right to adjust the assignment of the Group's meeting and function space to a size appropriate for the number of expected attendees at each function.

Group will work with hotel at One (1) year before the groups arrival date to identify any potential unused space over event dates.

Sixty (60) days before the Group's arrival date, your Convention Services team must receive the Group's final agenda. At that time, all space unused by your group will be released back into the hotel's inventory. Any space

additional and/or changes to the agenda within 60 days will continue to be based on availability, and may incur additional room rental. Ramsey Solutions EntreLeadership Summit 2021.

| Date | Day | Start Time | End Time | Post As/Signage | Function Space | Set-Up Style | Expected |
|---|---|---|---|---|---|---|---|
| 5/15/2021 | Sat | 6:00 AM | 11:45 PM | Office | Dallas 1-2 | Special | 1 |
| 5/15/2021 | Sat | 6:00 AM | 11:45 PM | Storage | Dallas 5-7 | Storage | 1 |
| 5/15/2021 | Sat | 8:00 AM | 11:45 PM | General Session Set Up | Texas Ballroom | Schoolroom | 2,000 |
| 5/16/2021 | Sun | 1:00 AM | 11:45 PM | Storage | Dallas 5-7 | Storage | 1 |
| 5/16/2021 | Sun | 1:00 AM | 11:45 PM | Office | Dallas 1-2 | Special | 1 |
| 5/16/2021 | Sun | 1:00 AM | 11:45 PM | General Session Set Up | Texas Ballroom | Schoolroom | 2,000 |
| 5/16/2021 | Sun | 6:00 AM | 11:45 PM | Speaker Room | Dallas 3-4 | Special | 1 |
| 5/16/2021 | Sun | 7:00 AM | 11:45 PM | 24 Hour Hold | Texas Prefunction AC | | 1 |
| 5/16/2021 | Sun | 8:00 AM | 5:00 PM | Coffee Break | Texas Prefunction AC | Roll-In | 1,500 |
| 5/16/2021 | Sun | 5:30 PM | 7:30 PM | Dessert Reception | Texas Prefunction AC | Cocktail Rounds | 2,000 |
| 5/16/2021 | Sun | 6:00 PM | 11:45 PM | Registration | Center Prefunction | Registration | 2,000 |
| 5/17/2021 | Mon | 1:00 AM | 11:45 PM | General Session | Texas Ballroom | Schoolroom | 2,000 |
| 5/17/2021 | Mon | 1:00 AM | 11:45 PM | Speaker Room | Dallas 3-4 | Special | 1 |
| 5/17/2021 | Mon | 1:00 AM | 11:45 PM | Storage | Dallas 5-7 | Storage | 1 |
| 5/17/2021 | Mon | 1:00 AM | 11:45 PM | Office | Dallas 1-2 | Special | 1 |
| 5/17/2021 | Mon | 1:00 AM | 11:45 PM | Registration | Center Prefunction | Registration | 2,000 |
| 5/17/2021 | Mon | 1:00 AM | 11:45 PM | 24 Hour Hold | Texas Prefunction AC | | 1 |
| 5/17/2021 | Mon | 8:00 AM | 5:00 PM | Coffee Break | Texas Prefunction AC | Roll-In | 1,500 |
| 5/17/2021 | Mon | 6:00 AM | 11:45 PM | VIP Lounge | Grapevine 1-6 | Special | 200 |
| 5/17/2021 | Mon | 6:00 AM | 11:45 PM | Breakout | Grapevine A, B | Theatre | 500 |
| 5/17/2021 | Mon | 6:00 AM | 11:45 PM | Breakout | Grapevine C | Theatre | 300 |
| 5/17/2021 | Mon | 6:00 AM | 11:45 PM | Breakout | Grapevine D | Theatre | 300 |
| 5/17/2021 | Mon | 6:00 AM | 11:45 PM | Breakout | San Antonio 3 | Conference | 10 |
| 5/17/2021 | Mon | 6:00 AM | 11:45 PM | Breakout | San Antonio 4 | Conference | 10 |
| 5/17/2021 | Mon | 6:00 AM | 11:45 PM | Breakout | Austin 3 | Conference | 10 |
| 5/17/2021 | Mon | 6:00 AM | 11:45 PM | Breakout | Austin 4 | Conference | 10 |
| 5/17/2021 | Mon | 6:00 AM | 11:45 PM | Breakout | Ft. Worth 7 | Conference | 10 |
| 5/17/2021 | Mon | 6:00 AM | 11:45 PM | Breakout | Ft. Worth 5-6 | Schoolroom | 20 |
| 5/17/2021 | Mon | 6:00 AM | 11:45 PM | Breakout | San Antonio 1-2 | Schoolroom | 20 |
| 5/17/2021 | Mon | 6:00 AM | 11:45 PM | Breakout | San Antonio 5-6 | Schoolroom | 20 |
| 5/17/2021 | Mon | 6:00 AM | 11:45 PM | Breakout | Austin 1-2 | Schoolroom | 20 |

RS000309

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5/17/2021 | Mon | 6:00 AM | 11:45 PM | Breakout | Austin 5-6 | Schoolroom | 20 |
| 5/17/2021 | Mon | 8:00 AM | 11:45 PM | 24 Hour Hold | Longhorn Hall F | | 1 |
| 5/17/2021 | Mon | 12:00 PM | 1:00 PM | Lunch | Longhorn Hall F | Rounds of 10 | 2,000 |
| 5/17/2021 | Mon | 6:00 PM | 11:45 PM | VIP Reception | Glass Cactus | Special | 1 |
| 5/18/2021 | Tue | 1:00 AM | 11:45 PM | General Session | Texas Ballroom | Schoolroom | 2,000 |
| 5/18/2021 | Tue | 1:00 AM | 11:45 PM | VIP Lounge | Grapevine 1-6 | Special | 200 |
| 5/18/2021 | Tue | 6:00 PM | 9:00 PM | VIP Reception | Grapevine 1-6 | Cocktail Rounds | 250 |
| 5/18/2021 | Tue | 1:00 AM | 11:45 PM | Breakout | Grapevine A, B | Theatre | 500 |
| 5/18/2021 | Tue | 1:00 AM | 11:45 PM | Speaker Room | Dallas 3-4 | Special | 1 |
| 5/18/2021 | Tue | 1:00 AM | 11:45 PM | Storage | Dallas 5-7 | Storage | 1 |
| 5/18/2021 | Tue | 1:00 AM | 11:45 PM | Office | Dallas 1-2 | Special | 1 |
| 5/18/2021 | Tue | 1:00 AM | 11:45 PM | Breakout | Grapevine C | Theatre | 300 |
| 5/18/2021 | Tue | 1:00 AM | 11:45 PM | Breakout | Grapevine D | Theatre | 300 |
| 5/18/2021 | Tue | 1:00 AM | 11:45 PM | Breakout | San Antonio 3 | Conference | 10 |
| 5/18/2021 | Tue | 1:00 AM | 11:45 PM | Breakout | San Antonio 4 | Conference | 10 |
| 5/18/2021 | Tue | 1:00 AM | 11:45 PM | Breakout | Austin 3 | Conference | 10 |
| 5/18/2021 | Tue | 1:00 AM | 11:45 PM | Breakout | Austin 4 | Conference | 10 |
| 5/18/2021 | Tue | 1:00 AM | 11:45 PM | Breakout | Ft. Worth 7 | Conference | 10 |
| 5/18/2021 | Tue | 1:00 AM | 11:45 PM | Breakout | San Antonio 1-2 | Schoolroom | 20 |
| 5/18/2021 | Tue | 1:00 AM | 11:45 PM | Breakout | San Antonio 5-6 | Schoolroom | 20 |
| 5/18/2021 | Tue | 1:00 AM | 11:45 PM | Breakout | Austin 1-2 | Schoolroom | 20 |
| 5/18/2021 | Tue | 1:00 AM | 11:45 PM | Breakout | Austin 5-6 | Schoolroom | 20 |
| 5/18/2021 | Tue | 1:00 AM | 11:45 PM | Breakout | Ft. Worth 5-6 | Schoolroom | 20 |
| 5/18/2021 | Tue | 1:00 AM | 11:45 PM | Registration | Center Prefunction | Registration | 2,000 |
| 5/18/2021 | Tue | 1:00 AM | 11:45 PM | 24 Hour Hold | Texas Prefunction AC | | 1 |
| 5/18/2021 | Tue | 8:00 AM | 5:00 PM | Coffee Break | Texas Prefunction AC | Roll-In | 1,500 |
| 5/18/2021 | Tue | 1:00 AM | 11:45 PM | 24 Hour Hold | Longhorn Hall F | | 1 |
| 5/18/2021 | Tue | 12:00 PM | 1:00 PM | Lunch | Longhorn Hall F | Rounds of 10 | 2,000 |
| 5/19/2021 | Wed | 1:00 AM | 2:00 PM | 24 Hour Hold | Longhorn Hall F | | 1 |
| 5/19/2021 | Wed | 12:00 PM | 1:00 PM | Lunch | Longhorn Hall F | Rounds of 10 | 2,000 |
| 5/19/2021 | Wed | 1:00 AM | 5:00 PM | Registration | Center Prefunction | Registration | 2,000 |
| 5/19/2021 | Wed | 1:00 AM | 5:00 PM | 24 Hour Hold | Texas Prefunction AC | | 1 |
| 5/19/2021 | Wed | 8:00 AM | 5:00 PM | Coffee Break | Texas Prefunction AC | Roll-In | 1,500 |
| 5/19/2021 | Wed | 1:00 AM | 6:00 PM | Office | Dallas 1-2 | Special | 1 |
| 5/19/2021 | Wed | 1:00 AM | 6:00 PM | Breakout | Grapevine C | Theatre | 300 |
| 5/19/2021 | Wed | 1:00 AM | 6:00 PM | VIP Lounge | Grapevine 1-6 | Special | 200 |
| 5/19/2021 | Wed | 1:00 AM | 6:00 PM | Breakout | Grapevine A, B | Theatre | 500 |

| 5/19/2021 | Wed | 1:00 AM | 6:00 PM | Speaker Room | Dallas 3-4 | Special | 1 |
| 5/19/2021 | Wed | 1:00 AM | 6:00 PM | Storage | Dallas 5-7 | Storage | 1 |
| 5/19/2021 | Wed | 1:00 AM | 6:00 PM | Breakout | Grapevine D | Theatre | 300 |
| 5/19/2021 | Wed | 1:00 AM | 6:00 PM | Breakout | San Antonio 3 | Conference | 10 |
| 5/19/2021 | Wed | 1:00 AM | 6:00 PM | Breakout | San Antonio 4 | Conference | 10 |
| 5/19/2021 | Wed | 1:00 AM | 6:00 PM | Breakout | Austin 3 | Conference | 10 |
| 5/19/2021 | Wed | 1:00 AM | 6:00 PM | Breakout | Austin 4 | Conference | 10 |
| 5/19/2021 | Wed | 1:00 AM | 6:00 PM | Breakout | Ft. Worth 7 | Conference | 10 |
| 5/19/2021 | Wed | 1:00 AM | 6:00 PM | Breakout | San Antonio 1-2 | Schoolroom | 20 |
| 5/19/2021 | Wed | 1:00 AM | 6:00 PM | Breakout | San Antonio 5-6 | Schoolroom | 20 |
| 5/19/2021 | Wed | 1:00 AM | 6:00 PM | Breakout | Austin 1-2 | Schoolroom | 20 |
| 5/19/2021 | Wed | 1:00 AM | 6:00 PM | Breakout | Austin 5-6 | Schoolroom | 20 |
| 5/19/2021 | Wed | 1:00 AM | 6:00 PM | Breakout | Ft. Worth 5-6 | Schoolroom | 20 |
| 5/19/2021 | Wed | 1:00 AM | 8:00 PM | General Session | Texas Ballroom | Schoolroom | 2,000 |

## FOOD AND BEVERAGE PRICING; FOOD AND BEVERAGE GUARANTEE

Food and Beverage pricing for the Event will be based on prevailing market conditions at the time of the Event. Current 2017 minimum banquet prices, excluding tax and a service charge, are as follows:

| Breakfast | | Dinner | |
| --- | --- | --- | --- |
| Continental | $33 - $36 | Plated | $87 - $135 |
| Buffet | $44 - $49 | Buffet | $105 - $135 |
| | | | |
| Lunch | | Reception | |
| Plated | $48 - $56 | *Full Bar:* | |
| | | One Hour | $20 - $24 |
| Buffet | $58 | Two Hours | $32 - $36 |
| | | Three Hours | $43 - $48 |
| Box | $44 - $53 | Food | |
| | | Hor d'oeuvre & Stations | $78 - $103 | Appli

cable taxes and a service charge will be added to all food and beverage pricing. Service Charges for discounted menus will be based on retail pricing. All food and beverages served at functions associated with the Event must be provided, prepared, and served by Hotel and must be consumed on Hotel premises.

The Hotel is relying on, and the Group agrees to provide, a minimum of $700,000 (the "F&B Guarantee") plus applicable taxes and service charges. Group agrees that the food and beverage functions listed on the schedule of events are a major component of this Agreement and that the Hotel will suffer damages that will be difficult or impossible to calculate if the Event is held and the Group's actual food and beverage spend falls below the F&B Guarantee. In such event, the Group will pay the Hotel liquidated damages in an amount equal to the difference between (i) the F&B Guarantee *and* (ii) the actual total food and beverage revenue generated by the functions listed in the Event's program schedule. Group agrees that such damages are a reasonable estimate of the Hotel's actual damages and not a penalty. These liquidated damages are due within 30 days of the date such damages are incurred, and accrue interest at the rate of 1.5 percent per month (or, if less, the maximum amount permitted by law).

## Gaylord Texan is pleased to recommend:

*FREEMAN* is the world's leading provider of integrated services for face-to-face marketing. As a strategic based event partner, FREEMAN is the one source for all your exposition and convention service needs. They are conveniently located on property to assist you and your exhibitors. FREEMAN specializes in logistical solutions including exhibit booth programs, corporate events, custom carpet, furniture rental, floor plan design, digital graphic

& design production, rental displays, group registration areas, staging/plush draping and material handling services. FREEMAN can also provide strategic solutions by developing social media integration, virtual extension components and ROI measurement to insure your organization achieves its immediate goals and continues its growth into the future. For more information visit the FREEMAN website at www.freemanco.com. Contact: Beth Coffey at 407-313-5850 or 407-586-2209.

For over 50 years *PSAV Presentation Services* has specialized in the planning, production, and execution of complex presentations and events all over the world. They are one of the world's leading providers of event technology and integrated services for corporate events, conventions, exhibitions and awards shows. PSAV Presentation Services is honored to serve as the preferred in-house staging, production and audio visual services contractor and exclusive rigging services provider for Gaylord Hotels. With multiple offices and dedicated technical support on property, PSAV is positioned to properly assist you and your guests. PSAV Presentation Services is dedicated to providing a remarkable experience for event managers, exhibitors and attendees alike. For more information, please contact our in-house office at 407-586-2251.

*Hello Florida!* is a full service destination management company focused on the success of our clients. Our services include transportation, hospitality staff, customized themed events, décor and entertainment, tours and activities, teambuilding events, and access to Florida's premier venues. Our integrity, enthusiasm and commitment to excellence make us the leader in the industry today, and tomorrow. Please call Stephanie Hotchkiss at 407-586-2352 or shotchkiss@hello-florida.com for more information.

*Relâche*, our on-site resort spa, was designed with groups in mind. This 25,000-square-foot European-inspired spa features 25 massage, body and skin care treatment suites; a full-service salon; and a complete fitness center. Feel free to contact our Spa Sales Manager at (407) 586-4772, for more information about the range of services offered, including fitness breaks during your meetings.

AFFILIATE GROUPS

So that we may accommodate any groups that are meeting in conjunction with your convention, please indicate which of the following procedures will be used by your group:

Approximate number of affiliate groups anticipated: _____

_____✗_____ Approval must go through headquarters for function space.
_____ Notify headquarters of affiliate group, but prior approval of space is not required.
_____ Headquarters does not require any knowledge of any affiliate group.

Charges for function space required for affiliate groups will be negotiated at such time as space is requested.

PERFORMANCE CLAUSE

It is understood that the booking of Gaylord Texan for Ramsey Solutions EntreLeadership Summit May 2021 is part of the following multiple bookings with Gaylord Hotels (each, a "Prior Event"): Ramsey Solutions EntreLeadership Summit May 2020 at Gaylord Palms and Ramsey Solutions EntreLeadership Summit May 2022 at Gaylord Rockies. Ramsey Solutions will have the right to cancel this Agreement without liability in the event of the following: (i) if, within thirty (30) days following the last day of the Prior Event, Ramsey Solutions gives written notice to Gaylord Hotels detailing material service or performance issues by Gaylord Hotels at the Prior Event; and (ii) the Hotel does not propose and implement a plan addressing the issues raised in Ramsey Solutions notice.

ATTRITION

Hotel is relying upon Group's use of the Room Night Commitment. Group agrees that a loss will be incurred by Hotel if Group's actual usage is less than 80% of the Room Night Commitment.

If Group's actual usage is less than 80% of the Room Night Commitment, Group agrees to pay, as liquidated damages and not as a penalty, the difference between 80% of the Room Night Commitment and Group's actual

RS000312

usage, multiplied by the average group room rate, plus applicable taxes.

**CANCELLATION POLICY**
Group agrees that it bears responsibility for payment for the Room Block and the F&B Guarantee. Group also agrees that the Hotel will suffer actual harm that will be difficult to determine if the Group cancels this Agreement after the date hereof for reasons other than those specified in this Agreement. The Group will pay as liquidated damages to the Hotel, depending upon the timing of such cancellation, the following amounts, as a reasonable estimate of harm to Hotel for the cancellation:

**CANCELLATION POLICY**
Group agrees that it bears responsibility for payment for the Room Block and the F&B Guarantee. Group also agrees that the Hotel will suffer actual harm that will be difficult to determine if the Group cancels this Agreement after the date hereof for reasons other than those specified in this Agreement. The Group will pay as liquidated damages to the Hotel, depending upon the timing of such cancellation, the following amounts, as a reasonable estimate of harm to Hotel for the cancellation:

| Time Period of Cancellation | | Amount of Liquidated Damages Due |
|---|---|---|
| 0- 180 days prior to arrival | (inside 6mo) | 100% of total room revenue plus 75% of F&B Guarantee |
| 181 -365 days prior to arrival | (6mo-1yr) | 75% of total room revenue* plus 50% of F&B Guarantee |
| 366-551 days prior to arrival | (1 yr-1.5yr) | 40% of total room revenue* |
| 552 – 912 days prior to arrival | (1.5-2.5yrs) | 10% of total room revenue* |
| 913-1095 days prior to arrival (2.5-3yrs) | | $25,000 |
| 1096 days-from contract signing (3- 3.5yrs) | | $10,000 |

**BONUS DEAL** On or before May 1, 2019 (Gaylord TEXAN) and May 1, 2020 (GAYLORD ROCKIES) Ramsey Solutions may release up to 50% of total room block without penalty. A proportionate reduction in meeting space and concessions will apply so Hotel is able to resell the released sleeping rooms. Ramsey Solutions will be responsible for the entire revised room block if this reduction is taken at 100%, no further attrition will be allowable. Should Group decide to exercise the BONUS DEAL or 50% room night reduction, then should the Group cancel their contract after this reduction, the cancellation amounts will remain based on the original contracted room block.

*The term "total room revenue" means the dollar amount equal to the Room Block multiplied by the Group's average room rate, exclusive of resort fee.

Such amount (the "Cancellation Charge") will be due and payable due within 30 days of the date of cancellation, and accrue interest at the rate of 1.5 percent per month (or, if less, the maximum amount permitted by law). If required by the applicable jurisdiction, the Group will pay sales and/or other applicable taxes with respect to the Cancellation Charge outlined above.

**CANCELLATION IN EVENT OF CHANGE IN MEETING SITE**
Notwithstanding any other provision of this Agreement, the Group agrees that it has no right to cancel this Agreement for the purpose of changing its meeting site to another city or location, and in such event, regardless of the date of cancellation of the Agreement, the Group will owe liquidated damages equal to 100% of total room revenues plus applicable tax, to be received by the Hotel from your event for guest rooms comprising the Room Block.

**FOR CAUSE TERMINATION**
Should it be impossible for the group to perform its obligations under the Agreement as a result of Dave Ramsey's unforeseen death or disability, the Hotel shall refund all deposits and/or prepayments made by the Group within thirty (30) days of receipt of the notice of termination. Group must notify Hotel within Ten (10) days of such occurrence.

Notwithstanding any provision to the contrary herein, Group may at any time terminate this Agreement without penalty in the event Hotel, its parent, subsidiary or affiliated businesses, principals or executives become engaged in, accused of or subject to any public scandal, political controversy, crime, fraud or other event that in Group's sole

judgment will impair or damage its brand or good will by hosting an event at Hotel. In such event, Group shall provide prompt notice and the Hotel shall refund all deposits and/or prepayments made by the Group within thirty (30) days of receipt of the notice of termination.

## PERFORMANCE LICENSES
Ramsey Solutions will be solely responsible for obtaining any necessary licenses or permission to perform, broadcast, transmit, or display any copyrighted works (including without limitation, music, audio, or video recordings, art, etc.) that Ramsey Solutions may use or request to be used at the Hotel.

## FORCE MAJEURE
Either party may be excused from performance without liability if circumstances beyond its reasonable control, such as acts of God, war, acts of domestic terrorism, strikes or similar circumstances, make it illegal or impossible to provide or use the Hotel facilities. The ability to terminate pursuant to this clause is conditioned upon delivery written notice to the other party setting forth the basis for such termination within ten (10) days after learning of such basis.

## LITIGATION EXPENSES
The parties agree that, in the event litigation relating to this Agreement is filed by either party, the non-prevailing party in such litigation will pay the prevailing party's costs resulting from the litigation, including reasonable attorneys' fees.

## LIQUOR LICENSE
Ramsey Solutions understands that Hotel's liquor license requires that beverages only be dispensed by Hotel employees or bartenders. Alcoholic beverage service may be denied to those guests who appear to be intoxicated or are under age.

## COMMUNICATIONS BETWEEN THE PARTIES
Notices sent between the parties may be sent via regular mail, with the effective date as of the date of mailing, or by Federal Express or other overnight delivery service, with the effective date the date of receipt, or by facsimile, with the effective date as of the date shown on the confirmation of receipt. Copies or facsimiles shall be considered as valid as original documents.

## RENOVATION/REMODELING
As of the date of the signing of this Contract, Hotel has no plans for renovation or remodeling of any facilities over the program dates, which will be utilized by Group pursuant to this contract, other than ordinary maintenance. In the event that after this contract is signed, Hotel confirms any plans to remodel or renovate its facilities over the Event dates, Hotel agrees to inform your group in writing of the following:

- Planned scope of project;
- Schedule for commencement and completion;
- Anticipated impact project will have on areas to be utilized by your group;
- Hotel's plan for minimizing impact of project on Group.

Hotel promises that any such construction or remodeling will not interfere with Group's use of the Hotel. The parties agree to negotiate in good faith to resolve any concerns raised as a result of renovations or remodeling and to enter into such amendments of this Contract as may be necessary to reasonably accommodate both parties' interests.

## DISHONORED RESERVATIONS
If the Hotel is unable to provide a room to a Group attendee holding an accepted or confirmed reservation, Hotel may provide alternative accommodations to such attendee (an "Affected Attendee") without such action constituting a breach of this Agreement, provided the terms and conditions of this paragraph are followed. In such an event, the Hotel will provide, at its cost, the substitute hotel accommodations to the Affected Attendee and transportation to and from the substitute hotel for each day that Hotel cannot provide a room. Upon return to the Hotel, the Hotel will provide a note of apology, and every attempt will be made to place the guest in an upgraded room.

RS000314

## SEVERABILITY

If for any reason a court of competent jurisdiction finds any provision of this Agreement or portion thereof to be unenforceable, that provision shall be enforced to the maximum extent permissible so as to affect the intent of the parties, and the remainder of the Agreement shall continue in full force and effect.

## AMERICANS WITH DISABILITIES ACT (ADA) COMPLIANCE

Each party agrees to use good faith efforts to ensure that it complies with its obligations under the Americans with Disabilities Act and the Act's accompanying regulation and guidelines (collectively the "ADA"). Each party further agrees to indemnify and hold the other party harmless from and against any and all claims and expenses, including attorney's fees and litigation expenses, that may be incurred by or asserted against the other party or its officers, directors, agents, and employees on the basis of the indemnifying party's non-compliance with any of the provisions of the ADA. Ramsey Solutions agrees to provide Hotel with reasonable advance notice about the special needs of any attendees of which Ramsey Solutions is aware.

This Agreement is subject to all applicable federal, state, and local laws, including health and safety codes, alcoholic beverage control laws, disability laws, federal anti-terrorism laws and regulations, and the like. Hotel and Ramsey Solutions agree to cooperate with each other to ensure compliance with such laws.

## EXECUTION; ASSIGNMENT; AMENDMENTS

By execution of this Agreement, the parties specifically acknowledge and agree that this Agreement sets forth the entire understanding between the parties with respect to the subject matter hereof, shall act as the binding obligation of the parties, and the individual party signing this Agreement on behalf of a party has the requisite power and authority to bind such party. No modification, amendment of, or supplement to this Agreement shall be valid or effective unless the same is in writing and signed by both parties. The Hotel may require ancillary terms under this Agreement, such as its Policies and Procedures and Banquet Event Orders, and such terms, to the extent not inconsistent with the provisions of this Agreement, shall be binding upon the Group.

## INDEMNIFICATION

Each party to this Agreement shall, to the extent not covered by the indemnified party's insurance, indemnify, defend, and hold harmless the other party and its officers, directors, agents, employees, and owners from and against any and all demands, claims, damages to persons or property, losses, and liabilities, including reasonable attorneys' fees (collectively, "Claims"), arising solely out of or solely caused by the indemnifying party's negligence or willful misconduct in connection with the provision and use of Hotel as contemplated by this Agreement. This paragraph shall not waive any statutory limitations of liability available to either party, including innkeepers' limitation of liability laws, nor shall it waive any defenses either party may have with respect to any Claim.

## COMPLIANCE WITH LAW

This Agreement is subject to all applicable federal, state, and local laws, including health and safety codes, alcoholic beverage control laws, disability laws, federal anti-terrorism laws and regulations, and the like. Hotel and Ramsey Solutions agree to cooperate with each other to ensure compliance with such laws.

## CHANGES, ADDITIONS, STIPULATIONS, OR LINING OUT

Any changes, additions, stipulations or deletions including corrective lining out by either Hotel or Ramsey Solutions will not be considered agreed to or binding on the other unless such modifications have been initialed or otherwise approved in writing by the other.

## ACCEPTANCE

When presented by the Hotel to Ramsey Solutions, this document is an invitation by the Hotel to Ramsey Solutions to make an offer. Upon signature by Ramsey Solutions, this document will be an offer by Ramsey Solutions. Only upon signature of this document by all parties will this document constitute a binding agreement. Unless the Hotel otherwise notifies Ramsey Solutions at any time prior to Ramsey Solutions execution of this document, the outlined format and dates will be held by the Hotel for Ramsey Solutions on a first-option basis until Friday, December 22, 2017. If Ramsey Solutions cannot make a commitment prior to that date, this invitation to offer will revert to a second-option basis or, at the Hotel's option, the arrangements will be released, in which case neither party will have any further obligations.

Upon signature by both parties, Ramsey Solutions and the Hotel shall have agreed to and executed this Agreement by their authorized representatives as of the dates indicated below.

<u>SIGNATURES</u>
Approved and authorized by Ramsey Solutions.

Name: (Print)     Joe Leavitt

Title: (Print)     Director of Event Production, Ramsey Solutions

Signature:

Date:     12/26/17

Approved and authorized by Hotel:

Name: (Print)     Wendy Ezernack

Title: (Print)     Senior Sales Executive

Signature:     Wendy Ezernack

Date:     12/29/17

# EXHIBIT F



**GAYLORD ROCKIES™**
RESORT & CONVENTION CENTER
*Colorado*

## GROUP SALES AGREEMENT

### DESCRIPTION OF GROUP AND EVENT
The following represents an agreement between: **Gaylord Rockies Resort and Convention Center** (the "Hotel") and **Ramsey Solutions** (the "Group") and outlines specific conditions and services to be provided.

ORGANIZATION:    **Ramsey Solutions**
CONTACT:
    Name:               **Joe Leavitt**
    Job Title:         **Director of Event Production**
    Street Address:    **1749 Mallory Lane**
    City, State, Zip:   **Brentwood, TN**
    Phone Number:   **877-410-3283 x5503**
    E-mail Address:   **joel@daveramsey.com**

NAME OF EVENT:    **Ramsey Solutions EntreLeadership Summit May2022**
QUOTE #:           **M-AF1EDBD**
OFFICIAL PROGRAM DATES:    **Friday May 20th, 2022 – Thursday, May 26th, 2022**
ANTICIPATED ATTENDANCE:    **2,000**

### GUEST ROOM COMMITMENT
The Hotel agrees that it will provide, and Group agrees that it will be responsible for utilizing, **5,131** room nights in the pattern set forth below (such number and such pattern, the "Room Night Commitment"):

| Day | Date | Presidential Suite | Deluxe Suite | Executive Suite | Staff Rooms | Mountain View | Run of House | Total Rooms |
|-----|------|-----|-----|-----|-----|-----|-----|-----|
| Fri | 5/20/22 | - | - | - | 20 | - | - | 20 |
| Sat | 5/21/22 | 6 | 5 | 5 | 25 | 20 | 69 | 130 |
| Sun | 5/22/22 | 6 | 30 | 30 | 80 | 200 | 1129 | 1475 |
| Mon | 5/23/22 | 6 | 30 | 30 | 80 | 200 | 1129 | 1475 |
| Tue | 5/24/22 | 6 | 30 | 30 | 80 | 200 | 1129 | 1475 |
| Wed | 5/25/22 | 6 | 30 | 30 | 50 | 50 | 390 | 556 |
| *Total Rooms* | | *30* | *125* | *125* | *335* | *670* | *3846* | *5,131* |

We will reserve the room block noted above until **Friday, December 22, 2017.** Due to the very high demand we anticipate over these dates, the Hotel reserves the right to release your first option if we have not received the signed copies of the Agreement verifying confirmation by this time. In the event we have a definite request for these dates prior to your option date, we will contact you for a decision. You will have **three (3) business days** to either return the signed contract, or release the option.

### GROUP ROOM RATES
The confirmed net, non-commissionable per night room rate for the **2022** Event will be:

Single/Double:    $274.00
Staff:            $164.40
*Mountain View:*    $399.00
*Executive Suites:*    $625.00
*Deluxe Suites:*    $850.00
*Presidential Suites:*    $2700.00

Applicable fees & taxes will be added to room rates. The total collection is presently 15.25%, which includes the Aurora Lodging tax (8%), Colorado State tax (2.9%), Adams County tax (0.75%), Cultural District tax (0.10%), RTD Commuter Rail tax (1.0%), and Property Improvement Fee (2.5%).

Subject to availability, Group rates will apply three (3) days prior to, and three (3) days following, the dates of the Event. Each additional person to a room is $20.00. Children twelve (12) years and under are free when occupying the same room as their parents.

**RESORT FEE**
The prevailing resort fee, currently $20.00 plus applicable taxes, will be added to the guest room rate. This fee will cover several in-room amenities which at the time of check-in will include:

- High-speed internet access in all guest rooms
- Complimentary use of the basketball & tennis courts
- Local, toll-free and domestic long-distance phone calls
- Complimentary use of hotel bicycles
- Complimentary ski equipment storage
- Two bottles of purified water
- Scheduled shuttle service from commuter rail stop
- Complimentary access to on property water amenities

Please note that the parking fee is currently $24.00 for self-parking and $30.00 for valet parking plus applicable tax, currently 8%.

**REWARDS PROGRAM - REWARDING EVENTS**
Approximately (10) business days after the conclusion of the Event (provided that the Event is not cancelled and Group has otherwise complied with the material terms and conditions of this Agreement), the Hotel will either award Points or submit an award for airline miles to the Member(s) identified below:

Rewarding Events does not apply to Events booked by or on behalf of any governmental entity, including any federal, state or local agency or any other governmental body, and hotels may not award Points or airline miles to a government employee (or an intermediary booking on behalf of a governmental entity) in connection with the Rewarding Events program or otherwise in connection with planning, scheduling or contracting for an Event.

**CHECK ONE OPTION BELOW:**

☐   Award Points to the Contact (as identified on page 1 of this Agreement or the Authorized Signer of this Agreement)
    Member Name _____
    Rewards Program Member Number _____

☐   Award Airline Miles to the Contact (as identified on page 1 of this Agreement or the Authorized Signer of this Agreement)
    Member Name _____
    Rewards Program Member Number _____
    Airline frequent flier account number _____
    Name of airline _____

☐   Decline to Award Points or Airline Miles
    The Contact and the Authorized Signer of this Agreement elect not to receive (and hereby waive the right to receive) an award of Points or airline miles in connection with the Event.

The number of Points or airline miles to be awarded shall be determined pursuant to the Rewards Program Terms and Conditions, as in effect at the time of award. The Rewards Program Terms and Conditions are available on-line at marriottrewards.com, and may be changed at the sole discretion of the Rewards Program at any time and without notice.

The individual(s) identified above to receive either Points or airline miles may not be changed without such individual(s)' prior written consent. By inserting the airline mileage account information, the recipient elects to receive airline miles rather than Points. All Rewards Program Terms and Conditions apply.

**METHOD OF RESERVATIONS**
Please indicate which of the following procedures will be used by your group:

         ☑   Individual Reservations for the Event will be made by individual attendees

RS0000291

__|X|__ Rooming List *for staff + VIPS*

At the Group's request, Hotel's transient in-house guest list will be compared with the Group's registration list. Any guest room occupied by an individual on Group's registration list, but not coded to Group within Hotel's system, will be credited to Group's final pickup.

If names are found on the Group's registration list and on the Hotel's transient in-house list that are not coded to the group, they shall be credited to the Group hotel pickup (regardless of room rate). This credit may increase the Group pickup as well as possibly increasing the complimentary credits earned.

Hotel will provide Group a weekly guestroom pick-up report starting 45 days prior to the established cut-off date.

## GROUPMAX SYSTEM/PASSKEY - HOUSING OPTION

Gaylord Rockies Resort & Convention Center currently offers you the services of GroupMax/Passkey – an online group reservation management solution that allows meeting planners a 24-hour real-time visibility into room pickup, registration activity, and more. We can also create a custom web page for your group that allows attendees to book rooms, request special services and make last-minute changes, all maintained in a centralized database accessible only to the hotel and the meeting planner.

Passkey is currently available on a complimentary basis. Ask your Sales or Event Manager at Gaylord Rockies Resort & Convention Center for more information on this exciting technology.

## GUARANTEED RESERVATIONS

All reservations must be accompanied by a first night room deposit or be guaranteed by **Ramsey Solutions**. Hotel will not hold any reservations unless secured by one of the above methods. Credit cards will be charged prior to arrival.

If rooms are not guaranteed to the Group's master account, a deposit equal to one night's stay is required to hold each individual's reservation. Should a guest cancel a reservation, the deposit will be refunded if notice is received at least three (3) working days prior to arrival, and a cancellation number is obtained.

## NO ROOM TRANSFER BY GUEST

Group agrees that neither Group nor attendees of the Event nor any intermediary shall be permitted to assign any rights or obligations under this Group Sales Agreement, or to resell or otherwise transfer to persons not associated with Group reservations for guestrooms, meeting rooms or any other facilities made pursuant to this Group Sales Agreement.

## CUTOFF DATE

Reservations by attendees must be received on or before **Friday, April 29, 2022.** At the Cutoff Date, Hotel will review the reservation pick up for the Event, release the unreserved rooms for general sale, and determine whether it can accept reservations based on a space and rate available basis at the **Ramsey Solutions** group rate after this date.

## CHECK-OUT TIME

Check-in time is 4:00 p.m. local time. Check-out time is 11:00 a.m. local time. Anyone checking out after 11:00 a.m. local time may incur late charges. Special arrangements can be made for late check-outs based on availability, and/or luggage can be stored for individuals with later departures.

## COMPLIMENTARY POLICY

kWe are pleased to extend to your group one complimentary single room (unit) per every 45 rooms utilized at the group rate during your meeting. Any rooms with rates discounted below the group rate will not be calculated in the complimentary allotment. This number is determined by the actual rooms occupied by your group each night, divided by **45.**

The following suites have a value of more than one unit:

| | |
|---|---|
| Presidential Suite: | - 6 single rooms |
| Deluxe Suite: | - 4 single rooms |
| Executive Suite: | - 3 single rooms |

## SPECIAL INCENTIVES

In consideration of the Room Night Commitment and the functions identified on the Function Information Agenda/Event Agenda, Hotel will provide **Ramsey Solutions** with the following special concessions:

- One (1) Complimentary Presidential Suite will be reserved for Dave Ramsey over the meeting dates, as outlined in the room block grid

RS0000292

- Up to thirty (30) Deluxe Suite upgrades will be offered at Group Rate for VIPs/Speakers, as outlined in the room block grid
- Up to thirty (30) Executive Suite upgrades will be offered at Group Rate for VIPs/Speakers, as outlined in the room block grid
- Twenty (20) Celebrity Services Status for designated recipients (some will be modified)
- Up to 200 Mountain View Room upgrades at the group rate of $274.00, as outlined in the room block grid
- Up to 80 Staff Rooms at a discounted rate of $164.40 (40% off group rate), as outlined in the room block grid
- Complimentary valet for up to 20 Staff Members
- Complimentary VIP round trip airport transfers to/from DIA for up to 10 Speakers/VIPs
- Complimentary AM/PM Office breaks for up to 20 staff members, in Staff Office
- $5,000.00 flat fee for power requirements (NOT including service charge or labor)
- Wi-Fi Package $65,000.00 (Plus Tax & Service Charge):
  - o 200 Mbps Dedicated Bandwidth, to be allocated across up to 3 VLANs / SSIDs
  - o Up to 30 Static IP Addresses
  - o Up to 20 Wired Drops
- Access to in house lighting in General Session complimentary (Value $780.00++ per day)
- Ten Percent (10%) Discount off current year banquet menu pricing (does not apply to custom menus, minimum must be met after discount is applied)
- Pre-Planning Visits – up to 20 total room nights (additional at Staff Rate) based on availability. To include office, valet parking, airport transfers and Food & Beverage needs
- Audio-Visual Discount – PSAV): Hotel will offer a 40% discount off prevailing published pricing guidelines for PSAV in-house inventory of equipment (excludes labor, rigging, truss, Event Technology Support (service charges), consumables, sales tax and shipping/delivery charges) if PSAV is selected as the sole provider for all AV Equipment & Services. If PSAV is not selected as the sole provider then all AV Equipment will be charged at a sliding scale. If total spend of audiovisual equipment and labor before discount and tax is:
- $0 to $40,000 then a 10% discount will be applied to audiovisual equipment
- $40,001 to $75,000 then a 15% discount will be applied to audiovisual equipment
- $75,001 + then a 20% discount will be applied to audiovisual equipment. This discounting does not apply to consumables, labor, rigging, truss and Event Technology Support Fee (service charge).
- Credit to Master for 25% the value of Rigging motors and truss (excluding tax and service charge) Custom Rigging Package to be provided. PSAV is the exclusive provider of all rigging equipment, rigging & truss labor and truss equipment. Rigging equipment includes but is not limited to motors, points, cabling and truss.
- Complimentary corkage fee on Entre branded water bottles on main arrival registration day at Registration Desk location.
- $2.00++ corkage fee on Entre Branded Water Bottles on beverage stations during sessions, Am/Pm breaks and meal functions.
- Complimentary storage of up to seven pallets no more than five days prior to event
- Complimentary access to one in room channel
- Complimentary marketing Fees up to $50,000.00 (not including production or labor)
- Three (3) -Three nights stays to be used at our discretion (could be used as marketing incentives, contesting, etc.). To include:
  - o Complimentary Deluxe Suite for three (3) nights
  - o Celebrity Status
  - o Complimentary Round trip airport transfer
  - o Complimentary Welcome Amenity
  - o Two (2) Rounds of Golf
  - o One (1) Relache Spa treatment each for two (2) people - per gift certificate- total of two(2) treatments per certificate
  - o Dinner for two (2) at Old Hickory Steakhouse

## TWO YEAR MULTI-YEAR CONCESSION PACKAGE
(ADD ON if signed by either Gaylord Palms or Gaylord Texan by December 22, 2017)
- ALL Single Year Concessions
- 15% Discount (instead of 10% in single year) on current year banquet menu (minimum must be met after discount is applied, discount not available on custom menus)
- $25,000.00 Master Account credit toward (1) Catered Function

## THREE YEAR MULTI-YEAR CONCESSION PACKAGE
(ADD ON if signed by both Gaylord Palms and Gaylord Texan by December 22, 2017)
- All Single and Two Year Concessions
- ALL MARKETING FEES WAIVED

RS0000293

**DEPOSITS**

Seventy-five percent (75%) of the anticipated Group expenditures to be master billed, including all food and beverage charges, is due thirty (30) days prior to arrival. Until this pre-payment is made, the Hotel reserves the right to withhold any or all the services hereunder agreed to.

**MASTER ACCOUNT**

Hotel must be notified in writing at least 10 days prior to arrival of the authorized signatories and the charges that are to be posted to the Master Account. Any cancellation or attrition fees will be billed to the Master Account.

**METHOD OF PAYMENT**

The method of payment of the Master Account will be established upon approval of Group's credit. If credit is approved, the outstanding balance of **Ramsey Solutions** Master Account (less any advance deposits and exclusive of disputed charges) will be due and payable upon receipt of invoice.

**Ramsey Solutions** will raise any disputed charge(s) within 30 days after receipt of the invoice. The Hotel will work with Group in resolving any such disputed charges, the payment of which will be due upon receipt of invoice after resolution of the dispute. If payment of any invoice is not received within thirty (30) days of the date on which it was due, Hotel will impose a finance charge at the rate of the lesser of 1-1/2% per month (18% annual rate) or the maximum allowed by law on the unpaid balance commencing on the invoice date.

**Ramsey Solutions** has indicated that it has elected to use the following form of payment:

[X] Direct Bill
[ ] Cash, money order, or other guaranteed form of payment
[ ] Credit card (We accept all major credit cards)
[ ] Company check or Electronic Funds Transfer
[ ] _____ [agreed alternative]

Please indicate which of the following will be billed to your Master Account:

[X] Room and tax (Entire Group)
[X] Room and tax (VIPs and Staff)
[X] Authorized Food & Beverage
[X] Incidental Charges ← Staff Hut?
[X] Standard Gratuities

In the event that credit is not approved, **Ramsey Solutions** agrees to pay an advance deposit in an amount to be determined by the Hotel in its reasonable discretion, with the full amount due prior to the start of the group's event.

**PROGRAM**

We have reserved space for your meeting and social functions based on our understanding of your needs at this time, as set forth in the attached Program Schedule attached hereto and incorporated herein. Your execution of the Agreement will serve as your approval of the attached program schedule.

Provided that you utilize at least 80% of the Room Block, such meeting space will be provided complimentary.

We reserve the right to adjust the assignment of the Group's meeting and function space to a size appropriate for the number of expected attendees at each function.

Group will work with hotel at One (1) year before the groups arrival date to identify any potential unused space over event dates.

Sixty (60) days before the Group's arrival date, your Convention Services team must receive the Group's final agenda. At that time, all space unused by your group will be released back into the hotel's inventory. Any space additional and/or changes to the agenda within 60 days will continue to be based on availability, and may incur additional room rental.

RS0000294

**FUNCTION INFORMATION AGENDA/EVENT AGENDA**
Based on the requirements outlined by **Ramsey Solutions**, the Hotel has reserved the function space set forth on the below Function Information Agenda/Event Agenda.

| Start Time | End Time | Function Type | Post As/Signage | Function Space | Set-Up Style | Expected |
|---|---|---|---|---|---|---|
| Ramsey Solutions EntreLeadership Summit May2022 |||||||
| Fri 5/20/22 |||||||
| 6:00 PM | 11:45 PM | Set Up | Set Up General Session | Aurora Ballroom A | Schoolroom | 1 |
| Sat 5/21/22 |||||||
| 1:00 AM | 11:45 PM | Set Up | Set Up General Session | Aurora Ballroom | Schoolroom | 2,000 |
| 1:00 AM | 11:45 PM | Office | Office | Aurora Office | Special | 1 |
| 7:00 PM | 11:45 PM | Breakout | Breakout 8 | Crest 1 | Conference | 20 |
| 7:00 PM | 11:45 PM | Breakout | Breakout 9 | Crest 2 | Schoolroom | 20 |
| 7:00 PM | 11:45 PM | Breakout | Breakout 10 | Summit 10 | Schoolroom | 20 |
| 7:00 PM | 11:45 PM | Breakout | Breakout 11 | Summit 11 | Schoolroom | 20 |
| 7:00 PM | 11:45 PM | Breakout | Breakout 5 | Valley 1 | Conference | 20 |
| 7:00 PM | 11:45 PM | Breakout | Breakout 6 | Valley 2 | Conference | 20 |
| 7:00 PM | 11:45 PM | Breakout | Breakout 7 | Valley 3 | Conference | 20 |
| 8:00 PM | 11:45 PM | Registration | Registration | Aurora Ballroom Prefunction | Registration | 1 |
| 8:00 PM | 11:45 PM | Registration | Registration | Aurora Ballroom Registration Desk | Registration | 1 |
| 8:00 PM | 11:45 PM | Holding Room | Hold for Ramsey Solutions | Colorado A | Special | 1 |
| 8:00 PM | 11:45 PM | Breakout | Breakout 1 | Colorado B | Theatre | 500 |
| 8:00 PM | 11:45 PM | Breakout | Breakout 2 | Colorado C | Theatre | 300 |
| 8:00 PM | 11:45 PM | Breakout | Breakout 3 | Colorado D | Theatre | 300 |
| 8:00 PM | 11:45 PM | Holding Room | Hold for Ramsey Solutions | Colorado Prefunction A-B | Special | 1 |
| 8:00 PM | 11:45 PM | Holding Room | Hold for Ramsey Solutions | Colorado Registration Areas | Special | 1 |
| 8:00 PM | 11:45 PM | Breakout | Breakout 4 | Crest 3-5 | Lounge | 200 |
| Sun 5/22/22 |||||||
| 1:00 AM | 11:45 PM | Set Up | Set Up General Session | Aurora Ballroom | Schoolroom | 2,000 |
| 1:00 AM | 12:00 PM | Registration | Registration | Aurora Ballroom Prefunction | Registration | 1 |
| 4:00 PM | 10:00 PM | Reception | Dessert Reception (Backup) | Aurora Ballroom Prefunction | Special | 1 |
| 1:00 AM | 12:00 PM | Registration | Registration | Aurora Ballroom Registration Desk | Registration | 1 |
| 1:00 AM | 11:45 PM | Office | Office | Aurora Office | Special | 1 |
| 1:00 AM | 11:45 PM | 24 Hour Hold | Hold for Ramsey Solutions | Colorado A | Special | 1 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 1 | Colorado B | Theatre | 500 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 2 | Colorado C | Theatre | 300 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 3 | Colorado D | Theatre | 300 |
| 1:00 AM | 11:45 PM | 24 Hour Hold | Hold for Ramsey Solutions | Colorado Prefunction A-B | Special | 1 |
| 1:00 AM | 11:45 PM | 24 Hour Hold | Hold for Ramsey Solutions | Colorado Registration Areas | Special | 1 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 8 | Crest 1 | Conference | 20 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 9 | Crest 2 | Schoolroom | 20 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 4 | Crest 3-5 | Lounge | 200 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 10 | Summit 10 | Schoolroom | 20 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 11 | Summit 11 | Schoolroom | 20 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 5 | Valley 1 | Conference | 20 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 6 | Valley 2 | Conference | 20 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 7 | Valley 3 | Conference | 20 |
| 6:00 AM | 11:45 PM | Holding Room | Hold for Ramsey Solutions | Aurora Hall 1-3 | Special | 1 |
| 6:00 AM | 11:45 PM | Holding Room | Hold for Ramsey Solutions | Red Rock 1 | Special | 1 |
| 6:00 AM | 11:45 PM | Holding Room | Hold for Ramsey Solutions | Red Rock 10 | Special | 1 |
| 6:00 AM | 11:45 PM | Holding Room | Hold for Ramsey Solutions | Red Rock 2-3 | Special | 1 |
| 6:00 AM | 11:45 PM | Holding Room | Hold for Ramsey Solutions | Red Rock 4-5 | Special | 1 |
| 6:00 AM | 11:45 PM | Holding Room | Hold for Ramsey Solutions | Red Rock 6-7 | Special | 1 |
| 6:00 AM | 11:45 PM | Holding Room | Hold for Ramsey Solutions | Red Rock 8-9 | Special | 1 |
| 6:00 AM | 11:45 PM | Breakout | Breakout 12 | Summit 1 | Schoolroom | 20 |
| 6:00 AM | 11:45 PM | Breakout | Breakout 13 | Summit 2 | Schoolroom | 20 |
| 6:00 AM | 11:45 PM | Breakout | Breakout 14 | Summit 3 | Schoolroom | 20 |
| 6:00 AM | 11:45 PM | Speaker Room | Speaker Room | Summit 4-5 | Lounge | 20 |

RS0000295

RS000296

| | | | | | | |
|---|---|---|---|---|---|---|
| 6:00 AM | 11:45 PM | Holding Room | Hold for Ramsey Solutions | Summit 8 | Special | 1 |
| 6:00 AM | 11:45 PM | Holding Room | Hold for Ramsey Solutions | Summit 9 | Special | 1 |
| 12:00 PM | 11:45 PM | Registration | Registration | All Aurora Hall Reg Desks | Special | 1 |
| 12:00 PM | 11:45 PM | Registration | Registration | Aurora Exhibit Hall Prefunction | Special | 1 |
| 1:00 PM | 11:45 PM | Holding Room | Team Meeting 1 | Red Rock 11 | Special | 1 |
| 1:00 PM | 11:45 PM | Holding Room | Team Meeting 7 | Summit 6-7 | Special | 1 |
| 1:00 PM | 11:45 PM | Holding Room | Team Meeting 2 | Willow Lake 1 | Special | 1 |
| 1:00 PM | 11:45 PM | Holding Room | Team Meeting 3 | Willow Lake 2 | Special | 1 |
| 1:00 PM | 11:45 PM | Holding Room | Team Meeting 4 | Willow Lake 3 | Special | 1 |
| 1:00 PM | 11:45 PM | Holding Room | Team Meeting 5 | Willow Lake 4 | Special | 1 |
| 1:00 PM | 11:45 PM | Holding Room | Team Meeting 6 | Willow Lake 5 | Special | 1 |
| 4:00 PM | 10:00 PM | Reception | Dessert Reception | Front Range Lawn | Special | 1 |
| | | | Mon 5/23/22 | | | |
| 1:00 AM | 11:45 PM | Registration | Registration | All Aurora Hall Reg Desks | Special | 1 |
| 1:00 AM | 11:45 PM | General Session | General Session | Aurora Ballroom | Schoolroom | 2,000 |
| 11:00 AM | 12:00 PM | Lunch | Lunch | Aurora Ballroom | | 2,000 |
| 1:00 AM | 11:45 PM | Registration | Registration | Aurora Exhibit Hall Prefunction | Special | 1 |
| 10:00 AM | 10:30 AM | Coffee Break | Coffee Break | Aurora Exhibit Hall Prefunction | Special | 1 |
| 2:30 PM | 3:00 PM | Coffee Break | Coffee Break | Aurora Exhibit Hall Prefunction | Special | 1 |
| 1:00 AM | 11:45 PM | 24 Hour Hold | Hold for Ramsey Solutions | Aurora Hall 1-3 | Special | 1 |
| 1:00 AM | 11:45 PM | Office | Office | Aurora Office | Special | 1 |
| 1:00 AM | 11:45 PM | 24 Hour Hold | Hold for Ramsey Solutions | Colorado A | Special | 1 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 1 | Colorado B | Theatre | 500 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 2 | Colorado C | Theatre | 300 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 3 | Colorado D | Theatre | 300 |
| 1:00 AM | 11:45 PM | 24 Hour Hold | Hold for Ramsey Solutions | Colorado Prefunction A-B | Special | 1 |
| 1:00 AM | 11:45 PM | 24 Hour Hold | Hold for Ramsey Solutions | Colorado Registration Areas | Special | 1 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 8 | Crest 1 | Conference | 20 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 9 | Crest 2 | Schoolroom | 20 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 4 | Crest 3-5 | Lounge | 200 |
| 1:00 AM | 11:45 PM | 24 Hour Hold | Hold for Ramsey Solutions | Red Rock 1 | Special | 1 |
| 1:00 AM | 11:45 PM | 24 Hour Hold | Hold for Ramsey Solutions | Red Rock 10 | Special | 1 |
| 1:00 AM | 11:45 PM | Holding Room | Team Meeting 1 | Red Rock 11 | Special | 1 |
| 1:00 AM | 11:45 PM | 24 Hour Hold | Hold for Ramsey Solutions | Red Rock 2-3 | Special | 1 |
| 1:00 AM | 11:45 PM | 24 Hour Hold | Hold for Ramsey Solutions | Red Rock 4-5 | Special | 1 |
| 1:00 AM | 11:45 PM | 24 Hour Hold | Hold for Ramsey Solutions | Red Rock 6-7 | Special | 1 |
| 1:00 AM | 11:45 PM | 24 Hour Hold | Hold for Ramsey Solutions | Red Rock 8-9 | Special | 1 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 12 | Summit 1 | Schoolroom | 20 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 10 | Summit 10 | Schoolroom | 20 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 11 | Summit 11 | Schoolroom | 20 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 13 | Summit 2 | Schoolroom | 20 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 14 | Summit 3 | Schoolroom | 20 |
| 1:00 AM | 11:45 PM | Speaker Room | Speaker Room | Summit 4-5 | Lounge | 20 |
| 1:00 AM | 11:45 PM | Holding Room | Team Meeting 7 | Summit 6-7 | Special | 1 |
| 1:00 AM | 11:45 PM | 24 Hour Hold | Hold for Ramsey Solutions | Summit 8 | Special | 1 |
| 1:00 AM | 11:45 PM | 24 Hour Hold | Hold for Ramsey Solutions | Summit 9 | Special | 1 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 5 | Valley 1 | Conference | 20 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 6 | Valley 2 | Conference | 20 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 7 | Valley 3 | Conference | 20 |
| 1:00 AM | 11:45 PM | Holding Room | Team Meeting 1 | Willow Lake 1 | Special | 1 |
| 1:00 AM | 11:45 PM | Holding Room | Team Meeting 3 | Willow Lake 2 | Special | 1 |
| 1:00 AM | 11:45 PM | Holding Room | Team Meeting 4 | Willow Lake 3 | Special | 1 |
| 1:00 AM | 11:45 PM | Holding Room | Team Meeting 5 | Willow Lake 4 | Special | 1 |
| 1:00 AM | 11:45 PM | Holding Room | Team Meeting 6 | Willow Lake 5 | Special | 1 |
| | | | Tue 5/24/22 | | | |
| 1:00 AM | 11:45 PM | Registration | Registration | All Aurora Hall Reg Desks | Special | 1 |
| 1:00 AM | 11:45 PM | General Session | General Session | Aurora Ballroom | Schoolroom | 2,000 |
| 11:00 AM | 12:00 PM | Lunch | Lunch | Aurora Ballroom | | 2,000 |
| 1:00 AM | 11:45 PM | Registration | Registration | Aurora Exhibit Hall Prefunction | Special | 1 |

RS0000297

| | | | | | | |
|---|---|---|---|---|---|---|
| 10:00 AM | 10:30 AM | Coffee Break | Coffee Break | Aurora Exhibit Hall Prefunction | | 1 |
| 2:30 PM | 3:00 PM | Coffee Break | Coffee Break | Aurora Exhibit Hall Prefunction | | 1 |
| 4:00 PM | 10:00 PM | Reception | VIP Reception (Backup) | Aurora Exhibit Hall Prefunction | Cocktail Rounds | 400 |
| 1:00 AM | 11:45 PM | 24 Hour Hold | Hold for Ramsey Solutions | Aurora Hall 1-3 | Special | 1 |
| 1:00 AM | 11:45 PM | Office | Office | Aurora Office | Special | 1 |
| 1:00 AM | 11:45 PM | 24 Hour Hold | Hold for Ramsey Solutions | Colorado A | Special | 1 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 1 | Colorado B | Theatre | 500 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 2 | Colorado C | Theatre | 300 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 3 | Colorado D | Theatre | 300 |
| 1:00 AM | 11:45 PM | 24 Hour Hold | Hold for Ramsey Solutions | Colorado Prefunction A-B | Special | 1 |
| 1:00 AM | 11:45 PM | 24 Hour Hold | Hold for Ramsey Solutions | Colorado Registration Areas | Special | 1 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 8 | Crest 1 | Conference | 20 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 9 | Crest 2 | Schoolroom | 20 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 4 | Crest 3-5 | Lounge | 200 |
| 1:00 AM | 11:45 PM | 24 Hour Hold | Hold for Ramsey Solutions | Red Rock 1 | Special | 1 |
| 1:00 AM | 11:45 PM | 24 Hour Hold | Hold for Ramsey Solutions | Red Rock 10 | Special | 1 |
| 1:00 AM | 6:00 PM | Holding Room | Team Meeting 1 | Red Rock 11 | Special | 1 |
| 1:00 AM | 11:45 PM | 24 Hour Hold | Hold for Ramsey Solutions | Red Rock 2-3 | Special | 1 |
| 1:00 AM | 11:45 PM | 24 Hour Hold | Hold for Ramsey Solutions | Red Rock 4-5 | Special | 1 |
| 1:00 AM | 11:45 PM | 24 Hour Hold | Hold for Ramsey Solutions | Red Rock 6-7 | Special | 1 |
| 1:00 AM | 11:45 PM | 24 Hour Hold | Hold for Ramsey Solutions | Red Rock 8-9 | Special | 1 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 12 | Summit 1 | Schoolroom | 20 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 10 | Summit 10 | Schoolroom | 20 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 11 | Summit 11 | Schoolroom | 20 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 13 | Summit 2 | Schoolroom | 20 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 14 | Summit 3 | Schoolroom | 20 |
| 1:00 AM | 11:45 PM | Speaker Room | Speaker Room | Summit 4-5 | Lounge | 20 |
| 1:00 AM | 6:00 PM | Holding Room | Team Meeting 7 | Summit 6-7 | Special | 1 |
| 1:00 AM | 11:45 PM | 24 Hour Hold | Hold for Ramsey Solutions | Summit 8 | Special | 1 |
| 1:00 AM | 11:45 PM | 24 Hour Hold | Hold for Ramsey Solutions | Summit 9 | Special | 1 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 5 | Valley 1 | Conference | 20 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 6 | Valley 2 | Conference | 20 |
| 1:00 AM | 11:45 PM | Breakout | Breakout 7 | Valley 3 | Conference | 20 |
| 1:00 AM | 6:00 PM | Holding Room | Team Meeting 2 | Willow Lake 1 | Special | 1 |
| 1:00 AM | 6:00 PM | Holding Room | Team Meeting 3 | Willow Lake 2 | Special | 1 |
| 1:00 AM | 6:00 PM | Holding Room | Team Meeting 4 | Willow Lake 3 | Special | 1 |
| 1:00 AM | 6:00 PM | Holding Room | Team Meeting 5 | Willow Lake 4 | Special | 1 |
| 1:00 AM | 6:00 PM | Holding Room | Team Meeting 6 | Willow Lake 5 | Special | 1 |
| 4:00 PM | 10:00 PM | Reception | VIP Reception | Front Range Lawn | Cocktail Rounds | 400 |
| | | | **Wed 5/25/22** | | | |
| 1:00 AM | 12:00 PM | Registration | Registration | All Aurora Hall Reg Desks | Special | 1 |
| 1:00 AM | 5:00 PM | General Session | General Session | Aurora Ballroom | Schoolroom | 2,000 |
| 11:00 AM | 12:00 PM | Lunch | Lunch | Aurora Ballroom | | 2,000 |
| 1:00 AM | 5:00 PM | Registration | Registration | Aurora Ballroom Prefunction | Special | 1 |
| 1:00 AM | 5:00 PM | Holding Room | Hold for Ramsey Solutions | Aurora Hall 1-3 | Special | 1 |
| 1:00 AM | 3:00 PM | Registration | Registration | Aurora Hall Prefunction 1-3 | Special | 1 |
| 10:00 AM | 10:30 AM | Coffee Break | Coffee Break | Aurora Hall Prefunction 1-3 | Special | 1 |
| 2:30 PM | 3:00 PM | Coffee Break | Coffee Break | Aurora Hall Prefunction 1-3 | Special | 1 |
| 1:00 AM | 11:45 PM | Office | Office | Aurora Office | Special | 1 |
| 1:00 AM | 5:00 PM | Breakout | Breakout 1 | Colorado B | Theatre | 500 |
| 1:00 AM | 5:00 PM | Breakout | Breakout 2 | Colorado C | Theatre | 300 |
| 1:00 AM | 5:00 PM | Breakout | Breakout 3 | Colorado D | Theatre | 300 |
| 1:00 AM | 5:00 PM | Holding Room | Hold for Ramsey Solutions | Colorado Prefunction B | Special | 1 |
| 1:00 AM | 5:00 PM | Holding Room | Hold for Ramsey Solutions | Colorado Registration Desk B | Special | 1 |
| 1:00 AM | 5:00 PM | Breakout | Breakout 8 | Crest 1 | Conference | 20 |
| 1:00 AM | 5:00 PM | Breakout | Breakout 9 | Crest 2 | Schoolroom | 20 |
| 1:00 AM | 5:00 PM | Breakout | Breakout 4 | Crest 3-5 | Lounge | 200 |
| 1:00 AM | 5:00 PM | Breakout | Breakout 12 | Summit 1 | Schoolroom | 20 |
| 1:00 AM | 5:00 PM | Breakout | Breakout 10 | Summit 10 | Schoolroom | 20 |



RS0000298

| 1:00 AM | 5:00 PM | Breakout | Breakout 11 | Summit 11 | Schoolroom | 20 |
|---------|---------|----------|-------------|-----------|------------|----|
| 1:00 AM | 5:00 PM | Breakout | Breakout 13 | Summit 2 | Schoolroom | 20 |
| 1:00 AM | 5:00 PM | Breakout | Breakout 14 | Summit 3 | Schoolroom | 20 |
| 1:00 AM | 5:00 PM | Speaker Room | Speaker Room | Summit 4-5 | Lounge | 20 |
| 1:00 AM | 5:00 PM | Breakout | Breakout 5 | Valley 1 | Conference | 20 |
| 1:00 AM | 5:00 PM | Breakout | Breakout 6 | Valley 2 | Conference | 20 |
| 1:00 AM | 5:00 PM | Breakout | Breakout 7 | Valley 3 | Conference | 20 |
| | | | Thu 5/26/22 | | | |
| 1:00 AM | 12:00 PM | Office | Office | Aurora Office | Special | 1 |

All meeting room, food and beverage, and related services are subject to applicable taxes and service charge in effect on the date(s) of the event.

FOOD & BEVERAGE PRICING; FOOD AND BEVERAGE GUARANTEE
Food and Beverage pricing for the Event will be based on prevailing market conditions at the time of the Event. Current 2017 minimum banquet prices, excluding tax and a service charge, are as follows:

| Breakfast | | Dinner | |
|-----------|--------|--------|------------|
| Continental | $33 - $36 | Plated | $87 - $135 |
| Plated | $33 - $52 | Buffet | $105-$135 |
| Buffet | $44 - $52 | | |
| | | Reception | |
| | | *Full Bar:* | |
| Lunch | | One Hour | $20 - $24 |
| Plated | $48 - $67 | Two Hours | $32 - $36 |
| | | Three Hours | $43 - $48 |
| Buffet | $57 - $67 | *Food:* | |
| | | Light Hors d'oeuvre | $31 - $39 |
| Box | $44-53 | Heavy Hors d'oeuvre & Stations | $78 - $103 |

Applicable taxes and a service charge will be added to all food and beverage pricing. Service Charges for discounted menus will be based on retail pricing. All food and beverages served at functions associated with the Event must be provided, prepared, and served by Hotel and must be consumed on Hotel premises.

The Hotel is relying on, and the Group agrees to provide, a banquet minimum of $700,000 exclusive of applicable taxes, service charges, and discounts or concessions (the "F&B Guarantee"). Group agrees that the food and beverage functions listed on the schedule of events are a major component of this Agreement and that the Hotel will suffer damages that will be difficult or impossible to calculate if the Event is held and the Group's actual food and beverage spend falls below the F&B Guarantee. In such event, the Group will pay the Hotel liquidated damages in an amount equal to the difference between (i) the F&B Guarantee *and* (ii) the actual total food and beverage revenue generated by the functions listed in the Event's program schedule. Group agrees that such damages are a reasonable estimate of the Hotel's actual damages and not a penalty. These liquidated damages are due within 30 days of the date such damages are incurred, and accrue interest at the rate of 1.5 percent per month (or, if less, the maximum amount permitted by law).

AFFILIATE GROUPS
So that we may accommodate any groups that are meeting in conjunction with your convention, please indicate which of the following procedures will be used by your group:

Approximate number of affiliate groups anticipated: _____

_____ Approval must go through headquarters for function space.
_____ Notify headquarters of affiliate group, but prior approval of space is not required.
_____ Headquarters does not require any knowledge of any affiliate group.

Charges for function space required for affiliate groups will be negotiated at such time as space is requested.

It is understood that the booking of Gaylord Rockies for **Ramsey Solutions EntreLeadership Summit May 2022** is part of the following multiple bookings with Gaylord Hotels (each, a "Prior Event"): **Ramsey Solutions EntreLeadership Summit May 2020 at Gaylord Palms and Ramsey Solutions EntreLeadership Summit May 2021 at Gaylord Texan. Ramsey Solutions** will have the right to cancel this Agreement without liability in the event of the following: (i) if, within thirty (30) days following the last day of the Prior Event, **Ramsey Solutions** gives written notice to Gaylord Hotels detailing material service or performance issues by Gaylord Hotels at the Prior Event; and (ii) the Hotel does not propose and implement a plan addressing the issues raised in **Ramsey Solutions** notice.

## ROOMS ATTRITION

Hotel is relying upon **Ramsey Solutions'** use of the Room Night Commitment. **Ramsey Solutions** agrees that a loss will be incurred by Hotel if **Ramsey Solutions'** actual usage is less than **80%** of the Room Night Commitment.

If **Ramsey Solutions'** actual usage is less than **80%** of the Room Night Commitment, **Ramsey Solutions** agrees to pay, as liquidated damages and not as a penalty, the difference between **80%** of the Room Night Commitment and **Ramsey Solutions'** actual usage, multiplied by the average group room rate, plus applicable taxes.

## CANCELLATION POLICY

Group agrees that it bears responsibility for payment for the Room Block and the F&B Guarantee. Group also agrees that the Hotel will suffer actual harm that will be difficult to determine if the Group cancels this Agreement after the date hereof for reasons other than those specified in this Agreement. The Group will pay as liquidated damages to the Hotel, depending upon the timing of such cancellation, the following amounts, as a reasonable estimate of harm to Hotel for the cancellation:

| Time Period of Cancellation | Amount of Liquidated Damages Due |
| --- | --- |
| 0- 180 days prior to arrival | 100% of total room revenue plus 75% of F&B Guarantee |
| 181 -365 days prior to arrival | 75% of total room revenue* plus 50% of F&B Guarantee |
| 366-729 days prior to arrival | 40% of total room revenue* |
| 730-1,094 days prior to arrival | 10% of total room revenue* |
| 1,095-1,459 days prior to arrival | $25,000 |
| 1,460 or more days prior to arrival | $10,000 |

**BONUS DEAL On or before May 1, 2019 (Gaylord TEXAN) and May 1, 2020 (GAYLORD ROCKIES) Ramsey Solutions may release up to 50% of total room block without penalty. A proportionate reduction in meeting space and concessions will apply so Hotel is able to resell the released sleeping rooms. Ramsey Solutions will be responsible for the entire revised room block if this reduction is taken at 100%, no further attrition will be allowable. Should Group decide to exercise the BONUS DEAL or 50% room night reduction, then should the Group cancel their contract after this reduction, the cancellation amounts will remain based on the original contracted room block.**

*The term "total room revenue" means the dollar amount equal to the Room Block multiplied by the Group's average room rate, exclusive of resort fee.

Such amount (the "Cancellation Charge") will be due and payable due within 30 days of the date of cancellation, and accrue interest at the rate of 1.5 percent per month (or, if less, the maximum amount permitted by law). If required by the applicable jurisdiction, the Group will pay sales and/or other applicable taxes with respect to the Cancellation Charge outlined above.

## CANCELLATION IN EVENT OF CHANGE IN MEETING SITE

Notwithstanding any other provision of this Agreement, the Group agrees that it has no right to cancel this Agreement for the purpose of changing its meeting site to another city or location, and in such event, regardless of the date of cancellation of the Agreement, the Group will owe liquidated damages equal to 100% of total room revenues plus applicable tax, to be received by the Hotel from your event for guest rooms comprising the Room Block.

## FOR CAUSE TERMINATION

Should it be impossible for the group to perform its obligations under the Agreement as a result of Dave Ramsey's unforeseen death or disability, the Hotel shall refund all deposits and/or prepayments made by the Group within thirty (30) days of receipt of the notice of termination. Group must notify Hotel within Ten (10) days of such occurrence.

Notwithstanding any provision to the contrary herein, Group may at any time terminate this Agreement without penalty in the event Hotel, its parent, subsidiary or affiliated businesses, principals or executives become engaged in, accused of or subject to any public scandal, political controversy, crime, fraud or other event that in Group's sole judgment will impair or damage its brand or good will by hosting an event at Hotel. In such event, Group shall provide prompt notice and the Hotel shall refund all deposits and/or prepayments made by the

RS000299

RS0000300

**PERFORMANCE LICENSES**
**Ramsey Solutions** will be solely responsible for obtaining any necessary licenses or permission to perform, broadcast, transmit, or display any copyrighted works (including without limitation, music, audio, or video recordings, art, etc.) that **Ramsey Solutions** may use or request to be used at the Hotel.

**FORCE MAJEURE**
Either party may be excused from performance without liability if circumstances beyond its reasonable control, such as acts of God, war, acts of domestic terrorism, strikes or similar circumstances, make it illegal or impossible to provide or use the Hotel facilities. The ability to terminate pursuant to this clause is conditioned upon delivery written notice to the other party setting forth the basis for such termination within ten (10) days after learning of such basis.

**LITIGATION EXPENSES**
The parties agree that, in the event litigation relating to this Agreement is filed by either party, the non-prevailing party in such litigation will pay the prevailing party's costs resulting from the litigation, including reasonable attorneys' fees.

**LIQUOR LICENSE**
Group understands that Hotel's liquor license requires that beverages only be dispensed by Hotel employees or bartenders. Alcoholic beverage service may be denied to those guests who appear to be intoxicated or are under age.

**COMMUNICATIONS BETWEEN THE PARTIES**
Notices sent between the parties may be sent via regular mail, with the effective date as of the date of mailing, or by Federal Express or other overnight delivery service, with the effective date the date of receipt, or by facsimile, with the effective date as of the date shown on the confirmation of receipt. Copies or facsimiles shall be considered as valid as original documents.

**RENOVATION/REMODELING**
As of the date of the signing of this Contract, Hotel has no plans for renovation or remodeling of any facilities over the program dates, which will be utilized by Group pursuant to this contract, other than ordinary maintenance. In the event that after this contract is signed, Hotel confirms any plans to remodel or renovate its facilities over the Event dates, Hotel agrees to inform your group in writing of the following:

- Planned scope of project;
- Schedule for commencement and completion;
- Anticipated impact project will have on areas to be utilized by your group;
- Hotel's plan for minimizing impact of project on Group.

Hotel promises that any such construction or remodeling will not interfere with Group's use of the Hotel. The parties agree to negotiate in good faith to resolve any concerns raised as a result of renovations or remodeling and to enter into such amendments of this Contract as may be necessary to reasonably accommodate both parties' interests.

**DISHONORED RESERVATIONS**
If the Hotel is unable to provide a room to a Group attendee holding an accepted or confirmed reservation, Hotel may provide alternative accommodations to such attendee (an "Affected Attendee") without such action constituting a breach of this Agreement, provided the terms and conditions of this paragraph are followed. In such an event, the Hotel will provide, at its cost, the substitute hotel accommodations to the Affected Attendee and transportation to and from the substitute hotel for each day that Hotel cannot provide a room. Upon return to the Hotel, the Hotel will provide a note of apology, and every attempt will be made to place the guest in an upgraded room.

**SEVERABILITY**
If for any reason a court of competent jurisdiction finds any provision of this Agreement or portion thereof to be unenforceable, that provision shall be enforced to the maximum extent permissible so as to affect the intent of the parties, and the remainder of the Agreement shall continue in full force and effect.

**AMERICANS WITH DISABILITIES ACT (ADA) COMPLIANCE**
Each party agrees to use good faith efforts to ensure that it complies with its obligations under the Americans with Disabilities Act and the Act's accompanying regulation and guidelines (collectively the "ADA"). Each party further agrees to indemnify and hold the other party harmless from and against any and all claims and expenses, including attorney's fees and litigation expenses, that may be incurred by or asserted against the other party or its officers, directors, agents, and employees on the basis of the indemnifying party's non-compliance with any of the provisions of the ADA. **Ramsey Solutions** agrees to provide Hotel with reasonable advance notice about the special needs of any attendees of which **Ramsey Solutions** is aware.

This Agreement is subject to all applicable federal, state, and local laws, including health and safety codes, alcoholic beverage control laws, disability laws, federal anti-terrorism laws and regulations, and the like. Hotel and **Ramsey Solutions** agree to cooperate with each other to ensure compliance with such laws.

## EXECUTION: ASSIGNMENT: AMENDMENTS

By execution of this Agreement, the parties specifically acknowledge and agree that this Agreement sets forth the entire understanding between the parties with respect to the subject matter hereof, shall act as the binding obligation of the parties, and the individual party signing this Agreement on behalf of a party has the requisite power and authority to bind such party. No modification, amendment of, or supplement to this Agreement shall be valid or effective unless the same is in writing and signed by both parties. The Hotel may require ancillary terms under this Agreement, such as its Policies and Procedures and Banquet Event Orders, and such terms, to the extent not inconsistent with the provisions of this Agreement, shall be binding upon the Group.

## INDEMNIFICATION

Each party to this Agreement shall, to the extent not covered by the indemnified party's insurance, indemnify, defend, and hold harmless the other party and its officers, directors, agents, employees, and owners from and against any and all demands, claims, damages to persons or property, losses, and liabilities, including reasonable attorneys' fees (collectively, "Claims"), arising solely out of or solely caused by the indemnifying party's negligence or willful misconduct in connection with the provision and use of Hotel as contemplated by this Agreement. This paragraph shall not waive any statutory limitations of liability available to either party, including inn keepers' limitation of liability laws, nor shall it waive any defenses either party may have with respect to any Claim.

## COMPLIANCE WITH THE LAW

This Agreement is subject to all applicable federal, state and local laws, including health and safety codes, alcoholic beverage control laws, disability laws, federal anti-terrorism laws and regulations, and the like. Hotel and **Ramsey Solutions** agree to cooperate with each other to ensure compliance with such laws.

## CHANGES, ADDITIONS, STIPULATIONS, OR LINING OUT

Any changes, additions, stipulations or deletions including corrective lining out by either Hotel or Group will not be considered agreed to or binding on the other unless such modifications have been initialed or otherwise approved in writing by the other.

## ACCEPTANCE

When presented by the Hotel to **Ramsey Solutions**, this document is an invitation by the Hotel to **Ramsey Solutions** to make an offer. Upon signature by **Ramsey Solutions**, this document will be an offer by **Ramsey Solutions**. Only upon signature of this document by all parties will this document constitute a binding agreement. Unless the Hotel otherwise notifies **Ramsey Solutions** at any time prior to **Ramsey Solutions'** execution of this document, the outlined format and dates will be held by the Hotel for **Ramsey Solutions** on a first-option basis until **Friday, December 22, 2017.** If **Ramsey Solutions** cannot make a commitment prior to that date, this invitation to offer will revert to a second-option basis or, at the Hotel's option, the arrangements will be released, in which case neither party will have any further obligations.

Upon signature by both parties, **Ramsey Solutions** and the Hotel shall have agreed to and executed this Agreement by their authorized representatives as of the dates indicated below.

## SIGNATURES

Approved and authorized by **Ramsey Solutions**:

Name: (Print)     Joe Leavitt

Title: (Print)     Director of Event Production, Ramsey Solutions

Signature: _____

Date: _____12/22/17_____

Approved and authorized by **Gaylord Rockies Resort & Convention Center**:

RS0000301

Name:        Bill Hurst

Title:       Senior Sales Executive

Signature:   _____

Date:        12/23/17

RS0000302